**EXHIBIT A**

**TO**

**THE MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO LIFT THE PSLRA
<u>DISCOVERY STAY</u>**

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:  FANNIE MAE SECURITIES          : Docket No. CV04-1639 (RJL)
LITIGATION                             :
                                       :
. . . . . . . . . . . . .              :
                                       :
IN RE:  FANNIE MAE DERIVATIVES         : Docket No. CV04-1783 (RJL)
LITIGATION                             :
                                       :
. . . . . . . . . . . . .              :
                                       :
EVERGREEN EQUITY TRUST, et al.,        : Docket No. CV06-82 (RJL)
                                       :
             Plaintiffs,               :
                                       :
v.                                     :
                                       :
FEDERAL NATIONAL MORTGAGE              :
ASSOCIATION, et al.,                   :
                                       :
             Defendants.               :
                                       :
. . . . . . . . . . . . . .            :
                                       :
FRANKLIN MANAGED TRUST,                : Docket No. CV06-139 (RJL)
                                       :
             Plaintiff,                : March 17, 2006
                                       :
v.                                     : 11:30 a.m.
                                       :
FEDERAL NATIONAL MORTGAGE              :
ASSOCIATION, et al.                    :
                                       :
             Defendants.               :
                                       :
. . . . . . . . . . . . . .            :

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

Page 2

APPEARANCES:

For the Plaintiffs:                     STANLEY M. CHESLEY, ESQ.
                                        MELANIE CORWIN, ESQ.
                                        Waite, Schneider, Bayless &
                                          Chesley Co., L.P.A.
                                        One West Fourth Street
                                        1513 Fourth & Vine Tower
                                        Cincinnati, Ohio  45202

For the Class Action                    JEFFREY C. BLOCK, ESQ.
Plaintiffs:                             KATHLEEN M. DONOVAN-MAHER, ESQ.
                                        Berman, Devalerio, Pease, Tabacco,
                                          Burt & Pucillo
                                        One Liberty Square
                                        Boston, Massachusetts  02109

For the Class Action                    DANIEL S. SOMMERS, ESQ.
Plaintiffs:                             Cohen, Milstein, Hausfeld & Toll
                                        1100 New York Avenue, N.W.
                                        Suite 500 West
                                        Washington, D.C.  20005

For the Derivative                      DOUGLAS S. JOHNSTON, JR., ESQ.
Plaintiffs:                             Barrett, Johnston & Parsley
                                        217 Second Avenue North
                                        Nashville, Tennessee  37201

                                        RANDALL J. BARON, ESQ.
                                        Lerach, Coughlin, Stoia, Geller,
                                          Rudman & Robbins
                                        655 West Broadway
                                        Suite 1900
                                        San Diego, California  92101

For the Plaintiff                       STUART GRANT, ESQ.
Franklin Managed Trust:                 Grant & Eisenhofer, P.A.
                                        1201 North Market Street
                                        Wilmington, Delaware  19801

(Appearances continued on the next page.)

```
APPEARANCES (continued):
For the Plaintiff              ROBERT W. LILES, ESQ.
Sassan Shahrokhinia:           Martyn Liles, PLLC
                               1054 31st Street, N.W.
                               Suite 415
                               Washington, D.C.  20007


For the Plaintiff              DAVID H. SHAPIRO, ESQ.
Jeffrey Bader:                 Swick & Shapiro, P.C.
                               1225 Eye Street, N.W.
                               Suite 1290
                               Washington, D.C. 20005


For Fannie Mae:                JEFFREY W. KILDUFF, ESQ.
                               ROBERT STERN, ESQ.
                               O'Melveny & Myers, LLP
                               1625 I Street, N.W.
                               Washington, D.C.  20006


                               SETH ALBEN ARONSON, ESQ.
                               O'Melveny & Myers, LLP
                               400 South Hope Street
                               15th Floor
                               Los Angeles, California  90071


For Leanne Spencer:            DAVID S. KRAKOFF, ESQ.
                               MARK W. RYAN, ESQ.
                               Mayer, Brown, Rowe & Maw, LLP
                               1909 K Street, N.W.
                               Washington, D.C.  20006


For KPMG:                      ANDREW TULUMELLO, ESQ.
                               Gibson, Dunn & Crutcher, LLP
                               1050 Connecticut Avenue, N.W.
                               Washington, D.C.  20036


For J. Timothy Howard:         STEVEN MARK SALKY, ESQ.
                               Zuckerman, Spaeder, LLP
                               1800 M Street, N.W.
                               Suite 1000
                               Washington, D.C.  20006
(Appearances continued on the next page.)
```

Page 4

APPEARANCES (continued):

For Tom Gerrity (Derivative         PATRICK D. CONNER, ESQ.
and Franklin actions):              Morgan, Lewis & Bockius, LLP
                                    1111 Pennsylvania Avenue, N.W.
                                    Washington, D.C. 20004


For Jamie Gorelick:                 JULIA EVANS GUTTMAN, ESQ.
                                    Baker Botts, LLP
                                    1299 Pennsylvania Avenue, N.W.
                                    Washington, D.C. 20004


For Joe Pickett:                    JAMES HAMILTON, ESQ.
                                    Bigham McCutchen, LLP
                                    3000 K Street, N.W.
                                    Washington, D.C. 20007


For Daniel Mudd:                    CAROLYN ELIZABETH MORRIS, ESQ.
                                    Paul, Hastings, Janofsky & Walker
                                    875 15th Street, N.W.
                                    10th Floor
                                    Washington, D.C. 20005


For Leslie Rahl:                    DANIEL J. HEALY, ESQ.
                                    Anderson, Kill & Olick, P.C.
                                    2100 M Street, N.W.
                                    Suite 650
                                    Washington, D.C. 20037


For John Wulff:                     CHRISTOPHER C. PALERMO, ESQ.
                                    Kelley, Drye & Warren, LLP
                                    101 Park Avenue
                                    New York, New York  10178


For Stephen Ashley, Ann             JAMES M. SULLIVAN, ESQ.
Korologos and Donald                DLA Piper Rudnick Gray Cary, LLP
Marron:                             1200 19th Street, N.W.
                                    Washington, D.C. 20036


(Appearances continued on the next page.)

APPEARANCES (continued):


For Franklin Raines:            ALEX G. ROMAIN, ESQ.

                                MICHELLE D. SCHWARTZ, ESQ.

                                Williams & Connolly, LLP

                                725 12th Street, N.W.

                                Washington, D.C.  20005



For Ann Mulcahy, Frederic       MARK B. SWEET, ESQ.

Malek and Tom Gerrity:          Wiley, Rein & Fielding, LLP

                                1776 K Street, N.W.

                                Washington, D.C. 20006



Court Reporter:                 PATTY ARTRIP GELS, RMR

                                Official Court Reporter

                                Room 4800-C, U.S. Courthouse

                                Washington, D.C. 20001

                                (202) 962-0200



Proceedings reported by machine shorthand, transcript produced

by computer-aided transcription

P R O C E E D I N G S

1

2          COURTROOM DEPUTY:  Your Honor, this is the Fannie Mae

3    Securities Litigation, Civil Action 04-1639.  Also Evergreen

4    Equity Trust, et al., versus Federal National Mortgage

5    Association, et al., Civil Action 06-82.  Fannie Mae Derivative

6    Litigation, Civil Action 04-1783.  Also Franklin Managed Trust

7    versus Federal National Mortgage Association, et al., Civil

8    Action 06-139.

9          Counsel, come forth and state your appearances for the

10   record.

11         MR. CHESLEY:  Stanley Chesley, Plaintiff's counsel for

12   the securities case, your Honor.

13         THE COURT:  Welcome back.

14         MR. CORWIN:  Melanie Corwin for -- Plaintiff's counsel.

15         THE COURT:  Welcome back.

16         MR. BLOCK:  Good afternoon, your Honor.  Jeffrey Block

17   on behalf of Ohio Funds.  Pleasure to be back.

18         THE COURT:  Welcome back.

19         MR. SOMMERS:  Dan Sommers, Cohen Milstein Hausfeld &

20   Toll, also for the class action Plaintiffs.

21         THE COURT:  Welcome back.

22         MS. DONOVAN-MAHER:  Kathleen Donovan-Maher for the

23   class action Plaintiffs.

24         THE COURT:  Welcome back.

25         MR. JOHNSTON:  Your Honor, Doug Johnston on behalf of

1    the derivative Plaintiffs.

2             THE COURT:  Welcome back.

3             MR. BARON:  Good morning, your Honor.  Randall Baron

4    with Lerach & Coughlin on behalf of the derivative Plaintiffs.

5             THE COURT:  Welcome back.

6             MR. GRANT:  Good morning, your Honor.  I'm a new

7    entrant.  Stuart Grant on behalf of Franklin Funds and the

8    Evergreen Funds.

9             THE COURT:  Welcome, Mr. Grant.

10            MR. GRANT:  Thank you.

11            MR. LILES:  Good morning, your Honor.  Robert Liles,

12   local counsel for Sassan Shahrokhinia.

13            THE COURT:  Welcome.

14            MR. SHAPIRO:  Good morning, your Honor.  David Shapiro.

15   I'm local counsel for Jeffrey Bader.

16            THE COURT:  Welcome.

17            MR. KILDUFF:  Top of the morning to you, your Honor.

18   Jeff Kilduff for Fannie Mae.  They said I wouldn't do that,

19   but -- they put me up to it.  With me today --

20            THE COURT:  Erin go brae.

21            MR. KILDUFF:  With me, your Honor, is my partner, Seth

22   Aronson.  Also with the firm is Rob Stern and, from Fannie Mae,

23   Jodie Kelly.

24            THE COURT:  I am 50 percent Irish.

25            MR. KRAKOFF:  Good morning, your Honor.  David Krakoff

1  with Mayer Brown with Mark Ryan for Leanne Spencer.

2          THE COURT:  Welcome back.

3          MR. KRAKOFF:  Thank you.

4          MR. TULUMELLO:  Good morning, your Honor.  Drew

5  Tulumello, Gibson Dunn & Crutcher for KPMG.

6          THE COURT:  Welcome back.

7          MR. ROMAIN:  Good morning, your Honor.  Alex Romain of

8  Williams & Connolly on behalf of Defendant Frank Raines.  My

9  Motion is pending.  I'm also here with Michelle Schwartz.

10          THE COURT:  Welcome.

11          MR. SALKY:  Good morning, your Honor.  Steven Salky,

12  Zuckerman, Spaeder for Mr. Howard.

13          THE COURT:  Mr. Salky.

14          MR. CONNER:  Good morning, your Honor.  Patrick Conner

15  for Defendant Tom Gerrity in the derivative and the Franklin

16  Templeton action.

17          THE COURT:  Welcome back.

18          MS. GUTTMAN:  Good morning, your Honor.  Julia Guttman

19  representing Jamie Gorelick in the Evergreen and Franklin

20  actions.

21          THE COURT:  Welcome.

22          MR. HAMILTON:  Good morning, Judge.  James Hamilton now

23  of Bingham McCutchen for Joe Pickett.

24          THE COURT:  Welcome Mr. Hamilton.

25          MS. MORRIS:  Carolyn Morris for Paul Hastings for

1    Defendant Dan Mudd.

2            THE COURT:  Welcome.

3            MR. HEALY:  Good morning, your Honor.  Dan Healy from

4    Anderson, Kill & Olick for Defendant Leslie Rahl.

5            THE COURT:  Welcome.

6            MR. PALERMO:  Good morning, your Honor.  Chris Palermo,

7    Kelley, Drye & Warren for Defendant John Wulff.

8            THE COURT:  Welcome.

9            MR. SULLIVAN:  Good morning, your Honor.  James

10   Sullivan for Ashley, Korologos and Marron.

11           THE COURT:  Good morning.

12           MR. SWEET:  I think I am the last one.  Good morning,

13   your Honor.  Mark Sweet for Anne Mulcahy, Fred Malek and Tom

14   Gerrity.

15           THE COURT:  Welcome.  Okay.  Welcome to everyone.  Good

16   to have you back.  We have had a few developments since our last

17   get-together, of course.  We have some new actions here which

18   have raised a question of consolidation, whether or not

19   consolidation is appropriate and -- legally necessary and

20   appropriate in this case.  So that's on the table, so to speak.

21           We also have a joint report under 26(f), Counsel.  And

22   I thought I would deal with the non-consolidation issues first

23   and then deal with the consolidation, so to speak.

24           So why don't I hear from the parties on any

25   non-consolidation issues and then spend a few minutes talking

Page 10

1    about the consolidation questions with the new counsel that are

2    involved in that.  And then, of course, our existing counsel.

3         Mr. Chesley.

4         MR. CHESLEY:  Good morning, your Honor.  Stanley

5    Chesley for Plaintiffs.  I hope there will be many of these,

6    your Honor, but from the standpoint of 26(f) and case

7    management, we are here for a love fest, and I think I can move

8    through it very quickly.

9         THE COURT:  Okay.

10        MR. CHESLEY:  We had -- a Rule 26 conference was held.

11   A joint report of all parties were filed earlier this week.  The

12   parties have agreed to a case management order number 2 and,

13   your Honor, I would like to pass that up.

14        THE COURT:  Okay.

15        MR. CHESLEY:  That has been agreed to.  Additionally,

16   your Honor, we will coordinate Discovery to include the ERISA

17   and the derivative cases.  I have talked to both of those people

18   on the Plaintiff's side.

19        Lead Plaintiffs will amend the Complaint by April 17th

20   to add Shahrokhinia case options class as previously indicated

21   to the Court.  Fannie Mae has -- and I want to thank Fannie Mae

22   and Mr. Kilduff -- has begun document production.  So far, we

23   have received about 500 pages, and they have stated that they

24   will be producing documents on a weekly basis.

25        MR. KILDUFF:  500,000.

1          MR. CHESLEY:  I am sorry.  What did I say?  500,000,

2    your Honor.  I am sorry.  Usually I am up here fighting why we

3    only got 500, so the answer is -- yes, 500,000.  Thank you.

4          And the parties are close to an agreement on a

5    Protective Order that will be presented to the Court shortly.

6    If we can't work it out, we will put in both versions and the

7    Court will decide.

8          THE COURT:  Sure.

9          MR. CHESLEY:  Lead Plaintiffs intend to work, as I

10   said, with the derivative and ERISA counsel to coordinate all of

11   the Discovery so we will avoid duplication.  And I believe

12   Motions to Dismiss are pending in both of those cases.

13         Your Honor, on the two opt-out cases, lead Plaintiffs

14   have filed pleadings asking that they be required to coordinate

15   Discovery through our class action case.  When I say class,

16   that's to be set by the Court.  But the putative class action

17   case -- they have provided us with a proposed coordination

18   order, and we think we will be able to reach an agreement.

19         Your Honor, frankly, that is my report.  And I want to

20   thank the Court for having these status conferences.  I thought

21   you were going to think I was going to say for the ruling of the

22   Court.  But, no, I am not going there, Judge.  I don't do that

23   anymore.

24         THE COURT:  Good.

25         MR. CHESLEY:  The fact that we can have monthly status

1    conferences -- stuff gets done because we know we have got to

2    come see you.  And there is nothing like the Article III, Judge,

3    to make sure that it gets done.  And I find past experience in a

4    case -- it looks like a complicated case.  We don't think it

5    will be that complicated when we pull all the parties together,

6    coordinate Discovery, and that's what lawyers are supposed to

7    do, but we do need the supervision and the control of the Court.

8           So we, on behalf of the Plaintiffs, would urge that we

9    continue to have 30-day status conference so that we can tell

10   you if there are problems, if it's a continued love fest, and

11   give you a preview of what's coming.

12          THE COURT:  All right.

13          MR. CHESLEY:  Thank you.

14          THE COURT:  Thank you, Mr. Chesley.

15          MR. BARON:  Once again, good morning, your Honor.

16   Randall Baron for derivative Plaintiffs.  We are actually

17   continuing the love fest of Mr. Chesley.  We have been in

18   contact with Mr. Kilduff's office.  They have provided us with

19   the 500 pages as well -- or the 500,000.  We are going to be

20   working with lead Plaintiffs' counsel to figure out the best way

21   to coordinate those documents so that we can all use them in as

22   economically an efficient manner as possible.

23          We are also working with the Defendants to determine

24   how to get documents or information that would be beyond the

25   scope of the class.  And I think that our desire is first to see

1    what they give, and then see if there are other issues beyond

2    that.  I think that will probably be the best way to avoid

3    duplication of identical requests.

4              As far as the Motion to Dismiss, we have briefed our

5    opposition, a small 90 pages of opposition that we filed last

6    month.  The Defendants have asked for an extension for 30 days

7    for their reply, and we have told them that that is fine so long

8    as it's okay with the Court.

9              Other than that, I think we are right along with the

10   love fest.

11             THE COURT:  Did you already submit that?

12             MR. KILDUFF:  Not yet.

13             THE COURT:  I am sure -- if there is no opposition from

14   the other side, I am sure I will grant that.  But we will get it

15   when we get it.

16             MR. BARON:  And again, we also appreciate the

17   opportunity to be before the Court because we agree that -- I

18   think coordinating these things makes it much easier and makes

19   us all much friendlier.

20             THE COURT:  You may recall, this was set -- I think

21   this was set at a time when I was about to start a 12-week

22   Colombian trial, drug trial.  It got moved back to the first

23   week of April.  So I will be sitting four days a week for three

24   months on that trial.  So my availability -- because I still

25   have, you know, the other whatever -- 299 other cases to

1    juggle -- is not going to be as good as it was before the trial

2    started.

3           So -- I mean, we will get together.  We will continue

4    to get together, but it might be hard to do it each month.  But

5    certainly within 45 to 60 days.

6           MR. BARON:  Thank you very much, your Honor.

7           THE COURT:  Absent and emergency.  All right.  Thank

8    you.

9           Mr. Kilduff.

10          MR. KILDUFF:  Your Honor, we are in complete agreement.

11   I have nothing to add.  I think they fairly summarized where we

12   are, and we are working well together.

13          THE COURT:  Very good.  Excellent.

14          MR. SALKY:  I don't want to be a dissenter, but I would

15   say that while we have reached an agreement -- I think the

16   parties are working effectively together -- my own perspective

17   is that we have been rather ambitious in our proposed case

18   management order in terms of the conclusion for Discovery.  We

19   will try to work with it.  If the parties are in agreement that

20   if we are unable to get it done in the time we have allotted,

21   that we will approach the Court at that time, and I think that's

22   appropriate.

23          THE COURT:  And I think there has got to be some

24   flexibility in the system, too.  There is going to be unexpected

25   developments.  There are going to be unexpected twists and

1   turns.  There always are, especially in cases with as many

2   moving parts as this case has.  So, you know -- I mean, I think

3   having these intermittent get-togethers will give you a natural

4   opportunity to raise questions of that kind, you know.

5          MR. SALKY:  Yes.  And I don't know that we have been

6   together every month, but I am happy to be together as much as

7   it is required.

8          THE COURT:  Okay.  Thank you, Mr. Salky.  Anyone else?

9          MR. CHESLEY:  Your Honor, I just want -- don't want to

10  plan for any contingencies because right now our position is

11  that we want to stick with the schedule, barring any unforeseen

12  circumstances.

13         THE COURT:  Sure.  Thank you, Mr. Chesley.

14         Well, let's focus, then, on the consolidation issue.  I

15  think, you know, I have got a feel for how things are

16  progressing.

17         And why don't we hear for a few minutes anyway from the

18  parties that are new to the case on the issue of consolidation.

19  And -- Mr. Grant, I believe.  And we'll give everyone a chance

20  to address the issue a little bit.

21         MR. GRANT:  Sure.  Thank you, your Honor.  Although I

22  guess being new to the party, it's difficult to be first one to

23  come in with a contested matter and not being part of the

24  love-in.  So I apologize for that.

25         THE COURT:  There is a lot of history here.

1        MR. GRANT:  Okay.  Your Honor, my clients bought

2    approximately three-quarters of a billion -- for the court

3    reporter, that's a B -- billion dollars worth of Fannie Mae

4    securities.  Had they chosen to, I think that would have been

5    large enough to make them lead Plaintiff.  They chose that they

6    did not want to be either leading the class action or involved

7    in the class action and, therefore, hired their own counsel to

8    bring their own claims.

9        They wanted to do so because they thought that there

10   were individual claims, claims that could only be brought

11   individually that were valuable claims, and they wanted to make

12   sure that they could pursue them without having a separate duty

13   to others who wouldn't necessarily be able to pursue them.

14       And also, the clients feel that because they are

15   institutional investors, there's a lot of issues that might wind

16   up class issues involving alliance and things like that that

17   they figured they have no problem with because they are

18   professionals; they review all these materials, all the SEC

19   filings.  So they decided to bring the action separately.

20       Now, your Honor had a stipulated order that was not

21   unusual, but again, a stipulated order, so there wasn't someone

22   saying, well, wait a minute, I've got some other issues because

23   I may want to be coming in.  And generally, in my experience in

24   20 years of doing this kind of work, that order -- the purpose

25   of it is really to make sure that there aren't additional class

1   actions that are filed which, if left separate, would then

2   cause, once again, you know, another lead Plaintiff issue to

3   come about, other people thinking they can represent other

4   people. And the idea is to say, look, the MDL sent everything

5   here. I have done the process. Just because you file a late

6   class action doesn't mean that you get your own way to go.

7           Rarely have I been in an experience where that means

8   that anything that's filed, including an individual action, gets

9   sucked back in and said, well, I know you opted out, but if we

10  consolidate, you are now really almost back in the class,

11  including, by the way, for trial you will be in the same trial

12  as the class even though one of the key reasons you opted out

13  was so that you could have your own case and you own trial.

14          And having actually tried securities class action cases

15  like this, I will tell you it's extraordinarily complex. The

16  jury instructions are extremely difficult without a whole lot of

17  guidance because I think in the last ten years there's been

18  about nine cases actually tried to a jury.

19          And the idea of having some Defendants in the class

20  case not in the individual case, some in the individual case,

21  not in the class case, different standards, different claims

22  would just be absolutely unmanageable.

23          And even if we were in a situation where we would

24  consolidate it, I am sure at the end, before trial, we would

25  move to sever and have separate trials so your Honor would hear

1    the whole issue a second time.

2          Now, that's the practical problem of consolidation.  Of

3    course, the rule says your Honor can coordinate, your Honor can

4    consolidate, or your Honor can do neither of those.  So you have

5    the full panoply in front of you.

6          THE COURT:  Thank goodness.

7          MR. GRANT:  But we also recognize that since a lot of

8    this deals with many of the same issues, certainly not all of

9    the same issues, but many of the same issues, and because we

10   have lots of professionals who are going to wind up being

11   deposed whose time is valuable, as well as cost factors here, it

12   does make sense to have some coordination, and that's been the

13   usual practice.

14          And in that regard, maybe I can slip a little bit into

15   the love fest.  We have been talking with Plaintiffs class

16   counsel, and I think we are very close to an agreement.

17          My partner has actually been handling that, and when

18   she sent me off here with instructions, she said there is really

19   only one open issue, but -- you know, we're not totally nailed

20   down yet on everything, but we think there is only one open

21   issue, and that actually has to do with who is going to pay what

22   share of this huge database that we have the initial 500,000

23   documents.  And so it makes sense to only have people deposed

24   once.

25          And we also are willing, to some extent, to play second

1  fiddle to class counsel. You know, I would think if we were

2  coming in representing very small investors, that there would be

3  almost a presumption, well, gee, you ought to be sitting behind

4  class counsel. But with the type of money that our clients have

5  lost, there is an argument to say, you know, you really

6  shouldn't be sitting behind anyone.

7      But we are prepared, to some extent, to play second

8  fiddle and to let class counsel take the lead at depositions as

9  long as we are there to be able to say, okay, you know, you have

10 Defendants who -- we have Defendants who you don't have. We

11 need to ask some additional questions. We have claims that you

12 don't have. We would like to ask some additional questions.

13     But there is no reason why people have to produce

14 documents twice, should be sitting for depositions twice. And,

15 therefore, it seems to me if we do coordinate but not

16 consolidate, we will be getting the best of both worlds. We

17 will be, hopefully, saving time and money.

18     And -- on the other hand, we won't come to the

19 difficulty of, are we being deprived of substantive rights --

20 and your Honor saw that there is a SLUSA issue that's brewing.

21 Your Honor will see, if it gets down to trial, that there will

22 be some very significant trial issues that will cause things to

23 be more complicated. And so we don't have those difficulties,

24 and yet we do have the benefits.

25     Now, this case is -- this situation is a little more

1    complicated because of the timing.  Class counsel has filed a

2    complaint, I think, a year before us.  Your Honor promptly

3    decided the Motions to Dismiss, and now the PSLRA stay of

4    Discovery is lifted and they are starting to move forward.

5         We have filed some claims that certainly overlap, which

6    we can't imagine that the Court's decision would be any

7    different, but also some new claims, including several new

8    Defendants who obviously will want to move to dismiss.

9         And some of those folks may say, well, here is the

10   dilemma.  On one hand, gee, there should be the PSLRA stay which

11   says you shouldn't get Discovery until the Motions to Dismiss

12   are decided.  On the other hand, there is the idea of judicial

13   economy and parties' economy of, well, that's fine, if you want

14   to me to sit down until the Motions are briefed and decided,

15   that's okay, but I am going to need to take those depositions

16   also, so you are going to have to come around for a second time.

17   So that's, you know, part of the dilemma that's going on.

18        Now, I think I can assure your Honor that the parties

19   who are Defendants in my case but not in the class case will

20   wind up being witnesses.  I can't imagine that no one is going

21   to ask for documents or depositions from the auditor at KPMG

22   even if they are not named, as of now, in the class case.

23        So, you know, they are going to participate in

24   Discovery one way or the other.  Now, I am sure they would

25   prefer to participate as a non-party having been dismissed, but,

1    you know, assuming that we have people left, and certainly the

2    class has a case there, they are certainly going to be deposed;

3    they are certainly going to be asked for documents.  So --

4         THE COURT:  Where would be the harm to your client to

5    consolidate up front and leave open the option later, like you

6    said a minute ago, to sever for purposes of a trial?  In other

7    words, how would your case and your clients be harmed if that

8    were the approach?

9         MR. GRANT:  Well, I think several ways.  First of all,

10   I don't think that that really should be the default.  But

11   assuming your Honor says, well, go with me anyway and let's run

12   with that, I am afraid that there can be -- first of all, I'm

13   not 100 percent sure that the parties understand what

14   consolidation means.  As your Honor saw in the papers --

15        THE COURT:  Are you getting into metaphysics here?

16        MR. GRANT:  Well, I think we are.  I really think we

17   are because, as your Honor saw in the papers, we are concerned

18   that if it's consolidated and considered one proceeding, that

19   that may have a substantive effect on the SLUSA arguments.  In

20   other words, there are state claims that we brought that cannot

21   be brought in a class action form.  And I am concerned that if

22   we are thrown in a class action, that that may give someone

23   fodder -- and I don't necessarily agree with it, but at least

24   it's going to create the argument that says, well, you know, now

25   you're in a covered class action; it's one proceeding and,

Page 22

1    therefore, the claims that you brought on your own that were

2    bringable individually now no longer become claims that can be

3    brought.  So substantively that scares me.

4         Now, in some of the pleadings they say, well, the --

5    you know, just because you are consolidated doesn't mean you are

6    the same case or the same proceeding, in which case I don't

7    really understand the difference between consolidated and

8    coordinated.  Your Honor certainly says that, you know, gee, an

9    order in one of these cases should be put on the docket in all

10   the cases.

11        I am concerned that it is possible that we may have a

12   difference of opinion on an issue with class counsel.  I think

13   we could be prejudiced if they took position A and we took

14   position B on an issue, and then we have to, you know, argue in

15   the same proceedings as opposed to saying, fine, you know, you

16   have your position; that's not in our case; we would just as

17   soon not, you know, take on that issue or take it on a different

18   way.

19        I think it causes far too many complications, and I

20   don't understand the benefit that it gives anyone.  And

21   ultimately, I do see the trial issue to be a huge, huge problem.

22        So those are my thoughts, unless your Honor has any

23   questions.

24        THE COURT:  That's fine.  Thank you, Mr. Grant.

25        MR. BLOCK:  Thank you.  Good afternoon, your Honor.  I

1    would rather have had Mr. Chesley's position of reporting on the

2    love fest, but I will respond to Mr. Grant.

3         The question of consolidation, coordination and how it

4    gets labeled, I am going to let Mr. Kilduff address that because

5    I think that's more of an issue that the Defendants have, and we

6    don't really have a horse in that race.  But a couple points I

7    would like to make as far as what Mr. Grant said.

8         First, I know he has client who he says purchased

9    three-quarters of a billion dollars of Fannie Mae stock.  We

10   represent the class, and when the news of the OFHEO

11   investigation broke, the market cap declined by over

12   $10 billion.  So, clearly the class' interest in this case

13   dwarfs the individual interest of Mr. Grant's case.  And the

14   real question, I think, Judge, practically speaking:  How do we

15   deal with these cases going forward?

16        And we are navigating here in uncharted waters.  This,

17   as I'm sure your Honor probably can surmise, has come up

18   repeatedly, numerous cases.  In fact, as we put in our papers,

19   we have a case involving Mr. Grant's firm where we represent the

20   class, Mr. Grant has some opt-out Plaintiffs, and we have an

21   order which provides essentially everything runs through class

22   counsel, all the Discovery, all the depositions.  And it's case

23   management, and it makes good sense because you don't want to

24   have different Plaintiff's lawyers rushing out to see who is

25   going to subpoena who first, who is going to notice whose

Page 24

1    deposition first, who is, you know, tussling over who is going

2    to ask those questions first.

3           And naturally, the way all the courts have come down is

4    the class action takes the lead.

5           We take into account Mr. Grant's views, his wishes.   If

6    there is something that we are not going to pursue that he wants

7    to pursue, by all means he can then do it.

8           If he wants some documents asked for that we didn't put

9    in a request, I am sure we are going to include it and put it

10   in, as we are doing right now in the Xerox case.

11          As far as questions about how we are going to try the

12   case, I would submit, your Honor, it's entirely premature for

13   any of us to even to start thinking about what a trial in this

14   case is going to look at.   We just got our 500,000 pages of

15   documents.   There's a lot more coming.   We don't know what --

16   the issues in this case, but I wouldn't even try to go there at

17   this point in time.

18          We do have --

19          THE COURT:   Would your clients be in some way harmed or

20   prejudiced if we started out on a consolidated path but at a

21   later time, because of whatever develops, there may be good

22   grounds for a severance to occur for trial purposes?

23          MR. CHESLEY:   That's fine.

24          THE COURT:   Do you see any problem with that?

25          MR. BLOCK:   That would be fine with us.

1          MR. CHESLEY:  That's fine, your Honor.

2          MR. BLOCK:  Completely fine with us, and I think that's

3   probably a fairly sensible way to proceed, as long as we have

4   good case management procedures in place so nobody is getting

5   out ahead of anybody else and nobody else is usurping what is

6   going on in Discovery, that's really our principal concern.

7          And that's really all I have to say, so I will turn it

8   over to Mr. Kilduff.

9          THE COURT:  Okay.

10         MR. BLOCK:  Thank you, your Honor.

11         THE COURT:  Thank you very much.  Mr. Kilduff.

12         MR. KILDUFF:  Your Honor, I think you have put your

13   finger right on it.  Rule 42(a) couldn't be clearer.  When a

14   party files in a District Court where there is a similar or same

15   proceeding involving the same facts, the same legal issues,

16   42(a) requires consolidation.

17         The order says -- or the rule says, "When actions

18   involving a common question of law or fact are pending before

19   the court" -- that's this Court -- "it may order a joint hearing

20   or trial of any or all the matters in issue in the actions."

21         So that makes perfect sense.  We have the same issues.

22   There is no question that the accounting issues that drive this

23   lawsuit overlap almost completely with the opt-out claims.

24         Now, the concern that I hear from the opt-out

25   Plaintiffs is the separate trial issue.  And I agree.  It's too

1    early to determine whether we need a separate trial for any

2    particular issues. But should they need one, the rule again

3    provides the answer. 42(b), Separate Trials, says that once you

4    have consolidated, you can separate a particular issue for a

5    separate trial.

6          So the relief is available. We don't need to determine

7    today. It may very well be that once this case is whittled down

8    through Motions to Dismiss and other Summary Judgment practice,

9    that the cases are completely co-extensive and a single trial

10   makes sense. It may be that the folks with the opt-out

11   Plaintiffs can argue that they need a separate trial. But I

12   think for the time being consolidation is in order.

13         I am not sure if I understand the distinction that they

14   want to draw as to what rights they will lose if we consolidate

15   versus coordinate. But from our perspective, consolidation

16   gives us more efficiencies across the board. I think we have

17   heard some of those very efficiencies from both sides of the

18   Plaintiffs here. We want to deal with one case, one set of

19   Discovery, and essentially be able to move forward as a unified

20   case, not worried about whether or not we have different cases

21   but we're only doing some kind of coordination issue.

22         THE COURT: How about this Motion to Dismiss issue that

23   Mr. Grant raised? You know, the timing on any -- assuming, for

24   example, consolidation, there may be some need by the new

25   Defendants to be doing some Motions to Dismiss.

1           MR. KILDUFF:  Your Honor, I can't speak for the other

2   newly named Defendants, but I can speak for Fannie Mae.  And I

3   think the solution for Fannie Mae is that we would want to move

4   to dismiss some of the new claims that the opt-out Plaintiffs

5   have brought.  We have very good grounds for that.  We have

6   statute of limitations grounds.  Their section 11 claim doesn't

7   lie against Fannie Mae; they are not subject to the 33 act.

8   Complete oversight by the opt-out Plaintiffs, but that needs to

9   be thrown out.

10          I think we can get rid of those claims on a Motion to

11  Dismiss.  But Fannie Mae is not going to invoke the Reform Act

12  stay to stop Discovery in these proceedings.  We are moving

13  forward.  We want to move forward on a coordinated basis.

14          So I think the notion that at least from the Fannie Mae

15  perspective -- and 99.9 percent of the Discovery is coming from

16  my client.  I don't think the individuals have much in terms of

17  Discovery here.  So I think that's a bit of a red herring.

18  These cases are going to move forward.  We're going to have

19  Discovery.  The depositions are going to continue.

20          To the extent a newly added Defendant, KPMG, for

21  example -- I can't speak for them; they have been added.  Some

22  of the individual former board members have been added -- or

23  current board members.  They have different rights and they may

24  want to take steps to protect those rights, and I don't speak

25  for them.  But I do think that if we move forward on a

1  consolidated basis, the lion's share of this case is moving

2  forward at a relatively good pace, as you have seen from the

3  CMO.

4        I think the other -- the issue I heard from the opt-out

5  Plaintiffs is the concern they may lose some rights as to some

6  of their state law claims.  I think that's a bit of a red

7  herring.  If you look at the language of SLUSA, to the extent we

8  have a SLUSA pre-emption argument -- we are going to fully brief

9  this, but SLUSA applies to pre-empting claims in any joint,

10 consolidated or otherwise -- or any other proceeding that is

11 otherwise proceeding as a single proceeding.

12       So it doesn't have to be consolidated for us to make

13 the SLUSA argument that opt-out Plaintiffs fear.  Anything that

14 is moving as a single proceeding under SLUSA is going to be

15 subject to the same arguments.  So I really don't think that's

16 the concern.

17       I think the papers indicate a concern that the

18 Plaintiff might lose their identity as a separate case, and

19 that's certainly not the case.  I mean, I think if you look in

20 our papers you will see we cite the Shell case.  That was a

21 class action in which an opt-out case was consolidated.  And it

22 was consolidated all the way through trial.  And there were

23 different issues there, punitive damages issues and so on.

24 Again, 42(a) is what drives this.  And when you have the same

25 questions of fact and law, you should consolidate the cases.

1          Now, again, on the back end, if there is a reason for a

2     separate hearing, I think you go ahead and consider it at that

3     point in time.

4          And then finally, just for your Honor's sake, we did

5     file some additional papers late in the day yesterday because we

6     wanted to reply to what we saw from the lead Plaintiff.  And you

7     will see we have cited three cases there, all securities cases

8     in which the cases were all -- different cases from different

9     courts were all consolidated, not coordinated, but consolidated,

10    even when they included claims other than those brought by the

11    class action.

12         So I think that's important because this is not about

13    losing identity of a particular claim.  We can work within the

14    consolidated case to provide them, through coordination, any

15    Discovery that they need.

16         So I am with the lead Plaintiffs in terms of working

17    through a coordination order to make sure everybody has a full

18    and fair opportunity to develop the record.  But I think we need

19    to do so for our sake, the Court's sake and for efficiency as a

20    single consolidated proceeding.

21              THE COURT:  All right.

22              MR. CHESLEY:  Your Honor, not to be repetitive --

23              THE COURT:  Hold on, Mr. Chesley.  We got one more

24    here -- at least one more.  We will get back to you, though.

25              MR. TULUMELLO:  Your Honor, Drew Tulumello for KPMG.

1        THE COURT:  Yes.

2        MR. TULUMELLO:  We want a case management structure

3    that is reasonable, that does not impose accelerated schedules

4    on KPMG, realizing that we are getting into this 16 months after

5    it began.

6        THE COURT:  Well, you moved into a fast -- you've

7    jumped into a fast-moving stream here.

8        MR. TULUMELLO:  It sure seems so with -- when you hear

9    500,000 documents were produced, and you have just been named in

10   the complaint.  It's a sobering thought.  And also, I think,

11   what has already been discussed, that recognizes our rights to

12   the PSLRA Discovery stay in the Franklin Templeton case.  And,

13   you know, the question is, how should we manage those concerns?

14            It seems to us that consolidation on the issues that

15   are truly core in the opt-out case and in the class case, that

16   makes sense.  And what I mean by core are the claims against

17   Fannie and what I will call the Fannie individual Defendants.

18            It does leave open the question of what happens with

19   us.  And there are two ways to do it.  One would be

20   consolidation for all purposes through trial and judgment.  And

21   my concern about that, frankly, is that purely on a case

22   management basis it doesn't seem to me practical or fair to us

23   to shoehorn us into this case 16 months after it has been going

24   on and ask us to be trial ready on the same deadlines that have

25   been applicable to the parties who have been in it in the

1    beginning.

2            And I think to do that, there would be enormous

3    pressure on the Court to think about ways of moving our case

4    along at a speed that I think would not be fair or similar to

5    the time that the other Defendants have had.

6            The PSLRA Discovery stay also raises a separate issue.

7    I mean, we are entitled under the Reform Act to test the

8    sufficiency of the allegations in the opt-out complaint before

9    there is any Discovery.  And regardless of --

10           THE COURT:  Couldn't we give you an accelerated Motion

11   schedule to deal with that issue?

12           MR. TULUMELLO:  You could.  I mean, I wouldn't want it

13   to be too accelerated, but whatever --

14           THE COURT:  Gibson Dunn has got lots of troops.  They

15   can work fast.

16           MR. TULUMELLO:  There is no question about that, your

17   Honor.  There is no question about that.  As long as it's

18   workable and survivable and we think we can put a very good

19   Motion before you, that's fine.  But we certainly don't want to

20   be in a position where the opt-out Plaintiffs, through whatever

21   the case management structure is, are entitled to review some

22   Discovery with the possibility of potentially amending their

23   claims.  I mean, that would be a circumvention of the PSLRA

24   Discovery stay.

25           And so the other proposal that we've put forward, which

1    we would urge you to consider is the following. Consolidation

2    on the core issues, moving that case along now, which is the

3    case against Fannie Mae and the individual Defendants -- you

4    have already ruled on the Motion to Dismiss. Obviously, the

5    opt-out complaint is different and would need to be reviewed,

6    but surely the original ruling is going to be suggestive on what

7    the outcome should be there. And then essentially table the

8    case with respect to KPMG until a later point in pretrial

9    proceedings. And what we propose is until you make a ruling on

10   class certification.

11          And the reason that we suggest that is this: I believe

12   that there is a reasonable if not very good possibility that we

13   will have additional opt-outs come forward. And when you get to

14   class certification, and assuming that the class is certified

15   and the Rule 23 notice will go out, that will flush out some of

16   those opt-outs both because they have -- you know, the rule will

17   ask them whether they want to be part of the class.

18   Secondarily, once you make that ruling, the universe of opt-outs

19   is going to lose the benefit of the tolling under the American

20   Pipe doctrine. And their limitations period -- the class

21   members' limitation period to want to opt out will start to run

22   again.

23          And some of the statute of limitations at issue in

24   these cases are very, very short, indeed. And so if people

25   didn't tend to opt out at that period of time, you would expect

1   it to happen -- you would expect them to bring their claims

2   against whoever they wanted to name reasonably quickly after

3   your certification -- if you are talking about some claims that

4   have a limitations period as short as a year or two years, once

5   that period begins to run on them, there will be tremendous

6   incentive for them to come forward.

7          And so the benefit of that, at least from my and our

8   perspective is if there is additional opt-out litigation that

9   names us, that litigation can be coordinated as appropriate at

10  that time.  And so, you know, the two ways that I look at it

11  are, one, try to accelerate this opt-out case with the newly

12  added Defendants and try to get it on this, you know,

13  fast-moving train.  Number one.  Or, two, let the case go

14  forward, consolidate them on the core issues, but table our

15  issue later and -- for later.

16         And a couple things could happen that would facilitate

17  the case management in both matters down the road.  One is --

18  obviously, I can't speak for the Plaintiffs or for Fannie, but

19  it would not be impossible for there to be a settlement in the

20  lead class case at some point in time, number one.  And number

21  two, if you did want to put us, as you suggested, on a Motion to

22  Dismiss track, you could dismiss our case.  And a lot of the

23  unique issues would drop out.

24         And so those, I think, are the two ways to look at it.

25  Bring us in now for all purposes through trial and judgment or

Page 34

1    do something to accommodate for the fact that, you know, we

2    shouldn't be rushed, we should be entitled to our PSLRA

3    Discovery stay rights -- and the Court may want to at least

4    think about, you know, what it will do if additional opt-outs

5    come forward, and we would certainly want to be in a position to

6    have that universal litigation coordinated at that time.  Thank

7    you.

8          THE COURT:  Okay.  Mr. Chesley.

9          MR. CHESLEY:  Your Honor, I feel that it is truly a

10   love fest.  I totally agree with Mr. Kilduff, and I am listening

11   here to Mr. Grant, and I am listening to the last speaker, and

12   it is truly a red herring, much to do about nothing.

13         To begin with, we have already subpoenaed KPMG.  They

14   are a third party in this case, at least as we are concerned.

15   And they need to be a little careful what they wish for because

16   they may be a Defendant.  But right now they are a third party

17   with us, and we have already got document requests out to them.

18   They cannot and should not get a stay as a third party.  We have

19   every right to get those documents.

20         And then we will make an inspection.  In the event that

21   we determine that they should be included, we will make adequate

22   provisions, and Rule 42(a) is available.  We see this in the

23   tort world, your Honor, for the last 40 years -- as you go along

24   in a case, you find other Defendants, you bring them in.  That

25   doesn't stop the train.

1        And on this issue of the opt-outs, it is so clear, your

2   Honor, that your point is so well-taken:  They can look at this

3   later down the road.  It is premature to even think about trial.

4   And one of the decisions that opt-out is going to have to make

5   is in the event that the case is certified as a class, they are

6   going to have to make a very quick decision as to whether or not

7   they want to opt out and go it on their own with the statute of

8   limitations running or may have -- and more importantly, the

9   cost.

10       One of the interesting things -- I was just talking to

11  Melanie.  One of the interesting -- only issues we have as far

12  as working with these folks right now is are they going to

13  pay -- do they want to pay anything towards costs?  And if the

14  answer right now is no, that sort of gives you a pretty good

15  indication, are they going to want to go out on their own and

16  spend 5 to $7 million to go try one of these cases?

17       So all I say, your Honor, is these things can be

18  remained -- we should move forward where we are.  KPMG -- gee,

19  whiz.  16 months, they didn't know that they were going to be a

20  potential Defendant?  Come on.  They have probably a lot more

21  information, and we are going to soon see it in the documents

22  and in the depositions as to whether or not they are a viable

23  Defendant or not, and we will make that judgment down the road.

24  But that doesn't mean that we should stop what we are doing or

25  give them some kind of stay.

1          THE COURT:  What's your estimate, Mr. Chesley, just an

2    estimate, about what point in time will we get around to dealing

3    with the issue of class certification?

4          MR. CHESLEY:  I would like to do the day after

5    tomorrow, your Honor --

6          THE COURT:  I know.

7          MR. CHESLEY:  -- but I think you have it scheduled in

8    August.  Your Honor, you know, I would love to have Mr. Kilduff

9    and I go off in a room and work it out.  And it is presently,

10   and we agree with the schedule -- I believe it is on our class

11   cert.  It has been agreed to -- file a Motion for class cert on

12   or before May 17th.  Document Discovery shall be completed by

13   June 16th.  Defendants' opposition class shall be filed -- and

14   individual opposition.  Lead -- and then lead Plaintiffs' reply

15   brief shall be filed on or before September 25, 206 [sic].

16         I think, your Honor, to be in good faith we've got to

17   live with this unless we can stipulate before that.  Sometimes

18   you can; sometimes you can't.  And the issue is as soon as the

19   Court has time after September 25th, we will be ready to argue.

20         THE COURT:  All right.

21         MR. CHESLEY:  But I think we have to live with -- you

22   know, we worked it out.  And if we can stipulate it beforehand,

23   fine.

24         But, you know, then they are going to be able to make a

25   viable decision.  In every case I have been in, your Honor --

1    and I guess my gray hair shows unfortunately it's been too

2    many -- everybody wants to have a little different game,

3    opt-out. I don't care how much stock they have. If you take

4    that to its logical conclusion, the person with a hundred shares

5    should have the same rights. And that's the purpose of

6    consolidation. That's the purpose of coordination. That's the

7    purpose of the MDL.

8         And -- you know, the Court trusts us that we are going

9    to move the case forward, has appointed us lead counsel. We

10   want to bring them into the tent. We want them to be part of

11   it. And to suggest there's all these different issues floating

12   out there and it's way too complex to ever try their issues with

13   our issues -- Judge, it's called jury instructions, you know.

14        And statistics are that 98.5 percent of all civil

15   litigation in the Federal Courts in the United States are

16   settled at one time or another. So to sit here and discuss what

17   the opening statements are going to be like in the trial I just

18   think is really premature. Thanks, your Honor.

19        THE COURT: All right. Mr. Kilduff, do you want to --

20        MR. KILDUFF: Two just brief points. Wait?

21        THE COURT: No, go ahead. And then we will get

22   Mr. Grant.

23        MR. KILDUFF: Two brief points, your Honor.

24        THE COURT: Last bite at the apple there.

25        MR. KILDUFF: The fear of other opt-outs I think is a

1    real fear, and it tells us we should right now reach a decision

2    to consolidate this and keep this moving on track.  If we start

3    staggering separate schedules and cutting special deals for

4    every new opt-out along the way, we are never going to have a

5    consolidated, coordinated proceeding.  There are going to be so

6    many balls we are juggling, we are not going to know which way

7    to turn.

8         So I think -- the fact that I'm hearing that there may

9    other opt-outs I think it's a good point.  We've got to keep

10   this on track as a single consolidated case.

11        Point 2 is that, you know, the notion that people are

12   having to get up to speed and that this is a complicated case, I

13   appreciate that.  But probably more than any other securities

14   case ever, the parties have more information here than they have

15   ever had about a case involving securities -- alleged securities

16   fraud.  We have a 200-page OFHEO report from September of 2004.

17   We have Paul Weiss' report, Senator Rudman, 616 pages of the

18   report.  Thousands of pages of the exhibits.

19        We have had Capitol Hill testimony.  And to our

20   knowledge, we believe that -- we have heard in the press that

21   OFHEO will be issuing yet another report sometime soon.

22        So there is such a large body of fact-gathering, at

23   great expense, that new Defendants can get the benefit of that I

24   think the notion that there would be any prejudice in

25   consolidating and moving forward now is really not a real

1    concern in this case because I think this case is very unique in

2    that regard.

3             THE COURT:  All right.  Mr. Grant.

4             MR. GRANT:  Thank you, your Honor.  No one has

5    explained to the Court what the benefit of consolidation is over

6    coordination.  There is universal agreement that this ought to

7    be all moving together so that we don't do that kind of thing.

8    I shouldn't say universal.  Except for KPMG.

9             But no one has said, let me tell you why consolidation

10   is better than coordination.  I gave your Honor reasons why

11   coordination is better.  The SLUSA was one reason.  But

12   Mr. Chesley just gave us another reason.  He stood up here and

13   said, you know, I agree Mr. Kilduff and I disagree with

14   Mr. Grant over, you know, what we should handle -- whether it

15   should be consolidated or coordinated.  That's exactly what

16   scares me here is that there may well be times that Mr. Chesley

17   and I disagree.

18            Now, Mr. Chesley is a very, very experienced lawyer,

19   although having not tried -- I don't believe he has tried a

20   securities case.  I think of trying securities -- when I take a

21   securities case, I think about the trial the day I agree to take

22   on the representation.  I always think about what the trial is

23   going to be like, because that's how you evaluate a case.  And I

24   am telling you, having done securities trials, they are

25   incredibly complex.

1        One of the other things that scares me about

2   consolidation is there will then wind up being this presumption

3   that they are going to be tried together unless I can persuade

4   your Honor that they should be severed.  In the same way this

5   stipulated order now kind of puts me on the defensive and I am

6   coming in and saying, please don't consolidate us, you know,

7   take me out of that order, rather than starting with a clean

8   slate when I say, your Honor, coordination is just fine.  And

9   that's another thing that scares me.

10       So there's -- I think I have provided to the Court

11  three reasons why coordination is better than consolidation, and

12  I don't think anyone has provided any reasons why consolidation

13  is better than coordination.

14       Now, with regard to the opt-outs, I am afraid that one

15  of the changes in the Federal Rules really kind of moots what

16  KPMG has said here.  And that is that there is actually several

17  times to opt out of a class action case.  One is when the class

18  is certified.  But if the case is settled -- and Mr. Chesley

19  correctly points out that an overwhelming majority are

20  settled -- the class gets another chance to opt out.

21       And so I would disagree with KPMG's discussion of

22  American Pipe, and I would say that you get American Pipe

23  tolling until you finally decide to opt out if you opt out in

24  the very last moment, which is at settlement, and that would

25  still give you, potentially, under the 34 act, two more years to

1    decide to bring a case.

2         So, clearly, people could bring opt-outs three years

3    from now, four years from now, or people could bring them as

4    soon as my client did and say right now, you know what, we are

5    opting out and bringing our own case.

6         So to sit and wait until we gather all the opt-outs

7    would mean sitting there and waiting until two years after the

8    class, you know, was -- potentially reached a settlement.  And

9    so that just is silly because that would, you know, delay

10   justice for years.

11        I don't disagree that this should move together.  The

12   question is, what's the method?  I think Mr. Kilduff misspoke

13   when he said that the rule requires consolidation when it's all

14   together.  It doesn't.  It allows consolidation.  It says you

15   may do it.  It depends on what makes sense.

16        And I will finally say that I actually can't respond to

17   the extremely late eleventh hour filing that was made last night

18   and so -- you know, it was handed to me again this morning.  I

19   did get it via e-mail last night.  I was in Charleston and so I

20   didn't have access to law books or anything like that.

21        I can understand why he would want to do it.  He got

22   those papers a week ago.  I understand there may have been some

23   problems with filing, but I wish this was at least faxed to us

24   on Tuesday or Wednesday, and then we would have been able to

25   reply.

1      There have been lots and lots and lots of cases that

2   are coordinated, not consolidated.  There's no benefit to

3   consolidation; there's lots of benefit to coordination.

4          THE COURT:  All right.

5          MR. BLOCK:  One brief point.

6          THE COURT:  Okay.  Go ahead, briefly.

7          MR. BLOCK:  Just one brief point.  Mr. Grant made a

8   statement saying that when -- if you certify the class, then we

9   go ahead and we settle the case, the class then has a second

10  chance to opt out.  I have never heard of that rule.  I have

11  been practicing class actions for 20 years.  I kind of looked

12  around the table on both sides.  None of us have ever heard

13  that.

14         When you certify a class, a class member has their time

15  to make a decision as to whether they want in or out.  If they

16  are in, they are in.  And if they want to opt out, they opt out.

17  But you don't keep getting two, three, four bites at the same

18  apple.  And we have had cases where we have settled with one

19  Defendant, we sent out the notice, and that's your time to get

20  in or out.  You don't get, when we settle with another

21  Defendant, a yet second opportunity to now decide, I want in or

22  I want out.  So I just wanted to clarify that.  Thank, your

23  Honor.

24         THE COURT:  Very good.  Thank you.  Well, what I will

25  do is -- I think Mr. Grant, it sounds like, anyway, would like

1   an opportunity to respond briefly to the pleading he got, and I

2   will give him until Tuesday close of business to do that.

3          MR. CHESLEY:  May we then respond?

4          THE COURT:  Well, what I was thinking is for the

5   remaining parties, to what extent, if at all, today's discussion

6   raised any new insights or issues in your mind, then just submit

7   whatever you have got by Tuesday.  My goal is to have a ruling

8   to you on this issue by the end of next week.

9          MR. CHESLEY:  Your Honor, we will do it by Tuesday.

10         THE COURT:  Next Friday I want to rule.

11         MR. CHESLEY:  Okay.

12         THE COURT:  So I will take the benefit of whatever

13  Mr. Grant comes up with by Tuesday, have a day or two to digest

14  it -- and whatever else you all come up with.  And again, I am

15  not requiring you to come up with anything.  I am just saying if

16  today's discussion prompted you to rethink something or you want

17  to articulate more fully something you have said orally, feel

18  free to submit it.

19         Now, if I should end up going in the direction of

20  consolidation, it would seem to me that you all should get

21  together pretty expeditiously, if it should come to pass that

22  that's where I come out on that.  And I would certainly be

23  expecting the new parties to get together with the lead counsel

24  and to start figuring out how to make any, if any, amendments to

25  existing Scheduling Orders or proposed Scheduling Orders because

1   I don't want to lose the benefit of the momentum that has been

2   achieved in moving this hopefully towards an ultimate resolution

3   at some point.

4          Now, you know, obviously, it's not going to happen in

5   the next few months.  But we are moving -- we have made, I

6   think, a fair amount of progress in a relatively short time on a

7   matter with a lot of moving parts.  And I don't want to get

8   stalled or in some way lose the benefit of that momentum.  I

9   appreciate that that might mean somewhat aggressive briefing

10  schedules if there is going to be a need for rounds of Motions

11  that the new parties have to, you know, in good conscience, in

12  good practice have to engage in.

13         So -- I think the new parties, again, if it comes to

14  that, can take heart from the fact that this Court has been, at

15  least in my judgment, receptive to extensions of time where

16  there is an appropriate basis for it.

17         And, you know, I think you are not going to be put in

18  a -- I don't think, in a tenable position in terms of having

19  adequate time to draft and file whatever pleadings you have to

20  file.  I have done my best, certainly, to rule expeditiously

21  as -- the best as I can.  And we are still in a relatively early

22  stage in all this.  I mean, we just got past the Motion to

23  Dismiss the securities suit and the derivative suit is moving

24  along, but we are not even at the Motion to Dismiss stage there.

25  Discovery is getting going go.

1          And I realize 500,000 pages is a lot.  But, you know,

2    for certain firms that's an everyday event, you know.

3          But in any event, I don't want to prejudge the

4    decision.  But it just seems to me that if it comes out that

5    way, you all need to move relatively quickly to get together,

6    whether it be by conference call or meeting or both, whatever,

7    just to get things going.  What I am going to do is set

8    something for kind of a status in late April, maybe.

9          MR. GRANT:  Just to let the Court know -- I'm sorry.

10         THE COURT:  We don't do long distance talking in this

11   courtroom.

12         MR. GRANT:  I apologize.

13         THE COURT:  You have to use that microphone there.

14         MR. GRANT:  Just to let the Court know so when you are

15   scheduling -- we had given, at the request of all of the

16   Defendants, an extension to respond to the Complaint until

17   May 1st.  May 1st.  So, you know, now people are talking about

18   maybe we will get it done sooner or whatever, but we filed --

19   you know, the Defendants were nice enough to accept service for

20   their clients so we didn't have to go track them down.  We gave

21   them -- you know, this was our bit of a love fest.  We gave them

22   until May 1 to respond.

23         So I don't know if they now feel, well, maybe they

24   ought to move that up, or if they don't, whether the Court wants

25   to have the next meeting maybe just after that so at least we

1    will know what's on the table and what's going to go from there.

2    Or maybe it's useless information. But I provide it to the

3    Court for whatever the Court needs.

4              THE COURT:  That's good.

5              MR. CHESLEY:  Your Honor, whenever the Court wishes to

6    have it sometime at the end of April -- I don't think it should

7    wait until they file their answer or whatever they are going to

8    file.  I just don't --

9              THE COURT:  Was I thinking the 28th.

10             MR. CHESLEY:  That's fine.

11             THE COURT:  That way you would have the chance to --

12   you would be in a position to have met -- again, if I did move

13   in the consolidation direction, you would have a chance to meet,

14   coordinate your own thinking as to schedules.  And at that point

15   you would be on the verge of responding, if you already hadn't,

16   on the Motion -- I mean, to the Complaint.  So you would be

17   pretty much in a position where you had a better handle on

18   what's going on.  So I was thinking maybe the 28th, if that

19   works.  I don't know.  It may not work.

20             MR. CHESLEY:  It's fine with us.

21             THE COURT:  Okay.

22             MR. KRAKOFF:  Your Honor, we have a partners meeting on

23   that day out of town, and I was wondering if we could schedule

24   it either a couple of days earlier or a day later.

25             THE COURT:  Well, the problem is I've got this 12-week

1    trial, and I sit on Mondays through Thursday.

2            MR. KRAKOFF:  Right.

3            THE COURT:  So Friday is the only day, starting the

4    first week of April, that I can meet on civil cases.  So it's

5    really got to be Friday.  So why don't you, you know, give

6    someone your proxy, and they can go and represent you at the

7    meeting.  Or send one of your seasoned senior associates that

8    day to cover your client's interest here that day.

9            MR. KRAKOFF:  Or would the Court consider the following

10   Friday?

11           THE COURT:  Well, that gets to the issue of, if the

12   answer to the Complaint is due the 1st and -- which is the

13   following Monday -- it may be -- I don't know, but it may be

14   that this discussion would in some way benefit -- the status

15   hearing might in some way benefit the decision that, you know,

16   is in place -- or in play, I should say, with regard to the

17   response.  I don't know.  So I was thinking of doing it before

18   the answers were due.  Does it matter to you, Mr. Chesley?

19           MR. CHESLEY:  You are always to find a day -- with all

20   of these lawyers, I think the Court has set a date that's a fair

21   date, and I feel bad about his partnership meeting, but I think

22   it's a good idea to have it on the 28th so that we can find out

23   where we are going, give you a report as to what's happening and

24   so forth.

25           THE COURT:  Yes.  I would be inclined to get it done

Page 48

1  sooner rather than later.  So maybe we could do it -- get you on

2  one of those planes out to Chicago around noon.  So do it in the

3  morning, and be there for the luncheon recess and take place in

4  the afternoon -- take part in afternoon events, Mr. Krakoff.

5           MR. KRAKOFF:  That's when all the important things

6  happen.

7           THE COURT:  Exactly.  All right.  Well, why don't we

8  set it for 11:00 that morning.

9           MR. CHESLEY:  That's fine.

10           THE COURT:  That's the 28th, Counsel.

11           MR. CHESLEY:  Yes.

12           THE COURT:  And we will have an update, a Status

13  Hearing at that time.  Okay.  Anything else we need to deal

14  with?

15           We will stand in recess.

16           (Whereupon, at 12:50 p.m., the proceedings were

17  concluded.)

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF REPORTER

2

3

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7

8                              _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25