

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**

WASHINGTON • NEW YORK • PHILADELPHIA • CHICAGO

Daniel S. Sommers
dsommers@cmht.com

April 5, 2006

**BY HAND DELIVERY**

Paul, Weiss, Rifkind,
 Wharton & Garrison, LLP
1615 L Street, NW, Suite 1300
Washington, D.C. 20036

    Re:   **In re Fannie Mae Securities Litigation**
           **Consolidated Civil Action No. 1:04-CV-01639**

To Whom It May Concern:

    Enclosed is a subpoena *duces tecum* compelling the production of documents in accordance with the Schedule A attached to the subpoena. Please note that while the subpoena directs production to be made at the offices of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. in Washington, D.C., please send documents responsive to the subpoena directly to:

    Melanie S. Corwin, Esq.
    Waite, Schneider, Bayless
      & Chesley Co., L.P.A.
    1513 Fourth & Vine Tower
    One West Fourth Street
    Cincinnati, OH 45202

    Please feel free to contact the undersigned should you have any questions concerning this matter.

                        Very truly yours,

                        Daniel S. Sommers

DSS/smn
Enclosure
cc:   Melanie S. Corwin, Esq. (w/enclosures)
       Jeffrey C. Block, Esq. (w/enclosures)

---

1100 New York Avenue, N.W. • Suite 500, West Tower • Washington, D.C. 20005
Phone (202) 408-4600 • Fax (202) 408-4699 • www.cmht.com

AFFILIATED OFFICES: UNITED KINGDOM • ITALY • SOUTH AFRICA • PANAMA • AUSTRALIA

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court
### DISTRICT OF COLUMBIA

| IN RE FANNIE MAE<br>SECURITIES LITIGATION | SUBPOENA IN A CIVIL CASE<br><br>CASE NUMBER:[1]<br>CONSOLIDATED CIVIL ACTION<br>NO.: 1:04-CV-01639 (RJL) |
|---|---|

To:   Paul, Weiss, Rifkind, Wharton & Garrison LLP
      1615 L Street, N.W., Suite 1300
      Washington, D.C. 20036-5694

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See attached Schedule A

| PLACE  Cohen, Milstein, Hausfeld & Toll, P.L.L.C.<br>1100 New York Ave., N.W., West Tower, Suite 500, Washington D.C. 20005 | DATE AND TIME<br>April 24, 2006 |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   /s/ _____ Attorney for Plaintiffs | DATE<br>APRIL 5, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
DANIEL S. SOMMERS, COHEN, MILSTEIN, HAUSFELD & TOLL,, P.L.L.C., 1100 NEW YORK AVENUE, N.W., WEST TOWER, SUITE 500, WASHINGTON, D.C. 20005, TEL. (202) 408-4600

(See Rule 45, Federal Rules of Civil Procedure, Parts C& D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____     _____
                  Date                              Signature of Server

                                        _____
                                          Address of Server

                                        _____

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:
(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specified events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A OF SUBPOENA *DUCES TECUM* TO
## PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

All instructions, rules of construction and definitions set forth in Federal Rules of Civil Procedure 26, 34 and 45 shall apply to all requests herein, as well as the following:

### DEFINITIONS

1. "Communications" is used in the comprehensive sense and means every conceivable manner or means of disclosure, transfer, or exchange of oral, electronic, digital or written information between or among one or more persons or entities, including, but not limited to, writings, hand-written notes, correspondence, meetings, conferences, conversations, dialogues, discussions, interviews, consultations, agreements, inquiries and any other expressions or understandings, whether made face-to-face, by telephone, mail, facsimile, computer or otherwise.

2. "Concerning" means, in whole or in part: with respect to, in connection with, referring to, relating to, describing, evidencing, constituting, substantiating, purporting, embodying, establishing, identifying, listing, stating, comprising, connected with, memorializing, recording, commenting on or upon, responding to, showing, demonstrating, analyzing, reflecting, representing, supporting, explaining, consisting of, regarding, discussing, containing, setting forth, disclosing, explaining, summarizing, pertaining to, or otherwise having any logical or factual connection to the subject matter of the document request.

3. "Deloitte & Touche" means Deloitte & Touche LLP and its agents, employees, directors, officers, shareholders, managers, members, partners, representatives, consultants, independent contractors, attorneys, accountants, divisions, departments, subsidiaries, affiliates, and other persons or entities acting for, at the direction of, or in concert with any of the foregoing persons or entities.

4. "Department of Justice" means the United States Department of Justice and any of its divisions and departments, including the Office of the United States Attorney for the District of Columbia, and any of its former or present officers, directors, employees, contract employees, accountants, servants, agents, attorneys, and any other person or entity acting for, at the direction of, or in concert with any such persons or entities, during the Relevant Period.

5. "Document" is synonymous with the usage of that term in Rule 34 of the Federal Rules of Civil Procedure, and includes every conceivable form of communication, whether comprised of letters, words, numbers, pictures, sounds, or symbols, or any combination thereof, that is recorded in tangible form or is capable of being produced in tangible form, including, but not limited to, all writings and recordings, all visual or aural representations of any kind (including photographs, films, slides, microfiche, microfilm, videotape, audiotape, motion pictures, charts, drawings and surveys), all electronic, mechanical, magnetic, optical or electric data, records or representations of any kind (including computer data, computer files, computer programs, hard drives, floppy disks, compact disks, and magnetic tapes and cards, regardless of whether the data, files, programs, drives, disks, tapes and cards exist on desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, backup tapes or any other medium), and any other form of physical media.

6. "Fannie Mae" or the "Company" means Defendant Federal National Mortgage Association a/k/a Fannie Mae and its agents, employees, directors, officers, representatives, consultants, independent contractors, attorneys, accountants, divisions, departments, subsidiaries, affiliates, and other persons or entities acting for, at the direction of, or in concert with any of the foregoing persons or entities.

7. "Fannie Mae Board" means the Board of Directors of Fannie Mae during the Relevant Period.

8. "Huron Consulting" means Huron Consulting Group Inc. and its agents, employees, directors, officers, representatives, consultants, independent contractors, attorneys, accountants, divisions, departments, subsidiaries, affiliates, and other persons or entities acting for, at the direction of, or in concert with any of the foregoing persons or entities.

9. "Individual Defendants" means Defendants Franklin D. Raines, J. Timothy Howard and Leanne G. Spencer.

10. "KPMG" means KPMG LLP (United States), all member firms and any of their predecessors, successors, parents, subsidiaries, segments, divisions, departments, affiliates, local, regional, national, international and executive offices, and any present or former shareholders, members, officers, directors, partners, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities during the Relevant Period.

11. "OFHEO" means the Office of Federal Housing Enterprise Oversight and its officers, employees and agents during the Relevant Period.

12. "OFHEO Report" means the Report of the Findings to Date, Special Investigation of Fannie Mae dated September 17, 2004, by OFHEO and any amendments or supplements thereto.

13. "Paul Weiss" means collectively Senator Warren B. Rudman and the law firm of Paul, Weiss, Rifkind, Wharton & Garrison, LLP and its agents, employees, directors, officers, members, managers, partners, representatives, consultants, independent contractors, accountants, affiliates, and other persons or entities acting for, at the direction of, or in concert with any of the foregoing persons or entities, during the Relevant Period.

14. "Rudman Investigation" means the independent investigation concerning Fannie Mae conducted by Paul Weiss at the request of the Special Review Committee of the Board of Directors of Fannie Mae, as described in the Rudman Report.

15. "Rudman Report" means the Report to the Special Review Committee of the Board of Directors of Fannie Mae dated February 23, 2006, by Paul Weiss, the Executive Summary of the Report, all Appendixes to the Report, and all amendments and supplements to any of the foregoing.

16. "SEC" means the United States Securities and Exchange Commission and its employees, officers, directors, attorneys, accountants and agents during the Relevant Period.

17. "You" and "your" mean Paul Weiss, as defined above.

## INSTRUCTIONS

1. These Requests are intended to cover all documents in your possession, or in or subject to your custody or control, regardless of the location of such documents. A document shall be deemed to be within your control to the extent you have access to the document or the authority, right or ability to obtain the document from the person or entity having possession or custody of the document. You must produce documents irrespective of whether they are retained in a central filing system or in individual offices or residences of current or former officers, director, employees and agents.

2. Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, all documents shall be produced "as they are kept in the usual course of business," or organized and labeled to correspond with the individual requests stated herein. Documents found associated with, attached to, or joined together by staple, clip, binder, binding, file folder, computer file or directory, or otherwise should be produced in the manner in which they were associated, attached, or joined. The entire document should be produced if any part of the document is

4

responsive. You are also required to produce the original of each document requested together with all non-identical copies and drafts.

3. Documents should be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the person in whose possession it was found and the business address of each document's custodian. The author(s) of all hand-written notes should be identified.

4. Documents that are maintained in the normal course of business in electronic format shall be produced in their native format, including all metadata in standard delimited ASCII format, along with the software necessary to interpret such files if such software is not readily available, and are not to be converted to any other format, such as paper, tiff image or PDF file.

5. If you produce scanned documents on compact disks, then documents should be produced in single page tiff format and you should also produce (i) the load file with each set of documents (this file provides the begbates, endbates, directory, filename and pagecount, to allow a match between the data and the files themselves), (ii) attachment information, usually begattach and endattach, so it can be determined which attachments go with which documents produced, and (iii) any other objective coding for each document produced, including any fields for source, date, author, recipients and custodian of the document.

6. When an objection is made to any document request, the objection must state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed to have been waived.

7. If any document (electronic or non-electronic) is withheld from production, in whole or in part, for any reason, including, but not limited to, attorney-client privilege, work

product protection, or confidential trade secret, set forth separately the following information with respect to each such document:

 (a) the type of document (e.g., letter, memorandum, etc.);

 (b) the date of the document;

 (c) the identity of the person who prepared the document;

 (d) the identity of the person who sent the document;

 (e) the identities of all persons who received or otherwise saw the document or a copy thereof, or to whom the content of the document was disclosed, noting, where applicable, whom each identified person represented or purported to represent at all relevant times;

 (f) the general subject matter of the document;

 (g) a brief statement or synopsis of the matters dealt with in the document and the circumstances surrounding the creation of the document; and

 (h) the nature of the privilege or other basis relied upon in withholding the document from production.

8. If you claim that a portion of a document (electronic or non-electronic) is protected from disclosure for any reason, including, but not limited to, attorney-client privilege, work product protection, or confidential trade secret, such document must be produced with redaction of only the portion claimed to be protected. All documents that are produced in redacted form shall indicate such on the document.

9. To the extent you deem a request to be vague or ambiguous, you shall identify the objectionable aspect of the request, state your interpretation of the request and respond to that interpretation. In no event shall an objection to a request based on vagueness or ambiguity be used to justify withholding production of documents responsive to that or any other request.

10. If any responsive document (electronic or non-electronic) has been lost, discarded, destroyed, or is otherwise no longer in your possession, custody or control, identify:

    (a) the type of document (e.g., letter, memorandum, etc.);

    (b) the general subject matter of the document;

    (c) the identity of the person who created the document;

    (d) the date or approximate date the document was created;

    (e) the date or approximate date of disposal of the document;

    (f) the manner of disposal of the document;

    (g) the reason for disposal of the document;

    (h) the person authorizing disposal of the document; and

    (i) the person disposing of the document.

## RELEVANT TIME PERIOD

Unless otherwise indicated in a specific request, these requests seek documents that were created, dated, prepared, generated, sent, received, or otherwise used during the time period January 1, 2000 to the present (the "Relevant Period") or that refer or relate to all or any portion of the Relevant Period, or to events or circumstances during the Relevant Period, even though created, dated, prepared, generated, sent, received, or otherwise used prior to or after the Relevant Period.

## DOCUMENTS REQUESTED

1. All documents, regardless of date, referenced in the Rudman Report.

2. All documents, regardless of date, not referenced in the Rudman Report that support the findings and/or conclusions set forth in the Rudman Report.

3. Documents sufficient to identify all persons interviewed by Paul Weiss in connection with the Rudman Investigation.

4. All transcripts, memoranda, notes or other recordation of interviews or other testimony taken by Paul Weiss in connection with the Rudman Investigation, including any exhibits or attachments thereto, including any transcripts, memoranda and notes of the 241 interviews referenced on page 14 of the Rudman Report.

5. All documents concerning any requests for production of documents made by Paul Weiss to Fannie Mae, any Individual Defendant, KPMG, Deloitte & Touche, Ernst & Young, Wilmer Cutler Pickering Hale and Dorr LLP, Semler Brossy Consulting Group LLC, or any other person or entity in connection with the Rudman Investigation, including the 400 document requests to Fannie Mae and its agents referenced on page 13 of the Rudman Report.

6. All documents concerning or reflecting Paul Weiss' communications and meetings with the Fannie Mae Special Review Committee, the Fannie Mae Board, or any member of the foregoing, in connection with the Rudman Investigation.

7. All documents concerning or reflecting Paul Weiss' communications and meetings with any of the Individual Defendants in connection with the Rudman Investigation.

8. All documents concerning or reflecting Paul Weiss' communications and meetings with KPMG in connection with the Rudman Investigation.

9. All documents produced by KPMG to Paul Weiss in connection with the Rudman Investigation.

10. All documents concerning or reflecting Paul Weiss' communications and meetings with Deloitte & Touche in connection with the Rudman Investigation.

11. All documents produced by Deloitte & Touche to Paul Weiss in connection with the Rudman Investigation.

12. All documents concerning or reflecting Paul Weiss' communications and meetings with OFHEO in connection with the Rudman Investigation, and all directives or orders received by Paul Weiss from OFHEO in connection with the Rudman Investigation.

13. All documents concerning or reflecting Paul Weiss' communications and meetings with the SEC in connection with or concerning the Rudman Investigation.

14. All documents concerning or reflecting Paul Weiss' communications and meetings with the Department of Justice in connection with or concerning the Rudman Investigation.

15. All documents concerning or reflecting Paul Weiss' communications and meetings with and reports from Huron Consulting in connection with the Rudman Investigation.

16. All documents reviewed, prepared or analyzed by Huron Consulting in connection with the Investigation, including any documents obtained by Huron Consulting directly from Fannie Mae or any Individual Defendant, the "independent and forensic collection and analysis of electronic data directly from Fannie Mae" referenced on page 2 of the Rudman Report, and the images of hard drives and restored back up tapes referenced on page 13 of the Rudman Report.

17. All documents concerning or reflecting Paul Weiss' communications and meetings with and reports from Semler Brossy Consulting Group LLC during the course of the Rudman Investigation, including the work plan and final report referenced on page 10 of the Rudman Report.

18. All memoranda, notes, transcripts and other documents concerning Paul Weiss' interview of Roger Brossy about past executive compensation practices at Fannie Mae, as referenced on page 10 of the Rudman Report.

19. All documents concerning or reflecting Paul Weiss' communications and meetings with and reports from Mercer Oliver Wyman during the course of the Rudman Investigation, including documents concerning the informal status updates given to Paul Weiss and the work plans, findings and recommendations of Mercer Oliver Wyman, as referenced on page 11 of the Rudman Report.

20. All documents concerning or reflecting Paul Weiss' communications and meetings with and reports from Hildebrandt International, Inc. during the course of the Rudman Investigation, including the work plans and tentative findings referenced on page 11 of the Rudman Report.

21. All documents concerning or reflecting Paul Weiss' communications and meetings with Ernst & Young in connection with the Rudman Investigation.

22. All documents produced by Ernst & Young to Paul Weiss.

23. All documents concerning or reflecting Paul Weiss' communications and meetings with representatives of Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer") in connection with the Rudman Investigation.

24. All documents produced by Wilmer to Paul Weiss.

25. All indexes and summaries of documents received and/or reviewed by Paul Weiss and/or Huron Consulting in connection with the Rudman Investigation.

26. All tapes of telephone conversations reviewed by Paul Weiss in connection with the Rudman Investigation.

27. All notes made by Paul Weiss and Huron Consulting concerning the findings set forth in the Rudman Report.

28. All documents concerning the Individual Defendants, including any communications concerning the severance, compensation or bonuses paid or to be paid in the

future to any of the Individual Defendants and any communications about the possibility of seeking the return of any compensation paid to any of the Individual Defendants.

29. All reviews, analyses, and reports provided by Paul Weiss to OFHEO pursuant to the Agreement between OFHEO and Fannie Mae dated September 27, 2004 (the "Agreement").

30. All reviews, analyses, and reports provided by Paul Weiss to OFHEO pursuant to the March 5, 2005 Supplement (the "Supplement") to the Agreement between Fannie Mae and OFHEO.

31. The October 2004 work plan for the Rudman Investigation developed by Paul Weiss and Huron Consulting that was submitted to and approved by the Special Review Committee of Fannie Mae and OFHEO, as referenced on page 8 of the Rudman Report.

32. The supplemental work plan for the Rudman Investigation developed by Paul Weiss and Huron Consulting submitted to and approved by the Special Review Committee of Fannie Mae and OFHEO, as referenced on page 9 of the Rudman Report.

33. All documents concerning the additional information brought to Paul Weiss' attention during the Rudman Investigation from anonymous sources and former employees, as referenced on page 9 of the Rudman Report.

34. All summaries or analyses of what is contained on the twenty-two computers discovered in a warehouse, referenced in footnote 57 on page 14 of the Rudman Report.

35. Documents sufficient to identify any persons, other than those identified on pages 14-15 of the Rudman Report, who declined to be interviewed by Paul Weiss.

36. All documents concerning the interviews by Paul Weiss of Fannie Mae information technology staff responsible for maintaining and backing up Fannie Mae's information systems, referenced on page 15 of the Rudman Report.

37.   All documents concerning the two systems that were previously issued to Fannie Mae employees that Paul Weiss was unable to locate, referenced on page 16 of the Rudman Report.

29323

12