UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | MDL No. 1668 |

| | |
|---|---|
| In re Fannie Mae Securities Litigation; | Consolidated Civil Action No. 1:04-cv-01639 |
| | Judge Richard J. Leon |
| Evergreen Equity Trust, *et al.* v. Federal National Mortgage Association, *et al.*; and | Case No. 1:06CV00082 (RJL) |
| Franklin Managed Trust, *et al.* v. Federal National Mortgage Association, *et al.* | Case No. 1:06CV00139 (RJL) |

**FANNIE MAE'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS EVERGREEN AND FRANKLIN COMPLAINTS**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT..........................................................1

STATEMENT OF FACTS AND PROCEDURAL POSTURE.......................................5

I.  Fannie Mae's Accounting For Its Derivative And Hedging Activity Under FAS 133 And For Deferred Price Adjustments Under FAS 91.............................7

II.  The E&F Plaintiffs' Additional Accounting Allegations. .....................................7

ARGUMENT..........................................................................................................8

I.  The E&F Plaintiffs Cannot State A Section 11 Claim Against Any Defendant As A Matter Of Law. ...........................................................................8

A.  Fannie Mae's Securities Are Exempt From The Registration Requirements Of The Securities Act As A Matter Of Federal Law. .........9

B.  The E&F Plaintiffs Cannot Trace Their Fannie Mae Stock To The Registration Statement Because No Stock Was Issued Pursuant To The Registration....................................................................................11

C.  The E&F Plaintiffs' Sections 11 and 15 Claims Are Time-Barred. .........12

II.  The E&F Plaintiffs' Section 18 Claims Are Time-Barred. ..................................14

III.  The E&F Plaintiffs' Claims Based On Purchases After September 21, 2004 Should Be Dismissed For Lack Of Reasonable Reliance As A Matter Of Law. ..............................................................................................................16

IV.  The E&F Plaintiffs' New Section 10(b) Allegations Fail To Raise The Requisite Strong Inference Of Scienter. .............................................................19

A.  Classification Of Securities Held In Portfolio .........................................21

B.  Accounting For Asset Impairments on Guaranty Fees. ...........................21

C.  Accounting For Dollar-Rolls ..................................................................22

D.  Accounting For Insurance Products.........................................................22

E.  Accounting For Qualified Special Purpose Entities ................................23

F.  Recognition Of Interest Expense and Income .........................................24

G.  Accounting For Investments In Affordable Housing Partnerships...........24

V.  The E&F Plaintiffs' State Law Claims Are Preempted By SLUSA. ...................25

A.  The E&F Complaints Are Part Of A "Covered Class Action.".................26

B.  The E&F Plaintiffs' State Law Claims Meet All Of The Other Requirements For SLUSA Preemption. ...................................................27

1.  The Common Law Fraud Claims Are Preempted By SLUSA. .........................................................................................28

2.      The Negligent Misrepresentation Claims Are Preempted By SLUSA. ...................................................................................28

3.      The Evergreen Plaintiffs' Massachusetts Unfair Trade Practices Claim Is Preempted By SLUSA. ...................................29

4.      The Franklin Plaintiffs' California Securities Law Claim Is Preempted By SLUSA. ........................................................30

VI.    The Evergreen Complaint Fails To State A Claim Under Massachusetts General Law Chapter 93A. ....................................................................30

A.    Defendants Cannot Be Liable Because They Were Not Engaged In The Sale Of Fannie Mae Common Stock. ..................................31

B.    The Alleged Deceptive Acts Occurred Primarily And Substantially In The District Of Columbia, Not Massachusetts....................................32

VII.   The Franklin Complaint Fails To State A Claim For Violation Of The California Securities Laws. ..............................................................33

CONCLUSION.........................................................................................................35

# TABLE OF AUTHORITIES

## CASES

*Alicke v. MCI Commc'ns Corp.*,
  111 F.3d 909 (D.C. Cir. 1997) ........................................................................18

*Am. High-Income Trust v. Alliedsignal*,
  329 F. Supp. 2d 534 (S.D.N.Y. 2004) ............................................................33

*Am. Mgmt Servs., Inc. v. George S. May Int'l Co.*,
  933 F. Supp. 64, 68 (D. Mass. 1996) ..............................................................32

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538, 554 (1974) .................................................................................13

*Bennett v. Kiggins*,
  377 A.2d 57 (D.C. 1977) ..................................................................................28

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) .......................................................................20

*Cal. Amplifier, Inc. v. RLI Ins. Co.*,
  113 Cal. Rptr. 2d 915 (Cal. Ct. App. 2001) ....................................................33

*City of Philadelphia v. Fleming Cos.*,
  264 F.3d 1245 (10th Cir. 2001) ..................................................................20, 21

*DeMaria v. Andersen*,
  318 F.3d 170 (2d Cir. 2003) .............................................................................11

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
  968 P.2d 539 (Cal. 1999) .................................................................................33

*Dodds v. Cigna Sec., Inc.*,
  12 F.3d 346 (2d Cir. 1993) ...............................................................................13

*Feitelberg v. Merrill Lynch & Co., Inc.*,
  234 F. Supp. 2d 1043 (N.D. Cal. 2002) ...........................................................29

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
  270 F.3d 645 (8th Cir. 2001) ...........................................................................20

*Fox v. Pollack*,
  226 Cal. Rptr. 532 (Cal. Ct. App. 1986) .........................................................28

*Frullo v. Landenberger*,
  814 N.E.2d 1105 (Mass. App. Ct. 2004) .........................................................31

*Goodworth Holdings Inc. v. Suh*,
  239 F. Supp. 2d 947 (N.D. Cal. 2002) .............................................................33

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ............................................................................20

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ..........................................................................................10

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) ...........................................................................20

*Henry v. Nat'l Geographic Soc'y*,
  147 F. Supp. 2d 16 (D. Mass. 2001) ...............................................................32

*Hertzberg v. Dignity Partners, Inc.*,
  191 F.3d 1076 (9th Cir. 1999) ...................................................................................11

*Howard v. SEC*,
  376 F.3d 1136 (D.C. Cir. 2004) ................................................................................20

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......................................................................18

*In re BellSouth Corp. Sec. Litig.*,
  355 F. Supp. 2d 1350 (N.D. Ga. 2005) ......................................................................19

*In re Champion Enters. Sec. Litig.*,
  144 F. Supp. 2d 848 (E.D. Mich. 2001) .....................................................................20

*In re CIGNA Corp. Sec. Litig.*,
  Civil Action No. 02-8088, 2005 U.S. Dist. LEXIS 35524 (E.D. Pa. Dec. 23, 2005)............19

*In re Commw. Oil/Tesoro Petroleum Corp. Sec. Litig.*,
  467 F. Supp. 227 (W.D. Tex. 1979) ...........................................................................13

*In re Comshare, Inc. Sec. Litig.*,
  183 F.3d 542 (6th Cir. 1999) ....................................................................................20

*In re Data Access Sys. Sec. Litig.*,
  103 F.R.D. 130 (D.N.J. 1984) ...................................................................................18

*In re Empyrean Bioscience, Inc. Sec. Litig.*,
  255 F. Supp. 2d 751 (N.D. Ohio 2003) ......................................................................12

*In re LTV Sec. Litig.*,
  88 F.R.D. 134 (N.D. Tex. 1980) ................................................................................18

*In re Parmalat Sec. Litig.*,
  414 F. Supp. 2d 428 (S.D.N.Y. 2006) .......................................................................20

*In re U.S. Office Prods. Co. Sec. Litig.*,
  251 F. Supp. 2d 58 (D.D.C. 2003) ............................................................................18

*In re WorldCom, Inc. Sec. Litig.*,
  294 F. Supp. 2d 431 (S.D.N.Y. 2003) .......................................................................14

*In re WorldCom, Inc. Sec. Litig.*,
  308 F. Supp. 2d 236 (S.D.N.Y. 2004) .......................................................................26

*Johnson v. Ry. Express Agency, Inc.*,
  421 U.S. 454 (1975).................................................................................................13

*Joseph v. Wiles*,
  223 F.3d 1155 (10th Cir. 2000) ................................................................................11

*Kennilworth Partners L.P. v. Cendant Corp.*,
  59 F. Supp. 2d 417 (D.N.J. 1999) .............................................................................20

*Kidder Peabody & Co., Inc. v. Unigestion Int'l, Ltd.*,
  903 F. Supp. 479 (S.D.N.Y. 1995) ..............................................................................9

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ..................................................................................18

*Kriendler v. Chem. Waste Mgmt., Inc.*,
  877 F. Supp. 1140 (N.D. Ill. 1995) ............................................................................17

*Lee v. Ernst & Young, LLP*,
    294 F.3d 969 (8th Cir. 2002) .................................................................................11

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995) .........................................................................14

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    437 F.3d 588 (7th Cir. 2006) ...........................................................................20, 35

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    126 S. Ct. 1503 (2006) ....................................................................................25, 27

*Nathenson v. Zonagen, Inc.*,
    267 F.3d 400 (5th Cir. 2001) ................................................................................20

*Nota Constr. Corp. v. Keyes Assocs., Inc.*,
    694 N.E.2d 401 (Mass. App. Ct. 1998) ................................................................28

*Ottmann v. Hanger Orthopedic Group, Inc.*,
    353 F.3d 338 (4th Cir. 2003) ................................................................................20

*Prager v. Knight/Trimark Group, Inc.*,
    124 F. Supp. 2d 229 (D.N.J. 2000) .......................................................................30

*Rahr v. Grant Thornton LLP*,
    142 F. Supp. 2d 793 (N.D. Tex. 2000) .................................................................14

*Redmond v. State Farm Ins. Co.*,
    728 A.2d 1202 (D.C. 1999) ..................................................................................28

*Reisman v. KPMG Peat Marwick LLP*,
    965 F. Supp. 165 (D. Mass. 1997) ........................................................................31

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    292 F.3d 1334 (11th Cir. 2002) ......................................................................28, 30

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) ................................................................................11

*Sakind v. Wang*,
    Civ. A. No. 93-10192-WGV, 1995 WL 170122 (D. Mass. Mar. 30, 1995) ..........32

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000) .................................................................................18

*Stansfield v. Starkey*,
    269 Cal. Rptr. 337 (Cal. Ct. App. 1990) ..............................................................28

*Stevelman v. Alias Research Inc.*,
    174 F.3d 79 (2d Cir. 1999) .............................................................................20, 24

*Stolzoff v. Waste Sys. Int'l, Inc.*,
    792 N.E.2d 1031 (Mass. App. Ct. 2003) ..............................................................28

*Thor Power Tool Co. v. Comm'r of Internal Revenue*,
    439 U.S. 522 (1979) ..............................................................................................34

*United States v. O'Hagan*,
    521 U.S. 642 (1997) ..............................................................................................27

*Wachovia Bank & Trust Co., N.A. v. Nat'l Student Mktg. Corp.*,
    461 F. Supp. 999 (D.D.C. 1978) ...........................................................................14

*Wells v. Monarch Capital Group*,
  No. 91-10575-MA, 1991 WL 354938 (D. Mass. Aug. 23, 1991) .......................................31

*Winne v. Equitable Life Assurance Soc'y of the United States*,
  315 F. Supp. 2d 404 (S.D.N.Y. 2003) .................................................................................29

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
  413 F.3d 553 (6th Cir. 2005) ...............................................................................................14

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
  341 F. Supp. 2d 258 (S.D.N.Y. 2004) .................................................................................28

## CODES

12 U.S.C. § 1719(d) ..............................................................................................................8, 9

15 U.S.C. § 77c(a)(2) .................................................................................................................9

15 U.S.C. § 77k .........................................................................................................................11

15 U.S.C. § 77m ..................................................................................................................13, 15

15 U.S.C. § 77p ...................................................................................................................26, 27

15 U.S.C. § 77r ..........................................................................................................................25

15 U.S.C. § 78bb .................................................................................................24, 26, 27, 29

15 U.S.C. § 78bb .......................................................................................................................26

15 U.S.C. § 78j ..........................................................................................................................19

15 U.S.C. § 78r ..........................................................................................................................15

15 U.S.C. § 78u-4 ......................................................................................................................19

Cal. Corp. Code § 25400 ..........................................................................................................33

Cal. Corp. Code § 25500 ..........................................................................................................34

Mass. Gen. Laws ch. 93A § 1 ...................................................................................................31

Mass. Gen. Laws ch. 93A § 11 .................................................................................................31

Mass. Gen. Laws ch. 93A § 2 ...................................................................................................31

Defendant Fannie Mae submits this memorandum in support of its motion to dismiss the Evergreen[1] and Franklin[2] Complaints (collectively the "E&F Complaints"). The E&F Complaints make virtually identical allegations and claims against Fannie Mae. Fannie Mae brings this single motion to dismiss against the E&F Complaints to address the arguments common to Fannie Mae and the individual defendants.[3]

## INTRODUCTION AND SUMMARY OF ARGUMENT

As with the Consolidated Class Action Complaint ("CAC") filed by the Lead Plaintiffs Ohio Public Employees Retirement System ("OPERS") and State Teachers' Retirement Systems ("STRS"), the crux of the E&F Complaints is that Fannie Mae misapplied two accounting principles: FAS 91 (accounting for the amortization of purchase premiums and discounts on securities and loans) and FAS 133 (accounting for derivative instruments and hedging activities). The E&F Complaints are based on the same set of common facts as alleged in the Lead Plaintiffs' CAC. The E&F Plaintiffs, in an effort to proceed independently from the Lead Plaintiffs, make a transparent attempt to distinguish themselves by conjuring new claims that cannot survive as a matter of law. When these new legal claims and parties are stripped away

---

[1]  Plaintiffs Evergreen Equity Trust, Evergreen Select Equity Trust, Evergreen Variable Annuity Trust and Evergreen International Trust are referred to collectively as "Evergreen."

[2]  Plaintiffs Franklin Managed Trust, Institutional Fiduciary Trust, Franklin Investors Securities Trust, Franklin Value Investors Trust, Franklin Strategic Series, Franklin Capital Growth Fund, Franklin Templeton Investment Funds, Franklin Templeton Variable Insurance Products Trust, Franklin Custodian Funds, Inc., Franklin Templeton International Trust, Templeton MPF Investment Funds, Franklin Flex Cap Growth Corporate Class, Franklin Templeton Funds, Franklin Templeton Global Fund, Bissett Canadian Equity Fund, Bissett Institutional Balanced Trust, Franklin Templeton U.S. Rising Dividends Fund, Franklin World Growth Corporate Class, Franklin Global Trust, Franklin MPF U.S. Equity Fund, Lyxor/Templeton Global Long Short Fund Limited, Templeton Global Long-Short Fund PLC, Templeton Global Long-Short Fund Ltd., University of Hong Kong General Endowment Fund, and University of Hong Kong Staff Provident Fund are referred to collectively as "Franklin."

[3]  The individual defendants Franklin D. Raines, Timothy Howard, Leanne G. Spencer, Thomas P. Gerrity, Anne M. Mulcahy, Frederick V. Malek, Taylor C. Segue, III, William R. Harvey, Joe Pickett, Stephen B. Ashley, Kenneth M. Duberstein, Jamie S. Gorelick, Manuel J. Justiz, Ann Korologos, Donald B. Marron, Daniel H. Mudd, H. Patrick Swygert, and Leslie Rahl file their own motions to dismiss and joinders. The E&F Plaintiffs voluntarily dismissed their claims against Victor H. Ashe and Molly H. Bordonaro by Notice dated May 12, 2006.

and dismissed, as they should be, there are no significant differences between the new E&F Complaints and the CAC. Accordingly, the Court and the parties can then properly focus on litigating the remaining common claims and defenses in this consolidated proceeding.

Because this Court has previously denied Defendants' Motion to Dismiss the Consolidated Class Action Complaint by Order dated February 10, 2006, Fannie Mae will not repeat those arguments here, but instead moves to dismiss the newly asserted claims. However, before doing so, it is important to clarify what issues were before the Court on the prior motion and what is newly added here. The CAC asserted claims for violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934[4] against Fannie Mae and former officers Raines, Howard and Spencer, and claims for control person liability under Section 20(a) against Raines, Howard and Spencer. The CAC alleged a class period from April 17, 2001 to September 21, 2004.

Now the E&F Plaintiffs seek to add many new claims and parties to this lawsuit beyond what the Court addressed in ruling on the CAC. These new claims should be dismissed from this consolidated action for the following reasons:

- The E&F Plaintiffs assert new claims pursuant to Section 11 of the Securities Act of 1933[5] against Fannie Mae, and individual defendants Ashley, Duberstein, Gerrity, Gorelick, Harvey, Justiz, Korologos, Malek, Marron, Mudd, Mulcahy, Pickett, Raines, Segue, and Swygert. Section 11(a) creates a private cause of action for false or misleading statements in a registration statement. The E&F

---

[4] Hereinafter, the Memorandum will refer to the Securities Exchange Act of 1934 as the Exchange Act. The E&F Plaintiffs assert violations of Sections 10(b) (securities fraud), 18 (liability for misleading statements) and 20(a) (liability for controlling a primary violation) against various defendants.

[5] Hereinafter, the Memorandum will refer to the Securities Act of 1933 as the Securities Act. The E&F Plaintiffs assert violations of Section 11 (liability for misleading statements) and 15 (liability for controlling a primary violation) against various defendants.

Plaintiffs cannot state a Section 11 claim against any defendant as a matter of law because: (1) Fannie Mae is exempt from the registration requirements of the Securities Act; (2) no Plaintiff can trace its shares to the challenged Registration Statement as no new shares were offered pursuant to that Registration; and (3) the claims are time-barred.

- The E&F Plaintiffs assert new Exchange Act Section 18 claims against Fannie Mae and all of the individual defendants. Section 18(a) provides a private right of action for false or misleading statements in a document filed pursuant to the Exchange Act. These new Section 18 claims are unquestionably time-barred.

- The E&F Plaintiffs assert new claims based on purchases through September 28, 2005, long beyond the end of the class period addressed by the Court in ruling on the motions to dismiss the CAC, claiming that they purchased Fannie Mae stock through that date in reliance on false or misleading financial statements. But the E&F Plaintiffs themselves concede that the OFHEO report issued on September 22, 2004 put them on notice of "the falsity of Fannie Mae's financial statements and Defendants' other public statements regarding the Company's financial condition." (Evergreen Compl. ¶ 439; Franklin Compl. ¶ 516). Thus, the E&F Plaintiffs cannot credibly claim reliance on Fannie Mae's prior financial statements after September 21, 2004. In no event could the E&F Plaintiffs claim reasonable reliance on prior financial statements after December 22, 2004, the date Fannie Mae announced that its prior financial statements did not comply with GAAP and *should no longer be relied upon*. Hence, all of the E&F Plaintiffs' reliance-based claims (Exchange Act Sections 10(b) and 18, common law fraud,

and negligent misrepresentation) based on purchases after September 21, 2004 (or at the very latest December 22, 2004) should be dismissed.

- The E&F Plaintiffs assert Section 10(b) claims against Fannie Mae based on additional accounting issues that Fannie Mae discovered and disclosed as part of its restatement process.  These additional accounting allegations go beyond the FAS 91 and 133 issues addressed in the Court's ruling on the CAC.  The E&F Plaintiffs offer no facts to show that these alleged GAAP violations resulted from anything other than mistake.  Because the E&F Complaints fail to allege facts sufficient to create a strong inference that Fannie Mae acted with scienter as to these additional accounting issues, these allegations should be dismissed.

- The E&F Plaintiffs plead state law causes of action for common law fraud, negligent misrepresentation, violation of Massachusetts General Law Chapter 93A (Evergreen only), and violation of California Corporations Code Section 25400 (Franklin only).  All of these state law claims are preempted by the Securities Litigation Reform Act of 1998 ("SLUSA").  By virtue of this Court's consolidation orders, the E&F Complaints are now part of a covered class action that collectively seeks damages on behalf of more than fifty persons.  All of the state law claims are preempted under SLUSA because they all allege false or misleading statements of material fact in connection with the purchase or sale of a covered security.

- In addition to SLUSA preemption, the Evergreen Plaintiffs' Massachusetts unfair trade practice law claim fails because no defendant was engaged in the sale of

securities within the meaning of the statute and the statute does not apply to acts that admittedly occurred primarily outside of Massachusetts.

- Finally, the Franklin Plaintiffs assert claims for violation of California Corporations Code Section 25400 against Fannie Mae, Raines, Howard, and Spencer. The Franklin Complaint's Section 25400 claim should be dismissed for failure to plead that Fannie Mae willfully violated the law, as required by Cal. Corp. Code §§ 25400 and 25500.

## STATEMENT OF FACTS AND PROCEDURAL POSTURE

On September 22, 2004, OFHEO released an interim report of its examination of Fannie Mae's accounting practices, concluding that Fannie Mae had misapplied two GAAP provisions, specifically FAS 91 and FAS 133, and questioning the adequacy of Fannie Mae's internal controls. (Evergreen Compl. ¶ 48; Franklin Compl. ¶ 70.) Following the release of the OFHEO Interim Report, Fannie Mae requested that the Securities and Exchange Commission review Fannie Mae's accounting to determine whether it had complied with GAAP. Fannie Mae also announced an agreement with OFHEO, whereby Fannie Mae's Board agreed to cause to be conducted a review of accounting policies and other corporate policies. (Fannie Mae's Current Report on Form 8-K, dated September 29, 2004, copy attached as Exhibit 1 to the Declaration of Robert M. Stern.) Both the SEC and the United States Attorney's office opened investigations into the subject matters of the OFHEO Interim Report. (Evergreen Compl. ¶¶ 376-78; Franklin Compl. ¶¶ 407-09.)

On December 15, 2004, the Office of the Chief Accountant of the SEC concluded that Fannie Mae had misapplied FAS 133 and FAS 91. (Evergreen Compl. ¶ 49; Franklin Compl. ¶ 71.) Two days later, on December 17, 2004, Fannie Mae's Audit Committee concluded that its prior financial statements were not prepared in accordance with GAAP and *should no longer be*

*relied upon*.  (Evergreen Compl. ¶ 382; Franklin Compl. ¶ 413.)  On December 22, 2004, Fannie

Mae reported that it would restate its prior financial results and again warned investors that its

prior results should not be relied upon:

> Accordingly, on December 17, 2004, the Audit Committee of the
> Board of Directors of Fannie Mae concluded that Fannie Mae's
> previously filed interim and audited financial statements and the
> independent auditors' reports thereon for the periods from January
> 2001 through the second quarter of 2004 *should no longer be
> relied upon* because such financial statements were prepared
> applying accounting practices that did not comply with generally
> accepted accounting principles, or GAAP.  Fannie Mae has not yet
> filed its quarterly report in Form 10-Q for the quarter ended
> September 20, 2004.  The financial information regarding Fannie
> Mae's anticipated financial results of operations for the quarter
> ended September 20, 2004 that was contained in Fannie Mae's
> Form 12b-25 filed on November 15, 2004 and in Fannie Mae's
> Form 8-K filed on November 16, 2004 was prepared applying the
> same policies and practices, and *should also not be relied upon*.

(Fannie Mae's Current Report on Form 8-K, dated December 22, 2004 (emphasis added) (copy

attached as Exhibit 2 to the Declaration of Robert M. Stern).)

On the heels of the release of the OFHEO Interim Report, fourteen different securities

class actions were filed by various plaintiffs and plaintiffs' attorneys.  All of these class actions

were consolidated before this Court by Order dated December 16, 2004.  The Court anticipated

that Fannie Mae shareholders would file additional lawsuits based on the same set of facts

alleged in the Consolidated Action and ordered that such future actions would be consolidated

with the consolidated class action.

More than a full year after entry of the consolidation order, the Evergreen Plaintiffs filed

their complaint in this Court on January 17, 2006, and the Franklin Plaintiffs followed with their

complaint on January 25, 2006.  Pursuant to the December 16, 2004 Order, this Court

consolidated the Evergreen and Franklin actions with the class action on January 30, 2006, and

February 2, 2006, respectively.[6]

The E&F Complaints mirror the CAC's challenge of Fannie Mae's accounting of its mortgage portfolio and for the derivative instruments used by Fannie Mae to manage risk. And like the CAC, the allegations of the E&F Complaints are based on the OFHEO Interim Report, the findings of the SEC's Chief Accountant released on December 15, 2004, and statements made by Fannie Mae as part of its restatement process on or after December 22, 2004.

I.  Fannie Mae's Accounting For Its Derivative And Hedging Activity Under FAS 133 And For Deferred Price Adjustments Under FAS 91

As with the CAC, the centerpieces of the E&F Complaints are Fannie Mae's alleged misapplication of FAS 133 and FAS 91. FAS 133 governs the accounting for derivative instruments and hedging activities. (Evergreen Compl. ¶ 105; Franklin Compl. ¶ 127.) FAS 91 governs the amortization of purchase premiums and discounts on securities and loans. (Evergreen Compl. ¶ 92; Franklin Compl. ¶ 114.) The E&F Plaintiffs' FAS 133 and FAS 91 allegations are virtually identical to Lead Plaintiffs' allegations in the CAC, and Fannie Mae does not move to dismiss these common allegations here.

II.  The E&F Plaintiffs' Additional Accounting Allegations

The E&F Plaintiffs here plead new allegations of accounting irregularities beyond the FAS 91 and 133 issues addressed by the Court in its prior ruling on the motions to dismiss the CAC. The E&F Complaints allege that Fannie Mae: improperly classified loans; failed to record asset impairments on guaranty fees; improperly accounted for dollar-roll repurchase agreements; improperly accounted for insurance; failed to consolidate results of qualified special purpose entities; improperly timed the recognition of income and expense; and improperly accounted for investments in low-income housing tax credit partnerships. (Evergreen Compl. ¶¶ 122-151;

---

[6]  Plaintiffs have objected to these consolidation Orders but unless and until the Court orders otherwise, these actions are consolidated with the class action.

Franklin Compl. ¶¶ 144-173.)  Several of these issues were identified in the OFHEO Interim Report as possible GAAP violations and Lead Plaintiffs mentioned certain of them in a single paragraph of the CAC (¶ 116).  Plaintiffs allege no new specific facts to show that Fannie Mae acted with the required intent to defraud or recklessness in its application of these additional accounting principles.

<u>ARGUMENT</u>

None of the new claims conjured by the E&F Plaintiffs to distinguish their claims from the Lead Plaintiffs' CAC can survive a motion to dismiss as a matter of law.  Each new claim either fails to state a claim upon which relief can be granted, is time-barred, fails to plead fraud with particularity, or is preempted by federal law.  Once these new claims are stripped away from the E&F Complaints, the remaining claims are virtually identical to the Lead Plaintiffs' claims, and all parties to this consolidated proceeding, including the E&F Plaintiffs, can focus on discovery and litigation of those common claims and defenses.  Fannie Mae addresses each new claim separately in turn.

I.     <u>The E&F Plaintiffs Cannot State A Section 11 Claim Against Any Defendant As A Matter Of Law</u>

Counts V of the E&F Complaints allege violations of Section 11 of the Securities Act, 15 U.S.C. § 77k, against Fannie Mae, and individual defendants Ashley, Duberstein, Gerrity, Gorelick, Harvey, Justiz, Korologos, Malek, Marron, Mudd, Mulcahy, Pickett, Raines, Segue, and Swygert.  Section 11(a) creates a private cause of action for false or misleading statements in a registration statement.  Plaintiffs claim that Fannie Mae and certain of its directors violated Section 11 by making false statements in its March 31, 2003 Registration Statement.  Specifically, Plaintiffs claim that the Registration Statement incorporated Fannie Mae's 2002 Form 10-K (Evergreen Compl. ¶ 477; Franklin Compl. ¶ 555), and that Fannie Mae improperly

stated in that 10-K that its 2002 financial results were prepared in accordance with GAAP. (Evergreen Compl. ¶ 246; Franklin Compl. ¶ 274.)  Lead Plaintiffs made the same allegations concerning the 2002 10-K (CAC ¶¶ 200-213), but did not assert a Section 11 claim.

The E&F Plaintiffs' new Section 11 claims must be dismissed for three independent reasons: (1) Fannie Mae securities are exempt securities under the Securities Act and thus no defendant can be liable under Section 11; (2) the E&F Plaintiffs lack standing to assert a Section 11 claim because they cannot trace their shares to the challenged registration statement; and (3) the Section 11 claims would be time-barred even if actionable, which they are not.

A.  <u>Fannie Mae's Securities Are Exempt From The Registration Requirements Of The Securities Act As A Matter Of Federal Law</u>

Congress expressly exempted Fannie Mae from the registration requirements of the Securities Act in Fannie Mae's statutory Charter.  12 U.S.C. § 1719(d) ("Securities issued by [Fannie Mae] . . . shall, to the same extent as securities which are direct obligations of or obligations guaranteed as to principal and interest by the United States, be deemed to be exempt securities within the meaning of laws administered by the Securities and Exchange Commission.").  This statutory exemption is also made clear in Section 3(a)(2) of the Securities Act, which exempts from its registration requirements "[a]ny security issued or guaranteed by the United States or any territory thereof, . . . or by any person controlled or supervised by and acting as an instrumentality of the Government of the United States pursuant to authority granted by the Congress of the United States." 15 U.S.C. § 77c(a)(2).  Fannie Mae is deemed such an instrumentality of the United States and its securities, including its common stock, are exempt from the registration requirements of the Securities Act.  *Kidder Peabody & Co., Inc. v. Unigestion Int'l, Ltd.*, 903 F. Supp. 479, 496 (S.D.N.Y. 1995) (dismissing claims under Section

12 of the Securities Act on grounds that Fannie Mae's mortgage-backed securities were "exempt securities").

Fannie Mae first offered its shares for sale after Congress amended Fannie Mae's Charter to make it a shareholder-owned company in 1968. (Evergreen Compl. ¶ 16; Franklin Compl. ¶ 37.) More than thirty years later, on March 31, 2003, Fannie Mae took the extraordinary step of voluntarily registering its previously issued outstanding common stock pursuant to Exchange Act Section 12(g). (Evergreen Compl. ¶ 477; Franklin Compl. ¶ 555.)[7] By registering its shares under Exchange Act Section 12(g), Fannie Mae subjected itself to the public ***reporting*** requirements of the Exchange Act, including the obligations to file quarterly and annual financial reports with the SEC. Fannie Mae filed this registration to provide greater transparency to the market and its shareholders. Contrary to the E&F Plaintiffs' claims, however, Fannie Mae did not register its shares pursuant to the Securities Act, and the liability provisions of Section 11(a) do not apply to the Registration Statement. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570-71 (1995) ("the liability imposed by § 11 flows from the requirements imposed by §§ 5 and 7 providing for the filing and content of registration statements.")

Fannie Mae's continued exemption from the Securities Act was confirmed by the SEC in advance of its registration. Fannie Mae wrote to the Division of Corporation Finance of the Securities and Exchange Commission on July 12, 2002, and requested the SEC staff's concurrence that voluntary registration would not cause any alteration of the existing treatment of Fannie Mae, including that Fannie Mae's securities are exempt securities under the Securities Act and may be sold without registration under the Securities Act. The Office of the Chief Counsel of the Division of Corporation Finance expressed its concurrence by letter dated July

---

[7]  A copy of the Registration Statement, SEC Form 10-12G, filed Mar. 31, 2003 ("Registration Statement) is attached as Exhibit 3 to the Stern Declaration.

12, 2002.[8]  The Registration Statement itself also put purchasers (including the E&F Plaintiffs) on notice that Fannie Mae was exempt from the Securities Act:

> The securities Fannie Mae issues are 'exempt securities' under the laws administered by the SEC to the same extent as securities that are obligations of, or guaranteed as to principal and interest by, the United States.[9]

Thus, Fannie Mae continued to be exempt from the registration requirements of the Securities Act following its voluntary registration under Section 12(g) of the Exchange Act, and no defendant can be liable on the E&F Plaintiffs' Section 11 claims.

B.     The E&F Plaintiffs Cannot Trace Their Fannie Mae Stock To The Registration Statement Because No Stock Was Issued Pursuant To The Registration

Even if it were not statutorily exempt, the E&F Plaintiffs' Section 11 claims would also fail for lack of standing.  Plaintiff must have "acquired" the security to have standing under Section 11.  15 U.S.C. § 77k(a).[10]  This means that a Section 11 plaintiff must either have purchased the security in the offering based on the challenged registration statement or, if purchased in the aftermarket, the plaintiff must be able to trace the specific shares acquired to the offering.  *Lee v. Ernst & Young, LLP*, 294 F.3d 969, 978 (8th Cir. 2002) (standing to pursue Section 11 claims limited to those who can establish that the shares they purchased "can be traced to the registration statement alleged to be false and misleading").[11]

---

[8]  A copy of the SEC's No-Action, Interpretive and/or Exemptive Letter dated July 12, 2002 ("SEC No-Action Letter") is attached as Exhibit 4 to the Stern Declaration.

[9]  Registration Statement, Item 10 at 17; Stern Decl. ¶ 3.

[10]  *See* 15 U.S.C. § 77k(a) ("In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, *any person acquiring such security* (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue . . ." (emphasis added)).

[11]  *See also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 872-73 (5th Cir. 2003); *DeMaria v. Andersen*, 318 F.3d 170, 175-78 (2d Cir. 2003); *Joseph v. Wiles*, 223 F.3d 1155, 1158-61 (10th Cir. 2000); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1079-82 (9th Cir. 1999).

As discussed above, Section 11 applies to registration statements filed for public offerings of securities. While the E&F Plaintiffs allege that they "purchased or otherwise acquired Fannie Mae stock traceable to the Company's Registration Statement" (Evergreen Compl. ¶ 476; Franklin Compl. ¶ 554), they cannot possibly trace their shares to the Registration Statement because Fannie Mae did not offer any new shares for sale in the Registration Statement. Instead, when Fannie Mae voluntarily filed the Registration Statement, it merely registered common stock that had already been issued and was trading in the markets long before that registration.[12]  *See In re Empyrean Bioscience, Inc. Sec. Litig.*, 255 F. Supp. 2d 751, 765-67 (N.D. Ohio 2003) (dismissing Section 11 claim based on registration that simply effected a change in corporate domicile through a merger). The *Empyrean* court concluded that since the registration statement was filed solely to change Empyrean's corporate domicile, no "sale" occurred. *Id.* at 766.  Thus, the court ruled that plaintiffs did not "acquire" stock by means of the challenged registration statement and had no standing to assert a Section 11 claim. *Id.* at 766-67. The same reasoning applies here. The E&F Plaintiffs did not "acquire" Fannie Mae stock after March 31, 2003, pursuant to the Registration Statement, and thus lack standing to assert a Section 11 claim.

C.     The E&F Plaintiffs' Sections 11 And 15 Claims Are Time-Barred

The E&F Plaintiffs allege that they first discovered the facts supporting their claims on September 22, 2004, when Fannie Mae's regulator, OFHEO, released its Interim Report of findings based on its examination to date of Fannie Mae's accounting policies and practices. (Evergreen Compl. ¶ 439; Franklin Compl. ¶ 516.)  The statute of limitations for claims under Section 11 of the Securities Act is the earlier of one year from the date of discovery of the facts

---

[12]  *See* Registration Statement; Stern Decl. ¶ 3; SEC No-Action Letter; Stern Decl. ¶ 4.

constituting the cause of action or three years after the cause of action accrued.  15 U.S.C.

§ 77m.[13]  The Evergreen Plaintiffs filed suit on January 17, 2006, and the Franklin Plaintiffs

followed on January 25, 2006 – both more than one year after September 22, 2004.

Consequently, the E&F Plaintiffs' Sections 11 and 15 claims are time-barred.[14]

      Acknowledging that they have a fatal statute of limitations problem, the E&F Plaintiffs

assert that the running of the limitations period was tolled by the filing of the class action,

presumably relying on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974),

where the Court held that "the commencement of a class action suspends the applicable statute of

limitations as to all asserted members of the class who would have been parties had the suit been

permitted to continue as a class action." *Id.* at 554.  But the E&F Plaintiffs' tolling argument

here fails because tolling does not apply to claims that were not alleged in the class complaint,

and the E&F Plaintiffs forfeited any right to equitable tolling by filing suit before any ruling on

class certification in the lead case.

      First, the *American Pipe* tolling principle applies only to claims that were actually

asserted in the class action.  *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 468 n.14 (1975)

("Only where there is complete identity of the causes of action will the protections [against the

running of the limitations period] . . . necessarily exist."  Here, although the CAC asserted the

same underlying facts, Lead Plaintiffs properly chose not to assert Section 11 claims, and thus

the pendency of the class action does not toll the limitations period as to the newly asserted

Section 11 claims.  *In re Commw. Oil/Tesoro Petroleum Corp. Sec. Litig.*, 467 F. Supp. 227,

---

[13]  "No action shall be maintained to enforce any liability created under . . . [section 11] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . .  In no event shall any such action be brought to enforce a liability created under . . . [section 11] more than three years after the security was bona fide offered to the public . . . ."

[14]  The same statute of limitations applies to the Section 15 claims, which similarly are time -barred.  *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 349 n.1 (2d Cir. 1993) ("Since Section 15 merely creates a derivative liability for violations of Sections 11 and 12, Section 13 applies to it as well.").

259-60 (W.D. Tex. 1979) (pendency of Section 10(b) class action did not toll statute of limitations for individual plaintiff's Section 11 claim).

Second, by suing before this Court rendered any decision on class certification in the lead case (indeed before the Lead Plaintiffs have even moved for class certification), the E&F Plaintiffs have forfeited any tolling benefit even arguably provided by *American Pipe*. *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005) ("The purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided.").[15] With reasoning directly applicable here, one court in this district found forfeiture of a similar tolling argument, reasoning that "[b]y filing their action before a certification decision, opting out of the class after certification, and then claiming the benefits of tolling, they appear to have been manipulating the tolling doctrine and other class action procedures." *Wachovia Bank & Trust Co., N.A. v. Nat'l Student Mktg. Corp.*, 461 F. Supp. 999, 1012 (D.D.C. 1978), *rev'd on other grounds*, 650 F.2d 342 (D.C. Cir. 1980).

Thus, these new Section 11 claims are time-barred and must be dismissed.

## II.     The E&F Plaintiffs' Section 18 Claims Are Time-Barred

Counts III of the E&F Complaints assert claims under Section 18 of the Exchange Act, 15 U.S.C. § 78r, against Fannie Mae and the individual defendants.  As discussed above, Section 18(a) provides a private right of action for false or misleading statements in an application or document filed pursuant to the Exchange Act or an Exchange Act rule.  A Section 18 plaintiff must allege that he actually relied on the misstatement or omission; that the misstatement or

---

[15]     *See also In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 451 (S.D.N.Y. 2003) ("Although the Second Circuit has not yet decided this issue, district courts in this circuit have held that a plaintiff who chooses to file an action independently of the class before a determination on class certification cannot benefit from the *American Pipe* tolling rule."); *Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793, 800 (N.D. Tex. 2000) (Section 18(a) plaintiff forfeited tolling by filing action before decision on class certification in earlier filed class action).

omission affected the price of the security; and that plaintiff's reliance on the misstatement or omission caused plaintiff to suffer damages.

The E&F Plaintiffs' Section 18 claims against Fannie Mae are based on the same allegations as their Section 10(b) claims, and are substantially the same as the Section 10(b) claim asserted by the Lead Plaintiffs in their CAC. All the E&F Plaintiffs have done here is attempt to plead an additional statutory cause of action based on the same set of facts. These new Section 18 claims, however, must be dismissed as time-barred.

Congress legislated an express statute of limitations period for Section 18, a securities law claim that does not require fraudulent intent. The statute of limitations for a Section 18 claim is the earlier of one year from the date of discovery or three years from the date the cause of action accrued. 15 U.S.C. § 78r(c).[16] This is the same limitations period applicable to the Section 11 claim. 15 U.S.C. § 77m.

As with their Section 11 claims, the E&F Plaintiffs did not file their Section 18 claims within one year of OFHEO's release of the Interim Report on September 22, 2004, which concededly put them on notice of the facts constituting their claims. And also as with their Section 11 claims, the pendency of the class action did not toll the statute of limitations for these new Section 18 claims because the CAC did not assert Section 18 claims. *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54-55 (D. Mass. 1995) (pendency of Section 10(b) class action did not toll statute of limitations for individual plaintiff's Section 18 claim).

Thus, the E&F Plaintiffs' Section 18 claims are time-barred and must be dismissed.

---

[16]  "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued."

III.    <u>The E&F Plaintiffs' Claims Based On Purchases After September 21, 2004 Should Be
Dismissed For Lack Of Reasonable Reliance As A Matter Of Law</u>

The E&F Plaintiffs assert a "Loss Period" ending September 28, 2005, more than a full
year beyond the end of the class period addressed by the Court in its prior ruling on the motions
to dismiss the CAC.  But the E&F Plaintiffs do not claim that Fannie Mae made any false or
misleading statements after September 21, 2004.  (Evergreen Compl. ¶¶ 388-401; Franklin
Compl. ¶¶ 182-347.)  Their post-September, 21, 2004 allegations focus on disclosures by Fannie
Mae concerning its prior accounting and testimony by SEC and OFHEO officials concerning
Fannie Mae's prior accounting.  (Evergreen Compl. ¶¶ 388-401; Franklin Compl. ¶¶ 418-431.)
Instead, the E&F Plaintiffs claim that they purchased Fannie Mae stock through September 28,
2005, in reliance on false or misleading financial statements made before September 22, 2004.
(Evergreen Compl. ¶ 5; Franklin Compl. ¶ 5.)

But the E&F Plaintiffs themselves admit that the release of the OFHEO Interim Report
put them on inquiry notice, alleging:

> Plaintiffs did not know, and could not reasonably have discovered,
> the falsity of Fannie Mae's financial statements and Defendants'
> other public statements regarding the Company's financial
> condition before September 22, 2004, when the Company first
> disclosed OFHEO's finding that Fannie Mae's financial results had
> been intentionally distorted.

(Evergreen Compl. ¶ 439; Franklin Compl. ¶ 516.)  The OFHEO Interim Report was critical of
certain of Fannie Mae's accounting practices, specifically its application of FAS 91 and FAS
133, and Fannie Mae's internal controls.  (Evergreen Compl. ¶¶ 359-372; Franklin Compl.
¶¶ 390-403.)  Following the release of the OFHEO Interim Report, Fannie Mae's stock price
dropped from $75.65 per share to $70.69 per share.  (Evergreen Compl. ¶ 373; Franklin Compl.
¶ 404.)  Accordingly, investors who purchased Fannie Mae stock after September 21, 2004 did

so with knowledge of the principal alleged GAAP violations, and the possibility that additional GAAP violations might be uncovered as part of Fannie Mae's review.

There is further proof that the investing public knew of the problems with Fannie Mae's financials following the release of the OFHEO Interim Report: within days, class action plaintiffs attorneys had filed numerous lawsuits alleging that Fannie Mae's prior financial statements were false or misleading.  (*E.g.*, *Vinci v. Fannie Mae et al.,* Compl. ¶¶ 75-79 ("The Truth Emerges" with the release of the OFHEO Interim Report.).)  Thus, no reasonable investor could claim to have relied on Fannie Mae's prior financial statements after the release of the OFHEO Interim Report.[17]

But not only do they claim continued reliance after September 21, 2004, the E&F Plaintiffs go so far as claim that they continued to purchase Fannie Mae stock in reliance on Fannie Mae's prior financial statements after December 22, 2004, when Fannie Mae announced that its prior financial statements were not prepared in accordance with GAAP and publicly warned investors that these prior financial statements ***should no longer be relied upon***. (Evergreen Compl. ¶ 382; Franklin Compl. ¶ 413.)

The E&F Plaintiffs' claimed reliance on the disavowed financial statements after December 22, 2004 is unreasonable as a matter of law.  *Semerenko v. Cendant Corp.*, 223 F.3d 165, 181 (3d Cir. 2000) (holding that plaintiffs could not reasonably rely on prior financial statements where the company expressly warned investors not to rely on them).[18]  *Cendant* is

---

[17]  Lead Plaintiffs made virtually the same allegation in the CAC, claiming that Fannie Mae's accounting problems were revealed in the OFHEO Interim Report, and Fannie Mae has been litigating the class action on that basis for more than a year.  Lead Plaintiffs too have sought to extend the class period in their recently filed Amended Consolidated Class Action Complaint.  Fannie Mae will address that proposed amendment separately at the appropriate time.

[18]  In the class certification context, courts routinely cut-off the class period once the defendants have warned investors not to rely on prior financial statements.  *See Kriendler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1147, 1160 (N.D. Ill. 1995) (holding that investors purchased stock "at their own risk and [could not] claim

exactly on point and requires dismissal of the E&F Plaintiffs' post-December 22, 2004 claims here.

Plaintiffs in *Cendant* alleged a class period running from January 27, 1998 to October 13, 1998. 223 F.3d at 169. During this period, Cendant disclosed on April 15, 1998, that it had uncovered accounting irregularities, and warned investors that "the Company's previously issued financial statements and auditors' reports should not be relied upon."[19] *Id.* at 181 n.10. The *Cendant* court upheld the dismissal of claims based on purchases after the company's April 15, 1998 disclosure, stating: "We agree that the Class has failed to demonstrate that it was reasonable for its members to rely on the defendants' *prior* financial statements and auditors' reports following the April 15, 1998 disclosure of the accounting irregularities." *Id.* at 181 (emphasis in original). And, since no new misrepresentations were alleged after April 15, 1998, the *Cendant* court affirmed the dismissal of all claims based on purchases after that date. *Id.*

Thus, all of the E&F Plaintiffs' reliance-based claims (Exchange Act Sections 10(b)[20] and 18,[21] common law fraud,[22] and negligent misrepresentation[23]) based on purchases after September 21, 2004 or at the very latest December 22, 2004 (when Fannie Mae disavowed its

---

damages" based on reliance on the company's valuation of certain assets after the defendant warned that it would be "reviewing" the valuation of those assets); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 144 (D.N.J. 1984) (holding that investors could not reasonably rely on the issuer's financial statements after the issuer announced that its auditor had concluded that information appeared to be materially misstated) *rev'd on other grounds*, 843 F.2d 1537 (3d Cir. 1988); *In re LTV Sec. Litig.*, 88 F.R.D. 134, 147-48 (N.D. Tex. 1980) (holding that plaintiffs who purchased shares after the company's warning statement could not rely on a fraud on the market theory, even though the exact amount of the forthcoming restatement was not yet known at the *time* of the warning).

[19] Cendant's warning is virtually identical to Fannie Mae's December 22, 2004 warning to investors here.

[20] *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994) (reasonable reliance is an element of a Rule 10b-5 claim).

[21] *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 479 (S.D.N.Y. 2005) (Section 18 requires actual reliance).

[22] *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C.Cir.1997) (dismissing fraud claim for lack of reasonable reliance).

[23] *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 74-75 (D.D.C. 2003) (dismissing negligent misrepresentation claim for lack of reasonable reliance).

prior financial statements) must be dismissed.

IV.    The E&F Plaintiffs' New Section 10(b) Allegations Fail To Raise The Requisite Strong Inference Of Scienter

Count I of the E&F Complaints asserts claims under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and SEC Rule 10(b)(5).  The E&F Plaintiffs here plead new allegations of accounting irregularities beyond the FAS 91 and 133 issues addressed by the Court in its prior ruling on the motions to dismiss the Lead Plaintiffs' CAC.  (Evergreen Compl. ¶¶ 122-151; Franklin Compl. ¶¶ 144-173.)  Once these new allegations are properly dismissed, as they should be for the reasons that follow, the E&F Plaintiffs can litigate their Section 10(b) claims based on the FAS 91 and 133 issues in parallel to the Lead Plaintiffs in the consolidated class action.

The E&F Plaintiffs allege that Fannie Mae's accounting for these transactions violated GAAP.  But their Complaints make no specific allegations that Fannie Mae acted with the requisite intent to defraud as to these additional accounting issues.  The only specific allegations of scienter concern the FAS 91 and FAS 133 claims.  Consequently, the Private Securities Litigation Reform Act ("PSLRA") requires dismissal of these new Section 10(b) allegations.  15 U.S.C. § 78u-4(b)(2) ("The complaint shall, *with respect to each act or omission* alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." (emphasis added)); *In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350, 1374-80 (N.D. Ga. 2005) (court evaluated scienter as to each alleged accounting issue in granting motion to dismiss in part and denying motion in part); *In re CIGNA Corp. Sec. Litig.*, Civil Action No. 02-8088, 2005 U.S. Dist. LEXIS 35524, at *20-41 (E.D. Pa. Dec. 23, 2005) (on motion to amend, court separately evaluated scienter as to each new

10b-5 allegation and denied leave to amend certain new claims where scienter was not adequately alleged).[24]

Although the District of Columbia Circuit has not yet ruled on what degree of scienter the PSLRA requires to be pleaded, the majority of Circuit Courts hold that a plaintiff must plead specific facts that demonstrate a strong inference of at least recklessness or a conscious disregard of known problems or risks.[25]  Recklessness under these cases is a "stringent formulation of the term 'recklessness' that does not allow for recklessness as a form of negligence."  *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 550 (6th Cir. 1999).[26]  Allegations based on GAAP violations and subsequent restatements are not sufficient, without more, to plead the requisite "strong inference" of scienter.  *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (allegation of scienter based on restatement of three quarters of earnings due to improper revenue recognition insufficient to state a securities fraud claim).  Accordingly,"[t]o state a valid securities fraud claim, allegations of violations of GAAP must be accompanied by factual allegations of corresponding fraudulent intent."  *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 429 (D.N.J. 1999).  Taken separately or together, these new accounting

---

[24]  *See also In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 437-39 (S.D.N.Y. 2006) (granting motion to dismiss in part based on failure to plead strong inference of scienter as to certain alleged 10b-5 violations and denying motion as to other alleged 10b-5 violations where scienter was adequately alleged); *In re Champion Enters. Sec. Litig.*, 144 F. Supp. 2d 848, 872-76 (E.D. Mich. 2001) (individually evaluating scienter allegations as to each alleged 10b-5 violation and concluding that allegations, including alleged GAAP violations, did not adequately plead the requisite scienter).

[25]  *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195-97 (1st Cir. 1999); *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 345 (4th Cir. 2003); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 411-12 (5th Cir. 2001); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 550-52 (6th Cir. 2001) (*en banc*); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 601 (7th Cir. 2006); *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 659-60 (8th Cir. 2001); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1261-63 (10th Cir. 2001); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1286 (11th Cir. 1999).

[26]  The D.C. Circuit has confirmed, in line with the "middle ground" approach taken by these Circuits, that "extreme recklessness" is sufficient to satisfy the scienter requirement for aiding and abetting liability in an action for civil damages brought by the SEC.  *Howard v. SEC*, 376 F.3d 1136, 1144 (D.C. Cir. 2004) ("'Extreme recklessness' . . . 'may be found if the alleged aider and abettor encountered 'red flags,' or 'suspicious events creating reasons for doubt' that should have alerted him to the improper conduct of the primary violator.") (quoting *Graham v. SEC*, 222 F.3d 994, 1006 (D.C. Cir. 2000))).

allegations fail to meet that stringent statutory pleading standard.

A.     Classification Of Securities Held In Portfolio

The E&F Complaints allege that Fannie Mae improperly classified loans in violation of GAAP. FAS 115 requires a company to classify securities when acquired into one of three categories: (1) held to maturity; (2) available for sale; or (3) trading. (Evergreen Compl. ¶¶ 122-130; Franklin Compl. ¶¶ 144-152.) Fannie Mae disclosed on May 11, 2005, and again on November 10, 2005, that it had improperly transferred certain securities after acquisition from the held-to-maturity category to the available-for-sale category. (Evergreen Compl. ¶ 128; Franklin Compl. ¶ 150.) While the E&F Complaints allege that such transfers violated GAAP, there are no factual allegations that Fannie Mae intentionally or recklessly reclassified securities to manipulate its reported earnings or financial results. Without such allegations of scienter, the additional accounting allegations should be dismissed. *Fleming,* 264 F.3d at 1261 ("Only where [allegations of GAAP violations or accounting irregularities] are coupled with evidence that the violations or irregularities were the result of defendant's fraudulent intent to mislead investors may they be sufficient to state a claim.").

B.     Accounting For Asset Impairments On Guaranty Fees

In a single paragraph, the E&F Plaintiffs allege that Fannie Mae disclosed on November 10, 2005, as part of its restatement process, that it anticipates recording assets impairments resulting from the "buy-up" of guaranty fees on Fannie Mae mortgage backed securities. (Evergreen Compl. ¶ 131; Franklin Compl. ¶¶ 153.) There are no allegations (specific or general) that Fannie Mae knew about these asset impairments and intentionally or recklessly failed to record the impairments at the appropriate time. Thus, all that is alleged is a GAAP violation, not fraud.

C.    Accounting For Dollar-Rolls

A "dollar-roll" is a transaction in which Fannie Mae sells a mortgage backed security from a counter-party and simultaneously agrees to repurchase the same or similar security at a later date. (Evergreen Compl. ¶ 132; Franklin Compl. ¶ 154.) FAS 140 provides guidance as to when an issuer should account for a particular transaction, such as a dollar-roll, as a short term financing or a sale. (Evergreen Compl. ¶ 133; Franklin Compl. ¶ 155.) FAS 140 requires Fannie Mae to record these transactions as sales unless certain conditions are met, including that the security repurchased is substantially similar to the security sold. (*Id.*) The E&F Plaintiffs allege that Fannie Mae improperly accounted for all of its dollar roll transactions as secured financings, rather than sales. (Evergreen Compl. ¶ 134; Franklin Compl. ¶ 156.) But again, while they may allege a GAAP violation, the E&F Complaints do not allege facts to create a strong inference that Fannie Mae knew at the time that its accounting was improper, or that it acted with extreme recklessness. There are no allegations that this accounting treatment was used to manipulate earnings. All that is alleged are accounting errors; there is no strong inference of fraud.

D.    Accounting For Insurance Products

On November 10, 2005, as part of its restatement process, Fannie Mae disclosed that it had not accounted for one policy to insure certain high risk loans and that the accounting would have to be restated because the policy "did not transfer sufficient underlying risk of economic loss to the insurer" to qualify for accounting as insurance. (Evergreen Compl. ¶ 136; Franklin Compl. ¶ 158.) The E&F Plaintiffs allege that Fannie Mae paid a $35 million premium for up to $39 million of losses which allegedly had already been incurred or would very likely be incurred. The premium was amortized over three years, approximately $13.5 million in each of 2002 and 2003, and $8 million in 2004. (Evergreen Compl. ¶ 138; Franklin Compl. ¶ 160.)

The E&F Plaintiffs allege that Fannie Mae purchased the policy to hide known losses, but

they fail to allege facts sufficient to show that Fannie Mae knowingly or recklessly misapplied the accounting rules for this insurance policy. There is nothing inherently wrong with purchasing insurance to spread the risk of losses, and had the policy been properly structured to comply with the accounting rules, the E&F Plaintiffs could not possibly make a securities fraud claim. The E&F Plaintiffs should not be permitted to use Fannie Mae's subsequent decision to restate the accounting for this one policy to bootstrap an inference that the prior accounting was done with fraudulent intent.

Further, the premium and losses involved with this one policy were insignificant relative to Fannie Mae's overall financial results. Fannie Mae's reported net income for 2003 was $7.05 billion, (Evergreen Compl. ¶ 317; Franklin Compl. ¶ 346), while the amortized premium for that year amounted to only $13.5 million. Thus, the accounting for this one insurance policy could not have been material to a reasonable investor.

E.    Accounting For Qualified Special Purpose Entities

Fannie Mae uses Qualified Special Purpose Entities ("QSPEs") to issue mortgage backed securities. (Evergreen Compl. ¶ 142; Franklin Compl. ¶ 164.) Fannie Mae issues guarantees to holders of securities backed by pools of mortgage loans, and these pools of mortgage loans are held by trusts established by Fannie Mae. FASB Interpretation No. 46, *Consolidation of Variable Interest Entities*, provides that a party with a variable interest in an entity is not required to consolidate that entity for financial reporting purposes if it does not have the unilateral ability to liquidate the trust or change the trust so that it is no longer a QSPE. (*Id.*) Fannie Mae acquires interests in the securities guaranteed, in certain instances as much as 100% of the securities held by a given trust. (Evergreen Compl. ¶ 143; Franklin Compl. ¶ 165.) To avoid the need to evaluate each trust and determine whether it met the definition of a QSPE, Fannie Mae transferred a 1% interest to a third party. (*Id.*) Once again, all that the E&F Plaintiffs allege is a

GAAP violation.  There are no specific allegations that Fannie Mae structured these transactions with the requisite intent to defraud.

F.    Recognition Of Interest Expense And Income

The E&F Plaintiffs allege that Fannie Mae recognized interest expense and income in certain investments in an even monthly ratable manner, rather than according to the contract term.  (Evergreen Compl. ¶ 145; Franklin Compl. ¶ 167.)  This meant in practice that Fannie Mae calculated the interest expense and income as if there were 30.4 days in every month, rather than the actual number of days in any given month.  The E&F Plaintiffs allege that this practice violated GAAP and had the effect of smoothing interest expense and income.  (Evergreen Compl. ¶ 145; Franklin Compl. ¶ 167.)  But again the E&F Complaints notably lack specific allegations of fact to create a strong inference that Fannie Mae did this with the intent to defraud investors.

G.    Accounting For Investments In Affordable Housing Partnerships

Pursuant to its mission, Fannie Mae invested in limited partnerships to promote low income housing.  On November 10, 2005, Fannie Mae disclosed that its accounting for these limited partnership interests violated GAAP.  (Evergreen Compl. ¶ 146; Franklin Compl. ¶ 168.)  Specifically, the E&F Plaintiffs allege that Fannie Mae improperly used the effective yield method of accounting, rather than the GAAP compliant equity method, (Evergreen Compl. ¶¶ 147-150; Franklin Compl. ¶¶ 169-172), and improperly recorded certain capital contributions "as funded," rather than as "committed" as required by GAAP. (Evergreen Compl. ¶ 151; Franklin Compl. ¶ 173.)  As with the other new accounting allegations added by the E&F Plaintiffs, all that is alleged are violations of GAAP, without specific allegations of fraud.  Such allegations fail to meet the heightened pleading standards of the PSLRA.  *Stevelman*, 174 F.3d at 84.

Therefore, all of these new accounting allegations should be dismissed for failure to plead the strong inference of scienter required by the PSLRA.

V.    The E&F Plaintiffs' State Law Claims Are Preempted By SLUSA

The E&F Plaintiffs assert state law claims for fraud (Counts VIII) and negligent misrepresentation (Counts IX). In addition, the Evergreen Plaintiffs assert claims for violation of Massachusetts General Law Chapter 93A § 2 (Evergreen Complaint Count XI), and the Franklin Plaintiffs assert claims for violation of California Corporations Code § 25400 (Franklin Complaint Count XI). All of these state law claims are preempted by SLUSA because these new actions have been consolidated with the class action in these MDL proceedings. 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). Preemption of the new state law claims will put the E&F Plaintiffs on the same footing as the Lead Plaintiffs and the other members of the putative class.

Following the passage of the PSLRA, which heightened the pleading requirements for federal securities class actions, plaintiffs increasingly began to file securities class actions in state courts, primarily to circumvent the restrictions imposed on securities claims in federal court. To close this loophole, Congress enacted SLUSA, which made federal court the exclusive forum for class actions alleging fraud in connection with the purchase or sale of "covered securities." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1511 & n.7 (2006). Congress achieved this goal by providing for the removal of state securities class actions to federal court, and preempting state law claims based on false or misleading statements in connection with the purchase or sale of a covered security that are asserted as part of a "covered class action." Specifically, SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant

> used or employed any manipulative or deceptive device or
> contrivance in connection with the purchase or sale of a covered
> security.

15 U.S.C. § 77p(b). *See also* 15 U.S.C. § 78bb(f) (SLUSA amendment to Exchange Act).

SLUSA preempts all of the E&F Plaintiffs' state law claims here because their actions are "covered class actions" under the statute and their claims are all based on allegations of false or misleading statements in the purchase or sale of securities. Once these state law claims are properly stripped away and dismissed, the E&F Plaintiffs will be in the same position as Lead Plaintiffs and the rest of the putative class, and the parties can properly focus on litigating those common claims and defenses in this consolidated proceeding.

A.    The E&F Complaints Are Part Of A "Covered Class Action"

A "covered class action" under SLUSA includes "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (1) damages are sought on behalf of more than 50 persons; and (2) the lawsuits are *joined, consolidated, or otherwise proceed as a single action for any purpose*." 15 U.S.C. §§ 77p(f)(2)(A), 78bb(f)(5)(B) (emphasis added). Where, as here, lawsuits are brought on behalf of fewer than fifty plaintiffs, and these lawsuits are then consolidated with related litigation such that the *group* of lawsuits seeks damages on behalf of more than fifty plaintiffs, the consolidated action is a covered class action for SLUSA purposes. *In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 247 (S.D.N.Y. 2004) (finding that ten individual actions that collectively claimed damages on behalf of 293 plaintiffs were a group of lawsuits for purposes of SLUSA).

The E&F Plaintiffs cannot be heard to argue that preemption of their state law claims as a result of consolidation with the class action is unfair. The E&F Plaintiffs are masters of their own complaints and chose to file actions in this district with federal statutory claims – some identical to the Lead Plaintiffs' claims – that lie exclusively within the jurisdiction of federal

courts.  The E&F Plaintiffs could have brought state law claims in state court but chose not to do

so.  By choosing to bring Exchange Act claims in this forum with a pending class proceeding,

the E&F Plaintiffs had to know that their actions would be consolidated with the class action

and, consequently, that their state law claims would be preempted by SLUSA.

     B.    <u>The E&F Plaintiffs' State Law Claims Meet All Of The Other Requirements For SLUSA Preemption</u>

For a state law claim to be preempted by SLUSA, the claim must (1) allege an untrue

statement, omission or other fraudulent scheme (2) in connection with the purchase or sale (3) of

a covered security.  15 U.S.C. §§ 77p(b), 78bb(f)(1).  Each of the E&F Plaintiffs' state law

claims satisfies these requirements for SLUSA preemption.

Taking the three elements in reverse order, Fannie Mae common stock is traded on the

New York Stock Exchange.  (Evergreen Compl. ¶ 16; Franklin Compl. ¶ 37.)  Therefore, Fannie

Mae common stock is a "covered security" under SLUSA.  15 U.S.C. §§ 77p(f)(3),

78bb(f)(5)(E) (both referencing the definition of covered securities in 15 U.S.C. § 77r(b), which

includes securities "listed, or authorized for listing, on the New York Stock Exchange").

Second, as the Supreme Court made clear in its recent *Dabit* decision, the phrase "in

connection with the purchase or sale of a security" requires only a showing that the alleged

deception coincided with a securities transaction by someone.  126 S. Ct. at 1513.  As the Court

put it, "[t]he requisite showing, in other words, is deception 'in connection with the purchase or

sale of any security,' not deception of an identifiable purchaser or seller."  *Id.* (quoting *United

States v. O'Hagan*, 521 U.S. 642, 658 (1997)).  Here, where the E&F Plaintiffs allege that they

purchased stock in reliance on alleged untrue statements or omissions, the claims plainly satisfy

the "in connection with" requirement under SLUSA.

Third, each of the E&F Plaintiffs' state law claims alleges an untrue statement or

omission as a "necessary component" of the claim.  *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 266 (S.D.N.Y. 2004).  We consider each claim in turn.

### 1.    The Common Law Fraud Claims Are Preempted By SLUSA

The E&F Plaintiffs' common law fraud claims are paradigmatic examples of the type of state law claims that Congress intended to preempt under SLUSA.  The claims allege false statements and omissions in connection with the purchase or sale of a covered security (Evergreen Compl. ¶ 495; Franklin Compl. ¶ 574), and the false statement or omission is an essential element of the fraud claim.  *Bennett v. Kiggins,* 377 A.2d 57, 59 (D.C. 1977) (defining elements of common law fraud).[27]

### 2.    The Negligent Misrepresentation Claims Are Preempted By SLUSA

The E&F Plaintiffs' negligent misrepresentation claims, like their fraud claims, allege false statements and omissions in connection with the purchase or sale of a covered security (Evergreen Compl. ¶ 504; Franklin Compl. ¶ 583), and the false statement or omission is an essential element of the negligent misrepresentation claim.  *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999) (defining elements of common law negligent misrepresentation).[28] Thus, the E&F Plaintiffs' negligent misrepresentation claims are preempted under SLUSA. *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1346 (11th Cir. 2002) (holding state law claims preempted that alleged misrepresentation without scienter).

Further, where, as here, a misrepresentation is an essential element of a claim, the fact that the claim does not require scienter does not preclude SLUSA preemption.  *See, e.g., Riley,* 292 F.3d at 1346.  In *Riley*, the plaintiffs brought suit under two Florida statutes: the Florida

---

[27]  Massachusetts and California law are substantially the same on this point.  *Stolzoff v. Waste Sys. Int'l, Inc.*, 792 N.E.2d 1031, 1041 (Mass. App. Ct. 2003); *Stansfield v. Starkey*, 269 Cal. Rptr. 337, 345 (Cal. Ct. App. 1990).

[28]  The same would be true under Massachusetts and California law.  *Nota Constr. Corp. v. Keyes Assocs., Inc.,* 694 N.E.2d 401, 405 (Mass. App. Ct. 1998); *Fox v. Pollack*, 226 Cal. Rptr. 532, 536-37 (Cal. Ct. App. 1986).

Securities and Investor Protection Act (Fla. Stat. Ann. § 517.011 et seq.) and the Florida

Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. § 501.201 et seq.).  The *Riley* plaintiffs

claimed that SLUSA did not preempt their state law claims because they lacked an element of

scienter.  The plaintiffs argued that because SLUSA preempted claims based on a

"misrepresentation or omission," 15 U.S.C. § 78bb(f)(1)(A), which tracked the language of Rule

10b-5, Congress must have intended SLUSA to preempt only claims with the scienter element of

10b-5.  The court squarely rejected the "contention that scienter is the dispositive factor in

determining whether a given lawsuit falls within the scope of SLUSA."  *Riley*, 202 F.3d at 1346.

The court noted that SLUSA also amended the Securities Act, and that the language used there

tracked Sections 11 and 12 of the Securities Act, which do not require scienter.  *Id.*; *see also* 15

U.S.C. § 77p(b)(1) (preempting state law claims that allege "an untrue statement or omission of a

material fact").

3.    The Evergreen Plaintiffs' Massachusetts Unfair Trade Practices Claim Is Preempted By SLUSA

The Evergreen Plaintiffs' claim for violation of Massachusetts General Laws Chapter

93A claim alleges false statements and omissions in connection with the purchase or sale of a

covered security (Evergreen Compl. ¶ 521), and the false statement or omission is an essential

element of this claim.  Mass. Gen. Laws. ch. 93A § 2(a) (declaring "deceptive acts or practices in

the conduct of any trade or commerce . . . unlawful.")  Thus, the Evergreen Plaintiffs' statutory

unfair trade practices claim is preempted by SLUSA.  *Riley*, 292 F.3d at 1346 (Florida Deceptive

and Unfair Trade Practices Act preempted by SLUSA); *see also Winne v. Equitable Life*

*Assurance Soc'y of the United States*, 315 F. Supp. 2d 404, 413-14 (S.D.N.Y. 2003) (claim for

deceptive business practices under N.Y. General Business Law § 349 preempted by SLUSA);

*Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002) (California

-29-

Unfair Competition Law claim preempted by SLUSA), *aff'd*, 353 F.3d 765 (9th Cir. 2003);

*Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229, 235 (D.N.J. 2000) (New Jersey

Consumer Fraud Act claim preempted by SLUSA).

          4.     The Franklin Plaintiffs' California Securities Law Claim Is Preempted By SLUSA

Similarly, the Franklin Plaintiffs' claim for violation of California Corporations Code

§ 25400(d) alleges false statements and omissions in connection with the purchase or sale of a

covered security (Franklin Compl. ¶ 601), and the false statement or omission is an essential

element of this claim. Cal. Corp. Code § 25400(d).[29]

Thus, the Franklin Plaintiffs' California securities law claim is preempted by SLUSA and

must be dismissed. *Riley*, 292 F.3d at 1346 (Florida Securities and Investor Protection Act

preempted by SLUSA).

VI.    The Evergreen Complaint Fails To State A Claim Under Massachusetts General Law Chapter 93A

Even if the Evergreen Plaintiffs' statutory unfair trade practices claim were not

preempted by SLUSA, the claim would still have to be dismissed for two reasons: (1) the statute

limits liabilities to sellers and the Evergreen Plaintiffs do not allege that Fannie Mae and the

individual defendants were engaged in the sale of Fannie Mae common stock; and (2) the

Evergreen Plaintiffs allege that the deceptive acts occurred primarily and substantially in the

District of Columbia, not Massachusetts.

---

[29]  Cal. Corp. Code § 25400(d) makes it unlawful for a "person selling or offering for sale . . . [a] security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading."

A.    <u>Defendants Cannot Be Liable Because They Were Not Engaged In The Sale Of Fannie Mae Common Stock</u>

Section 2 of Chapter 93A declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Mass. Gen. Laws ch. 93A § 2(a). Section 11 of Chapter 93A provides a remedy to "any person who engages in the conduct of any trade or commerce" (*i.e.,* a person acting in a "business context"). *Frullo v. Landenberger*, 814 N.E.2d 1105, 1111-12 (Mass. App. Ct. 2004). Specifically, Section 11(1) provides a private right of action for:

> [a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment *by another person who engages in any trade or commerce* of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section 2.

Mass. Gen. Laws. ch. 93A § 11(1) (emphasis added). Section 1(b) defines "trade and commerce" to include "the advertising, the offering for sale . . . the sale . . . or distribution" of "any security." Mass. Gen. Laws ch. 93A § 1(b).

This provision of Massachusetts law limits liability arising out of the sale of securities only to persons "engaged in the actual sale of securities." *Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165, 174-75 (D. Mass. 1997) (holding that auditors who certified allegedly false and misleading financial statements were not engaged in the sale of securities); *Wells v. Monarch Capital Corp.*, No. 91-10575-MA, 1991 WL 354938, at *13 (D. Mass. Aug. 23, 1991) (Chapter 93A makes only the seller of securities liable).

The Evergreen Complaint does not allege that Defendants were engaged in the actual sale of securities. Instead, the Evergreen Plaintiffs allege that Defendants publicly disseminated false and misleading statements in the marketplace, allegations that "simply do not constitute 'trade or commerce' as defined under 93A when stock is purchased by investors through open markets."

-31-

*Salkind v. Wang*, Civ. A. No. 93-10912-WGY, 1995 WL 170122, at *9 (D. Mass. Mar. 30, 1995). While the Evergreen Complaint alleges in conclusory terms that Defendants engaged in practices in connection with the sale of Fannie Mae securities,[30] the Evergreen Complaint alleges only open market purchases based on broadly disseminated public documents.

      B.    <u>The Alleged Deceptive Acts Occurred Primarily And Substantially In The District Of Columbia, Not Massachusetts</u>

Massachusetts law does not apply here because the alleged unfair and deceptive acts did not, as required by Chapter 93A, occur primarily and substantially in Massachusetts. *See* Mass. Gen. Laws ch. 93A § 11(8) ("No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."). The sole basis for the Evergreen Plaintiffs' allegation that Defendants' alleged unfair or deceptive acts occurred "primarily and substantially" within Massachusetts is that the Evergreen Plaintiffs are domiciled in Massachusetts. (Evergreen Compl. ¶ 525.) This bare allegation cannot render Massachusetts law applicable to the claim. *Henry v. Nat'l Geographic Soc'y*, 147 F. Supp. 2d 16, 22 (D. Mass. 2001) ("[W]hen the place of injury . . . is the only factor weighing in favor of a claimant, the admonition of the Massachusetts courts that liability under 93A is not to be imposed lightly is particularly relevant." (omission in original) (quoting *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 107 F. Supp. 2d 82, 89 (D. Mass. 2000))); *Am. Mgmt Servs., Inc. v. George S. May Int'l Co.*, 933 F. Supp. 64, 68 (D. Mass. 1996) ("Something more than a Massachusetts plaintiff is required to invoke the provisions of Chapter 93A."). To the contrary, as the Evergreen Complaint's venue allegations make clear, "many of the acts alleged . . .,

---

[30] Evergreen Compl. ¶ 522 ("Defendants engaged in these unfair and deceptive practices in connection with the sale of Fannie Mae securities, which constitutes 'trade' or 'commerce' pursuant to Massachusetts General Laws Chapter 93A §1(b).")

including the preparation and dissemination of false and misleading statements to the investing

public, occurred in substantial part in this District."  (Evergreen Compl. ¶ 9.)

Accordingly, the Evergreen Plaintiffs' Massachusetts unfair trade practices claim must be

dismissed.

VII.    <u>The Franklin Complaint Fails To State A Claim For Violation Of The California
        Securities Laws</u>

Finally, to the extent not preempted by SLUSA, the Franklin Plaintiffs' claim against

Fannie Mae for violation of the California Securities Laws should be dismissed for failure to

plead fraud with particularity required by Federal Rule of Civil Procedure 9(b).  Although the

Court ruled that these same allegations in the class complaint were sufficient for Section 10(b)

purposes, the Franklin Complaint's allegations do not show the willful misconduct required by

California Corporations Code § 25500, an even higher scienter standard than that required for a

Section 10(b) or common law fraud claim.  *Diamond Multimedia Sys., Inc. v. Super. Ct.,* 968

P.2d 539, 546 n.13 (Cal. 1999) ("Civil and criminal liability under section 25400 attach only if a

person omits a material fact for the purpose of inducing the sale or purchase of the stock with

knowledge that the omission was false or misleading."); *Cal. Amplifier, Inc. v. RLI Ins. Co.*, 113

Cal. Rptr. 2d 915, 923 (Cal. Ct. App. 2001) ("Only persons who willfully, not merely recklessly,

violate section 25400, subdivision (d) can be liable for damages.").[31]

Section 25400(d) of the California Corporations Code makes it unlawful for a:

> person selling or offering for sale . . . [a] security, to make, for the
> purpose of inducing the purchase or sale of such security by others,
> any statement which was, at the time and in the light of the
> circumstances under which it was made, false or misleading with
> respect to any material fact, or which omitted to state any material
> fact necessary in order to make the statements made, in the light of

---

[31]  *See also Goodworth Holdings Inc. v. Suh*, 239 F. Supp. 2d 947, 962-63 (N.D. Cal. 2002); *Am. High-Income Trust v. Alliedsignal*, 329 F. Supp. 2d 534, 544-45 (S.D.N.Y. 2004).

> the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

Cal. Corp. Code § 25400(d).

Investors harmed by a violation of Cal. Corp. Code § 25400 have an express, private right of action under Cal. Corp. Code § 25500, which provides that "[a]ny person who willfully participates in any act or transaction in violation of Section 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction for the damages sustained by the latter as a result of such act or transaction." Cal. Corp. Code § 25500.

The challenged transactions here involve the application of accounting principles to extraordinarily complex transactions, specifically the accounting for derivatives under FAS 133 and the amortization of purchase premiums and discounts on mortgage backed securities and loans under FAS 91. Courts recognize that Generally Accepted Accounting Principles, like FAS 91 and 133, do not specify an absolute, black or white, treatment for every transaction, but rather "tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to the management." *Thor Power Tool Co. v. Comm'r of Internal Revenue*, 439 U.S. 522, 544 (1979). Here, the Franklin Plaintiffs' allegations at the very most support an inference that Fannie Mae recklessly applied these accounting principles, not that it willfully manipulated them.

First, Fannie Mae's implementation and application of both FAS 91 and 133 were transparent to KPMG, its auditor (Franklin Compl. ¶ 464.) Such transparency is inconsistent with willful misconduct.

Second, the allegations concerning Roger Barnes (Franklin Compl. ¶¶ 433-34) cannot support an inference of intentional misconduct. Mr. Barnes expressed concerns regarding Fannie Mae's accounting. Fannie Mae's internal audit staff immediately investigated Mr. Barnes'

concerns, and KPMG concluded that Fannie Mae's practices were consistent with GAAP.  Read most favorably to the Franklin Plaintiffs, these allegations show that Fannie Mae gave insufficient consideration to the claims of a single employee, not that Fannie Mae engaged in intentional misconduct.

Finally, the conclusory allegations of Fannie Mae's motive and opportunity to commit fraud (Franklin Compl. ¶ 440) are not sufficient to plead the heightened degree of willful misconduct required by Cal. Corp. Code § 25500.  Indeed, the majority of federal courts have concluded that such motive and opportunity allegations are insufficient to create a strong inference of the lesser scienter required by Section 10(b).  *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 601 (7th Cir. 2006).  Therefore, the Franklin Plaintiffs' California Securities Law claims must be dismissed.

<u>CONCLUSION</u>

For all these reasons, the following claims should be dismissed from the E&F Complaints: the Section 11 claims; the Section 18 claims; the claims based on purchases after September 21, 2004 (or at the very latest December 22, 2004); the new Section 10(b) claims alleging additional accounting issues; the common law fraud claims; the negligent misrepresentation claims; the Evergreen Complaint's Massachusetts General Law Chapter 93A claims; and the Franklin Complaint's Cal. Corp. Code §§ 25400 and 25500 claims.  Once these new claims are properly disposed of, the E&F Plaintiffs will be on the same footing as the Lead Plaintiffs and the parties can focus their attention on litigating the common Section 10(b) accounting claims.

Dated:  May 15, 2006                          Respectfully submitted,

                                              _____
                                              John Beisner (DC Bar No. 320747)
                                              Jeffrey W. Kilduff (DC Bar No. 426632)
                                              Kimberly A. Newman (DC Bar No. 420236)
                                              Robert M. Stern (DC Bar No. 478742)
                                              Natasha Colton (DC Bar No. 479647)
                                              Michael J. Walsh, Jr. (DC Bar No. 483296)
                                              O'Melveny & Myers LLP
                                              1625 Eye Street, N.W.
                                              Washington, DC  20006
                                              Tel.:  (202) 383-5300
                                              Fax   (202) 383-5414
                                              -and-
                                              Seth Aronson
                                              O'Melveny & Myers LLP
                                              400 South Hope Street
                                              Los Angeles, CA  90071-2899
                                              Tel.:  (213) 430-6000
                                              Fax:   (213) 430-6407

                                              *Counsel for Defendant Fannie Mae*