## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE FANNIE MAE SECURITIES LITIGATION | No. 1:04-cv-01639 (RJL) |
| FRANKLIN MANAGED TRUST *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*,<br><br>*Defendants*. | No. 1:06-cv-00139 (RJL) |

## REPLY MEMORANDUM OF DEFENDANT KPMG LLP IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar. No. 468351)
Melanie L. Katsur (D.C. Bar No. 484969)
Henry C. Whitaker (D.C. Bar No. 499210)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for KPMG LLP*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ..............................................................................................1

ARGUMENT ......................................................................................................4

    I.     The Complaint Does Not Adequately Allege That KPMG Violated Section 10(b) And Rule 10b-5. ...............................................................4

          A.     Plaintiffs Misstate The Scienter Requirement. ..........................4

          B.     Plaintiffs Have Failed To Plead That KPMG Had Actual Knowledge Of The Alleged Fraud At Fannie Mae.....................................6

          C.     Plaintiffs Have Failed To Allege Facts Warranting A Strong Inference That KPMG Acted With Extreme Recklessness. .....................11

          D.     Plaintiffs' Allegations Individually And Collectively Fail To Establish Scienter.......................................................................15

          E.     Plaintiffs Have Failed To Plead Loss Causation........................16

    II.    Plaintiffs' Section 18 Claim Is Time Barred..........................................18

          A.     Plaintiffs Were On Notice Of Their Cause Of Action In September 2004. ........................................................................18

          B.     Plaintiffs' Section 18 Cause Of Action Is Not A "Fraud Claim." .............20

    III.   SLUSA Preempts Plaintiffs' State-Law Fraud Claim. ...........................21

    IV.   The Loss Period Should Not Extend Beyond September 21, 2004 And Any Reliance On KPMG's Audit Opinions On Or After That Date Was Unreasonable.........................................................................................24

CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

## Cases

*Dodds v. Cigna Sec., Inc.*,
    12 F.3d 346 (2d Cir. 1993).................................................................................... 20

*DSAM Global Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ................................................................................... 7

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1975)................................................................................................ 21

*Fidel v. Farley*,
    392 F.3d 220 (6th Cir. 2004) ................................................................................. 11

*Fujisawa Pharm.Co., Ltd. v. Kapoor*,
    115 F.3d 1332 (7th Cir. 1997) ............................................................................... 18

*Garfield v. NDC Health Corp.*,
    No. 05-14765, 2006 WL 2883238 (11th Cir. Oct. 12, 2006) .................................... 12, 14

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) ................................................................................... 6

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004)................................................................................... 10

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
    530 U.S. 1 (2000)................................................................................................... 22

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) ................................................................................... 6

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 402 (S.D.N.Y. 2004).......................................................... 18, 19, 20, 21

*In re First Union Corp. Sec. Litig.*,
    128 F.Supp.2d 871 (W.D.N.C. 2001) ....................................................................... 7

*In re First Union Corp. Sec. Litig.*,
    No. 3:99cv237, 2006 WL 163616 (W.D.N.C. Jan. 20, 2006) ......................................... 17

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    131 F. Supp. 2d 680 (E.D. Pa. 2001),
    *aff'd* 277 F.3d 658 (3d Cir. 2002) ......................................................................... 9

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004) ........................................................................ 12, 13

*In re SCB Computer Tech., Inc. Sec. Litig.*,
    149 F. Supp. 2d 334 (W.D. Tenn. 2001) ................................................................. 11, 12

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
    124 F. Supp. 2d 505 (S.D. Ohio 2000) ........................................................................ 7

*In re Sunterra Corp. Sec. Litig.*,
    199 F. Supp. 2d 1308 (M.D. Fla. 2002) ..................................................................... 13

*In re Wagoner Funds, Inc. Sec. Litig.*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ..................................................................... 17

*Kushner v. Beverly Enters., Inc.*,
    317 F.3d 820 (8th Cir. 2003) ...................................................................................... 10

*Langley Partners L.P. v. Tripath Tech., Inc.*,
    No. 05cv4194, 2006 WL 563053 (N.D. Cal. Mar. 7, 2006) ....................................... 17

*Mittman v. Rally's Hamburgers, Inc.*,
    278 F. Supp. 2d 831 (W.D. Ky. 2003) ....................................................................... 11

*SCB Computer Tech., Inc. Sec. Litig.*,
    149 F. Supp. 2d 334 (W.D. Tenn. 2001) ................................................................... 11

*Sprint Commc'ns Co., L.P. v. FCC*,
    76 F.3d 1221 (D.C. Cir. 1996) .................................................................................... 19

*Theoharous v. Fong*,
    256 F.3d 1219 (11th Cir. 2001) .................................................................................. 18

*Wachovia Bank & Trust Co., N. A. v. National Student Mktg. Corp.*,
    650 F.2d 342 (D.C. Cir. 1980) .................................................................................... 20

## Statutes

15 U.S.C. § 78bb(f)(5)(B)(ii) ................................................................................................ 23, 24

15 U.S.C. § 78u-4(b)(1) ............................................................................................................. 7

15 U.S.C. § 78u-4(e) ................................................................................................................ 25

28 U.S.C. § 1658(b) ......................................................................................................... 3, 15, 20

## Other Authorities

S. Rep. No. 105-182 (1998) ...................................................................................................... 23

SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 19, 1999) .............................. 9

## <u>INTRODUCTION</u>

While replete with rhetoric, plaintiffs' opposition does *nothing* to paper over the core defect of their securities fraud case against KPMG:  they have pleaded, at best, a theory of negligence that is not actionable under Section 10(b) and Rule 10b-5.  Remarkably, plaintiffs do not cite, let alone address, *SEC v. Steadman*, 967 F.2d 636, 641-42 (D.C. Cir. 1992), which articulates this Circuit's demanding scienter requirement for Section 10(b) claims.  Plaintiffs also grapple with *none* of the authority confirming the stringency of the PSLRA's pleading requirements in claims against accountants.  *See* KPMG Mem. 1-3, 20-23 (collecting cases).

Instead, plaintiffs devote the bulk of their opposition to rewriting the allegations in their own complaint.  Although plaintiffs protest to the contrary, the fundamental theory of the complaint *as actually pleaded* is that KPMG must have engaged in deliberate wrongdoing because Fannie Mae's GAAP violations were so obvious and "black and white," Opp. 1, that KPMG must have known the company's financial statements did not materially comply with GAAP, and that KPMG had information available to it that should have alerted it management's scheme to smooth earnings and to hit earnings targets.  But those allegations at most constitute claims of malpractice, not fraud—and Section 10(b) authorizes damages only for fraud.

Moreover, plaintiffs overlook a host of particularized allegations in their own complaint that are fundamentally incompatible with the "strong inference" of fraud required by the PSLRA, including that:

- KPMG pushed Fannie Mae to improve its accounting, KPMG Mem. 15, and

- Fannie Mae concealed information that would have helped KPMG uncover management's scheme to manage earnings in order to smooth earnings and hit earnings targets.  KPMG Mem. at 23-27.

Viewing the complaint in its entirety—as plaintiffs urge this Court to do, Opp. 30-32—those allegations devastate plaintiffs' claim that they have pleaded a "strong inference" of scienter.

Plaintiffs are free to cast about the terms "fraud" and "scienter" in their opposition, but they are not free to invent new allegations in their briefing papers or to have this Court draw inferences that are at war with specific, particular factual allegations in the complaint.

**1.** Plaintiffs' Section 10(b) claim must be dismissed because they have not alleged particularized facts that KPMG had "actual knowledge" of fraud at Fannie Mae, or that KPMG "actually knew" or "actually believed" that its annual audit opinions were false. The section in plaintiffs' opposition entitled "Plaintiffs Have Alleged KPMG's Actual Knowledge of GAAP Violations," Opp. 11-18, rests entirely on allegations that KPMG understood the accounting treatment and accounting policies adopted by Fannie Mae as to certain issues and that these accounting positions were later deemed to be noncompliant with GAAP. But knowledge of accounting policies later determined to be noncompliant with GAAP is simply not "actual knowledge" of fraud; it is not even close. KPMG may well have understood the accounting treatment adopted by Fannie Mae, but there are no particularized factual allegations that KPMG actually believed that any of the accounting judgments made by Fannie Mae rendered Fannie Mae's overall financial statements materially false, let alone that KPMG knew or believed that Fannie Mae adopted particular accounting treatments to smooth earnings or hit bonus targets.

Plaintiffs also err in contending that that they have pleaded KPMG's extreme recklessness. *See* Opp. 18-25. That contention rests on little more than plaintiffs' theory, frequently raised and repudiated in suits against auditors, that KPMG had access to information that should have alerted it to management's accounting improprieties and that KPMG possessed an economic incentive to continue its business relationship with Fannie Mae. Several courts have confronted these types of allegations and concluded that they do not adequately plead scienter. Plaintiffs also point to a set of purported "red flags" that KPMG is alleged to have

ignored, but these "red flags" at most state a claim for negligence.  The do not give rise a strong inference that KPMG acted with an intent to defraud investors.

Finally, plaintiffs have not pleaded loss causation adequately.  All elements of fraud must be pleaded with particularity.  Plaintiffs point to no particularized factual allegations in their complaint alleging that KPMG's audit opinions (as opposed to other forces) caused their loss.

**2.**  Plaintiffs also err in suggesting that their Section 18 claim is timely.  The complaint makes clear that plaintiffs were at least on "inquiry notice" of their Section 18 claim by late 2004, when news of Fannie Mae's accounting troubles first surfaced, and when numerous class actions were filed.  Plaintiffs' lawsuit, which was not filed until January 2006, is therefore untimely under Section 18's one-year statute of limitations.  Plaintiffs are incorrect that the two-year statute of limitations of the Sarbanes-Oxley Act governs their Section 18 claim.  Sarbanes-Oxley extended the statute of limitations only for "claim[s] of fraud."  28 U.S.C. § 1658(b).  Section 18 does not require a plaintiff to prove that the defendant acted with scienter and therefore is not a "claim of fraud."

**3.**  Plaintiffs are also incorrect that their state-law claim survives federal preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  Plaintiffs do not dispute that SLUSA's plain text preempts their claim.  Plaintiffs contend instead that preemption in this context would be contrary to SLUSA's "purpose."  But SLUSA's purpose is to prevent circumvention of the PSLRA's heightened pleading requirements and to establish a uniform body of federal law to govern complex litigation involving nationally traded securities.  Preempting plaintiffs' state-law claim effectuates both of those purposes.

**4.**  Finally, at a bare minimum, the court should dramatically truncate the alleged loss period.  In light of the disclosures in the OFHEO Report, which plaintiffs concede they read,

plaintiffs as a matter of law cannot have detrimentally relied on KPMG's audit opinions on or

after September 22, 2004, the date that report issued.

<u>**ARGUMENT**</u>

**I.    The Complaint Does Not Adequately Allege That KPMG Violated Section 10(b)
       And Rule 10b-5.**

**A.    Plaintiffs Misstate The Scienter Requirement.**

Plaintiffs premise their opposition on two erroneous assertions about the legal framework

applicable to securities fraud claims against auditors.

*First*, plaintiffs dispute the strictness of the pleading requirement applicable to securities

fraud cases against auditors.  Opp. at 9.  But as several courts have recognized, the pleading

requirements in securities fraud suits are "especially stringent when the claim is brought against

an outside auditor."  *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004); *see also*

*Reiger v. PriceWaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007-08 (S.D. Cal. 2000) ("it is

almost always more difficult to establish scienter on the part of the accountant than on the part of

its client").  This is not only because an auditor operates in a client-controlled environment,

depends "on information supplied by the client," and is called upon to apply "complex

accounting standards" (*D.E. & J. Ltd. P'Ship v. Conaway*, 284 F. Supp. 3d 719, 740 (E.D. Mich.

2003)), but also because in an audit opinion the "auditor certifies only that it exercised

appropriate, not flawless, levels of professional care and judgment."  *In re Ikon Office Solutions,*

*Inc. Sec. Litig.*, 277 F.3d 658, 673 (3d Cir. 2002).  Indeed, the audit opinions at issue in this

complaint represent KPMG's belief that Fannie Mae's financial statements were stated "fairly"

and in accordance with GAAP in all "material" respects—not in "each and every respect."

In light of the distinctive role occupied by auditors in the securities markets, and given

Congress's express determination when enacting the PSLRA that "accountants and other

4

professionals are the prime targets of abusive securities lawsuits" (H. Rep. No. 104-98, at 9 (1995)), and Congress's goal to minimize "the targeting of deep pocket defendants, including accountants . . . without regard to their actual culpability" (H. Conf. Rep. 104-369, at 31 (1995)), the PSLRA's text and purpose requires plaintiffs to plead particular facts against "an independent auditor entail[ing] a mental state so culpable that it approximates an actual intent to aid in the fraud being perpetrated by the audited company." KPMG Mem. at 1-5, 21-22.

That stringent pleading standard is even more demanding when paired with the substantive scienter requirement that prevails in the D.C. Circuit. This Circuit has held that Section 10(b) scienter requires, at a minimum, a showing of "**extreme recklessness**." *Steadman*, 967 F.2d at 641 (emphasis added). This form of recklessness "is not merely a heightened form of ordinary negligence." *Saba v. Compagnie Nationale Air France*, 78 F.3d 664, 669 (D.C. Cir. 1996). Section 10(b) scienter in the D.C. Circuit requires a showing that approximates actual intent. *Steadman*, 967 F.2d at 641 (Section 10(b) scienter is a "form of intent").

Plaintiffs offer no compelling response to this point. They contend that a showing of *ordinary* recklessness suffices, Opp. at 11, but that is patently wrong, and plaintiffs do not even cite *Steadman*, the authoritative case on Section 10(b) recklessness in this Circuit. Plaintiffs also invoke a string-cite of cases "in which plaintiffs have been found to have stated Section 10(b) claims against auditors," Opp. at 9, but each complaint must be judged on its own allegations. That *some* securities fraud plaintiffs have *sometimes* successfully pleaded claims against auditors says nothing about whether plaintiffs have carried their pleading burden here.

*Second*, plaintiffs contend that a court must "draw all reasonable inferences from the allegations in favor of the plaintiffs." Opp. at 8. That is also incorrect. The PSLRA requires courts on a motion to dismiss to consider *all* reasonable inferences, including those inferences

5

that favor the defendant.  *See Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (holding

that PSLRA requires "**all** reasonable inferences to be drawn from the allegations, including

inferences unfavorable to the plaintiffs" (emphasis in original)); *Helwig v. Vencor, Inc.*, 251 F.3d

540, 553 (6th Cir. 2001) (holding that the "strong inference" requirement means that "plaintiffs

are entitled only to the most plausible of competing inferences").  The "strong inference"

requirement "significantly strengthens the pre-PSLRA standard under Rule 12(b)(6)."  *Helwig*,

251 F.3d at 553.  That is why the Court should not draw inferences that contradict specific

allegations in the complaint or that otherwise belie common sense.

> **B.  Plaintiffs Have Failed To Plead That KPMG Had Actual Knowledge Of The Alleged Fraud At Fannie Mae.**

Remarkably, plaintiffs contend that they have pleaded particular facts showing that

KPMG had "actual knowledge" of the alleged "fraud" at Fannie Mae.  Opp. 12-18.  That is

wrong.  The fraud at Fannie Mae, as alleged in the complaint, was a concerted effort by Fannie

Mae's executives to mislead investors by smoothing and managing earnings in an effort to

procure large bonuses.  *E.g.*, Second Am. Compl. ¶ 75.  The complaint nowhere pleads that

KPMG knew that this alleged effort was afoot.  Opp. at 13 (citing Second Am. Compl. ¶¶ 171,

173-74) (attributing fraud to Fannie Mae management).  Indeed, the entire theory of plaintiffs'

case is that KPMG failed to detect and stop the alleged fraud.  *See* KPMG Mem. at 25 & n.13.

Plaintiffs also err in suggesting that they have alleged particular facts showing that

KPMG had actual knowledge that its audit opinions were materially false or misleading.  Opp. at

13-18.  This is a blatent and demonstrable rewriting of the complaint's allegations.  *Erwin v.

United States*, No. 05-1698, 2006 WL 2660296, at *4 (D.D.C. Sept. 15, 2006) ("[f]actual

allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6)

motion"); *Sierzega v. Ashcroft*, 358 F. Supp. 2d 3, 5 n.2 (D.D.C. 2005) (Leon, J.) (declining to

consider assertions in opposition brief because "facts . . . not alleged in the complaint . . . are not considered in the analysis of a 12(b)(6) motion to dismiss").

To begin with, virtually none of plaintiffs' allegations are even "specific facts." *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 514 (S.D. Ohio 2000). They are simply bald, factually unsupported assertions that KPMG "knew" this or "knew" that. *E.g.*, Second Am. Compl. ¶¶ 233 ("KPMG . . . was aware"), 299 ("KPMG was aware"). The PSLRA requires more than an assertion—it requires particular facts showing knowledge of fraud. *See, e.g.*, *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388-89 (9th Cir. 2002) (plaintiff must plead facts in "great detail"). Any plaintiff can assert that an outside auditor was "aware" of a practice or "knew" that a practice violated GAAP. That pleading tactic, without more, comes nowhere close to satisfying the PSLRA. 15 U.S.C. § 78u-4(b)(1); *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 885 (W.D.N.C. 2001) (the PSLRA requires the plaintiff to plead the "who, what, where, why and when"). Yet that is what plaintiffs have pleaded.

Moreover, many of the assertions in plaintiffs' *opposition* are demonstrable distortions of the complaints' *allegations*. To cite just one example, in the section entitled "Plaintiffs Have Alleged KPMG's Actual Knowledge Of Material GAAP Violations," plaintiffs contend that KPMG "permitted" Fannie Mae to create synthetic REMICs without justification, and then "ignored the transactions completely," and gave Fannie Mae "carte blanche to continue improperly combining such securities in its books." Opp. at 15. But the complaint's *actual allegations* state that KPMG "lost track of the issue," and even quotes a Fannie Mae document in which the Fannie Mae defendants admit that "KPMG has apparently forgotten about the transactions, and we have not brought the issue to the attention . . . we have made every effort to keep our analysis confidential." Second Am. Compl. ¶ 310. Plaintiffs' opposition dresses up

this allegation to say that KPMG "knew" of fraud, but on their face these allegations *at most* demonstrate negligence. There is a world of difference between negligence and "an actual intent to defraud"—and allegations such as these come nowhere close to establishing scienter.

Even under the most generous reading of the complaint, plaintiffs allege only that KPMG knew of the accounting *policies* adopted by Fannie Mae. *See* Second Am. Compl. ¶ 195 (KPMG "signed off" on one aspect of Fannie Mae's FAS 133 policy); ¶¶ 171, 757 (KPMG participated in developing Fannie Mae's FAS 133 policy); ¶ 233 (KPMG was aware of Fannie Mae's FAS 115 policy); ¶ 245 (KPMG knew of Fannie Mae's loan-allowance policies); ¶ 299 (KPMG knew of Fannie Mae's accounting for other-than-temporary investment impairment); ¶ 309 (KPMG knew of Fannie Mae's accounting for interest-only securities and REMICs); ¶¶ 386-87 (KPMG knew of Fannie Mae's accounting for reserves for its investments in synthetic fuel partnerships). But there are *no* allegations that KPMG believed these policies rendered Fannie Mae's financial statements as a whole materially noncompliant with GAAP. There are *no* allegations that KPMG knew or believed that Fannie Mae management adopted particular accounting positions in order to manipulate earnings. And there are *no* allegations that KPMG believed the specific audit opinions KPMG issued from 2001-2003 were materially false or misleading. Those omissions doom this complaint.

The two significant accounting issues featured in the complaint involve FAS 91 and FAS 133. With respect to FAS 91, plaintiffs assert that "KPMG knew" that Fannie Mae's "materiality threshold" for accounting for calculating premiums and discounts on loans "had no support in GAAP." Opp. 14 (citing Second Am. Compl. ¶ 141). But plaintiffs' complaint alleges no *particular* facts—not in paragraph 141 or elsewhere—that KPMG believed that Fannie Mae's FAS 91 accounting did not comply with GAAP. Paragraph 141 alleges only that

"KPMG agreed with Fannie Mae's prospective treatment of the catch up" so long as it fell within a materiality threshold. Although that treatment was later deemed to be incorrect, there is no allegation that KPMG *at the time* believed it was incorrect. Indeed, at most these are allegations that KPMG erred in applying a complex accounting standard, not that it acted with the actual intent to defraud investors that *Steadman* requires. 967 F.2d at 641; *see also Saba*, 78 F.3d at 669. That is not enough to satisfy the PSLRA.

Indeed, far from demonstrating KPMG's knowledge of fraud, the true allegation in paragraph 141 shows that KPMG was discharging its duties as an auditor in good faith, not that its conduct amounted to "no audit at all." *DSAM*, 288 F.3d at 390; *see also* KPMG Mem. at 23-24. The SEC has stated that numerical thresholds can be a useful step in evaluating compliance with GAAP. *See* SEC Staff Accounting Bulletin No. 99 ("SAB 99"), 64 Fed. Reg. 45150, 45151 (Aug. 19, 1999) ("The use of a percentage as a numerical threshold . . . may provide the basis for a preliminary assumption that . . . a deviation of less than the specified percentage with respect to a particular item on the registrant's financial statements is unlikely to be material."). Plaintiffs' own allegations, in other words, show that KPMG was exercising professional judgment in good faith. While that judgment has now been questioned, these specific allegations do *not* support a fraud claim. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680, 698 (E.D. Pa. 2001), *aff'd* 277 F.3d 658 (3d Cir. 2002) (finding that an auditor's efforts to "to try to ferret out and improve the faulty controls" undercuts plaintiffs' scienter claims).

With respect to FAS 133, plaintiffs' opposition also makes much of the allegation that KPMG "knew" that Fannie Mae's FAS 133 policy did not comply with GAAP. Opp. at 12-13 (citing Second Am. Compl. ¶ 13). But once again, that allegation is not sufficiently particularized to satisfy the PSLRA's scienter requirement because "it is not enough for plaintiffs

to merely allege that defendants 'knew' their statements were fraudulent." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004). As one court has observed, "[w]ithout allegations of particular facts demonstrating **how** the defendants knew of the scheme at the time they made their statements . . . a showing in hindsight that the statements were false does not demonstrate fraudulent intent." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003) (rejecting a similar "actual knowledge" argument).

Plaintiffs also point to a cryptic statement purportedly set forth in a KPMG workpaper that according to plaintiffs acknowledges that Fannie Mae's FAS 133 accounting was not in strict compliance with GAAP. Opp. at 13 (citing ¶¶ 193, 195-98). But that allegation does not carry plaintiffs' burden either. KPMG's audit reports stated the opinion that Fannie Mae's financial statements *materially* complied with GAAP. Second Am. Compl. ¶¶ 469, 496, 528, 550. Plaintiffs' isolated allegation that KPMG knew that a lone aspect of FAS 133 was not in literal compliance with GAAP does not create a strong inference that KPMG believed that Fannie Mae's financial statements *as a whole* did not comply with GAAP. *See Danis v. USN Communications, Inc.*, 121 F. Supp. 2d 1183, 1193-94 (N.D. Ill. 2000) (dismissing complaint against auditors because allegations gave "no indication that [the auditor] thought these deficiencies created a risk of *material* inaccuracies").

The absence of such allegations is dispositive, because KPMG's audit opinions did not express a belief that Fannie Mae's financial statements complied with GAAP in *all respects*, but rather that they were presented fairly in accordance with GAAP in all "material" respects. And here there are *no* particularized factual allegation showing that KPMG "acted in bad faith in treating the proposed adjustments as immaterial." *In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 367 (W.D. Tenn. 2001); *see also Mittman v. Rally's Hamburgers, Inc.*, 278

10

F. Supp. 2d 831, 837 (W.D. Ky. 2003) (concluding that an auditor did not act with scienter where it "evaluated the impact of the recommended adjustment on the financial statements taken as a whole and concluded that the recommended adjustments were not material").

  **C. Plaintiffs Have Failed To Allege Facts Warranting A Strong Inference That KPMG Acted With Extreme Recklessness.**

  Unable to show that they have pleaded KPMG's "actual knowledge" of fraud, plaintiffs must pin their hopes on showing that they have pleaded particular facts giving rise to a strong inference that KPMG acted with "extreme recklessness." Opp. at 18-32. They have not satisfied *that* burden either.

  Plaintiffs rely on a series of arguments that KPMG's opening brief analyzed and refuted:

  **Size of the restatement.** Plaintiffs contend that the size of the restatement shows that KPMG must have known about and participated in a fraud. Opp. at 18-19. As KPMG has already explained, many courts have adopted the better view that "[a]llowing an inference of scienter based on the magnitude of fraud 'would eviscerate the principle that accounting errors alone cannot justify a finding of scienter.'" KPMG Mem. at 27-28 (quoting *Fidel v. Farley,* 392 F.3d 220, 230 (6th Cir. 2004)); *see also In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 367 (W.D. Tenn. 2001) (declining to follow *In re Microstrategies*, *In re Baan*, and *Rehm*). The size of a restatement says *nothing* about whether KPMG possessed an "actual intent to aid in the fraud," *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004), because it does not bear at all on KPMG's subjective intent—which is what the scienter pleading standards require. *See Steadman*, 967 F.2d at 641.

  **GAAP and GAAS violations.** Plaintiffs next contend that they have pleaded scienter because KPMG violated GAAP and GAAS in the conduct of its audits. Opp. at 19-20; *see also* at 24 (alleging violations of the internal-control provisions of GAAS). KPMG has already

shown that such allegations do not contribute to a strong inference of scienter and will not rehash that argument here. KPMG Mem. at 24-27. Plaintiffs' allegations that Fannie Mae's internal controls were inadequate, for example, does not come close to pleading a strong inference of scienter. *See In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d at 363 ("a plaintiff cannot establish scienter by arguing that an independent auditor ignored a client's lack of internal controls"). Nor does plaintiffs' allegation that KPMG was "responsible" for correcting accounting controls, Opp. at 24, because failing in such a duty at most would state a claim for negligence. Moreover, plaintiffs' own allegations demonstrate that KPMG worked regularly with Fannie Mae to *improve* its internal controls. *See* KPMG's Mem. at 15, 23-24; *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 387 (D. Md. 2004) (the auditor defendant's awareness of weak internal controls does not "mak[e] them complicit in the subsequent fraudulent accounting problems given that [the auditor] was actively raising the issue of weak internal controls with Royal Ahold's management"). Much as they might prefer to, plaintiffs cannot now disavow these allegations, which are inconsistent with a fraud claim.

**Red Flags.** Plaintiffs contend that KPMG overlooked various "red flags." Opp. at 20-21. But plaintiffs mostly identify as "red flags" the very accounting mistakes that KPMG is alleged to have made. *See* Opp. at 21 (citing the alleged inadequacy of Fannie Mae's unchanging loan allowance, lack of "appropriate" documentation for accounting entries, and the making of purportedly improper adjustments to the company's books). "It is established, however, that the purported red flags cannot simply 're-hash' the alleged GAAP violations." *Garfield v. NDC Health Corp.*, No. 05-14765, 2006 WL 2883238, at *9 (11th Cir. Oct. 12, 2006). Those allegations do nothing more than that.

The other so-called "red flags" are commonplace structural features of Fannie Mae's organizational and compensation system.  Opp. at 20-21.  It is common, for example, for corporate employees to have their compensation tied to a company's stock performance, and most corporations in America seek to grow their profits, and most even try to do so "aggressively."  *See, e.g., In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 388 (D. Md. 2004) ("It is not uncommon . . . for large, publicly held companies to tie compensation to earnings results or to have aggressive growth strategies, and plaintiffs do not allege that these circumstances provided a motive for the [auditor] to participate in the alleged fraud); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1334 (M.D. Fla. 2002) (rejecting plaintiffs' contention that a company's "aggressive growth strategy" was a sufficient "red flag" and noting that there was "no assertion that [the auditor] itself had a motive to participate in the alleged fraud").  The desire to grow profits and reach earnings targets is not a "red flag" sufficient to satisfy the PSLRA's scienter requirement.

Also insufficient is the allegation that KPMG knew that Fannie Mae's management desired to "smooth" earnings.  Opp. at 20-21.  That fact would have alerted no reasonable auditor to the existence of potential fraud given that Fannie Mae employed derivatives to make their economic performance less volatile.  *See, e.g.*, Second Am. Compl. ¶ 161.  For the same reason, it is hardly a smoking-gun that Fannie Mae reported "stable and growing financial results, despite the Company's vulnerability to changes in interest rates."  Opp. at 21.  That is the financial performance one might expect from a company that had a substantial portfolio of derivatives offsetting its interest-rate risk, as Fannie Mae did.

Plaintiffs also make much of features of Fannie Mae's internal corporate structure that they contend point to a heightened risk of fraud, such as the "responsibility of the Chief

Financial Officer." Opp. at 21. But plaintiffs offer no particularized facts showing why those facts would have been inherently suspicious—particularly where, as here, the company's executives deliberately conceal the manipulation from their auditor. *See* Second Am. Compl. ¶ 310. Those generic features of Fannie Mae's organizational chart are not *particular* facts contributing to a strong inference of KPMG's scienter.

Finally, plaintiffs once again stress two particular "red flags": Roger Barnes' allegations of accounting improprieties at Fannie Mae, and KPMG's decision to disagree with an income-recognition decision in 1998. Opp. at 22-25. But plaintiffs' own allegations show that KPMG fully addressed Roger Barnes' allegations, KPMG Mem. at 35-36, and where an auditor "t[akes] action" after an employee raises internal concerns about a company's accounting, an auditor cannot be seen to have acted with scienter in failing to uncover additional accounting errors. *Garfield*, 2006 WL 2883238, at *10.

As for the 1998 audit difference, and contrary to plaintiffs' insinuations, Opp. at 22-23, *not a single sentence* in the 944-paragraph complaint alleges particular facts showing that KPMG knew that *any* accounting adjustment Fannie Mae made was *for the purpose* of manipulating earnings. The complaint instead alleges that Fannie Mae made a $199 million adjustment to its income, and that Fannie Mae's final earning's figure hit its executives' bonus targets. Second Am. Compl. ¶ 772. But in any given fiscal year—in which Fannie Mae made literally thousands of judgment-calls about how to account for its massive investment portfolio—it would have been impossible for KPMG to have traced any particular judgment as "responsible" for Fannie Mae's final earnings figure. The deferral of $199 million in expense for fiscal year 1998 was no more "responsible" for Fannie Mae' final earnings figure than were any of the entirely innocent accounting decisions made by Fannie Mae that year. That lone audit difference therefore does

not show that KPMG knew that Fannie Mae's management made this adjustment for the purpose of manipulating earnings. Moreover, this adjustment occurred well before the alleged fraud, as the statute of limitations bars any claims predating 2001. *See* 28 U.S.C. § 1658(b) (requiring securities fraud plaintiffs to bring their claims no later than five years after the violation). Plaintiffs allege no particular facts connecting this incident to the fraud they contend occurred years later.

There can be little doubt that accepting these allegations as sufficient to establish scienter would expand the scope of Section 10(b) liability for accountants markedly beyond the limits proscribed by Congress. In *every* case involving a restatement, it is always possible to identify information that was available to the auditor that could have led the auditor to conclude that the audit client's financial statements did not comply with GAAP, because a restatement is only appropriate if the errors could have been discovered on the basis of information that was available at the time the statements were issued. Similarly, in *every* case involving a restatement, it is also always possible for plaintiffs to claim that the auditors had an economic incentive to ignore this information in order to earn audit or non-audit fees. But to credit these allegations as stating a cognizable fraud claim would effectively mean that auditors could be sued for fraud every time a company restates its financials. It is inconceivable that Congress intended the PSLRA to permit that result. Yet that is precisely what plaintiffs urge the Court to adopt here.

D.    **Plaintiffs' Allegations Individually And Collectively Fail To Establish Scienter.**

Whether viewed in isolation or in the aggregate, the complaint's allegations are insufficient to establish scienter. Plaintiffs suggest that "the law is clear" that a succession of generic facts they have alleged may collectively warrant a strong inference of scienter. Opp. 30. But plaintiffs overlook the cases KPMG cited explaining that "fraud allegations should be

analyzed individually to determine whether each alleged incident of fraud has been pleaded with particularity." *In re Rockefeller Ctr. Props. Inc. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002); *see also In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 719, 777 (S.D. Ohio 2006) (Because "[p]laintiffs have failed to allege [the auditor's] scienter as to any of these alleged mistakes **individually**, their allegations must also fail when considered in their totality.") (emphasis in original).  That rule is dictated by the PSLRA, which mandates that plaintiffs allege not only a "strong inference" of scienter, but also that the strong inference result from *particular facts*.  The only way to determine whether plaintiffs have alleged facts with sufficient particularity is to examine each of their allegations individually—and as demonstrated above, plaintiffs have alleged *no* particular facts giving rise to that strong inference.  Thus, plaintiffs cannot string together a series of unrelated, generic allegations and sum them together to create a "strong inference" of fraud.  *In re Rockefeller*, 311 F.3d at 224 ("If, after alleging a number of events purportedly substantiating a claim of fraud, none of those events independently satisfies the pleading requirement of factual particularity, the complaint is subject to dismissal under" the PSLRA.).  But even if the allegations are evaluated together, plaintiffs' allegations are insufficient to satisfy the PSLRA's scienter requirements.  Allegations that KPMG exercised professional judgment, pushed Fannie Mae to improve its accounting policies, and that management concealed its practices from KPMG do not give rise to a strong inference that KPMG acted with an intent to defraud investors.

### E.     Plaintiffs Have Failed To Plead Loss Causation.

The complaint also should be dismissed because plaintiffs have failed to plead loss causation with particularity.  Plaintiffs contend that "KPMG cites no authority" requiring plaintiffs to plead loss causation with particularity.  Opp. at 9 n.3.  But KPMG's opening memorandum cited both Federal Rule of Civil Procedure 9(b) and *In re Wagoner Funds, Inc.*

16

*Securities Litigation*, 382 F. Supp. 2d 1173, 1178 (N.D. Cal. 2004), both of which require

plaintiffs to do just that.  *See* KPMG Mem. at 37.  And other courts agree.[1]  Plaintiffs offer no

authority supporting *their* position beyond suggesting that in *Dura Pharm* the Supreme Court

decided that loss causation need not be pleaded with particularity.  Opp. at 9 n.3.  But plaintiffs

are incorrect, because *Dura Pharm* simply assumed *without deciding* that this was the case.  *See*

125 S. Ct. at 1634; *see also In re First Union Corp.*, 2006 WL 163616 at *6 (noting that *Dura*

*Pharm* "expressly declined to consider whether loss causation must be pled with particularity").

Indeed, the fact that the Supreme Court upheld the dismissal of the complaint in *Dura even* under

the notice-pleading standard of Federal Rule of Civil Procedure 8 confirms that plaintiffs' similar

loss-causation allegations are legally insufficient under the heightened standard of Rule 9(b).

Plaintiffs' loss causation allegations are not pleaded with sufficient particularity.  First,

plaintiffs have not pleaded that KPMG's audit opinions—as opposed to the numerous other false

statements plaintiffs allege the Fannie Mae defendants made—were a substantial factor in

causing their alleged loss.  Second, plaintiffs do not allege that they have realized their losses by

selling their securities after "the truth emerged."  *See* KPMG Mem. at 37-39.

The opposition confirms that the complaint alleges no particularized facts showing that

KPMG's audit opinions were a "significant  . . cause" of their alleged losses.  *Robbins v. Koger*

*Props., Inc.*, 116 F.3d 1141, 1147 (11th Cir. 1997).  Plaintiffs point to a single paragraph of their

complaint, Opp. at 35 (citing Second Am. Compl. ¶ 781), but that two-sentence paragraph

contains only the conclusory speculation that, had KPMG issued qualified audit opinions,

plaintiffs "would have been notified of the substantial risk they were assuming by investing in

---

[1] *See In re First Union Corp. Sec. Litig.*, No. 3:99cv237, 2006 WL 163616, at *6 (W.D.N.C. Jan. 20, 2006) ("every element of a common law fraud action must be pled with particularity"); *Langley Partners L.P. v. Tripath Tech., Inc.*, No. 05cv4194, 2006 WL 563053, at *3 (N.D. Cal. Mar. 7, 2006) (plaintiff must plead "loss causation with particularity in order to state a claim").

Fannie Mae." Second Am. Compl. ¶ 781. That lone allegation not only lacks the required particularity, but also fails to explain how a qualified audit opinion alone would have alerted investors to Fannie Mae's scheme to manipulate earnings.

## II.    Plaintiffs' Section 18 Claim Is Time Barred.

Plaintiffs' Section 18 claim is time-barred. Plaintiffs offer two reasons why this is not so: first, because they lacked notice of their claims until January 25, 2005, and, second, because Sarbanes-Oxley extended the statute of limitations for Section 18. Both are wrong.

### A.    Plaintiffs Were On Notice Of Their Cause Of Action In September 2004.

Contrary to their assertions, plaintiffs' cause of action accrued before one year preceding the January 25, 2006, filing of their suit. Plaintiffs assert that their cause of action did not expire before January 25, 2006, because they had not yet discovered the facts constituting their cause of action. Opp. at 38-39. The allegations in their complaint squarely belie this assertion.

Securities fraud statutes of limitations begin to run when the plaintiff knows, or should have known, sufficient facts to enable him to begin investigating whether to sue. *See Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1336 (7th Cir. 1997) (Posner, J.); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 420 (S.D.N.Y. 2004) ("The statute of limitations begins to run once a plaintiff is put on either actual notice or constructive notice, also known as inquiry notice, of the facts giving rise to his claim."). Inquiry notice exists when the plaintiff knows "facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed." *Theoharous v. Fong*, 256 F.3d 1219, 1228 (11th Cir. 2001).

Plaintiffs were, at the very least, on inquiry notice of their claims well more than a year before the filing of their complaint. Their complaint repeatedly concedes that plaintiffs knew of allegedly material misstatements in Fannie Mae's SEC filings before January 25, 2005. Plaintiffs allege that the September 22, 2004, OFHEO Report "first disclosed OFHEO's finding

that Fannie Mae's financial results had been intentionally distorted." Second Am. Compl. ¶ 867.[2] The disclosure of that report, of course, triggered a wave of securities fraud class actions filed in the late 2004 alleging accounting fraud at Fannie Mae. Moreover, plaintiffs allege that on December 22, 2004, Fannie Mae "admitted its financial statements for [2001 to 2004] were false" and "that its previously issued financial statements should not be relied upon." Second Am. Compl. ¶ 80. Those allegations plainly were "public disclosures in the media about the financial condition of the corporation and other lawsuits alleging fraud committed by the defendants, that provide the plaintiff with sufficient storm warnings to alert a reasonable person to the probability that there may have been either misleading statements or material omissions involved in the sale of the securities at issue" causing their Section 18 cause of action to accrue. *In re Alstom SA*, 406 F. Supp. 2d at 421. It strains belief that they were insufficient reason for plaintiffs to begin investigating whether to sue.

To evade this fatal defect in their Section 18 claim, plaintiffs argue that the statute of limitations did not begin to run until each and every single accounting misstatement was revealed to them. Opp. at 39 (plaintiffs could not plead a claim "because many of the Company's GAAP violations had not yet been disclosed"). But there is simply no requirement that a plaintiff know of *every* accounting violation before he is on notice of the violation and his claim accrues. *See Sprint Commc'ns Co., L.P. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996) ("Accrual does not wait until the injured party has access to or constructive knowledge of all the facts required to support its claim. . . . Once the prospective plaintiff is on notice that it might have a claim, it is required to make a diligent inquiry into the facts and circumstances that would support that claim.") (citations omitted); *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 352 (2d Cir. 1993) ("An investor

---

[2] Plaintiffs' complaint is replete with allegations that they knew of errors in Fannie Mae's SEC filings in September 2004. *See, e.g.*, Second Am. Compl. ¶ 1-2; ¶ 78; ¶ 676.

does not have to have notice of the entire fraud being perpetrated to be on inquiry notice."); *In re Alstom SA*, 406 F. Supp. 2d at 421 ("It is not necessary [for inquiry notice] that this information put a plaintiff on notice of the entire wrongdoing.").

In any event, plaintiffs are incorrect that they could not file a Section 18 claim before January 25, 2005 because they could not adequately plead individualized reliance on KPMG's audit opinions before then.  Opp. at 39.  Most tellingly, plaintiffs did not and have never done so. In their initial complaint filed in January 2006, plaintiffs' reliance allegations in no way rested on disclosures that occurred after September 2004.  Compl. ¶ 383-86.  And plaintiffs' attempt to plead reliance in ¶ 668 of their Second Amended Complaint does not at all rely on disclosures that occurred after December.[3]  The allegation that plaintiffs read the SEC filings "promptly following their publication" in no way depends on facts learned after late 2004.

## B.    Plaintiffs' Section 18 Cause Of Action Is Not A "Fraud Claim."

Plaintiffs also contend that their Section 18 claim is timely under the longer two-year Sarbanes-Oxley statutes of limitations, which applies to "claims of fraud."  Opp. at 36-37.  Yet, many provisions of the securities laws have the intent of ensuring accurate disclosures to investors.  The issue is not whether Section 18's purpose is to protect against market manipulation, but whether it is a "claim of fraud," 28 U.S.C. § 1658(b).  It is not.  As plaintiffs concede, Opp. at 36, a Section 18 claim does not require the plaintiff to establish any level of scienter.  *See, e.g.*, *Wachovia Bank & Trust Co., N. A. v. National Student Mktg. Corp.*, 650 F.2d 342, 357 (D.C. Cir. 1980).  Scienter, however, is the essence of a fraud claim.

---

[3]  Alleging that "[p]laintiffs' representatives participated in the Company quarterly conference calls, and read the Company's press releases and Form 10-Q and 10-K filings (including the financial statements and notes thereto) *promptly following their publication*.  Plaintiffs read and relied on the Company's financial statements, and relied on the accuracy and completeness of all of the Defendants' public disclosures when making their investments decisions."  Second Am. Compl. ¶ 668 (emphasis added).

Plaintiffs' reliance on *Ernst & Ernst v. Hochfelder*, and opinions citing it, is misplaced. Far from supporting their cause, *Ernst & Ernst* undermines it by differentiating Section 18 claims from fraud claims. In that case, the Supreme Court declared that only fraud claims could be brought under Section 10(b), because otherwise they would supplant the express, non-fraud causes of action in the securities laws—such as Section 18—and "nullify the effectiveness of the carefully drawn procedural restrictions on these express actions." 425 U.S. 185, 210 (1975). High among these "procedural restrictions" identified by the court was the shorter statute of limitations. *Id*. at 211 n.31 ("It is also significant that actions under § 18 are limited by a relatively short statute of limitations"). This Court should not lightly assume that Congress undid these "carefully drawn" procedural protections where, as here, there is no indication that Congress amended the clear terms of 15 U.S.C. § 78r(c). *In re Alstom SA*, 406 F. Supp. 2d at 420 ("nothing in either the statutory framework . . . or the legislative history of Sarbanes-Oxley show a clear intent to overrule express limitations periods stated in the securities laws").

Plaintiffs' Section 18 claim is not a "claim of fraud," and it is governed by a one-year limitations period that expired before they brought suit.

## III.    SLUSA Preempts Plaintiffs' State-Law Fraud Claim.

KPMG's opening memorandum demonstrated that under SLUSA's plain text plaintiffs' state law fraud claim is preempted. KPMG Mem. at 44-45. Plaintiffs do not dispute KPMG's analysis of the statute's plain meaning. Instead, plaintiffs contend that what SLUSA's text plainly requires is "manifestly unfair and contrary to public policy and to the purpose of SLUSA." Opp. at 42. But those considerations are irrelevant, for plaintiffs do not and cannot contend that they render KPMG's reading of the statute "absurd," and if "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not

absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000).

In any event, plaintiffs are wrong that this result is contrary to SLUSA's purpose or is somehow unfair. SLUSA was enacted in 1998 as a follow-on to the PSLRA when it became evident that plaintiffs were resorting to state-law suits to evade the heightened pleading requirements of the PSLRA. *See Newby v. Enron Corp.*, 338 F.3d 467, 470-72 (5th Cir. 2003). SLUSA not only preempts state law based on class actions pending in state court *or* federal court, it also expressly preempts state-law claims asserted in "groups" of lawsuits that are "joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f). The purpose was to provide a uniform federal law for multi-party securities fraud actions. S. Rep. No. 105-182, at 3 (1998) (identifying "the danger of maintaining differing federal and state standards of liability for nationally-traded securities").

Plaintiffs are thus incorrect to describe SLUSA's purpose as limited "to prevent[ing] plaintiffs from circumventing the PSLRA by filing class actions—or individual actions that have the characteristics of class actions—in state court." Opp. at 41. "Congress envisioned a broad construction" of SLUSA. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1513 (2006); *see also Newby*, 338 F.3d at 470-72 (rejecting the argument that SLUSA was designed to deal only with securities class actions). SLUSA's plain text—and its purpose—is to ensure that uniform standards are applied in cases such as these.

Plaintiffs' contention that mere "procedural" devices should not affect what substantive claims they can bring misses the point. Opp. at 42-43. Congress specifically chose procedural mechanisms—such as the class action, joinder, and consolidation—as the triggers for SLUSA preemption. 15 U.S.C. § 78bb(f) (preemption occurs when suits are "joined, consolidated, or

22

otherwise proceed as a single action for any purpose").  Congress understood the way in which national securities litigation operates in practice—multiple suits are brought in many forums and forms, which are then brought together through a variety of procedural mechanisms, including MDL transfer, consolidation, and coordination.  With that in mind, Congress preempted state-law claims asserted along with large multi-party actions, in addition to class actions, because such suits "may function very much like traditional class actions and, because they involve many plaintiffs, they may have a very high settlement value."  S. Rep. No. 105-182, at 7 (1998).

The *Evergreen* and *Franklin-Templeton* actions fall squarely within that category.  They join numerous institutional investors and have been consolidated with numerous class actions. They are being litigated together with the class actions.  And plaintiffs are coordinating discovery and other pretrial proceedings with those actions, thus partially reaping the efficiencies of the procedural device of the class action.

Moreover, contrary to their claims, Opp. at 43-44, plaintiffs are indeed attempting to evade SLUSA.  Plaintiffs ask this Court to apply a liberal notice-pleading standard to their state-law fraud claims, Opp. at 44, thus circumventing the stringent pleading standards of the PSLRA. That attempted evasion is directly contrary to SLUSA's purpose of establishing a uniform body of law governing aggregated securities fraud claims.  In addition, although plaintiffs complain that their claims should not be preempted because they chose to file a separate opt-out action, Opp. at 42, plaintiffs chose to file their opt-out action in this district where numerous consolidated class actions had been pending for well over a year.  If plaintiffs truly wished to litigate separately they could have filed purely state-law based action in a state court.  *See* 15 U.S.C. § 78bb(f)(5)(B)(ii) (only preempting actions in groups of lawsuits that are "filed in or

pending in the same court").  Plaintiffs' attempt to free-ride off the class litigation and

circumvent the pleading standards of the PSLRA should not be rewarded.

Finally, plaintiffs' charge that the defendants pursued consolidation to limit their rights,

Opp. at 43, is without merit.  SLUSA would preempt plaintiffs' state-law claims even without

consolidation, so long as the cases were merely "coordinated," as the plaintiffs urged.  15 U.S.C.

§ 78bb(f)(5)(B)(ii) (preempting "any group of lawsuits . . . in which the lawsuits are joined,

consolidated, or otherwise **proceed as a single action for any purpose**") (emphasis added).

Even under plaintiffs' own proposal that they "coordinate . . . with the Class for pretrial purposes

only" Pls.' Mem. at 5-6 (March 31, 2006), SLUSA preemption would be triggered because the

cases would be proceeding together for pretrial purposes.  And of course, plaintiffs have

acknowledged that risk all along.  *See* Pls.' Obj. to Consolidation ¶ 9.

**IV.     The Loss Period Should Not Extend Beyond September 21, 2004 And Any Reliance
         On KPMG's Audit Opinions On Or After That Date Was Unreasonable.**

KPMG argued in its motion to dismiss the consolidated class case that the court should

shorten the class period because any reliance on Fannie Mae's financial statements or on

KPMG's audit opinions on and after that date—September 22, 2004—was unreasonable as a

matter of law.  KPMG Mem. at 32-36.  Plaintiffs' complaint contains virtually identical

allegations.  *See* Second Am. Compl. ¶¶ 676 (noting issuance of OFHEO report on September

22, 2004), 696 (alleging that Fannie Mae's board announced that Fannie Mae's financial

statements "should no longer be relied upon" on December 17, 2004), 696 (alleging that Fannie

Mae on December 22, 2004 announced that it was restating its financial statements from 2001-

2003 and the first two quarters of 2004).  KPMG's argument equally applies to plaintiffs' claims,

for plaintiffs are sophisticated institutional investors that claim to have individually relied on

KPMG's audit opinions to purchase Fannie Mae stock.  Second Am. Compl. ¶¶ 668-72.

For the same reasons, plaintiffs' alleged loss period, which currently runs from January 26, 2001 to September 28, 2005, Second Am. Compl. ¶ 15, should not extend on or beyond September 22, 2004, and certainly not beyond December 17, 2004, because on or after those dates "the information correcting the misstatement or omission" was "disseminated to the market."  15 U.S.C. § 78u-4(e).

## CONCLUSION

For the foregoing reasons, as well as those stated in KPMG's opening memorandum, KPMG's motion to dismiss plaintiffs' Second Amended Complaint should be granted.

Respectfully submitted this 27th day of October 2006.

  /s/Andrew S. Tulumello
F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar. No. 468351)
Melanie L. Katsur (D.C. Bar No. 484969)
Henry C. Whitaker (D.C. Bar No. 499210)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for KPMG LLP*

## CERTIFICATE OF SERVICE

I hereby certify that I caused electronic copies of the foregoing to be transmitted on

October 27, 2006, to the following counsel registered to receive electronic service:

Joshua S. Devore
Steven J. Toll
Matthew K. Handley
Daniel S. Sommers
Cohen, Milstein, Hausfeld & Toll P.L.L.C
West Tower, Suite 500
1100 New York Ave., N.W.
Washington, D.C. 20005
*Counsel for Plaintiffs Vincent Vinci*; *State Teachers Retirement System of Ohio*; *Anne E. Flynn; Robert L. Garber*

James R. Cummins
Melanie S. Corwin
Waite, Schneider, Bayless & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
*Counsel for Plaintiffs Ohio Public Employees Retirement System*; *State Teachers Retirement System of Ohio*

Julie A. Richmond
Kathleen M. Donovan-Maher
Jeffery C. Block
Berman Devalerio Pease Tabacco Burt & Pucillo
One Liberty Square
Boston, MA 02190
*Counsel for Plaintiffs Ohio Public Employees Retirement System*; *State Teachers Retirement System of Ohio*

Alan J. Statman
Jeffery P. Harris
Statman, Harris & Eyrich LLC
3700 Carew Tower
441 Vine Street
Cincinnati, OH 45202
*Counsel for Plaintiffs Ohio Public Employees Retirement System*; *State Teachers Retirement System of Ohio*

Frank J. Johnson
Brett M. Weaver
Law Office of Frank J. Johnson
402 W. Broadway 27th Floor
San Diego, CA 92101
*Counsel for Plaintiff Sassan Shahrokhinia*

Robert W. Liles
Martyn Liles, PLLC
1054 31st Street, N.W.
Suite 415
Washington, D.C. 20007
*Counsel for Plaintiff Sassan Shahrokhinia*

Stuart M. Grant
Christine M. MacKintosh
Megan D. McIntyre
Grant & Eisenhofer, P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for the Franklin Templeton Plaintiffs*

Kevin M. Downey
Alex G. Romain
Daniel N. Marx
Joseph M. Terry, Jr.
Michelle D. Schwartz
Matthew L. Fore
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5091
*Counsel for Defendant Franklin D. Raines*

David S. Krakoff
Christopher F. Regan
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
*Counsel for Defendant Leanne G. Spencer*

Jeffrey W. Kilduff
Seth A. Aronson
Michael J. Walsh, Jr.
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Fannie Mae, Thomas P. Gerrity, Taylor C. Segue, III, William R. Harvey, Joe Pickett, Kenneth M. Duberstein, Manuel Justiz, H. Patrick Swygert, and Leslie Rahl*

Steven M. Salky
Eric R. Delinsky
Ellen D. Marcus
Holly Ann Pal
Tammy Gershoni
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-2638
*Counsel for Defendant Timothy J. Howard*

David I. Ackerman
Bingham McCutchen, LLP
2020 K Street, N.W.
Washington, D.C. 20006

James Hamilton
Swidler Berlin LLP
3000 K Street, N.W. Suite 300
Washington, D.C. 20007
*Counsel for Defendant Joe Pickett*

Erica Lynne Salmon
Piper, Rudnick, Gray & Carey LLP
1200 19th Street, N.W. Suite 700
Washington, D.C. 20036
*Counsel for Defendants Stephen B. Ashley,*
*Donald B. Marron, and Ann Korologos*

Julie E. Guttman
Baker Botts LLP
The Warner
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
*Counsel for Defendant Jamie S. Gorelick*

James D. Wareham
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
*Counsel for Defendant Daniel H. Mudd*

David Smith
Dionna K. Litvin
Jonathan S. Liss
Jonathan Michael Stern
Schnader Harrison Segal & Lewis LLP
1600 Market Street
Philadelphia, PA 19103-7286
*Counsel for Radian Group Inc.*

Richard H. Klapper
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498
*Counsel for Goldman Sachs*

    I hereby certify that I caused copies of the foregoing to be transmitted on October 30,

2006, to the following counsel by U.S. mail:

Fred F. Fielding
Barbara Van Gelder
Wiley Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendants Anne M. Mulcahy and*
*Frederic V. Malek*

Robert Romano
Bonnie Altro
Morgan, Lewis & Bockius
101 Park Avenue
New York, NY 10178-0060
*Counsel for Defendant Thomas P. Gerrity*

Shannon Ratliff
Ratliff Law Firm
600 Congress Avenue
Suite 3100
Austin, TX 78701
*Counsel for Manuel Justiz*

Daniel John Healy
John H. Doyle, III
Rhonda D. Orin
Anderson Kill & Olick LLP
2100 M Street, N.W. Suite 650
Washington, D.C. 20037
*Counsel for Defendant Leslie Rahl*

/s/ Justin S. Herring
Justin S. Herring