# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In Re Fannie Mae Securities Litigation** | **Consolidated Civil Action No. 1:04-cv-1639 (RJL)** |
| **Evergreen Equity Trust,** *et al,* **v. Federal National Mortgage Association,** *et al.*  **and**  **Franklin Managed Trust,** *et al.* **v. Federal National Mortgage Association,** *et al.* | **Case No. 1:06-cv-00082 (RJL)**  **Case No. 1:06-cv-00139 (RJL)** |

---

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION BY RADIAN GUARANTY INC. TO DISMISS THE SECOND AMENDED COMPLAINTS

---

**Jonathan M. Stern (DC Bar No. 412689)**
**SCHNADER HARRISON SEGAL & LEWIS** LLP
**2001 Pennsylvania Avenue, NW, Suite 300**
**Washington, DC  20006-1825**
**Telephone:  (202) 419-4200**

**David Smith**
**Jonathan S. Liss**
**SCHNADER HARRISON SEGAL & LEWIS** LLP
**1600 Market Street, Suite 3600**
**Philadelphia, PA  19103-7286**
**Telephone:  (215) 751-2000**

**Dated:  November 7, 2006**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I.  COUNT II FAILS TO STATE A CLAIM AGAINST RADIAN FOR VIOLATION
    OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5...........................2

    A.  The E&F Plaintiffs Have Failed to Establish that Their Claims Are for a
        Primary Violation Rather than Aiding and Abetting. ...............................2

        1.  The E&F Plaintiffs fail to demonstrate that the bright-line test does
            not mandate dismissal. .................................................................3

        2.  The E&F Plaintiffs fail to demonstrate that the "sham transaction"
            test does not mandate dismissal. ....................................................4

    B.  The Allegations Against Radian Lack the Particularity Required of a Fraud
        Claim Under Section 10(b) and Rule 10b-5. .........................................6

        1.  The E&F Plaintiffs have not adequately pled Radian's use or
            employment of a deceptive device or contrivance in connection with
            the purchase or sale of a security. ..................................................6

        2.  The E&F Plaintiffs fail to plead with particularity facts raising the
            requisite strong inference of scienter. ..............................................7

        3.  The E&F Plaintiffs' allegations regarding causation are insufficient..........9

II. THE E&F PLAINTIFFS' CLAIMS FOR AIDING AND ABETTING COMMON
    LAW FRAUD MUST BE DISMISSED...........................................................10

    A.  The Claims for Aiding and Abetting Common Law Fraud Are Barred by
        SLUSA. ...................................................................................11

    B.  Pennsylvania Does Not Recognize a Claim for Aiding and Abetting Fraud.........11

        1.  Pennsylvania law applies to the E&F Plaintiffs' claims against
            Radian. ...................................................................................12

        2.  Pennsylvania law does not recognize a claim for aiding and abetting
            fraud. .....................................................................................16

    C.  The E&F Plaintiffs' Claims for Aiding and Abetting Fraud Fail to Meet the
        Pleading Standards of Federal Rule of Civil Procedure 9(b)................18

    D.  The Discovery Exception Is Not Applicable to a Claim for Aiding and
        Abetting Common Law Fraud. ........................................................21

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*3 M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994) .................................................. 21-22

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) ........................................ 3-4

*Amato v. KPMG, LLP*, 433 F. Supp. 2d 460 (M.D. Pa. 2006) ...................................................... 17

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ..................................................... 11

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) .............................. 8

\* *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994) .................... 3-5

\* *In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987 (8th Cir. 2006) ................................ 3-4, 7

*Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336 (D.C. Cir. 1991) ........................................ 23

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) ....................................... 20-21

*Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400
    (W.D. Pa. 2002) ................................................................................. 17

\* *Dura Pharm. v. Broudo*, 544 U.S. 336 (2005) .......................................................... 6, 9

*Enigma Holdings, Inc. v. Gemplus Int'l,* 05-1168, 2006 WL 2859369
    (N.D. Tex. Oct. 6, 2006) ....................................................................... 12

*Gassmann v. Eli Lilly & Co.*, 407 F. Supp. 2d 203 (D.D.C. 2005) ............................................... 21

*Graziose v. America Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 2002) ................................. 20

*In re The Great Atl. & Pac. Tea Co. Sec. Litig.*, 103 Fed. Appx. 465 (3d Cir. 2004) .................... 8

*In re Great S. Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212 (N.D. Tex. 2000) ................. 13

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ........................................................... 15, 19

*Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473 (W.D.N.Y. 1987) ........................ 20

*In re Ikon Office Solutions*, 277 F.3d 658 (3d Cir. 2002) ................................................. 8

*In re Integrated Elec. Servs., Inc. Sec. Litig.*, No. 4:04-cv-3342,
   2006 U.S. Dist. LEXIS 1425 (S.D. Tex. Jan. 10, 2006) ........................................8

*JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247 (S.D.N.Y. 2005) .................................19

*Kowal v. MCI Commc'ns Corp.*, 305 U.S. App. D.C. 60, 16 F.3d 1271
   (D.C. Cir. 1994) ........................................................................18

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ............................................19

*Metge v. Baehler*, 762 F.2d 621 (8th Cir. 1985) ..........................................................20

*Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................19

\*   *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005) .................................4-5

*Pavlovich v. Nat'l City Bank*, 435 F.3d 560 (6th Cir. 2006) ..........................................19

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ......................................................18

*S.E.C. v. Zanford*, 535 U.S. 813 (2002) ............................................................3-4

*Santa Fe Indus. v. Green*, 430 U.S. 462 (1977) ......................................................4

*Semon v. Ledecky*, 326 F. Supp. 2d 68 (D.D.C. 2004) ................................................18

*Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234 (D. Mass. 1979) ...............................18

*Simpson v. AOL Time Warner*, 452 F.3d 1040 (9th Cir. 2006) ..........................................6

*Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998) ...............................21

*Solow v. Stone*, 994 F. Supp. 173 (S.D.N.Y 1998) ..................................................14

\*   *In re U.S. Office Prods. Sec. Litig.*, 326 F. Supp. 2d 68 (D.D.C. 2004) ...........................6, 8, 19

*WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2005 U.S. Dist. LEXIS 12064
   (E.D. Pa. May 16, 2005) ..........................................................17

*In re Worldcom Inc. Sec. Litig.*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004) ..............................11

## STATE CASES

*Capitol Place I Assocs. L.P. v. George Hyman Constr. Co.*, 672 A.2d 194
(D.C. 1996) ................................................................................................23

*Clayton v. McCullough*, 448 Pa. Super. 126, 670 A.2d 710 (1996) ...................... 15-17

* *Farris v. Compton*, 652 A.2d 49 (D.C. 1994) ................................................................23

*Herbert v. District of Columbia*, 808 A.2d 776 (D.C. 2002) ........................................12

*Howard v. Superior Court*, 2 Cal. App. 4th 745, 3 Cal. Rptr. 2d 575 (1992) ...............19

*Johnson v. Long Beach Mortgage Loan Trust 2001-4, No. CIVA 05-0644,*
2006 WL 2244599 (D.D.C. Aug. 4, 2006) ..............................................22

* *Morrow v. Wilson*, 266 Pa. 394, 109 A. 632 (1920) ........................................ 14, 16-17

*Morton v. Nat'l Med. Enters., Inc.*, 725 A.2d 462 (D.C. 1999)....................................22

*Stutsman v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 546 A.2d 367
(D.C. 1988) ................................................................................................15

*Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168 (D.C. 2006) .........................14

*Welc v. Porter*, 450 Pa. Super. 112, 675 A.2d 334 (1996) ..........................................17

## FEDERAL STATUTES

15 U.S.C. § 77p .................................................................................................................1

15 U.S.C. § 77p(f)(2)(A) ............................................................................................ 10-11

15 U.S.C. § 78bb(f) ...........................................................................................................1

15 U.S.C. § 78bb(f)(5)(B) ........................................................................................... 10-11

15 U.S.C. § 78t(f) ..............................................................................................................4

15 U.S.C. § 78u-4 ..............................................................................................................1

15 U.S.C. § 78u-4(b)(2) ................................................................................................. 6-7

Fed. R. Civ. P. 9(b) .............................................................................. 1, 6-7, 11, 18-20

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

**STATE STATUTES**

D.C. Code § 12-301(3)...................................................................................................21


**MISCELLANEOUS**

Restatement (Second) of Conflict of Laws § 145.........................................................14

Restatement (Second) of Torts § 876(b) ............................................................... 16-19

Defendant Radian Guaranty Inc. ("Radian") submits this reply memorandum of points and authorities in support of its motion pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, and the Securities Litigation Reform Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p, 78bb(f), to dismiss the Second Amended Complaints in *Evergreen Equity Trust, et al. v. Federal National Mortgage Association, et al.*, Case No. 1:06-cv-00082 (RJL), and *Franklin Managed Trust, et al. v. Federal National Mortgage Association, et al.*, Case No. 1:06-cv-00139 (RJL) (collectively, "Second Amended Complaints").

## INTRODUCTION

Radian's sale to Fannie Mae of a single mortgage pool insurance policy in January 2002, for which Fannie Mae paid a premium of $35 million and under which Radian paid claims of $39 million cannot justify the *Evergreen* and *Franklin* plaintiffs' (the "E&F Plaintiffs") efforts to include Radian in this $12 billion securities and common law fraud litigation. As we demonstrated in our Memorandum of Points and Authorities in Support of the Motion by Radian Guaranty Inc. to Dismiss the Second Amended Complaints ("Initial Papers") and shall further show below, the claims against Radian must be dismissed for the following reasons:

- The E&F Plaintiffs have failed to establish that their securities fraud claims against Radian are for a primary violation rather than for aiding and abetting;

- The allegations of securities fraud against Radian lack the particularity required by Rule 9(b) and the PSLRA;

- The claims for aiding and abetting common law fraud are barred by SLUSA;

- Pennsylvania law does not recognize claims for aiding and abetting fraud;

- The E&F Plaintiffs have failed to plead the elements of aiding and abetting fraud with the heightened pleading standard of Federal Rule of Civil Procedure 9(b); and

- Any claim for aiding and abetting common law fraud arising out of Radian's January 10, 2002 sale of the Policy is barred by the District of Columbia's three-year statute of limitations.

## ARGUMENT

## I.    COUNT II FAILS TO STATE A CLAIM AGAINST RADIAN FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5.

Radian established in its Initial Papers that Count II of the Second Amended Complaints as against Radian should be dismissed because: (1) the E&F Plaintiffs fail adequately to allege that Radian is a primary violator of Section 10(b) of the Exchange Act and Rule 10b-5; and (2) even if Radian somehow could be deemed to be a primary violator, the E&F Plaintiffs' allegations against Radian lack the particularity required to state a claim under Section 10(b) and Rule 10b-5.  The E&F Plaintiffs have failed to refute these arguments.

### A.    The E&F Plaintiffs Have Failed to Establish that Their Claims Are for a Primary Violation Rather than Aiding and Abetting.

The E&F Plaintiffs concede that under *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164 (1994), there is no private right of action for aiding and abetting securities fraud, but argue incorrectly that boilerplate allegations reciting the elements of a primary claim somehow establish their claims as a primary violation.  E&F Memo at 37-38.  As

2

Radian demonstrated in its Initial Papers, courts routinely reject such attempts to transmogrify aiding and abetting to a primary violation of Rule 10b-5. *See* Radian Memo at 4-10. Two tests, which we have labeled the bright-line test and the "sham transaction" test, have been employed by courts to determine whether cases such as these should be dismissed under *Central Bank*. The claims against Radian should be dismissed under either test.

> **1.    The E&F Plaintiffs fail to demonstrate that the bright-line test does not mandate dismissal.**

The bright-line test, adopted in *In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987 (8th Cir. 2006), requires dismissal of securities claims under *Central Bank* where the defendant "did not issue any misstatement relied upon by the investing public, nor [was the defendant] under a duty to [the issuers'] investors and analysts to disclose information useful in evaluating [the issuers'] true financial condition." *Id.* at 992. The E&F Plaintiffs do not respond to Radian's argument that the bright-line test employed in *Charter* is mandated by the Supreme Court's opinion in *Central Bank*, which allows a claim only where there is direct reliance by purchasers or sellers on the alleged wrongful act. Rather, the E&F Plaintiffs assert in a footnote that the *Charter* decision is contrary to the Supreme Court's holding in *S.E.C. v. Zanford,* 535 U.S. 813 (2002), and *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972). *See* E&F Memo at 38 n.19. The E&F Plaintiffs are wrong, as *Charter* is completely consistent with both decisions. Both *Zanford* and *Affiliated Ute* make a defendant's duty to disclose a prerequisite to a Rule 10b-5 claim. In *Zanford*, 535 U.S. at 823, the Supreme Court held a broker who failed to communicate material facts could be liable to his customer for securities fraud even where the broker made no misrepresentation, because "any distinction between omissions and misrepresentations is illusory in the context of a broker who has a fiduciary duty

to her clients."[1]  Similarly, in *Affiliated Ute,* 406 U.S. at 153, the Supreme Court held that

liability was properly predicated upon defendants' "affirmative duty under [Rule 10b-5] to

disclose this fact to the [plaintiffs]."[2]  In *Charter,* as here, the vendors accused of participating in

the issuers' fraud neither communicated directly with nor had a duty to make disclosures to the

purchasers or sellers of the issuers' securities.  *See Charter,* 443 F.3d at 992.  Accordingly, in

*Charter*, as here, the vendors could not have been primary violators of Rule 10b-5.

> **2.     The E&F Plaintiffs fail to demonstrate that the "sham transaction" test does not mandate dismissal.**

The E&F Plaintiffs similarly fail to demonstrate that Count II should not be

dismissed if the Court applies the "sham transaction" test rather than the bright-line test.  The

sham transaction test requires dismissal of the E&F Plaintiffs' claims unless they can establish

that the transaction on which their claims are based was a "sham," which the case law defines as

one that did not happen or had no legitimate business purpose, regardless of how it is reported.

*See In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005) (discussed at length in

Radian's Initial Papers at 8-9).

---

[1]     To the extent the Court finds *Charter* is not consistent with *Zanford*, *Zanford* is distinguishable because the Securities and Exchange Commission is specifically authorized to bring an enforcement action for aiding and abetting securities fraud.  15 U.S.C. § 78t(f).

[2]     To the extent the Court finds *Charter* is not consistent with *Affiliated Ute*, *Affiliated Ute* is distinguishable because it predates the Supreme Court's decision in both *Central Bank* and *Santa Fe Industrial v. Green*, 430 U.S. 462, 474-475 (1977) (finding device or contrivance is not 'deceptive,' within the meaning of § 10(b), absent some misstatement or a failure to disclose by one who has a duty to disclose).

The E&F Plaintiffs argue that Radian's sale to Fannie Mae of the mortgage pool insurance policy is a sham transaction "because it created the appearance that Fannie Mae was buying insurance when, in reality, it was simply paying Radian 'premiums' to offset claim reimbursements it expected to receive in future years, all as a means to disguise known losses." E&F Memo at 41. This argument further supports dismissal under the "sham transaction" test. The E&F Plaintiffs concede in the Second Amended Complaints that the sale of the Policy was a real transaction involving a $35 million premium and $39 million of claims payments, but they allege that it should have been accounted for differently, as a loan rather than insurance. *See* Evergreen Second Amended Complaint, ¶¶ 247, 249, Franklin Second Amended Complaint ¶¶ 276, 278. Just as the assertion that loans were disguised as equity investments did not state a claim for primary liability in *Parmalat*, 376 F. Supp. 2d at 505, the E&F Plaintiffs' assertion that Radian loaned money disguised as a mortgage insurance policy to Fannie Mae does not state a claim here. As in *Parmalat*, "any deceptiveness resulted from the manner in which [Fannie Mae] described the transaction … on [Fannie Mae's] balance sheets and elsewhere." *Id*. And, "[a]t worst [Radian] designed and entered into the [sale of the Policy] knowing or even intending that [Fannie Mae] or its auditors would misrepresent" the sale of the Policy as insurance instead of as a loan. *Id*.

*     *     *

Consequently, under either test, the E&F Plaintiffs fail to state a claim for primary liability against Radian and, under *Central Bank*, Count II of the Second Amended Complaints against Radian should be dismissed.

**B.    The Allegations Against Radian Lack the Particularity Required of a Fraud Claim Under Section 10(b) and Rule 10b-5.**

Radian established in its Initial Papers that the securities fraud claims against it must be dismissed for the further reason that the E&F Plaintiffs have failed to adequately plead all of the elements of a securities fraud claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA, 15 U.S.C. § 78u-4(b)(2).  *See In re U.S. Office Prods. Sec. Litig.*, 326 F. Supp. 2d 68, 74 (D.D.C. 2004) ("[A] claim under Rule 10b-5 must … satisfy Rule 9(b)'s requirement that the plaintiff state the circumstances constituting fraud with particularity.").[3]

**1.    The E&F Plaintiffs have not adequately pled Radian's use or employment of a deceptive device or contrivance in connection with the purchase or sale of a security.**

The E&F Plaintiffs' conclusory boilerplate allegation that "Radian committed the deceptive and manipulative act of structuring a sham insurance policy which it sold to Fannie Mae …," E&F Memo at 39, is insufficient.  *See Simpson*, 452 F.3d at 1047-48.  The E&F Plaintiffs concede that Fannie Mae paid Radian a real premium of $35 million and Radian paid $39 million in real losses.  Evergreen Second Amended Complaint ¶ 247, Franklin Second Amended Complaint ¶ 276.  The E&F Plaintiffs have failed to allege with the required particularity how the transaction itself, standing separate and apart from how Fannie Mae chose

---

[3]    The elements of a securities fraud claim are:  (1) to use or employ any manipulative or deceptive device or contrivance; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation, *i.e.*, a causal connection between the manipulative or deceptive device or contrivance and the loss. *See Dura Pharm. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Simpson v. AOL Time Warner*, 452 F.3d 1040, 1047 (9th Cir. 2006).

to report the transaction on its financial statements, is deceptive or manipulative.  Allegations

that Radian knew Fannie Mae purchased the Policy to manage its earnings or to falsify its

financial statements are irrelevant in assessing whether ***Radian's*** action in selling the Policy was

a deceptive or manipulative act within the meaning of section 10(b) of the Securities Exchange

Act.  *See In re Charter Commc'ns Inc. Sec. Litig.*, 443 F.3d 987, 992-93 (8th Cir. 2006).

> **2.    The E&F Plaintiffs fail to plead with particularity facts raising the requisite strong inference of scienter.**

The E&F Plaintiffs have failed to meet their pleading burden of raising a strong

inference of scienter.  They concede that they have not adequately alleged motive and

opportunity.  *See* E&F Memo at 55.  Likewise, they have failed to demonstrate with sufficient

particularity (as required by Fed. R. Civ. P. 9(b) and the more stringent PSLRA requirement, 15

U.S.C. § 78u-4(b)(2)) that Radian acted with an intent to deceive the E&F Plaintiffs by its sale of

a single mortgage pool insurance policy to Fannie Mae.

The E&F Plaintiffs are incorrect in their argument that they have met their burden

of pleading with particularity Radian's intent to deceive them by identifying four allegations they

contend are sufficient: (1) Radian "knew that Fannie Mae needed to spread its losses in order to

manage earnings, which is the essence of finite insurance policies and what makes them

attractive to Radian's customers;" (2) Radian "knew that since Fannie Mae's premium payments

were equal to the value of Radian's 'insurance coverage,' there was no risk transfer and therefore

Fannie Mae received nothing of value from Radian" and the transaction should have been treated

as a loan for accounting purposes;" (3) Radian "knew or recklessly disregarded that it was

merely loaning money to Fannie Mae under the guise of a sham insurance policy;" and

(4) Radian "knew or recklessly disregarded that . . . Fannie Mae was fraudulently recording its

transaction with Radian in its financials as 'insurance' premium payments to Radian in violation of GAAP."  E&F Memo at 55-56 (citing Evergreen Second Amended Complaint ¶ 249, Franklin Second Amended Complaint ¶ 278).

Radian showed in its Initial Papers (at 14-15) that, to adequately plead scienter, the E&F Plaintiffs must provide "the who, what, when, where and how."  *In re U.S. Office Prods Sec. Litig.*, 326 F. Supp. 2d 68, 73 (D.D.C. 2004).  *See also In re Ikon Office Solutions*, 277 F.3d 658, 667 (3d Cir. 2002).  The E&F Plaintiffs still have not shown *who* at Radian had this alleged knowledge, *how* Radian obtained this alleged knowledge, *when* Radian gained this alleged knowledge, *what* steps Radian took to direct that this alleged knowledge not be divulged, *where* any discussions about not divulging this information took place, and *how* this alleged scheme was accomplished.

Moreover, the allegations that Radian "knew that Fannie Mae needed to spread its losses in order to manage earnings" and that the mortgage pool insurance policy should have been accounted for as a loan are insufficient to give rise to a strong inference of scienter that Radian knew that Fannie Mae intended to deceive its shareholders.  *See* Initial Papers at 16-17 (quoting *In re The Great Atl. & Pac. Tea Co. Sec. Litig.*, 103 Fed. Appx. 465, 469 (3d Cir. 2004)) ("A&P's desire to manage its earnings in order to meet analyst and market expectations … is not sufficient to give rise to a strong inference of *scienter*."); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 566 (S.D.N.Y. 2004); *In re Integrated Elec. Servs., Inc. Sec. Litig.*, No. 4:04-cv-3342, 2006 U.S. Dist. LEXIS 1425, at *12 (S.D. Tex. Jan. 10, 2006).  The E&F Plaintiffs have not offered any competing case law authority, have made no attempt to distinguish these cases, and, in fact, do not even mention these cases in their

memorandum.  For these reasons, as well, the securities fraud claims against Radian should be dismissed.

### 3.     The E&F Plaintiffs' allegations regarding causation are insufficient.

The E&F Plaintiffs' accusation that Radian's sale of a single mortgage pool insurance policy in January 2002 is part of Fannie Mae's six-year, $12 billion fraudulent scheme to overstate earnings is insufficient to avoid dismissal for failure to plead causation.  The two district court decisions cited by the E&F Plaintiffs for that proposition predate the United States Supreme Court decision *Dura Pharm. v. Broudo*, 544 U.S. 336, 343-44 (2005), which made clear that boilerplate pleading of causation is insufficient.  In *Dura,* the Supreme Court held that a plaintiff must show that "but for" the defendant's alleged misconduct the plaintiff would not have entered into the securities transaction.  *Id*.  As Radian showed in its Initial Papers, the E&F Plaintiffs neither specifically pled a causal link between Radian's sale of the Policy to Fannie Mae and their many decisions to buy Fannie Mae stock between January 17, 2001 and September 28, 2005, nor demonstrated in their memorandum how such a direct causal link was pled.

With respect to loss causation, the Supreme Court also made clear in *Dura*, 544 U.S. at 346, that a plaintiff is required to show that the defendant's fraudulent conduct "proximately caused the plaintiff's economic loss."  The E&F Plaintiffs do not respond to Radian's argument that they cannot claim that the accounting treatment of the Policy affected the prices they paid for Fannie Mae stock before Fannie Mae first published a financial statement that included improper treatment of the Policy.  Nor can the E&F Plaintiffs show that they have pleaded that Fannie Mae's accounting treatment of the Policy was the proximate cause of their

injury after Fannie Mae published a financial statement that included an improper treatment of the Policy.  If, as the E&F Plaintiffs claim, Fannie Mae accounted for the Policy in an improper manner, the resulting error would have modestly reduced Fannie Mae's grossly overstated income.  That reduction could not have caused the E&F Plaintiffs to have paid more for Fannie Mae stock than they would have paid without the modest reduction.  The E&F Plaintiffs' sole effort to respond to this argument is a footnote lacking any reference to their pleading in which they assert that Radian's argument that the sale of the Policy served a corrective function "reveals [Radian's] fundamental misunderstanding of the nature of [the E&F] Plaintiffs' claims" because "Fannie Mae systematically manipulated its financial results throughout the Loss Period for a variety of reasons …."  E&F Memo at 58 n.28.  That argument not only is a non-sequitur, it says nothing about the adequacy of the E&F Plaintiffs' pleadings.  It is clear from the face of the Second Amended Complaints that the crux of the E&F Plaintiffs' claim that they paid too much for their Fannie Mae stock is premised on Fannie Mae's *overstatement* of its earnings by more than $12 billion.  *See* Evergreen Second Amended Complaint, ¶¶ 13, 54, 57, Franklin Second Amended Complaint ¶¶ 14, 75, 80.   The E&F Plaintiffs do not -- and logically cannot -- claim that they paid a higher price for Fannie Mae's stock because Fannie Mae accounted for its one transaction with Radian to reduce its overstated earnings.  Consequently, for these reasons as well, the E&F Plaintiffs' security fraud claims against Radian should be dismissed.

## II.     THE E&F PLAINTIFFS' CLAIMS FOR AIDING AND ABETTING COMMON LAW FRAUD MUST BE DISMISSED.

The common law claims for aiding and abetting fraud also must be dismissed for each of the following reasons: (1) the Securities Litigation Reform Act of 1998 ("SLUSA") bars state common law claims in "covered class actions" such as this, *see* 15 U.S.C. §§ 77p(f)(2)(A),

78bb(f)(5)(B); (2) Pennsylvania law does not recognize a claim for aiding and abetting fraud; (3) the E&F Plaintiffs have failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b); and (4) these claims are barred by the District of Columbia's three-year statute of limitations.

### A.     The Claims for Aiding and Abetting Common Law Fraud Are Barred by SLUSA.

Radian showed in its Initial Papers that the *Evergreen* and *Franklin* actions are "covered class actions" under SLUSA because these two actions are "consolidated" with the main class action and, combined, the "group of lawsuits" seeks damages on behalf of more than fifty plaintiffs. 15 U.S.C. §§ 77p(f)(2)(A)(ii), 78bb(f)(5)(B). *See also In re Worldcom Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 247 (S.D.N.Y. 2004). The E&F Plaintiffs' response that "[t]he result urged by Defendants would be manifestly unfair and contrary to public policy and to the purpose of SLUSA" (E&F Memo at 81) is irrelevant as well as wrong. The response is irrelevant because the statute is clear and unambiguous, and it is wrong because Congress determined the federal securities laws offer a more than adequate remedy, both for the class and for non-class plaintiffs. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (emphasizing that when language of statute is clear and unambiguous, the court must presume that the legislature said what it meant and meant what it said, ending judicial inquiry).

### B.     Pennsylvania Does Not Recognize a Claim for Aiding and Abetting Fraud.

The allegations of the E&F Plaintiffs' Second Amended Complaints warrant only the application of Pennsylvania law. There is no claim under Pennsylvania law for aiding and abetting fraud. The E&F Plaintiffs suggest that the Court should permit them to pursue the

aiding and abetting claims because some unstated theory of conflict of laws must result in the application of the laws of a jurisdiction that would permit it. However, the E&F Plaintiffs have not identified the jurisdiction under which they purport to assert claims for aiding and abetting,[4] nor have they alleged sufficient facts to warrant the application of the law of any jurisdiction other than Pennsylvania. Indeed, since choice of law is a threshold inquiry that must be resolved now, failure to allege sufficient facts to permit the Court to make a choice of law determination is a sufficient basis for dismissing the claims. *See Enigma Holdings, Inc. v. Gemplus Int'l,* 05-1168, 2006 WL 2859369 (N.D. Tex. Oct. 6, 2006) (granting defendants' motion to dismiss common law fraud claims, including aiding and abetting, because "choice of law is a threshold inquiry that must be made before the Court can adequately address the sufficiency of the pleadings" and plaintiffs did "not allege sufficient facts for the Court to determine choice of law for the fraud-based claims.").

### 1.    Pennsylvania law applies to the E&F Plaintiffs' claims against Radian.

Under District of Columbia choice of law rules, this Court applies the law of a jurisdiction other than the District of Columbia where "(1) [another state's] interest in the litigation is substantial, and (2) application of District of Columbia law would frustrate the clearly articulated public policy of that state." *Herbert v. District of Columbia,* 808 A.2d 776, 779 (D.C. 2002).

---

[4]    The E&F Plaintiffs suggest in their opposition papers that the Court could apply the law of either California, Massachusetts or the District of Columbia. *See* E&F Memo at 95.

Pennsylvania has the most substantial interest in the "litigation" of the claims against Radian. Radian is a Pennsylvania insurance company and the Policy was issued from Pennsylvania. Radian is heavily regulated by the Pennsylvania Insurance Department and Pennsylvania has the greatest interest in ensuring that its insurance companies play by its rules. Moreover, applying the law a defendant insurance company's domicile would ensure predictability, guiding the insurance company's conformance to applicable law. This is especially true in the insurance field where states are directly involved in the regulation of insurance companies through a complex regulatory system. Not only do plaintiffs who have complaints against insurance companies have the option of seeking a court remedy, in many instances, they also can seek an administrative remedy through the state's insurance commissioner. Applying another forum's laws would result in arbitrary and capricious application depending on where the lawsuit was filed. *See In re Great S. Life Ins. Co. Sales Practices Litig.*, 192 F.R.D. 212, 219 (N.D. Tex. 2000) (finding Texas law applied to fraud claims against insurance company under "most significant relationship" test because although plaintiff purchasers lived in 46 states, policies were entered into and alleged misrepresentations surrounding policies came out of corporate headquarters in Texas).

The E&F Plaintiffs' suggestion that this Court apply the laws of their separate states of residence clearly is unworkable. Radian's sale of a single mortgage pool insurance policy to Fannie Mae cannot be evaluated under conflicting, multiple standards, as the E&F Plaintiffs propose. Moreover, the fact that the E&F Plaintiffs' alleged injuries occurred in different states (including their home states or perhaps the District of Columbia) defeats the claim that these jurisdictions have the most significant interest in the action.

13

> [T]he place of injury will not play an important role in the selection of the
> state of the applicable law . . . when, *such as in the case of fraud and
> misrepresentation*, there may be little reason in logic or persuasiveness to
> say that one state rather than another is the place of injury, or when . . .
> injury has occurred in *two or more states*.

Restatement (Second) of Conflict of Laws § 145 cmt. e (emphasis added); *see also Washkoviak
v. Student Loan Mktg. Ass'n,* 900 A.2d 168, 181-82 (D.C. 2006) ("According to the Restatement
. . . 'the place of injury is less significant in the case of fraudulent misrepresentations'") (quoting
§ 145 cmt. f).

And, contrary to the E&F Plaintiffs' arguments, in cases such as this, where the
plaintiffs reside in multiple states, the state where the defendant's alleged conduct occurred
assumes central importance.  Restatement § 145 cmt. e ("When the injury occurred in two or
more states . . . the place where the defendant's conduct occurred will usually be given particular
weight in determining the state of the applicable law.").  For each of these reasons, Pennsylvania
has the most significant interest in applying its laws to these claims.  *See, e.g., Solow v. Stone,*
994 F. Supp. 173, 177 (S.D.N.Y 1998) (under an interest-based choice of law test similar to the
District of Columbia's, Delaware law governed plaintiff's claim for breach of fiduciary duty, but
New York law governed plaintiff's claim for aiding and abetting breach of fiduciary duty against
another defendant because "the acts giving rise to the aiding and abetting . . . claims took place,
in significant part, in New York").

Pennsylvania has clearly articulated a policy of refusing to recognize aiding and
abetting liability because such liability would permit a recovery from a defendant that did not
owe a duty to the plaintiff.  *See, e.g., Morrow v. Wilson,* 266 Pa. 394, 399-400, 109 A. 632, 634
(1920) (mortgage insurer could not be liable for aiding and abetting fraud where it owed no duty

to plaintiffs); *Clayton v. McCullough,* 448 Pa. Super. 126, 132, 670 A.2d 710, 713 (1996)
(refusing to recognize aiding and abetting liability where passenger had no duty to guard against
harm to third party caused by driver).  Application of any other state's law recognizing such a
claim would frustrate this clear policy.  *See, e.g., Stutsman v. Kaiser Found. Health Plan of the
Mid-Atlantic States, Inc.,* 546 A.2d 367, 375 (D.C. 1988) (applying Virginia law to bar
husband's action for loss of consortium where "Virginia has a clearly articulated policy of
allowing only the wife to recover for her personal injuries").

       While Pennsylvania law is settled with respect to aiding and abetting, District of
Columbia law is not.  The E&F Plaintiffs argue that the District of Columbia would recognize
such a claim.  E&F Memo at 96-97.  We have located no decision from the District of Columbia
holding that the District recognizes such a claim.  In *Halberstam v. Welch*, 705 F.2d 472, 479
(D.C. Cir. 1983), the D.C. Circuit noted that the District of Columbia had *never* recognized such
a claim but predicted that if confronted the District of Columbia would recognize such a claim.
In the twenty-three years since *Halberstam,* no District of Columbia court has acted as
*Halberstam* predicted.  The other cases cited by the E&F Plaintiffs are all from this Court and do
not expressly hold that such a claim is viable under D.C. law.  Instead, those Courts appear to
assume such a claim is viable.  Consequently, should this Court determine that D.C. law is the
correct law to apply and also predict that D.C. would recognize such a claim, this recognition
would clearly frustrate Pennsylvania's law to the contrary.

       For each of these reasons, the Court should conclude that Pennsylvania law
governs the E&F Plaintiffs' claims against Radian.

> **2.      Pennsylvania law does not recognize a claim for aiding and abetting fraud.**

Pennsylvania courts consistently and unflinchingly have refused to recognize liability for aiding and abetting fraud or any other tort.  In *Morrow v. Wilson*, 266 Pa. 394, 399, 109 A. 632, 634 (1920), the plaintiffs argued that the defendant trust company had aided and abetted a fraud committed by the seller of real estate, because the trust company had been involved in the settlements of some of the transactions and had insured some of the mortgages, while its employees knew the fraud was being committed.  The Supreme Court of Pennsylvania rejected this argument, adhering to the bedrock principle that "the mere failure of the trust company or its employees to disclose the fact that a fraud was being perpetrated gave rise to no action against the company on the part of plaintiffs, unless a legal relation appeared between the company and plaintiffs whereby a duty was imposed upon its employees to inform plaintiffs of the fraud."  *Id*. at 398, 109 A. at 633.  Because there was no such relationship, the employees' "mere silence could not constitute such fraud as would make the trust company liable to the persons defrauded."  *Id*. at 400, 109 A. at 634.

Since *Morrow*, Pennsylvania courts steadfastly have adhered to the rule that mere aiding and abetting can never create tort liability: the aider and abetter can only be liable if it owes a duty directly to the plaintiff, in which case it would have primary liability for the substantive tort, *not* liability for aiding and abetting.  Pennsylvania courts consistently have refused to recognize theories, such as Restatement of Torts Section 876(b), that would permit plaintiffs to recover in the absence of such a duty.[5]  *See, e.g., Clayton v. McCullough,* 448 Pa.

---

[5]      Section 876(b) provides:  "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct

*…Continued*

Super. 126, 132, 670 A.2d 710, 713 (1996) (passenger in car "breached no duty or obligation recognized by the law in Pennsylvania" by permitting driver to drive drunk; court refused to recognize Section 876(b) as a basis of liability); *Welc v. Porter,* 450 Pa. Super. 112, 119, 675 A.2d 334, 338 (1996) (extending *Clayton* to case where passenger was a minor; refusing to recognize Section 876(b) as a basis of liability).[6]

   *Morrow* is controlling:  The E&F Plaintiffs allege Radian issued a single mortgage pool insurance policy to Fannie Mae, but they have failed to allege that this issuance was anything more than "in the usual course of [Radian's] business."  266 Pa. at 399, 109 A. at 634.  The E&F Plaintiffs make no attempt to contend that this transaction was somehow itself fraudulent.  At most, the E&F Plaintiffs allege that Radian knew or should have known that Fannie Mae would account for the insurance policy improperly on its books and did not disclose this alleged fact to them.  Under *Morrow*, this cannot create a duty on Radian to disclose the alleged fraud.

   In sum, because Pennsylvania law governs the E&F Plaintiffs' claims against Radian for aiding and abetting fraud, and Pennsylvania recognizes no such claim, the claims must be dismissed.

---

*Continued from previous page*

   constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ."  Restatement (Second) of Torts § 876(b).

[6]   Numerous federal courts in Pennsylvania applying Pennsylvania law have reached the same conclusion.  *See, e.g., Amato v. KPMG, LLP*, 433 F. Supp. 2d 460, 473-74 (M.D. Pa. 2006); *WM High Yield Fund v. O'Hanlon*, No. 04-3423, 2005 U.S. Dist. LEXIS 12064 at *49-50 (E.D. Pa. May 16, 2005); *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 413 (W.D. Pa. 2002).

**C.    The E&F Plaintiffs' Claims for Aiding and Abetting Fraud Fail to Meet the Pleading Standards of Federal Rule of Civil Procedure 9(b).**

Even if the Court concludes that a claim for aiding and abetting fraud is cognizable, it must be dismissed for the further reason that the E&F Plaintiffs have failed to plead any of the elements of the proposed claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

A plaintiff pleading a claim of aiding and abetting fraud is required to meet the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b). Rule 9(b) extends to all claims based on fraud, "whatever may be the theory of legal duty statutory, tort, contractual, or fiduciary." *Shapiro v. Miami Oil Producers, Inc.*, 84 F.R.D. 234, 236 (D. Mass. 1979); *see also Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("Rule 9(b) applies to 'all averments of fraud'. . . . This wording is cast in terms of conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action."). Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b)'s particularity requirement ensures that the defendant has fair notice of the claim, protects the defendant from an unsubstantiated claim on its reputation, and protects against strike suits brought solely for their settlement value. *Semon v. Ledecky*, 326 F. Supp. 2d 68, 73 (D.D.C. 2004); *see also Kowal v. MCI Commc'ns Corp.*, 305 U.S. App. D.C. 60, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery of unknown wrongs" (citation omitted)).

Jurisdictions that recognize a cause of action for aiding and abetting fraud require the plaintiff to plead the elements set forth in Section 876(b) of Restatement (Second) of Torts:

(1) the breach of a duty to another of which the aider and abettor had actual knowledge; (2) substantial assistance or encouragement by the aider and abettor of the breach; and (3) harm to the plaintiff as a result. *See* Restatement (Second) of Torts § 876(b); *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 570 (6th Cir. 2006); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003); *see also Halberstam,* 705 F.2d at 477; *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292  (2d Cir. 2006).

The E&F Plaintiffs have failed to allege any of these three elements with particularity. ***First***, the E&F Plaintiffs have not alleged with particularity that Radian had actual knowledge of the primary violations, which is the requisite degree of knowledge for a claim of aiding and abetting fraud. *See JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 n.4 (S.D.N.Y. 2005) (finding "weight of the case law . . . defines knowledge in the context of an aiding and abetting claim as actual knowledge."); *Howard v. Superior Court*, 2 Cal. App. 4th 745, 749, 3 Cal. Rptr. 2d 575, 577 (1992) (aiding and abetting requires a conscious decision by defendant to participate in tortious activity for purpose of assisting another in performing a wrongful act).  While Rule 9(b) requires that fraud must be pled with specificity, "malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. 9(b).  "Although this obviates the necessity of pleading detailed facts supporting allegations of knowledge, it does not relieve a pleader of the burden of alleging the nature of the knowledge a defendant purportedly possessed."  *Neilson*, 290 F. Supp. 2d at 1119.  The E&F Plaintiffs do not allege *who* at Radian had this alleged actual knowledge, *when* Radian gained this alleged knowledge, *how* Radian gained this alleged knowledge, *what* steps Radian took to direct that this alleged knowledge not be divulged, *where* any discussions about not divulging this information took place, and *how* this alleged scheme was accomplished.

*Second*, the E&F Plaintiffs fail to plead with particularity facts establishing that Radian substantially assisted in the fraud.  Where aiding and abetting is the gravamen of the claim, Rule 9(b) requires that "the complaint … inform [the] defendant … what he did that constituted … 'substantial assistance.'" *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 642 (D. Nev. 2002).   General and conclusory allegations that the defendant aided and abetted the principal wrongdoer are insufficient; the acts or omissions constituting the necessary substantial assistance must be pleaded with specificity.  *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 477 (W.D.N.Y. 1987).  Here, the E&F Plaintiffs identify only a single act in which Radian engaged -- the sale of a single mortgage pool insurance policy to Fannie Mae. Evergreen Second Amended Complaint ¶ 247, Franklin Second Amended Complaint ¶ 276.  The E&F Plaintiffs give no indication of how the sale of the Policy "substantially assisted" or encouraged Fannie Mae in deceiving its shareholders.  In fact, the E&F Plaintiffs do not assert that the fraud resulted from the sale of the Policy itself, but was accomplished only when Fannie Mae (not Radian) violated GAAP in recording the transaction.  Amended Evergreen Second Amended Complaint ¶ 836, Franklin Second Amended Complaint ¶ 930.

And, *third*, the E&F Plaintiffs fail to allege with particularity that the sale of the Policy was a substantial factor in causing the harm allegedly suffered.  Causation is an essential element of an aiding and abetting claim, requiring that the plaintiff show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered.  *See Metge v. Baehler*, 762 F.2d 621, 624 (8th Cir. 1985) (a plaintiff seeking to prevail on an aiding and abetting claim must prove a "'substantial causal connection between the culpable conduct of the alleged aider and abettor and the harm to the plaintiff[,]' . . . or a showing that 'the encouragement or assistance is a substantial factor in causing the resulting tort'"); *Cromer Fin.*

*Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) ("Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated").  The E&F Plaintiffs make no effort or attempt to show that Radian's sale to Fannie Mae of a single mortgage pool insurance policy -- or even Fannie Mae's improper accounting treatment of that policy -- was a substantial factor in causing Fannie Mae's $12 billion ***overstatement*** or the too high price the E&F Plaintiffs claim to have paid for Fannie Mae's stock.  *See* discussion of causation at 9-10, *infra,* and Initial Papers at 18-21.

For each of these reasons, the E&F Plaintiffs' allegations are not stated with sufficient particularity to state a claim for aiding and abetting fraud.

### D. The Discovery Exception Is Not Applicable to a Claim for Aiding and Abetting Common Law Fraud.

Radian showed in its Initial Papers that the E&F Plaintiffs' factual averments establish that their asserted claims for aiding and abetting fraud were time barred.[7]  *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998) (affirmative defense may be raised by Rule 12(b)(6) motion when facts that give rise to defense are clear from face of complaint).

Statutes of limitations generally begin to run from the date the cause of action accrued.  *3 M Co. v. Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994).  "A claim normally accrues

---

[7]    In the District of Columbia, a statute of limitations is procedural, mandating the application of the forum's statute of limitations to the E&F Plaintiffs' claims regardless of which jurisdiction's substantive law applies.  *Gassmann v. Eli Lilly & Co.*, 407 F. Supp. 2d 203, 208 (D.D.C. 2005).  As noted in Radian's Initial Papers, the District of Columbia has a three year statute of limitations for tort claims.  D.C. Code § 12-301(3).

when the factual and legal prerequisites for filing suit are in place." *Id.* at 1460. It is clear from

the face of the E&F Plaintiffs' Second Amended Complaints that Radian's selling a single

mortgage pool insurance policy to Fannie Mae in January of 2002 is the sole conduct by which

the E&F Plaintiffs allege Radian aided and abetted Fannie Mae's fraud. Evergreen Second

Amended Complaint ¶¶ 245, 840, Franklin Trust Second Amended Complaint ¶¶ 276, 934.

Accordingly, any harm to the E&F Plaintiffs as a result of Radian's alleged act of aiding and

abetting Fannie Mae's fraud, which is denied, occurred when the conduct allegedly constituting

aiding and abetting was completed.

In response, the E&F Plaintiffs assert that this Court should apply the discovery

rule to define accrual as the date the purchase of the Policy was first publicly reported to have

been used by Fannie Mae to manipulate income. *See* E&F Memo at 99. However, no court of

the District of Columbia has found the discovery rule to be applicable to a claim for aiding and

abetting, and the E&F Plaintiffs provide no legal or factual support for their assertion that the

rule should be applied in this context.[8] Moreover, the discovery rule is applicable only in those

cases where the fact of injury is not readily apparent. *See Morton v. Nat'l Med. Enters., Inc.*, 725

A.2d 462, 468 (D.C. 1999). If the injury is such that it should reasonably be discoverable at the

---

[8]    The E&F Plaintiffs cite a single case, *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, No. CIVA 05-0644, 2006 WL 2244599 (D.D.C. Aug. 4, 2006), in which they allege the court applied the discovery rule to an aiding and abetting claim under District of Columbia law. Not only is this reading of the case unsupported, the facts of the case make any attempted analogy here inapposite. *Johnson* is distinguishable because the defendant mortgage broker not only had a direct relationship with the plaintiff which the plaintiff alleged to be a fiduciary one, the plaintiff also alleged that the defendant made affirmative representations as to the reasonableness and necessity of various fees and charges. *Johnson*, 2006 WL 2244599 at *61-62. Moreover, the court noted that the application of the discovery rule to determine when the plaintiff's cause of action accrued was dependent upon a finding that the defendant had a fiduciary duty to the plaintiff. *Id.* at *68-69.

time it occurs, then the plaintiff should be expected to discover the injury, and the limitations period should commence at that time. *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991).

      The E&F Plaintiffs have not alleged that the relationship between the fact of their injury and Radian's alleged tortious conduct was obscure.   To the contrary, the E&F Plaintiffs' claims against Radian are based on the assertion that the only purpose of the mortgage pool insurance policy was to disguise income and losses.  E&F Memo at 41.  Moreover, although the E&F Plaintiffs assert that they did not learn of Fannie Mae's purchase of the mortgage pool insurance policy until it was reported through the media on September 28, 2005, Evergreen Second Amended Complaint ¶ 674, Franklin Trust Second Amended Complaint ¶ 711, this does not establish that reasonable diligence would not have revealed the fact of the sale.  In fact, the text of an internal Fannie Mae e-mail relied on by the E&F Plaintiffs makes clear that Fannie Mae executives expected that the transaction would be public knowledge and were concerned about political fallout.  Evergreen Second Amended Complaint ¶ 246, Franklin Trust Second Amended Complaint ¶ 275.

      District of Columbia courts have declined to adopt a broad rule that the discovery rule is applicable to all types of claims and cases, instead analyzing its applicability based only on the facts of the case at hand. *Capitol Place I Assocs. L.P. v. George Hyman Constr. Co.*, 672 A.2d 194, 199 (D.C. 1996).  The fundamental policy guiding application of the discovery rule is either a finding of justifiable reliance upon the transgressor or other circumstances indicating that the party seeking the protection of the statute of limitations has played a significant role in the harm not coming to light. *See Farris v. Compton*, 652 A.2d 49, 53-59 (D.C. 1994).  Neither

factor is present here.  Radian had no direct relationship with and owed no duty to the E&F

Plaintiffs, who have not and could not allege reliance on any act or statement by Radian.

        The E&F Plaintiffs' failure to establish that their injury was not readily apparent

on the date of the sale of the Policy, or to allege that Radian had any role, much less a significant

one, in the injury not coming to light, precludes their assertion that the discovery rule is

applicable.  Therefore, any aiding and abetting fraud claim would be barred by the District of

Columbia statute of limitations.

## CONCLUSION

For the reasons set forth above, and in its Initial Papers, Radian respectfully requests that its motion to dismiss be granted and that the Second Amended Complaints be dismissed with prejudice as against Radian.

Dated:  November 7, 2006                   Respectfully submitted,

                                           RADIAN GUARANTY INC.
                                           By Counsel

                                           SCHNADER HARRISON SEGAL & LEWIS LLP


                                           By:  /s/ Jonathan M. Stern
                                                Jonathan M. Stern (DC Bar No. 412689)
                                                Suite 300
                                                2001 Pennsylvania Avenue, NW
                                                Washington, DC 20006-1825
                                                Telephone:  (202) 419-4200

Of Counsel:

David Smith
Jonathan S. Liss
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
Telephone:  (215) 751-2000