**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE FANNIE MAE SECURITIES LITIGATION | No. 1:04-cv-01639 (RJL) |
| FRANKLIN MANAGED TRUST *et al.*,<br><br>*Plaintiffs*,<br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*,<br><br>*Defendants*. | No. 1:06-cv-00139 (RJL) |

## REPLY MEMORANDUM OF DEFENDANT KPMG LLP IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS COMPLAINT

F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar. No. 468351)
Melanie L. Katsur (D.C. Bar No. 484969)
Henry C. Whitaker (D.C. Bar No. 499210)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for KPMG LLP*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ....................................................................................................................1

ARGUMENT ...........................................................................................................................5

     I.     The Complaint Does Not Adequately Allege That KPMG Violated
           Section 10(b) And Rule 10b-5. ...................................................................................5

           A.     Plaintiffs Misstate The Scienter Requirement. ............................................5

           B.     Plaintiffs Claim Of Fraud Is Strongly Undermined By Allegations
                  And Public Disclosures That Show That Reasonable Accountants
                  Did Differ On These Complex Accounting Principles. ...............................8

           C.     Plaintiffs Have Failed To Plead That KPMG Had Actual
                  Knowledge Of The Alleged Fraud At Fannie Mae....................................9

           D.     Plaintiffs Have Failed To Allege Facts Warranting A Strong
                  Inference That KPMG Acted With Extreme Recklessness. ......................15

           E.     Plaintiffs Have Failed To Plead Loss Causation........................................22

     II.    The Loss Period Should Not Extend Beyond September 21, 2004, And
           Any Reliance On KPMG's Audit Opinions On Or After That Date Was
           Unreasonable...........................................................................................................24

CONCLUSION........................................................................................................................25

## TABLE OF AUTHORITIES

### Cases

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.*,
  511 U.S. 164 (1994) ................................................................................................ 1, 24

*Conley v. Gibson*,
  355 U.S. 41 (1957) ...................................................................................................... 7

*D.E. & J. Ltd. P'Ship v. Conaway*,
  284 F. Supp. 2d 719 (E.D. Mich. 2003) ..................................................................... 5

*Danis v. USN Communications, Inc.*,
  121 F. Supp. 2d 1183 (N.D. Ill. 2000) ..................................................................... 15

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ....................................................................... 10, 12, 15

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) .............................................................................................. 22, 23

*Erwin v. United States*,
  No. 05-1698, 2006 WL 2660296 (D.D.C. Sept. 15, 2006) ....................................... 10

*Ezra Charitable Trust v. Tyco Int'l Ltd.*,
  2006 WL 2742561 (1st Cir. Sept. 27, 2006) ........................................................ 3, 6, 10

*Fidel v. Farley*,
  392 F.3d 220 (6th Cir. 2004) ................................................................................... 16

*Garfield v. NDC Health Corp.*,
  No. 05-14765, 2006 WL 2883238 (11th Cir. Oct. 12, 2006) .......................... 17, 19, 21

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002) ..................................................................................... 8

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) ..................................................................................... 13

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) .................................................................................. 7, 8

*In re Cardinal Health*,
  426 F. Supp. 2d at 766 ............................................................................................. 18

*In re Credit Suisse First Boston Corp.*,
  431 F.3d 36 (1st Cir. 2005) ........................................................................................ 6

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

*In re Fannie Mae Sec. Litig.*,
    C.A. No. 04-cv-01639, slip op. at 1 (D.D.C. Feb. 9, 2006) ................................................. 7

*In re First Union Corp. Sec. Litig.*,
    128 F. Supp. 2d 871 (W.D.N.C. 2001) .................................................................... 11, 23

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    277 F.3d 658 (3d Cir. 2002) ................................................................................... 5, 12

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004) ................................................................. 9, 17, 19

*In re SCB Computer Tech., Inc. Sec. Litig.*,
    149 F. Supp. 2d 334 (W.D. Tenn. 2001) ....................................................... 14, 16, 17

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
    124 F. Supp. 2d 505 (S.D. Ohio 2000) ........................................................................ 10

*In re Stone & Webster, Inc. Sec. Litig.*,
    414 F.3d 187 (1st Cir. 2005) ....................................................................................... 18

*In re Sunterra Corp. Sec. Litig.*,
    199 F. Supp. 2d 1308 (M.D. Fla. 2002) ...................................................................... 20

*In re Van Wagoner Funds, Inc. Securities Litigation*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ...................................................................... 23

*Kramer v. Time Warner*,
    937 F.2d 767 (2d Cir. 1991) .......................................................................................... 9

*Kushner v. Beverly Enters., Inc.*,
    317 F.3d 820 (8th Cir. 2003) ...................................................................................... 13

*Langley Partners L.P. v. Tripath Tech., Inc.*,
    No. 05cv4194, 2006 WL 563053 (N.D. Cal. Mar. 7, 2006) ........................................ 23

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ...................................................................................... 18

*Mittman v. Rally's Hamburgers, Inc.*,
    278 F. Supp. 2d 831 (W.D. Ky. 2003) ........................................................................ 14

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) .......................................................................................... 7

*Pinker v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002) ................................................................................. 24, 25

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004) ..................................................................................... 5, 16

*Reiger v. PriceWaterhouseCoopers LLP,*
    117 F. Supp. 2d 1003 (S.D. Cal. 2000) ............................................................................ 5

*Robbins v. Koger Props., Inc.,*
    116 F.3d 1441 (11th Cir. 1997) ...................................................................................... 23

*Saba v. Compagnie Nationale Air France,*
    78 F.3d 664 (D.C. Cir. 1996) ...................................................................................... 6, 12

*SEC v. Steadman,*
    967 F.2d 636 (D.C. Cir. 1992) ........................................................................... 1, 6, 12, 16

*Semerenko v. Cendant Corp.,*
    223 F.3d 165 (3d Cir. 2000) .......................................................................................... 24

*Sierzega v. Ashcroft,*
    358 F. Supp. 2d 3 (D.D.C. 2005) .................................................................................. 10

## Statutes

15 U.S.C. § 78u-4(b)(1) ........................................................................................................ 9

28 U.S.C. § 1658(b) ............................................................................................................ 20

## Rules

Federal Rule of Civil Procedure 9(b) .................................................................................. 21

## Other

H.R. Conf. Rep. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730, 730 ...................................................................... 1

S. Rep. No. 104-98, at 9 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 679 .............................................................................. 6

SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 19, 1999) ............................ 12

iv

# INTRODUCTION

While replete with hyperbolic rhetoric and forays into issues nowhere mentioned in the complaint, plaintiffs' opposition does *nothing* to paper over the core defect of their securities fraud case against KPMG:  they have pleaded, at best, a theory of negligence that is not actionable under Section 10(b) and Rule 10b-5.  The PSLRA's heightened pleading standard was enacted to impose a demanding, threshold *pleading* burden on plaintiffs, *particularly* with respect to claims against "deep pocket defendants, including accountants, underwriters, and individuals who may be covered by insurance, without regard to their actual culpability."  H.R. Conf. Rep. 104-369 at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 730.  In combination with the Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164, 191 (1994), which dispensed with aiding and abetting liability in private 10b-5 actions, the PSLRA operates to ensure that only *fraud* claims move forward against secondary actors such as accounting firms.  That is not what we have here.

This Court has repeatedly and rightly recognized that the events at issue in this case have been investigated repeatedly and thoroughly and dissected in voluminous published reports.  Yet no report concludes that KPMG committed fraud.  No report concludes that KPMG conspired with Fannie Mae to commit fraud.  Even if one ignores the multiple instances documented by OFHEO in which Fannie Mae lied and misrepresented information to KPMG, at worst the "story" alleged here is that KPMG erred in the exercise of professional judgment.  Because plaintiffs still cannot come forward at this late date and point to specific allegations that take this case out of the world of negligence and into the world of fraud, dismissal is appropriate.

Tellingly, plaintiffs do not cite, let alone address, *SEC v. Steadman*, 967 F.2d 636, 641-42 (D.C. Cir. 1992), which articulates this Circuit's demanding scienter requirement for Section 10(b) claims.  Under *Steadman*, the allegations must show "subjective intent" to defraud.  There

are no such allegations here.  Plaintiffs also grapple with *none* of the authority confirming the stringency of the PSLRA's pleading requirements as applied to claims asserted against accountants.  *See* KPMG Mem. 1-4, 11-14 (collecting cases).  It is no response to say, as plaintiffs do, that the PSLRA does not expressly draw distinctions between accountants and others.  That is not KPMG's point.  The point plaintiffs never confront is that the pleading requirements are particularly demanding as applied to claims against auditors given the auditor's role and the qualified nature of an audit opinion.

Instead, plaintiffs devote the heart of their opposition to rewriting the allegations in their own complaint.  Although plaintiffs protest to the contrary, the fundamental theory of the complaint *as actually pleaded* is that KPMG must have engaged in deliberate wrongdoing because Fannie Mae's GAAP violations were so obvious that KPMG must have known the company's financial statements did not materially comply with GAAP, and that KPMG had information available to it that should have alerted it to management's scheme to smooth earnings and to hit earnings targets.  But as we demonstrated in the opening brief, those allegations at most constitute claims of malpractice, not fraud—and Section 10(b) authorizes damages only for fraud.

Moreover, plaintiffs overlook a host of particularized allegations in their own complaint that are fundamentally incompatible with the "strong inference" of fraud required by the PSLRA, including that:

- KPMG pushed Fannie Mae to improve its accounting, KPMG Mem. at 6-7, 14-15, and

- Fannie Mae concealed information that would have helped KPMG uncover management's scheme to manipulate accounting in order to smooth earnings and hit earnings targets.  KPMG Mem. at 7-8.

Those allegations devastate plaintiffs' claim that they have pleaded a "strong inference" of scienter. One cannot plead conscientious efforts by the auditor to police misconduct at Fannie Mae, and then turn around and ask a Court to conclude that the complaint gives rise to a *strong inference* of the auditor's *scienter*. Plaintiffs are certainly free to cast about the terms "fraud" and "scienter" in their opposition, but they are not free to invent new allegations in their briefing papers or to have this Court draw inferences that are fundamentally at war with specific, particular factual allegations in the complaint.

**1.** Plaintiffs' Section 10(b) claim must be dismissed because they have not alleged particularized facts that KPMG had "actual knowledge" of fraud at Fannie Mae, or that KPMG "actually knew" or "actually believed" that its annual audit opinions were false. The section in plaintiffs' opposition entitled "Particular Facts Supporting KPMG's Conscious Misbehavior," Opp. 17-18, rests entirely on allegations that KPMG understood the accounting treatment and accounting policies adopted by Fannie Mae as to certain issues and that these accounting positions were later deemed to be noncompliant with GAAP. But knowledge of accounting policies later determined to be noncompliant with GAAP is simply not "actual knowledge" of fraud; it is not even close. *Ezra Charitable Trust v. Tyco Int'l Ltd.*, 2006 WL 2742561, at * 5 (1st Cir. Sept. 27, 2006) ("Pleading fraud by hindsight, essentially making general allegations that defendants knew earlier what later turned out badly, is not sufficient"). KPMG may well have understood the accounting treatment adopted by Fannie Mae, but there are no particularized factual allegations that KPMG actually believed that any of the accounting judgments made by Fannie Mae rendered Fannie Mae's overall financial statements materially false, let alone that KPMG knew or believed that Fannie Mae adopted particular accounting treatments to smooth earnings or hit bonus targets.

Indeed, plaintiffs' complaint *affirmatively alleges* that KPMG believed that any deviations from GAAP were immaterial.  In hindsight, plaintiffs can label that materiality decision incorrect, erroneous, and unreasonable.  But they simply cannot allege, on the one hand, that this was KPMG's sincerely held view, and then, on the other hand, ask the Court to draw an inference that KPMG actually possessed the subjective intent to defraud investors, or to conspire with Fannie Mae management to do so.

Plaintiffs also err in contending that that they have pleaded KPMG's extreme recklessness.  *See* Opp. 19-22.  That contention rests on little more than plaintiffs' theory, frequently raised and repudiated in suits against auditors, that KPMG had access to information that should have alerted it to management's accounting improprieties and that KPMG possessed an economic incentive to continue its business relationship with Fannie Mae.  Several courts have confronted these types of allegations and concluded that they do not adequately plead scienter.  And if they *did* suffice, overcoming the PSLRA's heightened pleading requirements would be as easy as lifting a feather, because this type of "motive" and "opportunity" exists in every engagement between an accountant and an audit client.

Plaintiffs also point to a set of purported "red flags" that KPMG is alleged to have ignored, but when examined closely these "red flags" simply state a claim for negligence.  The allegation, for example, that KPMG conducted a substandard investigation into Roger Barnes's allegations is at most an allegation that KPMG fell down on the job; it does not give rise to a strong inference that KPMG acted with an intent to defraud investors.

Finally, plaintiffs have not pleaded loss causation adequately.  All elements of fraud must be pleaded with particularity.  Plaintiffs point to no particularized factual allegations in their complaint alleging that KPMG's audit opinions (as opposed to other forces) caused their loss.

**2.**  If the Court does not dismiss the complaint, it should dramatically truncate the alleged class period.  In light of the disclosures in the OFHEO Report, plaintiffs as a matter of law cannot have detrimentally relied on KPMG's audit opinions on or after September 22, 2004, the date that report issued.  Plaintiffs' own allegations make that clear.  If the case proceeds, it should not proceed under the overhang of the enormous "damage" figures contemplated by Plaintiffs unfounded attempt to dramatically expand the loss period.

## ARGUMENT

**I.     The Complaint Does Not Adequately Allege That KPMG Violated Section 10(b) And Rule 10b-5.**

### A.     Plaintiffs Misstate The Scienter Requirement.

Plaintiffs premise their opposition on two erroneous assertions about the legal framework applicable to securities fraud claims against auditors.

*First*, plaintiffs dispute the strictness of the pleading requirement applicable to securities fraud cases against auditors.  Opp. at 15-16.  But as several courts have recognized, the pleading requirements in securities fraud suits are "especially stringent when the claim is brought against an outside auditor."  *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004); *see also Reiger v. PriceWaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007-08 (S.D. Cal. 2000) ("it is almost always more difficult to establish scienter on the part of the accountant than on the part of its client").  This is not only because an auditor operates in a client-controlled environment, depends "on information supplied by the client," and is called upon to apply "complex accounting and auditing standards," *D.E. & J. Ltd. P'Ship v. Conaway*, 284 F. Supp. 2d 719, 740 (E.D. Mich. 2003), but also because in an audit opinion the "auditor certifies only that it exercised appropriate, not flawless, levels of professional care and judgment."  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 277 F.3d 658, 673 (3d Cir. 2002).  Indeed, the audit opinions at issue

in this complaint represent KPMG's belief that Fannie Mae's financial statements were stated "fairly" and in accordance with GAAP in all "material" respects—not in "each and every respect."

In light of the distinctive role occupied by auditors in the securities markets, and given Congress's express determination when enacting the PSLRA that "accountants and other professionals are the prime targets of abusive securities lawsuits," S. Rep. No. 104-98, at 9 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, the PSLRA's text and purpose require plaintiffs to plead particular facts against "an independent auditor entail[ing] a mental state so culpable that it approximates an actual intent to aid in the fraud being perpetrated by the audited company." KPMG Mem. at 1-5, 11-13.

That stringent pleading standard is even more demanding when paired with the substantive scienter requirement that prevails in the D.C. Circuit. This Circuit has held that Section 10(b) scienter requires, at a minimum, a showing of "**extreme recklessness**." *Steadman*, 967 F.2d at 641 (emphasis added). This form of recklessness "is not merely a heightened form of ordinary negligence." *Saba v. Compagnie Nationale Air France*, 78 F.3d 664, 668 (D.C. Cir. 1996). Section 10(b) scienter in the D.C. Circuit requires a showing that approximates actual intent. *Steadman*, 967 F.2d at 641-42 (Section 10(b) scienter is a "form of intent"); *see also Ezra Charitable Trust v. Tyco Intern., Ltd.*, No. 05-2762, 2006 WL 2742561, at *10 (1st Cir. Sept. 27, 2006) ("a plaintiff must allege that defendants consciously intended to defraud, or that they acted with a high degree of recklessness") (quotations marks omitted); *In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 49 (1st Cir. 2005) ("the plaintiff must, for each allegedly false opinion, plead provable facts strongly suggesting that the speaker did not believe that particular opinion to be true when uttered").

Plaintiffs offer no compelling response to this point. They contend that a showing of *ordinary* recklessness suffices, Opp. at 15, but that is patently wrong, and plaintiffs do not even cite *Steadman*, the authoritative case on Section 10(b) recklessness in this Circuit. Plaintiffs also invoke a string-cite of cases "in which plaintiffs have been found to have stated Section 10(b) claims against auditors," Opp. at 15-16, but each complaint must be judged on its own allegations. That *some* securities fraud plaintiffs have *sometimes* successfully pleaded claims against auditors says nothing about whether plaintiffs have carried their pleading burden here.

*Second*, plaintiffs contend that a court cannot "draw inferences both for, and against, plaintiffs." Opp. at 15. That is also incorrect. The law places an auditor like KPMG in a very different position than company defendants like Fannie Mae and its executives. KPMG Mem. at 2-4. Any inferences adopted by the Court should account for the different roles and positions of accountants compared to the Fannie Mae defendants. Moreover, the plaintiffs offer no legal argument in support of their position, instead relying on the mischaracterization that this Court "refused to follow" (Opp. 15) the widely accepted position that under the PSLRA "plaintiffs are entitled only to the most plausible of competing inferences." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001). This Court did not address that question in its earlier motion to dismiss ruling, and the case cited by this Court, *Novak v. Kasaks*, 216 F.3d 300, 313 (2d Cir. 2000), does not speak to this issue at all. And the plaintiffs' assertion that this Court must apply the "pleading standards set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)[,]" Opp. at 14, overreaches too—Conley is a *notice pleading* case, a standard that is plainly not applicable under the PSLRA. As the Court is well aware, it cited to *Conley* only for the axiomatic proposition that it must assume "all facts alleged by the plaintiffs to be true." *In re Fannie Mae Sec. Litig.*, C.A. No. 04-cv-01639, slip op. at 1 (D.D.C. Feb. 9, 2006).

The PSLRA requires courts on a motion to dismiss to consider *all* reasonable inferences, including those inferences that favor the defendant. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (holding that PSLRA requires "**all** reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs" (emphasis in original)); *Helwig.*, 251 F.3d at 553 (holding that the "strong inference" requirement means that "plaintiffs are entitled only to the most plausible of competing inferences"). The "strong inference" requirement "significantl[y] strengthen[s] the pre-PSLRA standard under Rule 12(b)(6)." *Helwig*, 251 F.3d at 553. That is why the Court should not draw inferences that contradict specific allegations in the complaint or that otherwise belie common sense. *See Ezra*, 2006 WL 2742561, at * 5 ("scienter allegations do not pass the 'strong inference' test when, viewed in light of the complaint as a whole, there are legitimate explanations for the behavior that are equally convincing").

### B. Plaintiffs Claim Of Fraud Is Strongly Undermined By Allegations And Public Disclosures That Show That Reasonable Accountants Did Differ On These Complex Accounting Principles.

Among the more remarkable claims in plaintiffs' opposition is the assertion that other Big 4 firms "swiftly deduced" that Fannie Mae's FAS 133 accounting was incorrect. *See* Opp. at 3-4, 7, 11, 14, 17. Putting aside for the moment that such allegations do not speak to what KPMG believed—which is the focus of the scienter inquiry—the statement is belied by plaintiffs' own allegations and by widely publicized disclosures showing that *all* the Big 4 firms disagreed over the application of these complex accounting principles. Plaintiffs allege that Deloitte & Touche (D&T) and Ernst & Young (E&Y) condemned KPMG's accounting with the benefit of hindsight. But more telling is how these firms viewed these complex accounting principles *at the time*. According to plaintiffs *own* allegations, before the SEC opined on Fannie Mae's FAS 133 and FAS 91 accounting, E&Y actually *endorsed* Fannie Mae's accounting in

May 2004.  Second Am. Class Compl. ¶ 303 ("Additionally, Ernst and Young, the advisor to our outside legal counsel, **concurs with the views of the company and KPMG**.").  Once again, plaintiffs' actual allegations cannot be reconciled with their opposition.  More fundamentally, this allegation is devastating to plaintiffs' claims that KPMG was somehow an outlier, or that its judgment represented an extreme departure from professional standards.  Plaintiffs' own complaint demonstrates precisely the opposite conclusion.

Moreover, after the SEC and OFHEO opined on Fannie Mae's accounting, E&Y—which plaintiffs hold forth as "know[ing] how SFAS 133 works and what it requires," Opp. at 4—had at least eight audit clients announce restatements of their financial statements because their accounting did not comply with FAS 133.[1]  And no fewer than twenty D&T audit clients have done the same.  *See* Appendix B.  At the time, reasonable accountants can and did differ with respect to what the plaintiffs now call the "clear" principles of FAS 133.  In light of their own allegations and these public disclosures, plaintiffs cannot credibly claim that an "industry analysis" gives rise to the strong inference that KPMG knowingly committed fraud by interpreting FAS 133 the way it did.

### C. Plaintiffs Have Failed To Plead That KPMG Had Actual Knowledge Of The Alleged Fraud At Fannie Mae.

Plaintiffs also erroneously contend that they have pleaded particular facts showing that KPMG's "conscious misbehavior."  Opp. 17-18.  That is clearly wrong.  The fraud at Fannie Mae, as alleged in the complaint, was a concerted effort by Fannie Mae's executives to mislead investors by smoothing and managing earnings in an effort to procure large bonuses.  *E.g.*, Second Am. Class Compl. ¶ 38.  The complaint nowhere pleads that KPMG knew that this

---

[1]  The SEC filings in which E&Y audit clients have announced restatements because of failure to comply with FAS 133 is attached as Appendix A.  These announcements are set forth in public SEC filings, and it is well settled that a court may take judicial notice of the contents of SEC filings.  *E.g.*, *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

alleged effort was afoot.  Opp. at 17 (attributing fraud to Fannie Mae management's efforts to "hit earnings targets and reap multi-million dollar bonuses").  Indeed, the entire theory of plaintiffs' case is that KPMG failed to detect and stop the alleged fraud.

Plaintiffs also err in suggesting that they have alleged particular facts showing that KPMG had actual knowledge that its audit opinions were materially false or misleading.  Opp. at 13-18.  This is a blatant and demonstrable rewriting of the complaint's allegations.  *Erwin v. United States*, No. 05-1698, 2006 WL 2660296, at *4 (D.D.C. Sept. 15, 2006) ("[f]actual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion"); *Sierzega v. Ashcroft*, 358 F. Supp. 2d 3, 5 n.2 (D.D.C. 2005) (Leon, J.) (declining to consider assertions in opposition brief because "facts . . . not alleged in the complaint . . . are not considered in the analysis of a 12(b)(6) motion to dismiss").

To begin with, virtually none of plaintiffs' allegations are even "specific facts."  *In re SmarTalk Televservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 514 (S.D. Ohio 2000).  They are simply bald, factually unsupported assertions that KPMG "knew" this or "knew" that.  *E.g.*, Second Am. Class Compl. ¶¶ 317 ("KPMG knowingly and substantially participated . . ."); 398 ("KPMG knew or recklessly disregarded . . .").  The PSLRA requires more than an assertion—it requires particular facts showing knowledge of fraud.  *See, e.g.*, *Ezra Charitable Trust v. Tyco Intern., Ltd.*, No. 05-2762, 2006 WL 2742561, at *10 (1st Cir. Sept. 27, 2006) ("Simply pleading that the defendant knew of the falsity, without providing any factual basis for that knowledge, does not suffice."); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388-89 (9th Cir. 2002) (plaintiff must plead facts in "great detail").  Any plaintiff can assert that an outside auditor was "aware" of a practice or "knew" that a practice violated GAAP.  That pleading tactic, without more, comes nowhere close to satisfying the PSLRA.  15 U.S.C. § 78u-4(b)(1); *In re*

*First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 885 (W.D.N.C. 2001) (the PSLRA requires the plaintiff to plead the "who, what, where, why and when").

Even under the most generous reading of the complaint, plaintiffs allege only that KPMG knew of the accounting *policies* adopted by Fannie Mae. *See* Opp. at 18; Second Am. Class Compl. ¶¶ 327 ("KPMG reviewed the SFAS 91 policy"); 329 ("KPMG was actively involved in the development"); 336 ("KPMG was also kept informed"); 352 ("KPMG knew that Fannie Mae 'assumed' perfect effectiveness"); 361 ("KPMG has access to Fannie Mae's written hedge accounting policies"). But there are *no* allegations that KPMG believed these policies rendered Fannie Mae's financial statements as a whole materially noncompliant with GAAP. There are *no* allegations that KPMG knew or believed that Fannie Mae management adopted particular accounting positions in order to manipulate earnings. And there are *no* allegations that KPMG believed the specific audit opinions KPMG issued from 2001-2003 were materially false or misleading. Those omissions doom this complaint.

The two significant accounting issues featured in the complaint involve FAS 91 and FAS 133. With respect to FAS 91, plaintiffs assert that "KPMG also knew that Fannie Mae's SFAS 91 policy was non-GAAP compliant." Opp. 17 (citing Second Am. Class Compl. ¶ 327-29, 336). But plaintiffs' complaint alleges no *particular* facts—not in the cited paragraphs or elsewhere—that KPMG believed that Fannie Mae's FAS 91 accounting did not comply with GAAP. These paragraphs merely allege that "KPMG reviewed the SFAS 91 policy and was aware" of the policy. Second Am. Class Compl. ¶ 327.[2] Although that policy was later deemed to be incorrect, there is no allegation that KPMG *at the time* believed it was incorrect. Indeed, at most these are allegations that KPMG erred in applying a complex accounting standard, not that

---

[2] *See also* Second Am. Class Compl. ¶¶ 328 ("KPMG knew of and approved"); 329 ("KPMG was actively involved in the development and implementation"); 335 ("KPMG 'was aware of and did not disagree'"); 336 ("KPMG was also kept informed").

it acted with the actual intent to defraud investors that *Steadman* requires. 967 F.2d at 641; *see also Saba*, 78 F.3d at 669. That is not enough to satisfy the PSLRA.

Indeed, far from demonstrating KPMG's knowledge of fraud, the actual allegation in paragraph 324 (in 1999 "KPMG requested that management develop a policy formalizing the Company's SFAS 91 practice"), shows that KPMG was discharging its duties as an auditor in good faith, not that its conduct amounted to "no audit at all." *DSAM*, 288 F.3d at 390; *see also* KPMG Mem. at 14-15. The SEC has stated that numerical thresholds can be a useful step in evaluating compliance with GAAP. *See* SEC Staff Accounting Bulletin No. 99 ("SAB 99"), 64 Fed. Reg. 45150, 45151 (Aug. 19, 1999) ("The use of a percentage as a numerical threshold . . . may provide the basis for a preliminary assumption that . . . a deviation of less than the specified percentage with respect to a particular item on the registrant's financial statements is unlikely to be material."). Plaintiffs' own allegations show that KPMG was exercising professional judgment in good faith. While that judgment has now been questioned, these specific allegations do not support a fraud claim. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680, 698 (E.D. Pa. 2001), *aff'd* 277 F.3d 658 (3d Cir. 2002) (finding that an auditor's efforts to "to try to ferret out and improve the faulty controls" undercut the plaintiffs' scienter claims).

Plaintiffs again attempt to rewrite their allegations when they assert that E&Y's findings support a strong inference of securities fraud. Opp. at 17. In fact, what E&Y is alleged to have stated is that Fannie Mae's accounting "could be" viewed by OFHEO as a violation of GAAP. Second Amend. Class Compl. ¶ 331; *see also* Second Am. Class Compl. ¶ 351 (E&Y reported regulators "could" disallow FAS 133 hedge accounting or insist on changes). There is a profound difference between "could be" and a "reckless disregard" that manifests a strong inference of securities-fraud scienter.

With respect to FAS 133, plaintiffs' opposition also makes much of the allegation that KPMG "knew" that Fannie Mae's FAS 133 policy did not comply with GAAP.  Opp. at 8-9 (citing Second Am. Class Compl. ¶ 358-59).  But once again, that allegation is not sufficiently particularized to satisfy the PSLRA's scienter requirement because "it is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent."  *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).  As one court has observed, "[w]ithout allegations of particular facts demonstrating **how** the defendants knew of the scheme at the time they made their statements . . . a showing in hindsight that the statements were false does not demonstrate fraudulent intent."  *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003) (rejecting a similar "actual knowledge" argument) (emphasis added).

More fundamentally, here the plaintiffs' *own* allegations are that KPMG *did* perform a materiality analysis and *did* believe that Fannie Mae's FAS 133 policy was materially compliant with GAAP.  Plaintiffs' assertion that "there is no evidence that KPMG performed any quantitative analysis to even determine on its own whether these violations were immaterial," Opp. at 30, is demonstrably at war with their own allegations.  In fact, the complaint repeatedly alleges that KPMG performed a materiality analysis on the FAS 133 policy.  Second Am. Class Compl. ¶ 350, 373, 380, 393.  The allegations are entirely inconsistent with a claim of fraud.

In fact, according to plaintiffs' own allegations, KPMG *actually believed* that Fannie Mae's FAS 133 policy was materially GAAP complaint.  Second Am. Class Compl. ¶¶ 350 ("KPMG applied a materiality determination to whether the terms were 'close enough' so that KPMG could sign off on the accounting treatment"); 373 ("KPMG performed a detailed review of the FAS 133 . . . practices . . . .  KPMG determined that those departures would not have a material impact on the financial statements.").  These allegations are dispositive, because KPMG's audit opinions did not express a belief that Fannie Mae's financial statements complied

with GAAP in *all respects*, but rather that they were presented fairly in accordance with GAAP in all "material" respects.  And here the allegation clearly refute any claim that KPMG "acted in bad faith in treating the proposed adjustments as immaterial."  *In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 367 (W.D. Tenn. 2001); *see also Mittman v. Rally's Hamburgers, Inc.*, 278 F. Supp. 2d 831, 837 (W.D. Ky. 2003) (concluding that an auditor did not act with scienter where it "evaluated the impact of the recommended adjustments on the financial statements taken as a whole and concluded that the recommended adjustments were not material").  That alone should bring the Court's analysis to an end.

Plaintiffs mistakenly rely upon an alleged quote from KPMG's workpapers, Opp. at 7 (citing Second Am. Class Compl. ¶ 367), that purports to show that KPMG "knew" that Fannie Mae sought to adopt FAS 133 accounting to minimize earnings volatility.  But as plaintiffs concede in both their opposition and complaint, FAS 133 is an elective accounting standard whose *purpose* is to reduce reported earnings volatility.  *See* Opp. at 6; Second Am. Class. Compl. ¶¶ 120-122.  Knowing that Fannie Mae—like every company—preferred to reduce its reported earnings volatility, and so sought to avail itself of FAS 133, is a far cry from knowledge of fraud.  This allegation, which plaintiffs twice trumpet, Opp. at 7, 27, does not bear the weight plaintiffs place upon it.

Plaintiffs also point to other cryptic statements purportedly set forth in KPMG workpapers that according to plaintiffs acknowledges that Fannie Mae's FAS 133 accounting was not in "strict compliance" with GAAP.  Opp. at 8, 17 (citing ¶¶ 365, 368-69).  But these allegations do not carry plaintiffs' burden either.  KPMG's audit reports stated the opinion that Fannie Mae's financial statements *materially* complied with GAAP.  Second Am. Class Compl. ¶¶ 403-407.  Plaintiffs' isolated allegation that KPMG knew that a lone aspect of FAS 133 was not in literal compliance with GAAP does not create a strong inference that KPMG believed that

14

Fannie Mae's financial statements *as a whole* did not comply with GAAP.  *See Danis v. USN Commc'ns, Inc.*, 121 F. Supp. 2d 1183, 1193-94 (N.D. Ill. 2000) (dismissing complaint against auditors because allegations gave "no indication that [the auditor] thought these deficiencies created a risk of *material* inaccuracies").

Finally, plaintiffs' claim that KPMG committed fraud because FAS 133 does not allow the use of a materiality standard is baseless.  Opp. at 29-30.  That is just another way of alleging that KPMG "got FAS 133 wrong."  Moreover, KPMG *informed* the public it was applying a materiality standard.  KPMG's audit opinion stated that "[i]n our opinion, the financial statements . . . present fairly, *in all material respects*, the financial position of Fannie Mae . . . in conformity with [GAAP]".  Second Am. Class Compl. ¶¶ 403-407 (emphasis in original).  It is elementary that fraud requires deception, and KPMG cannot be liable for securities fraud for applying the very standard it announced.

**D.     Plaintiffs Have Failed To Allege Facts Warranting A Strong Inference That KPMG Acted With Extreme Recklessness.**

Unable to show that they have pleaded KPMG's "actual knowledge" of fraud, plaintiffs must pin their hopes on showing that they have pleaded particular facts giving rise to a strong inference that KPMG acted with "extreme recklessness."  Opp. at 19-26.  They have not satisfied *that* burden either.

As plaintiffs concede, a "strong inference" of fraud on the part of an auditor requires an audit "so deficient that the audit amounted to no audit at all."  Opp. at 15.  Even a "**seriously botched audit**,"—one that plainly does not comply with GAAS—is not actionable under Section 10(b) as a matter of law.  *DSAM*, 288 F.3d at 387 (emphasis added).  And here the plaintiffs have at most alleged a negligently-performed audit that is not cognizable as a claim for fraud. Plaintiffs own allegations firmly refute any claim that KPMG's performed "no audit at all."

- After noting an audit difference for unrecognized catch-up in 1999, KPMG requested that management develop a formal FAS 91 policy.  Second Am. Class Compl. ¶ 324.

- KPMG reviewed Fannie Mae's FAS 91 policy and approved it only on the condition that Fannie Mae develop a policy with an appropriate materiality threshold.  Second Am. Class Compl. ¶ 329.

- In response to Barnes' allegations, KPMG recommended that Fannie Mae examine employee emails to determine if other employees believed there were accounting problems.  Second Am. Class Compl. ¶ 344.

- KPMG applied a materiality analysis to Fannie Mae's FAS 133 policy.  Second Am. Class Compl. ¶ 350.

- KPMG performed testing of the implementation of FAS 133, including reviewing 67 separate transactions.  Second Am. Class Compl. ¶ 350, 373, 380, 393.

Plaintiffs may believe these steps were inadequate, but that belief is at most a basis for a negligence claim, not a claim of fraud.

In an effort to overcome these deficiencies, plaintiffs' opposition relies on a series of arguments that KPMG's opening brief analyzed and refuted:

**Size of the restatement.**  Plaintiffs contend that the size of the restatement shows that KPMG must have known about and participated in a fraud.  Opp. at 24-26.  As KPMG has already explained, many courts have adopted the better view that "[a]llowing an inference of scienter based on the magnitude of fraud 'would eviscerate the principle that accounting errors alone cannot justify a finding of scienter.'"  KPMG Mem. at 19-20 (quoting *Fidel v. Farley,* 392 F.3d 220, 231 (6th Cir. 2004)); *see also In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 367 (W.D. Tenn. 2001) (declining to follow *In re Microstrategies*, *In re Baan*, and *Rehm*).  The size of a restatement says *nothing* about whether KPMG possessed an "actual intent to aid in the fraud," *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 693 (6th Cir. 2004), because it does not bear at all on KPMG's subjective intent—which is what the scienter pleading standards require.  *See Steadman*, 967 F.2d at 641.

16

Indeed, the circumstances here are a vivid demonstration why this correlation is suspect. A technical misapplication of FAS 133 results in no hedge accounting treatment in the financial statements; because of the all-or-nothing approach under FAS 133, an error at a financial institution like Fannie Mae that heavily uses derivatives inevitably results in a misstatement of the financial statements. *See supra* note 2 & 3. But the size of the error says nothing about the intent of the auditor who agreed with the client's original interpretation of FAS 133.

**GAAS violations.** Plaintiffs next contend that they have pleaded scienter because KPMG violated GAAS in the conduct of its audits. Opp. at 22-24. KPMG already has shown that such allegations do not contribute to a strong inference of scienter. KPMG Mem. at 16-19; *see also Garfield v. NDC Health Corp.*, No. 05-14765, 2006 WL 2883238, at *11 (11th Cir. Oct. 12, 2006) (a plaintiff "may not establish scienter by alleging that the auditor would have discovered the fraud had it not violated GAAS"). Plaintiffs' conclusory assertion that KPMG "recklessly disregard[ed]" Fannie Mae's internal controls deficiencies, for example, does not come close to pleading a strong inference of scienter. *See In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d at 363 ("a plaintiff cannot establish scienter by arguing that an independent auditor ignored a client's lack of internal controls"). At most, these allegations that KPMG failed to conduct its audit with proper care state a claim for negligence. Moreover, plaintiffs' own allegations demonstrate that KPMG worked regularly with Fannie Mae to *improve* its internal controls. *See* KPMG's Mem. at 6-8, 14-15; *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 387 (D. Md. 2004) (the auditor defendant's awareness of weak internal controls does not "mak[e] them complicit in the subsequent fraudulent accounting problems given that [the auditor] was actively raising the issue of weak internal controls with Royal Ahold's management"). Much as they might prefer to, plaintiffs cannot now disavow these allegations, which are inconsistent with a fraud claim.

17

**Motive and opportunity**.  It is telling that plaintiffs' motive and opportunity arguments focus largely on activity outside the complaint—indeed, outside this entire case.  Opp. at 4-5, 27-29 (discussing the conduct of KPMG and other auditors in other cases).  With regard to *this* case, all plaintiffs have alleged is that KPMG collected fees and had access to Fannie Mae's records.  These facts are true in every audit, and are insufficient to establish scienter as a matter of law.  *See, e.g.*, *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) (permitting a plaintiff to plead scienter by alleging a motive to receive fees "would universally eliminate the state of mind requirement in securities fraud actions against accounting firms").

Although plaintiffs assert that allegations that an auditor received fees is sufficient to establish scienter, Opp. at 27, KPMG already has explained that is not the law.  KPMG Mem. at 20-21; *see also In re Stone & Webster, Inc. Sec. Litig*., 414 F.3d 187, 215 (1st Cir. 2005) ("[A]bsent truly extraordinary circumstances, an auditor's motivation to continue a profitable business relationship is not sufficient by itself to support a strong inference of scienter."); *In re Cardinal Health*, 426 F. Supp. 2d 688, 766 (S.D. Ohio 2006) (declining to infer an auditor's scienter from allegation that auditor "received a large percentage of its total fees for its non-audit work" from the client accused of accounting fraud).  Plaintiffs contend that auditors *always* have a motive to commit fraud unless they work for free, and therefore a plaintiff can plead scienter against *any* auditor once there has been a restatement.  Courts have repeatedly rejected this theory on the grounds that it would eviscerate the PSLRA's requirements.

In an attempt to paper over this fundamental defect, plaintiffs invoke a novel and peculiar prior-bad-acts theory: that KPMG has "already traded its integrity for fees," Opp. 27, because different KPMG partners in a different case committed fraud, and therefore KPMG scienter can be presumed in this case.  This is nonsense.  The law does not permit the Court to infer KPMG's liability from another case, which is precisely what plaintiffs seek here.

18

What is most notable about plaintiffs' motive allegations is what is lacking: any plausible motive at all.  Plaintiffs have at their fingertips multiple investigative reports, culled from millions of documents and hundreds of interviews.  Despite this wealth of information, plaintiffs are unable to put forth any particularized motive for KPMG to commit fraud in this case—any motive that would distinguish these audits from every other audit.  This stands in stark contrast to their allegations regarding Fannie Mae's management, who, according to plaintiffs' allegations, reaped rich rewards totaling millions of dollars for their fraudulent scheme.  *E.g.*, Opp. at 17; Second Am. Class Compl. ¶ 315.  Plaintiffs' failure to plead any plausible motive taints plaintiffs' entire complaint, and strongly undercuts any inference of fraudulent intent.

**Red Flags.**  Plaintiffs contend that KPMG overlooked various "red flags."  Opp. at 19-22.  But plaintiffs largely identify as "red flags" the very accounting mistakes that KPMG is alleged to have made.  *See* Opp. at 21 (citing the alleged failure of Fannie Mae to develop "long-haul" derivative accounting pursuant to FAS 133 and the alleged risk that management was managing earnings).  "It is established, however, that the purported red flags cannot simply 're-hash' the alleged GAAP violations."  *Garfield*, 2006 WL 2883238, at *9.  These allegations do nothing more than that.

The other so-called "red flags" are commonplace structural features of Fannie Mae's organizational and compensation system.  Opp. at 20-21.  It is common, for example, for corporate employees to have their compensation tied to a company's stock performance, and most corporations in America seek to grow their profits and focus intently on improving earnings.  *See, e.g., In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d at 388 ("It is not uncommon . . . for large, publicly held companies to tie compensation to earnings results or to have aggressive growth strategies, and plaintiffs do not allege that these circumstances provided a motive for the [auditor] to participate in the alleged fraud); *In re Sunterra Corp. Sec.*

19

*Litig.*, 199 F. Supp. 2d 1308, 1334 (M.D. Fla. 2002) (rejecting plaintiffs' contention that a company's "aggressive growth strategy" was a sufficient "red flag" and noting that there was "no assertion that [the auditor] itself had a motive to participate in the alleged fraud").  The desire to grow profits and reach earning targets, and tying employee compensation to those goals, is not a "red flag" sufficient to satisfy the PSLRA's scienter requirement.

Also insufficient is the allegation that KPMG knew that Fannie Mae's management was focused on reducing volatility.  Opp. at 20-21.  That fact would have alerted no reasonable auditor to the existence of potential fraud given that Fannie Mae employed derivatives to make their economic performance less volatile.  *See, e.g.*, Second Am. Class Compl. ¶ 32.  For the same reason, it is hardly a smoking-gun that Fannie Mae consistently "hit its earnings targets." Opp. at 22.  That is the financial performance one might expect from a company that had a substantial portfolio of derivatives offsetting its interest-rate risk, as Fannie Mae did.

Plaintiffs also make much of features of Fannie Mae's internal corporate structure that they contend point to a heightened risk of fraud, such as the fact that the head of internal audit reported on a "dotted line" basis to Chief Financial Office Timothy Howard and that Howard "participated in the annual performance evaluation of and made compensation recommendations regarding [the head of Internal Audit]."  Opp. at 21.  But plaintiffs offer no facts showing that this structure is not common in other companies, nor do they offer any particularized facts showing why those facts would have been inherently suspicious—particularly where, as here, the company's executives deliberately conceal the manipulation from their auditor.  *See* Second Am. Class Compl. ¶ 88.  Those generic features of Fannie Mae's organizational chart are not *particular* facts contributing to a strong inference of KPMG's scienter.

Finally, plaintiffs once again stress two particular "red flags":  Roger Barnes' allegations of accounting improprieties at Fannie Mae, and KPMG's decision to disagree with an income-

recognition decision in 1998.  Opp. at 20, 22.  But plaintiffs' own allegations show that KPMG

met with Barnes, had a good faith belief that his allegations "did not indicate GAAP

noncompliance," and believed that an independent Fannie Mae team was investigating.  Second

Am. Class Compl. ¶¶ 341, 346.  As KPMG has explained, KPMG Mem. at 27-28, where an

auditor "t[akes] action" after an employee raises internal concerns about a company's

accounting, an auditor cannot be seen to have acted with scienter in failing to uncover additional

accounting errors.  *Garfield*, 2006 WL 2883238, at *11.

　　As for the 1998 audit difference, and contrary to plaintiffs' insinuations, Opp. at 23, *not a*

*single sentence* in the 333-page complaint alleges particular facts showing that KPMG knew that

*any* accounting adjustment Fannie Mae made was *for the purpose* of manipulating earnings.[3]

The complaint instead alleges that Fannie Mae made a $199 million adjustment to its income,

and that Fannie Mae's final earning's figure hit its executives' bonus targets.  Second Am. Class

Compl. ¶ 398.  But in any given fiscal year—in which Fannie Mae made literally thousands of

judgment-calls about how to account for its massive investment portfolio—it would have been

impossible for KPMG to have traced any particular judgment as "responsible" for Fannie Mae's

final earnings figure.  The deferral of $199 million in expense for fiscal year 1998 was no more

"responsible" for Fannie Mae's final earnings figure than were any of the entirely innocent

accounting decisions made by Fannie Mae that year.  That lone audit difference therefore does

not show that KPMG knew that Fannie Mae's management made this adjustment for the purpose

of manipulating earnings.  Moreover, this adjustment occurred well before the alleged fraud, as

the statute of limitations bars any claims predating 2001.  *See* 28 U.S.C. § 1658(b) (requiring

securities fraud plaintiffs to bring their claims no later than five years after the violation).

---

[3]  Buried in paragraph 398 is a single, conclusory sentence asserting that "KPMG knew that in 1998 this pay-for-
performance mentality caused management to improperly defer $200 million in catch-up expense so bonus
targets would be met."  But nowhere is there any particularized factual allegation to support that contention.

Plaintiffs allege no particular facts connecting this incident to the fraud they contend occurred years later.

There can be little doubt that accepting the allegations in this complaint as sufficient to establish scienter would expand the scope of Section 10(b) liability for accountants markedly beyond the limits proscribed by Congress.  In *every* case involving a restatement, it is always possible to identify information that was available to the auditor that could have led the auditor to conclude that the audit client's financial statements did not comply with GAAP—a restatement, after all, is only appropriate if the errors could have been discovered on the basis of information that was available at the time the statements were issued.  Similarly, in *every* case involving a restatement, it is also always possible for plaintiffs to claim that the auditors had an economic incentive to ignore this information in order to earn audit or non-audit fees.

To credit these allegations as stating a cognizable fraud claim would effectively mean that auditors could be sued for fraud every time a company restates its financials.  It is inconceivable that Congress intended the PSLRA to permit that result.  Yet that is precisely what plaintiffs urge the Court to adopt here.

### E.     Plaintiffs Have Failed To Plead Loss Causation.

The complaint also should be dismissed because plaintiffs have failed to plead loss causation with particularity.  Plaintiffs contend that KPMG was "disingenuous" to argue that loss causation must be pled with particularity, and that this Court should therefore view with "great skepticism any argument advanced by KPMG in support of dismissal."  Opp. at 5.  But it is plaintiffs about whom skepticism is warranted.  They make the patently incorrect claim that *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), "held" that Rule 8's notice pleading standard governs loss causation pleading.  But *Dura Pharm* held nothing of the sort; it simply assumed *without deciding* that this was the case.  *See* 544 U.S. at 346 ("we assume, **at least for**

**argument's sake**, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss") (emphasis added); *see also In re First Union Corp. Sec. Litig*, No. 3:99cv237, 2006 WL 163616 at *6 (W.D.N.C. Jan. 20, 2006) ("Because the scant allegations in *Dura* failed to satisfy even 'simple' notice pleading requirements, the Supreme Court expressly declined to consider whether loss causation must be pled with particularity.").

As KPMG has explained, both Federal Rule of Civil Procedure 9(b) and *In re Van Wagoner Funds, Inc. Securities Litigation*, 382 F. Supp. 2d 1173, 1178 (N.D. Cal. 2004), require plaintiffs to plead loss causation with particularity. *See* KPMG Mem. at 29. And other courts agree.[4] Indeed, the fact that the Supreme Court upheld the dismissal of the complaint in *Dura even* under the notice-pleading standard of Federal Rule of Civil Procedure 8 confirms that plaintiffs' similar loss-causation allegations are legally insufficient under the heightened standard of Rule 9(b).

Plaintiffs' loss causation allegations are not pleaded with sufficient particularity. First, plaintiffs have not pleaded that KPMG's audit opinions—as opposed to the numerous other allegedly false statements plaintiffs allege the Fannie Mae defendants made—were a substantial factor in causing their alleged losses. Second, plaintiffs do not allege that they have realized their losses by selling their securities after "the truth emerged." *See* KPMG Mem. at 29-32.

The opposition confirms that the complaint alleges no particularized facts showing that KPMG's audit opinions were a "significant  . . cause" of their alleged losses. *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1147 (11th Cir. 1997). Plaintiffs point to two paragraphs of their

---

[4]  *See In re First Union Corp. Sec. Litig.*, No. 3:99cv237, 2006 WL 163616, at *6 (W.D.N.C. Jan. 20, 2006) ("every element of a common law fraud action must be pled with particularity"); *Langley Partners L.P. v. Tripath Tech., Inc.*, No. 05cv4194, 2006 WL 563053, at *3 (N.D. Cal. Mar. 7, 2006) (plaintiff must plead "loss causation with particularity in order to state a claim").

complaint, Opp. at 34 (citing Second Am. Class Compl. ¶ 455-56), but those paragraphs contain only the conclusory and generalized allegations that "these price declines were directly caused by Defendants' fraud alleged herein" and "[t]he fraud perpetrated by the Defendants described in this Complaint proximately caused foreseeable losses to the [plaintiffs]." Second Am. Class Compl. ¶ 455-56. These conclusory allegations fall well short of the required particularity, and do not even mention KPMG specifically, much less articulate particularized facts that show that KPMG was a "significant" cause of plaintiffs' alleged losses.

## II. The Loss Period Should Not Extend Beyond September 21, 2004, And Any Reliance On KPMG's Audit Opinions On Or After That Date Was Unreasonable.

As plaintiffs implicitly acknowledge, Opp. at 39 n.32, KPMG is responsible only for its *own* representations made in its audit opinions; there is no other basis for a securities fraud claim against KPMG. Plaintiffs' argument that the misleading statements of the *Fannie Mae defendants* after 2004 extend the class period for KPMG (Opp. 39) is therefore an impermissible attempt to resurrect aiding and abetting liability for auditors—a cause of action eliminated by the Supreme Court in *Central Bank*. It is well settled that the class period against *KPMG* cannot be extended because of the representations made by other defendants. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 181-84 (3d Cir. 2000) (refusing to extend the class period for the auditor because of allegedly misleading statements made by management).

Moreover, plaintiffs' reliance on *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002), is misplaced. In *Roche*, the court held only that the mere disclosure that Roche was the target of an antitrust suit "hardly indicated to the market with any degree of certainty that Roche ha indeed engaged in anti-competitive activity. . . . [t]he market may well have thought the lawsuit was frivolous . . . ." *Id.* at 374. Mere disclosure of a lawsuit is a much different than OFHEO's release of an extensive, 198-page report detailing "serious . . . concerns regarding the

validity of previously reported financial results, the adequacy of regulatory capital, the quality of

management supervision, and the overall safety and soundness of the Enterprise." Second Am.

Class Compl. ¶ 40.  That report detailed extensive problems with Fannie Mae's compliance with

FAS 91 and FAS 133—the two accounting standards that are allegedly responsible for more than

$9 billion of the restatement.  This is nothing like *Pinker*.

Indeed, none of the cases cited by plaintiffs support their sweeping contention that a class

period does not end until "all" facts are disclosed.  Opp. at 37.  Under plaintiffs' open-ended

view, the class period effectively would never end, so long a plaintiff could unearth *any* new fact

about a company's accounting.  But courts have repeatedly rejected this argument, holding

instead that serious allegations of accounting irregularities are enough to make reliance on a

company's financial statements unreasonable.  KPMG Mem. at 34-35 & n. 5.  The OFHEO

Report released on September 22, 2004, made further reliance on KPMG's audit opinions

unreasonable as a matter of law.  At a minimum, the withdrawal of Fannie Mae's financial

statements and KPMG's audit opinions in December 2004 removed any possible basis for an

investor to rely on KPMG's audit opinions.

## CONCLUSION

For the foregoing reasons, as well as those stated in KPMG's opening memorandum,

KPMG's motion to dismiss plaintiffs' Second Amended Complaint should be granted.

Respectfully submitted this 8th day of November 2006.

   /s/Andrew S. Tulumello
F. Joseph Warin (D.C. Bar No. 235978)
Andrew S. Tulumello (D.C. Bar. No. 468351)
Melanie L. Katsur (D.C. Bar No. 484969)
Henry C. Whitaker (D.C. Bar No. 499210)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for KPMG LLP*

# Appendix A: Ernst & Young FAS 133 Restatements

| # | Company | Restatement Date |
|---|---------|------------------|
| 1 | ACR Group, Inc. | 10-K/A Filed October 15, 2004 |
| 2 | ATS Medical | 10-K/A Filed July 17, 2006 |
| 3 | Commerce Energy Group | 10-Q/A Filed October 31, 2005 |
| 4 | First Data Corp. | 10-K/A Filed September 15, 2006 |
| 5 | National City Corp. | 10-K Filed February 9, 2004 |
| 6 | National Rural Utilities Coop Fin. Corp. | 10-Q/A Filed January 19, 2006 |
| 7 | OM Group | 10-K Filed March 31, 2005 |
| 8 | Thomson SA | 20-F/A Filed December 22, 2005 |

# Appendix B: Deloitte & Touche FAS 133 Restatements

| # | Company | Restatement Date |
|---|---------|------------------|
| 1 | Abington Bank | 10-K Filed March 31, 2005 |
| 2 | AES | 8-K Filed April 4, 2006 |
| 3 | Ameritrade | 10-Q/A Filed November 18, 2005 |
| 4 | Bay View Capital | 10-Q/A Filed May 10, 2005 |
| 5 | Center Financial Corp. (S/C) | 10-K/A Filed November 18, 2005 |
| 6 | Centerplate, Inc. | 10-K/A Filed December 22, 2004 |
| 7 | Federal Agricultural Mortgage Corp. | 8-K Filed October 4, 2006 (Notice only – have not filed restatement as of Nov. 1, 2006) |
| 8 | Franklin Credit Management | 10-K Filed April 25, 2006 |
| 9 | Kilroy Realty Corporation | 10-K/A Filed November 8, 2005 |
| 10 | New York Mortgage Trust | 10-Q Filed November 14, 2005 |
| 11 | Northeast Utilities | 10-Q/A Filed March 17, 2005 |
| 12 | Oakley, Inc. | 10-K/A Filed March 31, 2006 |
| 13 | PHH Corp. | NT 10-Q Filed August 28, 2006 |
| 14 | Reliant Resources, Inc. | 10-Q/A Filed August 9, 2005 |
| 15 | Royal Ahold (Koninklijke Ahold N.V.) | 20-F Filed April 14, 2005 |
| 16 | Sappi Ltd | 20-F Filed December 20, 2005 |
| 17 | Saxon Capital Inc. | 10-K Filed March 31, 2006 |
| 19 | W Holding Co, Inc. | 10-K Filed April 24, 2006 |
| 20 | Wynn Las Vegas | 10-K Filed March 31,2006 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused electronic copies of the foregoing to be transmitted on

November 8, 2006, to the following counsel registered to receive electronic service:


Joshua S. Devore
Steven J. Toll
Matthew K. Handley
Daniel S. Sommers
Cohen, Milstein, Hausfeld & Toll P.L.L.C
West Tower, Suite 500
1100 New York Ave., N.W.
Washington, D.C. 20005
*Counsel for Plaintiffs Vincent Vinci*; *State Teachers Retirement System of Ohio*; *Anne E. Flynn; Robert L. Garber*

James R. Cummins
Melanie S. Corwin
Waite, Schneider, Bayless & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
*Counsel for Plaintiffs Ohio Public Employees Retirement System*; *State Teachers Retirement System of Ohio*


Julie A. Richmond
Kathleen M. Donovan-Maher
Jeffery C. Block
Joseph C. Merchman
Berman Devalerio Pease Tabacco Burt & Pucillo
One Liberty Square
Boston, MA 02190
*Counsel for Plaintiffs Ohio Public Employees Retirement System*; *State Teachers Retirement System of Ohio*

Alan J. Statman
Jeffery P. Harris
Statman, Harris & Eyrich LLC
3700 Carew Tower
441 Vine Street
Cincinnati, OH 45202
*Counsel for Plaintiffs Ohio Public Employees Retirement System*; *State Teachers Retirement System of Ohio*


Frank J. Johnson
Brett M. Weaver
Law Office of Frank J. Johnson
402 W. Broadway 27th Floor
San Diego, CA 92101
*Counsel for Plaintiff Sassan Shahrokhinia*

Robert W. Liles
Martyn Liles, PLLC
1054 31st Street, N.W.
Suite 415
Washington, D.C. 20007
*Counsel for Plaintiff Sassan Shahrokhinia*

Stuart M. Grant
Christine M. MacKintosh
Megan D. McIntyre
Grant & Eisenhofer, P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for the Franklin Templeton Plaintiffs*

Jeffrey W. Kilduff
Seth A. Aronson
Michael J. Walsh, Jr.
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Fannie Mae, Thomas P. Gerrity, Taylor C. Segue, III, William R. Harvey, Joe Pickett, Kenneth M. Duberstein, Manuel Justiz, H. Patrick Swygert, and Leslie Rahl*

Kevin M. Downey
Alex G. Romain
Daniel N. Marx
Joseph M. Terry, Jr.
Michelle D. Schwartz
Matthew L. Fore
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5091
*Counsel for Defendant Franklin D. Raines*

Steven M. Salky
Eric R. Delinsky
Ellen D. Marcus
Holly Ann Pal
Tammy Gershoni
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-2638
*Counsel for Defendant Timothy J. Howard*

David S. Krakoff
Christopher F. Regan
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
*Counsel for Defendant Leanne G. Spencer*

David I. Ackerman
Bingham McCutchen, LLP
2020 K Street, N.W.
Washington, D.C. 20006

James Hamilton
Swidler Berlin LLP
3000 K Street, N.W. Suite 300
Washington, D.C. 20007
*Counsel for Defendant Joe Pickett*

Erica Lynne Salmon
Piper, Rudnick, Gray & Carey LLP
1200 19th Street, N.W. Suite 700
Washington, D.C. 20036
*Counsel for Defendants Stephen B. Ashley,*
*Donald B. Marron, and Ann Korologos*

James D. Wareham
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
*Counsel for Defendant Daniel H. Mudd*

Julie E. Guttman
Baker Botts LLP
The Warner
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
*Counsel for Defendant Jamie S. Gorelick*

David Smith
Dionna K. Litvin
Jonathan S. Liss
Jonathan Michael Stern
Schnader Harrison Segal & Lewis LLP
1600 Market Street
Philadelphia, PA 19103-7286
*Counsel for Radian Group Inc.*

Richard H. Klapper
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498
*Counsel for Goldman Sachs*

I hereby certify that I caused copies of the foregoing to be transmitted on November 8, 2006, to the following counsel by U.S. mail:

Fred F. Fielding
Barbara Van Gelder
Wiley Rein & Fielding LLP
1776 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendants Anne M. Mulcahy and*
*Frederic V. Malek*

Shannon Ratliff
Ratliff Law Firm
600 Congress Avenue
Suite 3100
Austin, TX 78701
*Counsel for Manuel Justiz*

Robert Romano
Bonnie Altro
Rachelle M. Barstow
Morgan, Lewis & Bockius
101 Park Avenue
New York, NY 10178-0060
*Counsel for Defendant Thomas P. Gerrity*

Daniel John Healy
John H. Doyle, III
Rhonda D. Orin
Anderson Kill & Olick LLP
2100 M Street, N.W. Suite 650
Washington, D.C. 20037
*Counsel for Defendant Leslie Rahl*

/s/ Justin S. Herring
Justin S. Herring