UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation | MDL No. 1668 |
| cv-01639<br>In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-<br><br>Judge Richard J. Leon |

**DECLARATION OF DAVID A. FELT IN SUPPORT OF
OFHEO'S MOTION FOR EXTENSION OF TIME
TO COMPLY WITH ORDER REQUIRING RESPONSIVE PRODUCTION IN
CONNECTION WITH
<u>CERTAIN SUBPOENAS *DUCES TECUM*</u>**

The Office of Federal Housing Enterprise Oversight (OFHEO) is an independent agency within the Department of Housing and Urban Development.[1] The primary function of OFHEO is to ensure the financial safety and soundness and capital adequacy of the nation's two largest housing finance institutions, the government-sponsored enterprises, Fannie Mae and Freddie Mac (collectively, the Enterprises). As with other federal financial institution regulatory agencies, the vast bulk of OFHEO's resources are devoted to examining the safety examinations of the Enterprises' complex operations in the housing, derivatives and capital markets; compliance with capital requirements; executive compensation programs; and other critical operational requirements and taking

---

[1] Title XIII of the Housing and Community Development Act of 1992, Pub. L. 102-550, known as the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, 12 U.S.C. §§ 4501 et seq., established OFHEO, which began operations in 1993. The agency is an anomaly among financial institution regulatory agencies in that it is subject to the appropriations process (although it is, in fact, funded by assessments on the Enterprises). It is currently operating under a continuing resolution on a budget $6.6 million less than was appropriated for the agency in 2006, because the agency's FY2007 budget has not been appropriated.

GOVERNMENT
EXHIBIT
A

appropriate formal and informal supervisory actions that OFHEO determines are required. The summaries of results of these examination activities of the OFHEO examiners, which are shared with the respective Board of Directors of an Enterprise in documents commonly referred to as examination reports. The reports and supporting work papers are kept secure and confidential and are not released to the public.

I, David A. Felt, currently serve as a Deputy General Counsel in the Office of General Counsel of OFHEO. I make this declaration based upon my personal knowledge in the course performing my duties as assigned, reports from employees who report to me, and the review of certain documents generated or kept in the course of agency business. I have been employed in this office in this and other senior capacities continuously since January 1995. I supervise the personnel who are assigned to produce documents in the instant litigation and I was personally involved in the special examination described below.

1. On or about September 17, 2004, OFHEO released the Report of Findings to Date on the Special Examination of Fannie Mae ("First Report"), that detailed findings as to various misapplications of generally accepted accounting standards (GAAP); improper financial accounting policies and practices; inaccurate financial reporting and financial reporting not in accordance with GAAP; inadequate internal controls; and other safety and soundness violations (Findings to Date). By order of the Director that report was made publicly available: http://www.ofheo.gov/media/pdf/FNMfindingstodate17sept04.pdf.

2. In May 2006, OFHEO released the Report of the Special Examination of Fannie Mae (Second Report). By order of the Director, the Second Report was made publicly

2

available. A copy of the Second Report is located on OFHEO's website: http://www.ofheo.gov/media/pdf/FNMSPECIALEXAM.PDF.

3. The Second Report identified numerous unsafe and unsound practices and conditions that prevailed at Fannie Mae, including: the misapplication of GAAP; weak internal audit and internal controls; improper use of earnings management practices to smooth earnings across financial reporting periods; manipulation of earnings for the purpose of hitting pre-set earnings per share targets to achieve maximum payouts on bonuses for senior management; and inappropriate interference with OFHEO's Special Examination. *See generally* Second Report, Executive Summary pages 1-13.

4. On or about March 13, 2006, counsel for the Plaintiffs in the securities litigation served a subpoena *duces tecum* on OFHEO seeking 25 categories of documents. On or about June 21, 2006, Mr. Howard's counsel submitted a subpoena *duces tecum* to OFHEO seeking 11 categories of documents. On July 18 and July 24, 2006, respectively, counsel for Mr. Raines served two subpoenas *duces tecum* on the agency seeking the production of a total of 22 categories of documents.

5. OFHEO is not a party to the securities litigation.

6. On or about December 23, 1998, OFHEO adopted a rule, effective January 22, 1999, 12 C.F.R. Part 1710, setting forth the basic policies of OFHEO regarding disclosure of information it maintains and the procedures for obtaining access to such information. Among other things, the rule sets forth procedures to be followed to request testimony or the production of documents in legal proceedings in which OFHEO is not a party. *See* 63 Fed. Reg. 70998 *et seq.* Subpart E of the rule governs requests for information in litigation in which OFHEO is not a party. These provisions are "similar to

3

regulations adopted by the bank regulators" and are "designed to ensure that appropriate limits are placed on examination and other confidential information that may be sought as evidence in such litigation." 63 Fed. Reg. 70999. These provisions are commonly referred to as OFHEO's *Touhy* regulations with reference to the ratification of such provisions by the United States Supreme Court in the case <u>United States *ex rel.* Touhy v. Ragen</u>, 340 U.S. 462 (1951). (Note: 12 C.F.R. Part 1710 subsequently was re-designated at 12 C.F.R. Part 1703, *see* 65 Fed. Reg. 81326).

7.   Mr. Raines and Mr. Howard objected to following OFHEO's *Touhy* regulations and filed motions to compel production of the documents, which the Court addressed in an order issued on November 6, 2006. The Order requires OFHEO to produce responsive documents in four installments, to be delivered on December 12, 2006, January 12, 2007, February 12, 2007 and March 12, 2007. The order required OFHEO to produce responsive documents in four installments, to be delivered on December 12, 2006, January 12, 2007, February 12, 2007 and March 12, 2007. Defendants were ordered to provide to OFHEO a prioritized list of document requests one month before each production date.

8.   Defendants filed their first priority requests on November 13 and clarified the scope of those requests in a subsequent meeting with OFHEO counsel. During that meeting, defendants' counsel explained that what they were seeking in regard to OFHEO's annual examinations from 1995 through 2005 was all the related workpapers. OFHEO raised no objections to these requests. These workpapers are an easily identified set of documents that the agency has maintained throughout this period. Moreover, because most of these documents dealt with matters more than two years old and I

4

advised OFHEO management that they would be subject to confidential treatment under the protective order, OFHEO determined not to withhold the workpapers under its examination privilege with the exception of some of the most recent of these documents. OFHEO was also mindful, in this regard, of the Court's statements at hearing of the importance of this case and sought to provide those documents that it could, without impairing significantly its ability to communicate candidly and openly with current management at Fannie Mae.

9. In response to the Court's Order and in order to provide all documents responsive to the first priority requests, OFHEO accelerated its ongoing work by temporarily transferring all twelve attorneys and paralegals working on discovery production on another case to the instant matter, authorizing overtime of its in-house staff, negotiating a separate contract line item to allow contract personnel to work overtime at premium rates and utilizing three additional temporary contract attorneys. Together with the attorney and paralegal permanently assigned to the matter, OFHEO utilized approximately 20 full-time persons, many of whom worked through weekends and late into the night to produce 104 boxes of documents responsive to the first priority requests. Indeed, many responsive documents were produced in advance of the December 12 deadline.

10. On or about December 12, 2006 OFHEO received defendants' second priority requests for documents, which were the subject of a meet and confer session on December 19, 2006. At that session, OFHEO counsel informed defendants' counsel that OFHEO would use its best efforts to meet their requests, but that OFHEO could not continue using all the staff it had borrowed from the other case, because those people were required to meet discovery deadlines in that case, that OFHEO would not require

5

personnel to cancel long-standing holiday plans and work overtime through the holidays to meet the January 12, 2007 deadline, and that OFHEO was in the process of hiring additional staff to assist in the production. OFHEO attorneys also explained that they remained, nonetheless, hopeful that they could meet the deadline, but would have a better idea after the holidays, unless the second group of documents required a greater level of effort than the first.

11. OFHEO has now determined that the second group of documents is far more difficult and complicated to review than the first group. Although it is less than 60 boxes, a very high percentage of these documents are privileged, because they were examination documents from the Special Examination Unit, which produced the First Report and Second Report. This Unit included numerous attorneys, who were analyzing the materials for potential claims against Fannie Mae and various individuals, and it reported directly to the Director and Deputy Director of the agency. Therefore, in some boxes, as many as 90 percent of the documents have initially been identified as privileged or require portions to be redacted. These documents also involve very recent examinations as well as privileged communications with current Fannie Mae management. Particularly given defendants' pending motion objecting to any assertions by OFHEO that the agency's examination materials should be treated as confidential under the protective order in this case, OFHEO must rely upon its privileges to prevent disclosure of these highly sensitive documents.

12. For each of the tens of thousands of privileged documents in the second installment, a description of the document and the privilege(s) that protect it, together with other identifying data, must be entered on a log. These privilege determinations

must be reviewed and the logs checked for completeness and accuracy. Documents to be produced must also be reviewed for quality control purposes to ensure that all documents were properly scanned and that no privileged materials were inadvertently included. This is a time-consuming and difficult process, with which OFHEO has relatively little experience and for which it had no dedicated staff. Nevertheless, OFHEO is doing everything reasonably possible to expedite the process and adding significant staff.

13.     Accordingly, and mindful of the Court's guidance regarding the import of the case, over the course of the last three weeks, OFHEO has hired nine temporary attorneys and a temporary paralegal. This hiring process has required the two OFHEO staff members who would have been reviewing documents and creating privilege logs to spend their time contracting for, interviewing and training new staff. OFHEO also was required to purchase new computers and to locate, furnish and make available workspace for these new people in a very short time frame during the holiday season when many administrative and information technology personnel were on leave.

14.     Despite these complications, OFHEO anticipates that it will be able to produce four boxes of documents by the January 12 deadline and all the remaining documents within 17 days thereafter.

15.     Because of the high percentage of privileged documents, the privilege logs that are associated with each production will not be available at the same time as the documents to be produced. In order not to delay receipt of documents by the parties to the case, however, OFHEO will provide the documents when they are ready and will follow with the privilege logs. This procedure will provide OFHEO more time to review the privileged materials, which will certainly reduce the number of documents ultimately

7

withheld, thus reducing the likelihood and number of disputes over privilege claims. As the Court has indicated, the agency has the ability to assert its privileges in a privilege log, and OFHEO is doing so in as expeditious fashion possible, recognizing the importance of this case.

16. At a meet and confer session January 10, 2007, OFHEO explained all the above facts to defendants' counsel and described the plan to produce the second group of documents. OFHEO committed to use its best efforts to produce all the non-privileged documents responsive to the second installment request by January 29, 2007. My discussions with OFHEO staff lead me to believe that all documents that have been identified by OFHEO as responsive will have been reviewed for privilege at that point and those that have been determined initially to not be privileged will have been produced. However, the ongoing review of the privileged documents will take considerably more time and will certainly yield additional documents for production. For this reason OFHEO cannot in good faith affirm that all responsive and non-privileged documents will be turned over by January 29.

17. At the January 10 meet and confer, defendants' counsel also objected to the scope of the documents that OFHEO has identified as responsive. They explained their view that under the Federal Rules, OFHEO is obligated to search all its electronic records for responsive materials. OFHEO articulated its view that such a search would entail millions of dollars that are not currently appropriated to OFHEO and would take years. OFHEO reiterated it will undertake reasonable affirmative efforts to locate responsive documents and defendants' counsel agreed to consider what steps short of searching all electronic files of the agency would suffice for its purposes. OFHEO and defendants' counsel

8

thereupon discussed various means by which the search could be narrowed or limited to make it manageable and agreed to meet together again shortly, along with their respective technology experts, to discuss the issue and attempt to develop appropriate protocols and methods for searching.

18.  As the Court has recognized, OFHEO is a small Federal agency (approximately 220 employees) with limited staff and resources. Responding to numerous broad discovery requests – seeking documents dating 10 to 12 years -- such as those propounded by defendants diverts those resources from the agency's primary responsibility to ensure the safety and soundness and capital adequacy of Fannie Mae and Freddie Mac, potentially putting at risk the housing and financial systems of the United States unless and until Congress appropriates additional funds for the purpose of reviewing and producing documents in litigation to which OFHEO is not a party.

Dated: January 11, 2007

_/s/ David A. Felt_

David A Felt
Deputy General Counsel
Office of Federal Housing Enterprise Oversight