UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation | MDL No. 1668 |
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639<br>Judge Richard J. Leon |

**THIRD PARTY OFHEO'S RESPONSE IN OPPOSITION TO DEFENDANT FRANKLIN D. RAINES'S MOTION TO COMPEL COMPLIANCE WITH THE AMENDED PRETRIAL PROTECTIVE ORDER**

**I. INTRODUCTION**

Defendant Franklin Raines's Motion to Compel Compliance ("Raines Mot.") is long on rhetoric and short on substance. His underlying argument is that third-party OFHEO keeps "secret"[1] or "conceals"[2] certain documents from the public (not from him or his attorneys) by designating them as "Confidential" under the Court's July 6, 2006 Amended Stipulated Pretial Protective Order ("Protective Order"). However, OFHEO produced 179,134 pages of documents[3] thus far in response to his first tranche of document requests.[4] It is inconceivable how OFHEO's actions would be construed as an effort to keep its documents "secret" when it

---

[1] *See* Raines Mot. at 2, 3, and 7.

[2] *See* Raines Mot. at 1 and 11.

[3] On November 17, 2006, OFHEO produced 8,371 pages of documents. *See* Gov. Exh. A. Thereafter, OFHEO produced another 170,763 pages of documents by December 12, 2006. The page-count was provided by BDS, a copying vendor for this production.

[4] *But see* Raines Mot. at 5 (noting that "OFHEO has produced 104 boxes of documents, or approximately 312,000 pages of documents."). It appears that Mr. Raines's estimate is incorrect.

produced 179,134 pages of documents to Mr. Raines and his attorneys. Moreover, the Court, all of the parties and their attorneys (including their paralegals, experts, etc.) in these consolidated cases also have access to the 179,134 pages of documents that OFHEO produced to date. The parties and their attorneys can use OFHEO's documents in any manner they wish within the confines of this litigation. If OFHEO intended to keep its documents "secret," as Mr. Raines asserts, producing them in response to his subpoena would hardly be an effective method. More importantly, to be clear, nowhere in Mr. Raines's Motion to Compel does he allege that OFHEO kept any documents from him by designating those documents as "Confidential" under the Protective Order. Rather, his objections stem from his inability to use documents designated as "Confidential" in a public manner outside the proceedings in this litigation. This case is not pending in the press; it is before this Court—and this Court alone—for determination.

In any event, Mr. Raines's counsel failed to confer in good faith with OFHEO regarding OFHEO's use of the confidentiality designations under the Protective Order. Had such a good faith effort been employed, counsel for Mr. Raines would have discovered that the confidentiality designations have been made appropriately and in compliance with the Protective Order. Mr. Raines's first "priority" request seeks documents from the files of examiners as the files were kept in the ordinary course of business. The documents, as kept in examiner files in the ordinary course of business, are protected by the examination privilege, and, in some cases, the deliberative process privilege. Despite OFHEO's decision to produce documents subject to a reservation of the examination privilege within the confines of the Protective Order, no documents covered by the examination privilege are public documents. Rather, these documents, as denoted by their placement in the files of examiners, reflect the mental impressions, thoughts, deliberations and decisions of OFHEO examiners on matters having to do

with a regulated entity.  *See* 18 U.S.C. § 642; 18 U.S.C. § 1905; Examination Handbook, Office of Federal Housing Enterprise Oversight, Office of Examination and Oversight Chapter 3 (December 1998).  The examiners are bound by strict confidentiality requirements and are subject to severe sanctions if those requirements are breached.  Hence, the confidentiality designation of these documents is appropriate and consistent both with the Protective Order and the underlying statute and regulations governing examinations.  *See* 12 C.F.R. § 1703.1 *et seq.*[5]

## II. BACKGROUND

On November 17, 2006, OFHEO began producing documents responsive to Mr. Raines's subpoena in accordance with the Court's guidance given during the November 3, 2006, hearing and the Court's November 6, 2006, Order.  *See* Gov. Exh. A; *see also* Raines Mot. at 11 n.13 (admitting that OFHEO produced 8,371 pages of documents on November 17, 2006). Thereafter, OFHEO continued to produce documents responsive to Mr. Raines's first priority request for documents.  *See* Gov. Exh. B.

During a meeting subsequent to the November 3, 2006, hearing, Defendants' counsel (in particular, Mr. Raines's counsel) explained that their first priority request sought all workpapers related to OFHEO's annual examinations from 1995 through 2005.  The documents responsive to Defendants' request were non-public, privileged documents.  Nevertheless, within the confines of the Protective Order, OFHEO produced approximately 170,00 pages of documents

---

[5]    Raines inaccurately construes the Court's Protective Order to "allow[] only the <u>most sensitive information</u> to be designated as confidential." Raines Mot. at 1 (emphasis added).  The Protective Order specifies the type of documents that can be designated as "Confidential."  *See* Protective Order at § 1(c).  The Protective Order, however, does not even mention the term "most sensitive information."

that are privileged as examination work papers.[6] OFHEO marked such documents as "Confidential"[7] as defined under the Protective Order.

Counsel for Mr. Raines has not conferred with OFHEO in good faith to address the issue of OFHEO's confidentiality designations. On December 8, 2006, counsel for Mr. Raines joined a terse letter sent by counsel for Mr. J. Timothy Howard to OFHEO in which Mr. Raines indicated his belief that OFHEO's practice of labeling all privileged examination documents as confidential was objectionable. *See* Gov. Exh C. He included no reason or rationale to support this belief. Moreover, counsel for Mr. Raines never attempted to discuss the issue with OFHEO further but sent another correspondence threatening to bring this matter to the Court's attention. *See* Gov. Exh. E. In fact, on December 20, 2006, OFHEO asked Mr. Raines to identify for OFHEO the documents he believed should not be designated as "Confidential." Specifically, OFHEO pleaded with Mr. Raines that:

> We urge that prior to Defendants "mov[ing] for appropriate relief from the Court" they identify to us the document(s) that they believe do not deserve the "Confidential" designation. We are willing to work with you to resolve any disagreement as to the "Confidential" designation of any particular document(s) and to avoid premature and unnecessary judicial involvement in this matter.

*See* Truong's Dec. 20, 2006 Letter to Romain (Gov. Exh.D). However, after the Notice of Charges was filed against him on December 18, 2006, Mr. Raines rejected this cooperative overture and, on December 21, 2006, filed this Motion to Compel.

---

[6]    In OFHEO's cover letter with the produced documents, OFHEO expressly reserved all applicable privileges held either by OFHEO or Fannie Mae. *See* Gov. Exh. A.

[7]    OFHEO designated only its more recent documents with the greatest continuing impact on its current examination work as privileged. This amounts to approximately 200 documents.

### III. ARGUMENT

### A. OFHEO Produced Non-Public Documents Protected by the Examination Privilege That Were Appropriately Designated as Confidential

The documents OFHEO produced in response to Mr. Raines's first priority request were appropriately designated as "Confidential." The documents produced were examination workpapers prepared, created and used by OFHEO examiners in the course of annual examinations of Fannie Mae. As such, these documents are protected by the examination privilege. *See In re Midlantic Corp. Shareholder Litig.*, Misc. Docket No. 92-99, 1994 U.S. Dist. LEXIS 21514, *12-17 (D.D.C. October 24, 1994). Nevertheless, in the spirit of cooperation and rather than stand on its right to withhold the documents, OFHEO agreed to produce these documents within the confines of the Court's Protective Order.

Mr. Raines's first priority request for documents included a request for documents Mr. Raines easily should have foreseen would encompass documents protected by the examination privilege. Specifically, Mr. Raines requested, "No. 7 – All examination workpapers prepared or created by OFHEO personnel or agents of OFHEO in connection with annual examinations of Fannie Mae from 1998 to 2004." Notice of Defendant Franklin D. Raines's First Priority Request for Document Production to the Office of Federal Housing Enterprise Oversight (Dkt. No. 288) (emphasis added). Examination workpapers prepared or created by OFHEO personnel or agents of OFHEO in connection with annual examinations of Fannie Mae are non-public, privileged documents produced and utilized by OFHEO examiners to further OFHEO's primary mission of ensuring the safety and soundness of the regulated Enterprise.

Non-public, privileged, produced documents are appropriately labeled as "Confidential Information" pursuant to the Protective Order . The Protective Order defines "Confidential Information" as follows:

> [D]iscovery Material which a party (i) takes reasonable precautions to maintain the confidentiality of the material, and (ii) in good faith believes constitutes confidential information in accordance with Fed. R. Civ. P. 26(c)(7) that is used by it in, or pertaining to, trade secrets, financial information, personal privilege or other personal information, or which information is not generally known and which that party would normally not reveal to third parties, or if disclosed, would require such third parties to maintain in confidence.

OFHEO takes reasonable precautions to maintain the confidentiality of its examination workpapers – under the Protective Order – because of the rationale underlying the examination privilege that protects the documents and because the documents may include Fannie Mae's trade secrets.[8]

---

[8]     OFHEO's examination handbook sets forth the importance of maintaining the confidentiality of examination documents and the measures taken by OFHEO to prevent disclosure:

> The collection of sensitive and proprietary information, the analysis of that information, and the formulation and communication of assessments of each Enterprise's financial safety and soundness are essential examination activities. Effective communication is essential to the successful fulfillment of OFHEO's examination objectives. [Chapter 3] describes OFHEO's standards of effective communication; the prohibition against unauthorized disclosure of Enterprise information; and the protection of examination related materials from public disclosure.

*Examination Handbook*, Office of Federal Housing Enterprise Oversight, Office of Examination and Oversight Chapter 3, page 1 (December 1998). Moreover, pursuant to the Freedom of Information Act, the materials in dispute may be withheld in their entirety because they are "matters that are--contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552(b)(8); *see also* 12 C.F.R. §§ 1703.8, 170311.(b)(8)

(Continued…)

The examination privilege protecting the produced documents is both well-established and long-standing. *In re Subpoena upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992)(*citing Bank of America Nat'l Trust & Sav. Ass'n v. Douglas*, 105 F. 2d 100, 104-06 (D.C. Cir. 1939) and *In re Franklin Nat'l Bank Securities Litig.*, 478 F. Supp. 577, 580-582 (E.D. N.Y. 1979)). The purpose of the privilege is to "preserve candor in communications between [the regulated entity] and examiners, which those parties consider essential to the effective supervision of [the regulated entity]. The privilege is firmly grounded in practical necessity." *In re: Bankers Trust Company*, 61 F.3d 465, 471 (6th Cir. 1995)(*citing In re Subpoena upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992)). The D.C. Circuit described the rationale behind the privilege as follows:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communications between the regulated banking firm and the bank regulatory agency.... Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*In re Subpoena upon Comptroller of Currency*, 967 F.2d at 633-634.

In responding to Mr. Raines's requests, consistent with the Court's instructions and its legal obligations, OFHEO produced documents responsive to Mr. Raines's request as "Confidential" despite the privileged nature of the documents. In making this determination,

---

(Continued…)

(explaining that unauthorized release of examination reports or their contents may be a criminal offense and reiterating that the FOIA exemption for examination materials applies to OFHEO).

OFHEO recognized that the examination privilege is a qualified, rather than an absolute, privilege. The examination privilege may be overcome for good cause regarding the following considerations:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*In re: Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998)(*quoting Schreiber v. Society for Savings Bancorp., Inc.*, 11 F.3d 217, 220-221 (D.C. Cir. 1993)). Consistent with precedent, OFHEO produced documents subject to the examination privilege as "Confidential" pursuant to the Protective Order. *See e.g., In re Franklin Nat'l Bank Sec. Litigation*, 478 F. Supp. 577. OFHEO's production of the otherwise privileged documents pursuant to the terms of the Protective Order was made in an effort to balance the government's (and Fannie Mae's) interest underlying the examination privilege while ensuring that documents needed to effect justice between the parties are available to the parties for use in the civil litigation.

In effecting that production, Mr. Raines requested, and OFHEO produced, documents prepared and used in its annual examination process. The materials utilized by the examiners in the course of their duties include documents such as OFHEO's public reports and other documents. Taken out of this context, OFHEO agrees that the "2004 Report of Findings to Date of the Special Examination of Fannie Mae" is a public document that should not have been designated as confidential. *See* Raines Mot. at 9 (complaining that the Special Exam Report cannot be confidential because it is publicly available). However, when that Report is utilized by an examiner in the course of his/her duties, then the document, in that context, takes on special

significance by reflecting the examiner's use of the document in performing his/her examination work.  In this latter case (which was caused by the nature of Mr. Raines's request), the 2004 Report would appropriately be protected by the examination privilege.

Mr. Raines further complains that OFHEO has designated the transcripts of interviews conducted during the Special Examination as confidential.  *See* Raines Mot. at 8. Mr. Raines does not dispute that the interviews were taken during the Special Examination or that the interviews, had they not been produced pursuant to the Protective Order and under a reservation of the examination privilege, would be subject to the examination privilege.  Rather, Mr. Raines believes that OFHEO's use of certain quotations of some portions of the interviews in its 2004 and 2006 reports regarding the Special Examination require public disclosure of complete interview transcripts.  *See* Raines Mot. at 8-9. Mr. Raines is wrong.  OFHEO's disclosing of a portion of a privileged document does not make the entire document "generally known" for purposes of the Protective Order's definition of "Confidential Information."  *See Bronx Defenders v. United States Department of Homeland Security*, Civ. No. 04-cv-8576, 2005 U.S. Dist. LEXIS 33364, *8-9 (S.D. N.Y. December 19, 2005); *Mehl v. United States Environmental Protection Agency*, 797 F. Supp. 43, 47 (D.D.C. 1992).  Furthermore, Mr. Raines "overlooks" the fact that he and his attorneys are being given access to the transcripts in their entirety, and can utilize them as he sees fit within the confines of the Protective Order in this litigation.

Despite all the media attention and public statements made in regard to the accounting scandal at Fannie Mae, OFHEO has never publicly released transcripts from interviews taken during the Special Examination.  Rather, OFHEO has kept the transcripts confidential because they are protected by the examination privilege.  To the extent that any information was released concerning the content of the interviews, that information was released to further OFHEO's

mission regarding the safety and soundness of Fannie Mae. In this case, OFHEO, in the spirit of cooperation and good faith, produced these documents subject to the confidentiality provisions of the Protective Order. Under these circumstances, OFHEO appropriately designated these documents as "Confidential" under the Court's Protective Order.

### B. OFHEO's Confidentiality Designations Were Appropriate and Not Unduly Burdensome

Defendant Raines erroneously claims that OFHEO's confidentiality designations are inappropriate and cause an undue hardship upon him. *See* Raines Mot. at 11-12. For example, Mr. Raines argues that the production of the privileged, non-public documents at issue will inhibit public revelations concerning how OFHEO conducted its annual examinations of Fannie Mae. *Id.* He does not, and cannot, explain how the production of the documents under the Protective Order will inhibit his review of the documents or his ability to use the documents in his defense in this litigation.

Mr. Raines further asserts that the confidentiality designations place undue burden upon him in the course of litigating this action because it might require certain documents to be filed under seal. *See* Raines Mot. at 12-13. This argument, however, lacks merit. Rather, it is a burden routine to the prosecution and defense of complex civil litigation involving trade secrets and heavily regulated entities. *See e.g. In re NASDAQ Market-Makers Antitrust Litig.*, 164 F.R.D. 346, 355 (S.D.N.Y. 1996); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp. 866, 879, n.18 (E.D. Pa. 1981). OFHEO's production of the non-public examination workpapers pursuant to the confidentiality provisions of the Protective Order advances the interests of justice by permitting minimal interference with the examination privilege while allowing Mr. Raines the ability to use any relevant documents in his defense. The fact that he cannot disseminate the documents to persons who would otherwise not be privy to detailed

information about the inner workings of OFHEO's examinations of Fannie Mae and of Freddie Mac is inconsequential.

Moreover, Mr. Raines's suggested remedies (i.e., an order compelling OFHEO to re-designate the documents and reimburse him for his expenses) are premature and his efforts to engage this Court in a necessary meet and confer process constitutes a profound waste of judicial resources. *See* Raines Mot. at 13-14. Should the Court decide that the balance between the examination privilege and public disclosure weigh in favor of more of the latter, that interest would best be served by evaluating Mr. Raines's requests at the time Mr. Raines wants to use such documents, when his needs and purpose would be clearer and the documents he wants to make public can be more specifically identified. Contrary to Mr. Raines's contention, such documents will not likely be relevant to any determination on class certification and are of questionable relevance thereafter.[9] Moreover, the Court's use of the latter procedure would

---

[9] Mr. Raines does not explain how the good faith compromise solution embodied in OFHEO's production is unreasonable when compared to the marginal probative value of the documents to his defense. Because OFHEO has no duty to Defendants in regard to its examinations, OFHEO's examinations of Fannie Mae are not at issue in this action. *See Resolution Trust Corp. v. Moskowitz*, Civ. A. No. 93-2080, 1994 WL 229812, *14-16 (D.N.J. May 24, 1999)(Because FDIC had no duty to bank officers, they were not allowed to raise contributory/comparability defenses in tort action in an attempt to shift their culpability to the regulator); *see Salt Lick Bancorp v. FDIC*, 187 Fed. Appx. 428, 437-438 (6th Cir. 2006); *First State Bank of Hudson County v. United States*, 599 F.2d 558 (3d Cir. 1979), *cert. denied*, 444 U.S. 1013, 100 S. Ct. 662 (1980). Public policy dictates that Defendants, not OFHEO, should be accountable for their actions and failures to act at Fannie Mae because OFHEO "[owes] no duty to the officers and directors." *Resolution Trust Corp. v. Heiserman*, Civ. A. No. 93-B-944, 1994 WL 907409, *1 (D. Colo. Aug. 31, 1994)("[C]ompelling public policy reasons support the conclusion that defendant directors and officers should not be allowed to avoid liability for their own negligent management by challenging the actions of government regulators, examiners and receivers.").

OFHEO's examinations are not conducted for the purpose of protecting Fannie Mae management, but to protect the public and the nation's financial system. Nor did OFHEO have the duty "to bring to the attention of...[the company's] officers and directors any wrongdoing during its regulatory activities." *Fed. Sav. And Loan Ins. Corp. v. Shelton*, 789 F. Supp. 1367,

(Continued…)

allow Mr. Raines the opportunity to seek to overcome OFHEO's confidentiality designations while minimizing the damage to OFHEO's ability to effectively regulate two of the largest financial institutions in our country.

Consequently, OFHEO requests that the Court find that OFHEO has appropriately employed the confidentiality designation in the Protective Order regarding the produced documents.

### C. Mr. Raines Failed to Confer in Good Faith with OFHEO prior to Filing His Motion

Mr. Raines failed to confer with OFHEO in good faith prior to filing his motion in violation of Local Rule of Civil Procedure 7(m).[10] Accordingly, this motion is not ripe for consideration and should be summarily denied until such time that the parties and third-party

---

(Continued…)

1369 (M.D. La. 1992)(footnote omitted). Rather, OFHEO's duty is "to ensure the enterprises are adequately capitalized and operating safely," 12 U.S.C. § 4513(a), "to reduce the risk of failure of the enterprises," 12 U.S.C. § 4501(2), because of their importance to "the health of the Nation's economy." *Id.* As OFHEO owed no duty to Defendants (including Raines) in the conduct of its safety and soundness examinations, Raines may not attack Fannie Mae's regulator in order to avoid his own culpability. "The conduct of a regulatory body will not shield defendants from their own culpability." *Stamp v. Brown*, No. 81C1475, 1991 WL 169377, *2 (N.D. Ill. Aug. 28, 1991)(*citing Schacht v. Brown*, 711 F.2d 1343, 1359 (7th Cir. 1983), *cert. denied*, 464 U.S. 1002, 104 S. Ct. 509 (1983)). Rather, Raines should be judged on the basis of his own conduct and omissions, not on OFHEO's examinations of Fannie Mae. *See FDIC v. White*, 828 F. Supp. 304, 310-311 (D.N.J. 1993)(Court did not allow defense that FDIC had approved action in its regulatory capacity to be raised against it as an affirmative defense in receivership action.); *Schacht v. Brown*, 711 F.2d at 1359 ("[T]he fraudulent operations of [insurance company] ARC was surely the alleged progenitor of Reserve's damage, regardless of whether the state regulatory authority was a necessary instrument in the accomplishment of that end.").

[10] Good faith is defined as "A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation,...or (4) absence of intent to defraud or to seek unconscionable advantage." *Black's Law Dictionary* 701 (7th ed. 1999). Sending a threatening note claiming a practice is objectionable "is a token effort rather than a sincere effort." *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186 (3d Cir. 2003); *see Alexander v. FBI*, 186 F.R.D. 197 (D.D.C. 1999)(recounting requirement to confer in good faith).

OFHEO have engaged in meaningful meet and confer discussions. On December 18, 2006, OFHEO filed a Notice of Charges against Mr. Raines, thereby initiating an administrative enforcement action against him. While OFHEO has heeded the Court's words and attempted to work with Mr. Raines in the spirit of cooperation and good faith, since that filing it appears that Mr. Raines has not been interested in reciprocating OFHEO's efforts. Moreover, it appears that Mr. Raines is attempting to stretch the requirements of Rule 45 of the Federal Rules of Civil Procedure in order to obtain more documentary evidence than allowed either under that Rule or under the discovery process provided under OFHEO's administrative Rules of Practice and Procedure where discovery issues would be determined by the presiding officer, an administrative law judge in that proceeding. *See* 12 C.F.R. 1780 *et seq.* "[F]ederal civil discovery may not be used merely to subvert limitations on discovery in another proceeding." *Wilk v. American Medical Association*, 635 F.2d 1295 (7th Cir. 1980)(*citing Campell v. Eastland*, 307 F.2d 478 (5th Cir. 1961), *cert. denied*, 371 U.S. 955, 83 S. Ct. 502 (1962)); *see generally* 8 Wright & Miller § 2040, at 291-95.

       The current Motion to Compel appears to be nothing more than a litigation tactic by Mr. Raines to put OFHEO on the defensive before this Court, and in the pending administrative enforcement proceeding. The Court should not countenance Mr. Raines's efforts to circumvent the discovery process in the administrative proceedings, but rather should compel him to engage in good faith efforts to resolve this dispute.

## IV. CONCLUSION

For the foregoing reasons, OFHEO respectfully requests that the Court deny Mr. Raines's Motion to Compel Compliance (Dkt. No. 313).

Dated:  January 19, 2007.                                  Respectfully Submitted,


   /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/    Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406


Attorneys for the Office of Federal Housing Enterprise Oversight

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation | MDL No. 1668 |
| In re Fannie Mae Securities Litigation | Consolidated Civil Action No. 1:04-cv-01639<br><br>Judge Richard J. Leon |

## ORDER

Upon consideration of Defendant Franklin D. Raines's Motion to Compel Compliance with the Amended Stipulated Pretrial Protective Order, OFHEO's Response thereto, and the entire record herein, it is this _____ day of _____ 2007,

ORDERED that Defendant Franklin D. Raines's Motion to Compel Compliance with the Amended Stipulated Pretrial Protective Order is and be hereby DENIED.

SO ORDERED.

_____
U.S. District Judge