**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | ) ) ) ) ) ) ) | MDL No. 1668 |
| In re Fannie Mae Securities Litigation | ) ) ) ) | Consolidated Civil Action. No. 1:04-cv-1639 (RLJ) |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO COMPEL PRODUCTION OF
<u>DOCUMENTS FROM THIRD-PARTY DELOITTE & TOUCHE USA LLP</u>**

The Ohio Public Employees Retirement System and State Teachers Retirement System of Ohio (collectively, "Lead Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion to Compel Production of Documents from Third-Party Deloitte & Touche USA LLP. For the reasons set forth herein, Lead Plaintiffs respectfully request that the Court grant its motion to compel in full.

During the last 14 months, Lead Plaintiffs have made every attempt to accommodate Deloitte and to provide it sufficient time to produce documents in response to Lead Plaintiffs' April 2006 subpoena. Those attempts at good faith negotiations have resulted in nothing but delay, obfuscation and empty promises. In fact, after Lead Plaintiffs informed Deloitte last Wednesday, May 23, 2007, that they would move to compel compliance with the subpoena, Deloitte responded by producing an insignificant fraction of its electronic documents – producing only 20,000 pages out of an estimated 1.8 million to 2.2 million pages of documents – or less than .001% of its documents that are relevant and responsive to Lead Plaintiffs' subpoena. Deloitte has represented that it will take at least another ten days before any additional documents are produced, notwithstanding that **Deloitte originally represented that all of its electronic documents would be produced by the end of May, to early June, 2007** and that full production now will not be completed until end of July to the middle of August, at best.

Lead Plaintiffs have no choice but to seek the Court's assistance in requiring Deloitte to produce documents responsive to Plaintiffs' subpoena without any further delay. As we have previously informed the Court, many of the substantive depositions in this case cannot proceed without the Deloitte's documents and **Deloitte's continued delay regarding its production will dramatically slow the speed at which this action is proceeding**. As such, Lead Plaintiffs

2

request that the Court enter an Order requiring Deloitte to produce all of its responsive documents within two weeks of the date of the Court's Order.

## FACTS

Fannie Mae hired Deloitte in January 2005 to commence work on the restatement of Fannie Mae's previously issued financial statements. These financial statements were previously audited by Fannie Mae's former auditor, KPMG LLP. On April 7, 2006, Lead Plaintiffs served Deloitte with a Federal Rule of Civil Procedure Rule 45 ("Rule 45") subpoena requesting the production of Deloitte's workpapers and other documents relating to the Fannie Mae restatement (the "Subpoena"). A copy of the Subpoena is attached as Exhibit A to the accompanying Declaration of Jeffrey C. Block In Support Of Plaintiffs' Motion To Compel Production Of Documents From Non-Party Deloitte & Touche USA LLP (the "Block Decl."). In sum, the Subpoena sought production of the workpapers generated by Deloitte during its restatement of Fannie Mae's 2001 through 2004 financial statements.

On April 18, 2006, Deloitte served its responses and objections to the Subpoena, claiming the requests were overbroad and burdensome and objecting to the timeframe for production.[1] In an attempt to resolve the dispute, Lead Plaintiffs made several attempts, by letter and telephone, to contact Deloitte's counsel, all of which were virtually ignored. *See* Block Decl. ¶¶5-8. It was not until Lead Plaintiffs' counsel threatened to file a motion to enforce the Subpoena that Deloitte's counsel finally responded and proposed a date to meet and confer. *Id.* at ¶¶8,9.

On June 20, 2006 the parties engaged in a meet and confer to discuss Deloitte's compliance with the Subpoena. *Id.* at ¶9. During that meeting, Deloitte primarily objected to the timing of its production, noting that Fannie Mae's restatement process was ongoing and therefore

---

[1] A copy of Deloitte's Responses And Objections To Plaintiffs' Subpoena is attached as Exhibit B to the Block Decl.

3

Deloitte was unable to produce the requested restatement workpapers, since it was still creating and utilizing these documents. *Id.* A follow-up meet and confer was held on July 17, 2006 at which time Lead Plaintiffs agreed to postpone Deloitte's production of its workpapers until after Fannie Mae's restatement was complete. *Id.*

On December 6, 2006, Fannie Mae issued its restatement of previously issued financial statements for 2002, 2003 and 2004, which reduced previously reported earnings for that period *by $6.3 billion*. The following day, Lead Plaintiffs contacted Deloitte to discuss the timing of its production of documents pursuant to the Subpoena, as had been discussed during the July 17, 2006 meet and confer. *Id.* at ¶¶10-11. Rather than commit to a date for production of its workpapers, Deloitte notified Lead Plaintiffs on December 8, 2006 that Deloitte had retained outside counsel and this counsel (whom Deloitte did not identify to Lead Plaintiffs) would be in touch with Lead Plaintiffs "shortly." *Id.* at ¶12. Following this discussion, Lead Plaintiffs did not hear anything from Deloitte or its counsel until several weeks later when, failing to receive any response, Lead Plaintiffs once again stated an intent to file a motion to compel production of the restatement workpapers. *Id.* at ¶13. Deloitte finally contacted Lead Plaintiffs and blamed the delay on a "conflict check." *Id.*

Several weeks again went by without any response from Deloitte or commitment of a production date. Then on January 16, 2007, Deloitte requested, for the first time, that Lead Plaintiffs review an index of the requested restatement workpapers, identify which sections of the workpapers Lead Plaintiffs wanted produced and then negotiations would commence *again*. Rather than disagree and create further delay, Lead Plaintiffs agreed to review the restatement workpaper index. Nearly a month later, on February 16, 2007, Deloitte produced a single, unredacted copy of the Deloitte workpaper index, subject to the stipulation that the index could

4

not be reproduced or disclosed to any third parties and that the *sole* copy of the index must be returned to Deloitte.  *Id.* at ¶14.  A few days later, Lead Plaintiffs requested they be allowed to make a single copy of the index so that each of their co-counsel could conduct a simultaneous review of the index.  Deloitte's counsel objected and insisted instead that *they* create the additional copy and mail it out separately to Lead Plaintiffs' co-counsel.  This process of copying and mailing one copy of the index inexplicitly took an additional nine days.

Lead Plaintiffs returned the workpaper index to Deloitte's counsel on March 6, 2007 marking those categories of documents Lead Plaintiffs did *not* want produced, since the majority of the workpapers were relevant to the accounting matters at issue in the securities litigation.  On or about March 6, 2007, Deloitte's counsel agreed that Deloitte would produce the entire set of workpapers to Lead Plaintiffs.  *Id.* at ¶17.

Deloitte represented that the vast majority of its work papers, approximately 1.8 million to 2.2 million pages, were contained on a proprietary software system that did not allow for documents to be printed.  Deloitte stated that it was working with an outside vendor to transfer the data from Deloitte's database to a system that would allow the data to be produced in a format that would allow the data to be printed onto a document.  Deloitte asserted that the parties to the litigation would have to pay for these costs.  *Id.* at ¶18.  Deloitte stated it was awaiting a price quote from a vendor to convert the workpapers into a format that would allow the workpapers to be produced in a ".tiff" format and expected that once pricing was agreed to, the workpapers could be produced in six to eight weeks.  *Id.*  *A*gain, several weeks passed and Lead Plaintiffs heard nothing from Deloitte about a pricing proposal or the status of the production.

Not until after Lead Plaintiffs threatened for the third time to move to compel, did Deloitte provide Lead Plaintiffs with the pricing proposal from its outside vendor. ¶16.[2]

On April 18, 2007, Lead Plaintiffs' counsel confirmed in writing to Deloitte's counsel their agreement with regard to payment for the production of the Deloitte workpapers, limitation of access to Deloitte work papers by current Fannie Mae employees, and reiterating Deloitte agreement that it would begin to produce work papers within *two weeks* (May 1, 2007) and that it anticipated that the entire production would take between four and six weeks to produce (May 30, 2007).

Having failed to receive a single document from Deloitte by May 23, 2007, Lead Plaintiffs' counsel sent Deloitte's counsel a letter indicating their intent, for the fourth time, to file a motion to compel. True to form, Deloitte responded to the letter two days later, May 25, 2007, by providing what it apparently views as "just enough" to keep Lead Plaintiffs' motion to compel at bay. More specifically, Deloitte produced 20,000 pages of documents, which as noted above constitutes approximately less than .001% of its entire production. Regarding the remaining 99.9% of the production, Deloitte's counsel confirmed that they continued to experience "technological issues" and that no further documents would be produced for at least another ten days.[3]

Lead Plaintiffs have patiently waited for almost **six months** since the restatement was completed for Deloitte to produce its documents. Deloitte has known about its obligations to produce its documents in this litigation for well over a year. Lead Plaintiffs respectfully submit

---

[2] Tellingly, Lead Plaintiffs' Co-Lead Counsel sent their letter threatening to move to compel on April 3, 2007 and Deloitte had received the proposed pricing from its outside vendor *five days earlier*. ¶¶ 15 an 16.

[3] In addition to its 1.8 million to 2.2 million pages of electronic documents, Deloitte has another 90,000 pages of hard copy documents to produce. It first alerted Lead Plaintiffs to these documents only a few weeks ago and represents that they will begin a rolling production commencing June 1, 2007.

6

that without this Court's intervention, we do not believe that Deloitte will complete its document production anytime soon and that the discovery in this action will be severely delayed as a result.

## **ARGUMENT**

The Subpoena clearly falls within the permissible scope of discovery and Deloitte and Lead Plaintiffs' Counsel have agreed to appropriate safeguards. In this case, the importance of Deloitte's workpapers to the pending action cannot be disputed. This case stems from one of the largest accounting debacles in corporate history, which recently culminated in a $6.3 billion restatement by Fannie Mae. Deloitte's workpapers are the roadmap to Fannie Mae's financial accounting impropriety during the Class Period. In particular, Deloitte's workpapers will show what the Company did during the Class Period, what the Company *should have done*, and the steps taken by Deloitte to clean up Fannie Mae's mess and arrive at its $6.3 billion restatement. Even from a cursory review of the Subpoena, it is clear that the requests are not overly burdensome and are reasonably calculated to lead to the discovery of admissible evidence.

It has been over a year since Lead Plaintiffs served their Subpoena on Deloitte; almost six months since Fannie Mae issued its restated 2001 to 2004 financial results. Six weeks have passed since Lead Plaintiffs reached agreement with Deloitte that it would begin producing its documents. All Deloitte has produced to date are 20,000 pages, a fraction of its entire production and, even then, these documents were produced only in response to Lead Plaintiffs' latest and, cumulatively, fourth threat to file this motion. There is no excuse for Deloitte's continued delay in failing to produce its work papers especially when it has known for *over a year* that it would be required to produce these documents. Deloitte's empty promises and foot-dragging must stop.

As this Court is aware, the action against Fannie Mae and the individual defendants is well underway, with the parties immersed in discovery and beginning depositions. Deloitte's continued delay in complying with the subpoena clearly will hamper the continued progress of this litigation, which the parties and the Court have ardently worked to keep on track. Indeed, Lead Plaintiffs' counsel informed the Court at a status conference on March 2, 2007 that Deloitte was not producing its documents in a timely manner and, in response to this Court's directive, Lead Plaintiffs' counsel sent Deloitte's counsel a copy of the transcript of the status conference. *See* Transcript from March 2, 2007 Status Conference ("Well they [Arnold & Porter] know their way around big cases. They should figure out a way to solve this problem. . . . You can quote me, though. . . . Show it [the transcript] to them.") Deloitte's counsel has still not figured out a way to solve this issue. (attached to the Block Decl. at ¶4). Notwithstanding the Court's prior comments, Deloitte continues to shirk its responsibilities to timely produce its documents.

There is no dispute that Deloitte is in the possession of documents that are relevant to Lead Plaintiffs' claims and Deloitte has no legal excuse for failing to obey the subpoena and produce the documents requests forthwith. Accordingly, Lead Plaintiffs seek the Court's assistance in having Deloitte comply with the Subpoena and produce its restatement workpapers without further delay.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs' respectfully request that their motion to compel be granted in full and that Deloitte be directed to produce documents responsive to Lead Lead Plaintiffs' Subpoena within fourteen days of the Court's Order.

Date:  May 29, 2007                        Respectfully submitted,

                                                      ATTORNEY GENERAL OF OHIO
                                                     MARC DANN

                                                     WAITE, SCHNEIDER, BAYLESS
                                                     & CHESLEY CO., L.P.A.
                                                     s/ Stanley M. Chesley
                                                     Stanley M. Chesley
                                                     s/ James R. Cummins
                                                     James R. Cummins (D.C. Bar #OH0010)
                                                     Melanie S. Corwin
                                                     1513 Fourth & Vine Tower
                                                     One West Fourth Street
                                                     Cincinnati, Ohio 45202
                                                     Telephone: (513) 621-0267
                                                     Facsimile: (513) 621-0262
                                                     E-mail:  jcummins@wsbclaw.com
                                                     *Special Counsel for the Attorney General of Ohio*
                                                     *and Lead Counsel for Lead Plaintiffs*

                                                     BERMAN   DEVALERIO   PEASE   TABACCO
                                                     BURT & PUCILLO

                                                     s/Jeffrey C. Block
                                                     Jeffrey C. Block
                                                     Glen DeValerio
                                                     Kathleen M. Donovan-Maher
                                                     Julie A. Richmond
                                                     Autumn Smith
                                                     One Liberty Square
                                                     Boston, MA 02109
                                                     Telephone: (617) 542-8300
                                                     Facsimile: (617) 542-1194
                                                     E-mail:  jblock@bermanesq.com
                                                     *Co-Lead Counsel for Lead Plaintiffs*

        COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
        s/ Daniel S. Sommers
        Steven J. Toll (DC Bar #225623)
        Daniel S. Sommers (DC Bar #416549)
        Matthew K. Handley (DC Bar #489946)
        1100 New York Avenue, N.W.
        Washington, D.C. 20005
        Telephone: (202) 408-4600
        Facsimile: (202) 408-4699
        E-mail: stoll@cmht.com
        *Local Counsel for Lead Plaintiffs*

OF COUNSEL:

BARRETT & WEBER L.P.A.

C. Francis Barrett (0022371)
Suite 500, 105 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 721-2120
Facsimile: (513) 721-2139
E-mail: cfbarrett@barrettweber.com
*Special Counsel for the Attorney General Of Ohio*

STATMAN, HARRIS, SIEGEL
  & EYRICH, LLC
Alan J. Statman (0012045)
Jeffrey P. Harris (0023006)
441 Vine Street
3700 Carew Tower
Cincinnati, Ohio 45202-2912
Telephone: (513) 621-2666
Facsimile: (513) 587-4477
E-mail: ajstatman@shselegal.com
E-mail: jharris@shselegal.com