# EXHIBIT A

# CMH&T

### COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.

WASHINGTON • NEW YORK • PHILADELPHIA • CHICAGO

Daniel S. Sommers
dsommers@cmht.com

April 7, 2006

**BY HAND DELIVERY**

Deloitte & Touche USA LLP
555 12th St., N.W., Suite 500
Washington, D.C. 20004-1207

Re:    **In re Fannie Mae Securities Litigation**
       **Consolidated Civil Action No. 1:04-CV-01639**

To Whom It May Concern:

Enclosed is a subpoena *duces tecum* compelling the production of documents in accordance with the Schedule A attached to the subpoena. Please note that while the subpoena directs production to be made at the offices of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. in Washington, D.C., please send documents responsive to the subpoena directly to:

Melanie S. Corwin, Esq.
Waite, Schneider, Bayless
  & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202

Please feel free to contact the undersigned should you have any questions concerning this matter.

Very truly yours,

Daniel S. Sommers

DSS/smn
Enclosure

cc:    Melanie S. Corwin, Esq. (w/enclosures)
       Jeffrey C. Block, Esq. (w/enclosures)

1100 New York Avenue, N.W. • Suite 500, West Tower • Washington, D.C. 20005
Phone (202) 408-4600 • Fax (202) 408-4699 • www.cmht.com

AFFILIATED OFFICES: UNITED KINGDOM • ITALY • SOUTH AFRICA • PANAMA • AUSTRALIA

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court

## DISTRICT OF COLUMBIA

**IN RE FANNIE MAE**
**SECURITIES LITIGATION**

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:[1]
CONSOLIDATED CIVIL ACTION
No.: 1:04-CV-01639 (RJL)

To:    Deloitte & Touche USA LLP
555 12th St., N.W., Suite 500
Washington, D.C. 20004-1207

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

■    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See attached Schedule A

| PLACE  Cohen, Milstein, Hausfeld & Toll, P.L.L.C.<br>1100 New York Ave., N.W., West Tower, Suite 500, Washington D.C. 20005 | DATE AND TIME<br>April 28, 2006 |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  _Attorney for Plaintiff_ | DATE<br>APRIL 7, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
DANIEL S. SOMMERS, COHEN, MILSTEIN, HAUSFELD & TOLL,, P.L.L.C., 1100 NEW YORK AVENUE, N.W., WEST TOWER, SUITE 500, WASHINGTON, D.C. 20005, TEL. (202) 408-4600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
          Date                                    Signature of Server

                                        _____
                                              Address of Server

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)   (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)   Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)   (A)  On  timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance;

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B) (iii) of this rule, such a person may in order to attend trial be

commanded to travel from any such place within the state in which the trial is held or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specified events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)   When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A
## TO SUBPOENA TO DELOITTE & TOUCHE USA LLP

All instructions, rules of construction and definitions set forth in Federal Rules of Civil Procedure 26, 34 and 45 are incorporated herein by reference. In addition, the following instructions, rules of construction and definitions apply to these requests.

## INSTRUCTIONS

1.     These requests are continuing in nature so as to require supplemental responses if additional information becomes available or is discovered after filing your responses hereto, pursuant to Rule 26(a) of the Federal Rules of Civil Procedure.

2.     These requests cover all documents (electronic and non-electronic) that are in the possession, custody or control of Deloitte (defined below), or in the possession, custody or control of any of its predecessors, successors, parents, subsidiaries, divisions, departments or affiliates, or any of Deloitte's former or present shareholders, members, officers, directors, partners, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.

3.     Unless otherwise indicated, the document requests herein call for the production of all responsive documents (electronic and non-electronic) located anywhere in the United States or abroad, irrespective of whether those documents are retained in a central filing system or in the individual offices or residences of former or present shareholders, members, officers, partners, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities. A document shall be deemed to be within Deloitte's control to the extent Deloitte has access to the document or the authority, right or ability to obtain the document from the person or entity having possession or custody of the document.

4.      If any portion of any document (electronic or non-electronic) is responsive to any request, then you must produce the entire document.  If any requested document cannot be produced in full, then you must produce the document to the extent possible, specifying each reason for your inability to produce the remainder of the document and stating whatever information, knowledge, or belief you have concerning the unproduced portion.

5.      Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, all documents (electronic and non-electronic) shall be produced in the manner they are kept in the ordinary course of business.  Specifically, documents maintained in electronic form are to be produced in their original electronic form (including all metadata in standard delimited ASCII format), along with the software necessary to interpret such files if such software is not readily available, and are not to be converted to any other format, such as paper, tiff image or PDF file.

6.      A request for a document (electronic or non-electronic) shall be deemed to include a request for any and all transmittal sheets, cover letters, routing slips, exhibits, enclosures, attachments and other documents to which the responsive document is clipped, stapled, electronically appended, electronically linked or otherwise attached.  Documents (electronic and non-electronic) that were attached to each other in their original condition shall be produced in such form.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, disk, CD, hard drive or other container, a copy of the cover or label of such file folder, binder, file drawer, file box, notebook, disk, CD, hard drive or other container must be attached to the document and produced.

7.      All documents (electronic and non-electronic) shall be produced in such a fashion as to identify the department, branch or office in whose possession the documents were located

and, where applicable, the identity and business address of the custodian(s) in whose possession the documents were found. The author(s) of all hand-written notes should be identified.

8.   A request for a document (electronic and non-electronic) shall be deemed to include a request for all drafts and successive iterations thereof, all translations thereof into languages other than the original, and all copies that differ from the original or from the other copies produced for any reason, including, but not limited to, the existence of notes or other marks thereon. In addition, identical copies of the same document shall be treated as separate documents under these requests if they are maintained in different locations (e.g., different file folders, binders, file drawers, file boxes, notebooks, disks, CDs, hard drives or other containers).

9.   If any document (electronic or non-electronic) is withheld from production, in whole or in part, for any reason, including, but not limited to, attorney-client privilege, work product protection, or confidential trade secret, set forth separately the following information with respect to each such document:

  (a) The type of document (e.g., letter, memorandum, etc.);

  (b) The date of the document;

  (c) The identity of the person who prepared the document;

  (d) The identity of the person who sent the document;

  (e) The identities of all persons who received or otherwise saw the document or a copy thereof, or to whom the content of the document was disclosed, noting, where applicable, whom each identified person represented or purported to represent at all relevant times;

  (f) The general subject matter of the document;

3

(g)    A brief statement or synopsis of the matters dealt with in the document and the circumstances surrounding the creation of the document; and

(h)    The nature of the privilege or other basis relied upon in withholding the document from production.

10.    If a portion of a document (electronic or non-electronic) is claimed to be protected from disclosure for any reason, including, but not limited to, attorney-client privilege, work product protection, or confidential trade secret, such document must be produced with redaction of only the portion claimed to be protected.  All documents that are produced in redacted form shall indicate such on the document.

11.    To the extent you deem a request to be vague or ambiguous, you shall identify the objectionable aspect of the request, state your interpretation of the request and respond to that interpretation.  In no event shall an objection to a request based on vagueness or ambiguity be used to justify withholding production of documents responsive to that or any other request.

12.    If any responsive document (electronic or non-electronic) has been lost, discarded, destroyed, or is otherwise no longer in your possession, custody or control, identify:

(a)    The type of document (e.g., letter, memorandum, etc.);

(b)    The general subject matter of the document;

(c)    The identity of the person who created the document;

(d)    The date or approximate date the document was created;

(e)    The date or approximate date of disposal of the document;

(f)    The manner of disposal of the document;

(g)    The reason for disposal of the document;

(h)    The person authorizing disposal of the document; and

(i)    The person disposing of the document.

## DEFINITIONS

1.    "Communication" is used in the comprehensive sense and means every conceivable manner or means of disclosure, transfer, or exchange of oral, electronic, digital or written information between or among one or more persons or entities, including, but not limited to, writings, hand-written notes, correspondence, meetings, conferences, conversations, dialogues, discussions, interviews, consultations, agreements, inquiries and any other expressions or understandings, whether made face-to-face, by telephone, mail, facsimile, computer or otherwise.

2.    "Concerning" means, in whole or in part:  with respect to, in connection with, referring to, relating to, describing, evidencing, constituting, substantiating, purporting, embodying, establishing, identifying, listing, stating, comprising, connected with, memorializing, recording, commenting on or upon, responding to, showing, demonstrating, analyzing, reflecting, representing, supporting, explaining, consisting of, regarding, discussing, containing, setting forth, disclosing, explaining, summarizing, pertaining to, or otherwise having any logical or factual connection to the subject matter of the document request.

3.    "Deloitte" means Deloitte & Touche USA LLP and all member firms of Deloitte Touche Tohmatsu, as well as any of Deloitte & Touche USA LLP's or the member firms' predecessors, successors, parents, subsidiaries, segments, divisions, departments, affiliates, local, regional, national, international and executive offices, and any present or former shareholders, members, officers, directors, partners, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.  The definition includes, but is not limited to, Deloitte & Touche

5

LLP, Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, Deloitte Tax LLP and any of their subsidiaries.

4. "Department of Justice" means the United States Department of Justice and any of its divisions and departments, including the Office of the United States Attorney for the District of Columbia, and any of its former or present officers, directors, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.

5. "Document" is synonymous with the usage of that term in Rule 34 of the Federal Rules of Civil Procedure, and includes every conceivable form of communication, whether comprised of letters, words, numbers, pictures, sounds, or symbols, or any combination thereof, that is recorded in tangible form or is capable of being produced in tangible form, including, but not limited to, all writings and recordings, all visual or aural representations of any kind (including photographs, films, slides, microfiche, microfilm, videotape, audiotape, motion pictures, charts, drawings and surveys), all electronic, mechanical, magnetic, optical or electric data, records or representations of any kind (including computer data, computer files, computer programs, hard drives, floppy disks, compact disks, and magnetic tapes and cards, regardless of whether the data, files, programs, drives, disks, tapes and cards exist on desktop computers, laptop computers, notebook computers, personal digital assistant computers, servers, backup tapes or any other medium), and any other form of physical media.

6. "Engagement" means:

(a) Any and all procedures, services, analysis, testing or work of any kind related to Fannie Mae's financial statements (defined below) or any of the underlying accounting, accounting records, financial information or internal controls of Fannie Mae in

accordance with GAAS (defined below), or any other auditing standards, and includes, but is not limited to, procedures, services, analysis, testing or work performed in connection with the Restatement (defined below), quarterly reviews, annual audits, public filings (whether contemporaneous or retrospective), public offerings or registrations of securities, as well as any and all consultations, discussions or other communications occurring in connection with the performance of such procedures, services, analysis, testing or work;

(b)    Any and all consultations, discussions or other communications concerning Fannie Mae's implementation, proposed implementation or contemplated implementation of any accounting rules, regulations or pronouncements, any and all consulting work, due diligence reviews, work on special projects, and work on acquisitions by Fannie Mae of another company or line of business;

(c)    The retention of Deloitte by any person or entity, including, but not limited to, Fannie Mae, for the purpose of providing professional services of any kind, related in any way to Fannie Mae, including, but not limited to, assurance, consulting, investigatory, forensic accounting, tax or legal services; and

(d)    Any in-process or incomplete Engagement from which Deloitte was terminated or otherwise resigned.

7.    "Fannie Mae" or the "Company" means Defendant Federal National Mortgage Association and any of its predecessors, successors, parents, subsidiaries, divisions, departments or affiliates, and any of its former or present shareholders, members, officers, directors, partners, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.

8.    "Financial Statements" means any draft or final presentation of financial data, (including accompanying notes) derived from Fannie Mae's accounting records and intended to communicate the Company's financial results, economic resources or obligations at a point in time or the changes in financial data over a period of time, and including (whether consolidated or unconsolidated, audited or unaudited, final, interim, draft or pro-forma) one or more of the following: (1) balance sheets; (2) statements of income; (3) statements of retained earnings; (4) statements of cash flows pursuant to AICPA Professional Standards AU § 623.02, (5) Statements of Changes in Stockholders' Equity, (6) Quarterly Results of Operations, and (7) Notes to Financial Statements..

9.    "GAAP" means Generally Accepted Accounting Principles as applied under United States accounting standards.

10.    "GAAS" means Generally Accepted Auditing Standards as applied under United States accounting and auditing standards.

11.    "Government Investigation" means collectively: (1) OFHEO's (defined below) investigation of or inquiries into the activities, policies and procedures of Fannie Mae during the Relevant Period; (2) the SEC's (defined below) investigation of or inquiries into (i) the activities, policies and procedures of Fannie Mae during the Relevant Period, (ii) the termination, resignation or retirement of any of the Individual Defendants (defined below), and (iii) the Restatement (defined below); and (3) the Department of Justice's investigation of or inquiries into the activities, policies and procedures of Fannie Mae during the Relevant Period.

12.    "Individual Defendants" means Defendants Franklin D. Raines, J. Timothy Howard and Leanne G. Spencer.

13.    "KPMG" means KPMG LLP (United States), and all member firms of KPMG International, as well as any of KPMG LLP's or the member firms' predecessors, successors, parents, subsidiaries, segments, divisions, departments, affiliates, local, regional, national, international and executive offices, and any present or former shareholders, members, officers, directors, partners, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.

14.    "OFHEO" means the Office of Federal Housing Enterprise Oversight and any of its divisions, departments or affiliates, or any of its former or present officers, directors, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.

15.    "OFHEO Report" means the Report of the Findings to Date, Special Investigation of Fannie Mae dated September 17, 2004, by OFHEO, and any amendments or supplements thereto.

16.    "Paul Weiss" means collectively Senator Warren B. Rudman and the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP and any or its predecessors, successors, parents, subsidiaries, divisions, departments or affiliates, and any of its former or present shareholders, members, officers, directors, partners, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.

17.    "Restatement" means Fannie Mae's intended restatement of its publicly reported financial statements and/or financial results for its fiscal years ending December 31, 2001, 2002 and 2003 and the first two quarters of 2004.

18.     "Rudman Investigation" means the investigation concerning Fannie Mae conducted by Warren B. Rudman and Paul Weiss at the direction of the Special Review Committee of the Board of Directors of Fannie Mae.

19.     "Rudman Report" means the report entitled "A Report To The Special Review Committee Of The Board Of Directors Of Fannie Mae" and dated February 23, 2006, as well as any drafts, prior versions, supplements and amendments thereto, the Executive Summary of the Report, and all Appendixes thereto.

20.     "SEC" means the United States Securities and Exchange Commission and any of its divisions, departments or affiliates, or any of its former or present officers, directors, employees, contract employees, accountants, servants, agents, attorneys, or any other person or entity acting for, at the direction of, or in concert with any such persons or entities.

21.     "SFAS" means Statement of Financial Accounting Standard(s) as applied under United States accounting standards.

22.     "You" and "your" mean Deloitte.

## RELEVANT TIME PERIOD

Unless otherwise indicated in a specific request, these requests seek documents that were created, dated, prepared, generated, sent, received or otherwise used during the time period January 1, 2000 to the present (the "Relevant Period") or that refer or relate to all or any portion of the Relevant Period, or to events or circumstances during the Relevant Period, even though created, dated, prepared, generated, sent, received or otherwise used prior to or after the Relevant Period.

## DOCUMENT REQUESTS

  1.  All subpoenas *duces tecum* or other requests for production of documents you received from OFHEO, the SEC or the Department of Justice in connection with the Government Investigation.

  2.  All documents, regardless of date, made available or provided by you or on your behalf to OFHEO, the SEC or the Department of Justice in connection with the Government Investigation.

  3.  All documents sufficient to identify any person who has been interviewed by, deposed by or otherwise testified before OFHEO, the SEC or the Department of Justice in connection with the Government Investigation.

  4.  All documents concerning any witness interviews, depositions or other testimony conducted by or in the presence of OFHEO, the SEC or the Department of Justice in connection with the Government Investigation, including, but not limited to, any transcripts (including exhibits and attachments thereto) of such interviews, depositions or other testimony.

  5.  All documents concerning any witness interviews or other testimony conducted by or in the presence of Paul Weiss in connection with the Rudman Investigation, including, but not limited to, any transcripts (including exhibits and attachments thereto) of such interviews, depositions or other testimony.

  6.  All requests for production of documents you received from Paul Weiss in connection with the Rudman Investigation.

  7.  All documents, regardless of date, made available or provided by you or on your behalf to Paul Weiss in connection with the Rudman Investigation.

8.      All documents concerning Fannie Mae that you created, received or reviewed in connection with your work on the Government Investigation.

9.      All documents concerning communications between or among you, Fannie Mae, any Individual Defendant, OFHEO, the SEC, the Department of Justice or Paul Weiss concerning the Government Investigation.

10.     All documents concerning communications between or among you, Fannie Mae, any Individual Defendant, OFHEO, the SEC, the Department of Justice or Paul Weiss concerning the Rudman Investigation.

11.     All documents concerning communications between you and KPMG concerning Fannie Mae, the Government Investigation, the Rudman Investigation or any Engagement.

12.     All documents, regardless of date, made available or provided by you or on your behalf to any federal, state or local regulatory or governmental entity, other than OFHEO, the SEC and the Department of Justice, in connection with such entity's investigation of or inquiries into the activities, policies and procedures of Fannie Mae during the Relevant Period.

13.     All documents, regardless of date, made available or provided by you or on your behalf in connection with any civil litigation initiated against Fannie Mae or any of the Individual Defendants relating in any way to the Restatement or any of the activities, policies or procedures at issue in the Restatement.

14.     All engagement agreements, consulting agreements or other agreements between Fannie Mae and Deloitte pursuant to which Deloitte agreed to perform services for Fannie Mae, regardless of date, including any documents concerning conditions or limitations placed upon any engagement.

15.    All engagement agreements, consulting agreements or other agreements between the Fannie Mae Foundation and Deloitte pursuant to which Deloitte agreed to perform services for Fannie Mae, regardless of date, including any documents concerning conditions or limitations placed upon any engagement.

16.    All documents concerning any Engagement, including, but not limited to:

    (a)    all documents Deloitte received, reviewed, considered, relied upon or created in performing work on the Restatement or any audit(s), review(s), analysis, investigation(s) or other service for or regarding Fannie Mae;

    (b)    all communications (electronic or non-electronic) concerning any Engagement;

    (c)    all presentations by Deloitte to the Fannie Mae Board of Directors or the Fannie Mae Audit Committee concerning any Engagement or the Restatement;

    (d)    all notes, memoranda or transcripts of any meetings, discussions or interviews concerning the Restatement;

    (e)    financial statements, whether in draft or final form, with accompanying footnotes, exhibits and auditors' reports or opinions;

    (f)    working papers, including, but not limited to, all planning documentation, audit programs or other documents concerning the procedures used in any Engagement, including any additions, deletions, substitutions or amendments thereto and the reason for any such additions, deletions, substitutions or amendments, as well as an

index and legend that describe the referencing system and abbreviations used in the working papers;

(g)   the permanent file and all documents that are maintained only in hard-copy form;

(h)   management letters or representations concerning Fannie Mae's internal controls or any other matter;

(i)   internal control questionnaires and evaluations;

(j)   charts of accounts with a description of the use of each account;

(k)   point sheets, findings, memoranda or any other communications that highlight or analyze points that arose during any Engagement;

(l)   schedules or listings of adjusting entries, both proposed and accepted;

(m)   documents identifying the names, titles, and last known addresses of all persons who performed any work related to, or who otherwise were associated with, any Engagement;

(n)   the desk, office, and computer or other electronic files of all persons who performed any work related to, or who otherwise were associated with, any Engagement;

(o)   calendar or diary entries concerning any Engagement;

(p)   time sheets, time reports, time budgets, billing files and invoices;

(q)   memoranda that summarize, review, or analyze specific problems or areas of each Engagement; and

(r)    review notes or memoranda, quality control review notes or memoranda, and any other document concerning the evaluation of any Engagement.

17.    All documents and communications concerning Fannie Mae's development, approval, implementation and application of accounting policies and procedures, both proposed and adopted.

18.    All documents concerning any proposed, contemplated or implemented change in Fannie Mae's accounting practices, policies, or procedures, whether or not recommended by Deloitte, including, but not limited to, memoranda, correspondence or other documents prepared by firm-designated experts and/or national or global office personnel.

19.    All documents and communications, regardless of date, concerning Fannie Mae's development, implementation and application of SFAS 133, Accounting for Derivative Instruments and Hedging Activities, SFAS 138, Accounting for Certain Derivative Instruments and Certain Hedging Activities, an Amendment of Statement No. 133, and SFAS 149, Amendments of Statement 133 on Derivative Instruments and Hedging Activities.

20.    All documents and communications concerning Fannie Mae's use of and accounting for derivative and hedge transactions, including, but not limited to, documents concerning (i) perfect hedges, (ii) effective hedges, (iii) ineffective hedges, (iv) the Fannie Mae carve-out, (v) term-outs, (vi) relinkage, (vii) redesignations, (viii) swaptions, (ix) hedge documentation, (x) match terms accounting, (xi) derivatives having a fair value equal to zero at the inception of the hedge relationship, (xii) time value of options, (xiii) seven day test, (ixx) duration matching, and (xx) de-minimus test.

21.    All documents concerning Fannie Mae's internal controls, including, but not limited to: segregation of duties; key person dependencies; the maintenance of, or failure to maintain, audit trails, written procedures and required documentation; procedures for preparing, reviewing, validating, authorizing and recording journal entries related to amortization adjustments; reliance on software applications and systems for portfolio accounting; controls concerning database modifications a/k/a "DB mods"; and controls concerning the falsification of signatures.

22.    All documents concerning exceptions to (approved or not approved) or Fannie Mae's compliance or non-compliance with, Fannie Mae's stated accounting practices, policies or procedures, GAAP or any other auditing, accounting or professional standard.

23.    All documents, from June 1, 1998 through the present, concerning communications between Deloitte and Fannie Mae concerning any Engagement, including, but not limited to, communications with the Audit Committee of Fannie Mae's Board of Directors or any individual members thereof.

24.    All documents concerning communications between Fannie Mae and Deloitte concerning staffing in any department of Fannie Mae, including, but not limited to, its financial reporting, accounting, internal audit and controller departments.

25.    All documents, from June 1, 1998 through the present, concerning communications between Deloitte and any Individual Defendants.

26.    All drafts of restated financial statements of Fannie Mae.

27.    All documents, from June 1, 1998 through the present, concerning audit differences, disagreements or possible disagreements between Deloitte and Fannie Mae related to

Fannie Mae's accounting practices, policies, or procedures, internal controls, financial statements or results of the Restatement.

28.    All documents concerning your analysis or consideration of the reliability, trustworthiness or credibility of representations or statements by any officers, directors or employees of Fannie Mae.

29.    All documents, from June 1, 1998 through the present, concerning Fannie Mae's efforts to meet or its projected failure to meet the expectations of Wall Street, analysts and investors for any of Fannie Mae's quarterly or year ending financial results.

30.    All documents concerning the possible or actual inaccuracy of Fannie Mae's financial statements, financial results or other public statements.

31.    All documents, from June 1, 1998 through the present, concerning the setting of or efforts to achieve Fannie Mae's earnings per share targets.

32.    All documents, from June 1, 1998 through the present, concerning earnings volatility, earnings smoothing, earnings management or earnings manipulation at Fannie Mae.

33.    All documents relating to any falsification of signatures by any Fannie Mae officer, director or employee.

34.    All documents, from June 1, 1998 through the present, concerning Fannie Mae's implementation and application of SFAS 91, Accounting for Nonrefundable Fees and Costs Associated with Originating or Acquiring Loans and Initial Direct Costs of Leases.

35.    All documents, from June 1, 1998 through the present, concerning: (i) the amortization of purchase premiums and discounts on securities and loans; (ii) the amortization of other deferred charges; (iii) the accounting treatment of Real Estate Mortgage Investment Conduit securities; (iv) the deferral of $200 million of estimated expense in 1998 related to

fluctuations in the rate of prepayment of mortgages or other loans; (v) the calculation known as "catch-up"; (vi) premium discount amortization audit differences; (vii) "on-top" and other discretionary adjustments to Fannie Mae's general ledger, accounting results or financial statements; (viii) deferred price adjustments and deferred price amortization; (ix) "cushion," "warchest," "piggybank," or "cookie jar" reserves; (x) the capitalization and amortization of reconciliation differences a/k/a "realignments"; (xi) thresholds for recognizing, not recognizing or deferring amortization income or expense; (xii) modeling or the modeling of multiple sensitivity runs; and/or (xiii) amortization factor anomalies.

36.    All documents concerning Fannie Mae's development, implementation and application of SFAS 115, *Accounting for Certain Investments in Debt and Equity Securities*, including, but not limited to, documents concerning the designation of mortgage-backed securities as either "held-to-maturity" or "available-for-sale."

37.    All documents concerning Fannie Mae's development, implementation and application of SFAS 140, *Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities*, including, but not limited to, documents concerning the designation of securities as "substantially similar" to securities sold under SFAS 140 and the subsequent monitoring of such securities, and the designation of transactions as either secured financing or sales and the monitoring of collateral in such transactions.

38.    All documents concerning Fannie Mae's use of and accounting for dollar roll transactions.

39.    All documents concerning Fannie Mae's development, implementation and application of SFAS 65, *Accounting for Certain Mortgage Banking Activities*, including, but not

limited to, documents concerning the designation of loans as either "held-for-investment" or "held-for-sale."

40.    All documents concerning Fannie Mae's use of and accounting for the allowance for loan losses, including but not limited to, Fannie Mae's development, implementation and application of SFAS 114, *Accounting by Creditors for Impairment of a Loan*, and SEC Staff Accounting Bulletin No. 102 ("SAB 102"), its loss allowance model, charge-offs, waterfall accounting, recoveries in excess of principal balances written off, and overstatement of allowance for loan losses.

41.    All documents concerning Fannie Mae's use of Special Purpose Entities to issue mortgage-backed securities.

42.    All documents concerning Fannie Mae's practice, policies and procedures for recording interest expense on short-term debt instruments and interest income on liquid investments.

43.    All documents concerning Fannie Mae's use of and accounting for income and expense based upon 30.4 days in each month instead of the number of days in accordance with the actual terms of the underlying instruments.

44.    All documents concerning Fannie Mae's accounting for other-than-temporary impairment of manufactured housing bonds.

45.    All documents concerning Fannie Mae's accounting for other-than-temporary impairment of aircraft asset-backed securities.

46.    All documents concerning Fannie Mae's use of and accounting for investments in interest-only mortgage-backed securities.

47.    All documents concerning Fannie Mae's use of and accounting for securitization of wholly-owned mortgage-backed securities.

48.    All documents concerning Fannie Mae's use of and accounting for income tax reserves, legal reserves, and all other reserves used by Fannie Mae.

49.    All documents concerning Fannie Mae's use of and accounting for Synfuel tax-advantaged transactions.

50.    All documents concerning Fannie Mae's use of and accounting for STIS transactions.

51.    All documents concerning Fannie Mae's use of and accounting for insurance products.

52.    All documents concerning Fannie Mae's development, implementation and application of SFAS 113, *Accounting and Reporting for Reinsurance of Short Duration and Long Duration Contracts*, including, but not limited to, documents relating to transfer of risk sufficient to qualify for insurance for accounting purposes.

53.    All documents concerning Fannie Mae's development, implementation and application of SFAS 5, *Accounting for Contingencies*, and SFAS 109, *Accounting for Income Taxes*, including but not limited to, documents relating to the recognition of liability for tax-related contingencies, the amount of taxes payable or refundable in the current year, and deferred tax liabilities and assets.

54.    All documents concerning Fannie Mae's use of and accounting for out-of-portfolio securitization.

55.    All documents concerning Fannie Mae's strategic use of debt repurchases to affect its earning per share for any period.

other auditing guidance materials utilized and/or published by Deloitte at the time of any engagement, including, but not limited to, any and all periodic updates thereto.

64.    All documents concerning Deloitte's filing and record keeping system, including, but not limited to, its policy regarding the preservation or destruction of documents.

65.    All documents concerning policies, procedures or guidelines related to Deloitte's computers, computer systems, electronic data and electronic media including, but not limited to, the following:

(a)    Electronic data retention, preservation and destruction schedules;

(b)    Backup tape rotation schedules;

(c)    Employee use of company computers, data and other technology;

(d)    Email storage conventions (e.g., limitations on mailbox sizes, storage locations, schedule and logs for storage);

(e)    Electronic media deployment, allocation, and maintenance procedures for new, current or departed employees;

(f)    Software and hardware upgrades (including patches) for the Relevant Period and the organization or person(s) that conducted such upgrades; and

(g)    Personal or home computer usage for work-related activities.

66.    Organization charts for all Deloitte information technology or information services departments or divisions.

67.    Backup tapes containing email and other electronic data of all persons who performed any work related to, or who otherwise were associated with, any Engagement.

EXHIBIT B

APR-18-2006  17:49        D&T USA LLP NO LEGAL                                P.02/07

# Deloitte.

Deloitte & Touche USA LLP
1633 Broadway
New York, NY 10019-6754
USA

Tel: +1 212 492 4000
Fax: +1 212 492 4201
www.deloitte.com

April 18, 2006

**Via Facsimile and Mail**

Daniel S. Sommers, Esq.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005

     Re:   *In Re Fannie Mae Securities Litigation*/ Subpoena addressed to
            Deloitte & Touche USA LLP

Dear Mr. Sommers:

I write regarding the subpoena addressed to "Deloitte & Touche USA LLP" in the above-referenced matter. While Deloitte & Touche USA LLP ("D&T USA") will be prepared to discuss the subpoena with you, D&T USA is objecting to the subpoena in order to preserve its rights pending such discussions.

As a threshold matter, D&T USA does not provide professional services and performed no work for Defendant Federal National Mortgage Association ("Fannie Mae"). Accordingly, the subpoena is objectionable because it was not properly addressed. In addition, D&T USA believes that the document requests in the subpoena are objectionable for a number of reasons, including their scope, time frame and the burden they seek to impose on a third party.

D&T USA's objections to the subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure are as follows:

1.     D&T USA objects to the subpoena, which has a twenty-two page attachment containing sixty-seven requests, in its entirety as being overbroad, unduly burdensome and oppressive, including, without limitation, to the extent that it seeks to compel the production of voluminous documents for an extended period of time or seeks a

Member of
Deloitte Touche Tohmatsu

APR-18-2006  17:50        D&T USA LLP NO LEGAL                              P.04/01

Daniel S. Sommers, Esq.
April 18, 2006
Page 3

     such documents where the plaintiffs could obtain the information from the defendants
or from their own files;

5.     The subpoena is unduly vague, precluding D&T USA from determining with sufficient
precision the identity of the documents for which plaintiffs seek production. Similarly,
the subpoena's definitions are vague, ambiguous, and overbroad;

6.     D&T USA, a nonparty to this action, objects to the subpoena on the grounds that it
calls for the production of documents which constitute proprietary information of the
Deloitte U.S. Firms including, without limitation, planning documentation, audit
programs, policy or procedures, questionnaires, time sheets, time reports, time budgets,
billing files, invoices, organization charts, manuals, guides, and internal
communications which are not and could not be in issue in your action, the disclosure
of which would be competitively harmful and for which no confidentiality stipulation
provides adequate protection, and therefore will not be produced. Such documents
have been developed at great expense to and effort by the Deloitte U.S. Firms. Further,
such documents are not relevant to the claim or defense of any party;

7.     D&T USA specifically objects to Request No. 63 on the grounds that it is overly broad,
burdensome and harassing to a non-party to the extent it purports to seek "[a]ll Deloitte
accounting and auditing policy and procedure manuals". Such documents constitute
proprietary information, trade secrets and/or confidential, research, development or
commercial information of Deloitte & Touche LLP and the other Deloitte US Firms.
Such documents, developed at great expense and effort, are not and could not be in
issue in your action, their disclosure would be competitively harmful to Deloitte &
Touche LLP, among other Deloitte US Firms, no confidentiality stipulation provides
adequate protection for their disclosure, and therefore they will not be produced.
Further, such documents are not relevant to the claim or defense of any party;

8.     D&T USA specifically objects to Request Nos. 64 and 65 on the grounds that they are
overly broad, burdensome and harassing to non-parties to the extent they purport to
seek the Deloitte U.S. Firms' filing and record keeping systems, their document
retention policies, and policies, procedures or guidelines related to computers,
computer systems, and the like which are all wholly irrelevant to the subject matter of
the pending litigation and which relate to internal matters;

9.     D&T USA objects to the subpoena as overly broad, burdensome and harassing to a
non-party to the extent it purports to seek information that was not generated in the
form of written or printed records, on the ground that it would be unduly burdensome
and oppressive to require that D&T USA search through computer records or other
means of electronic or magnetic data storage or compilation;

APR-18-2006  17:50        D&T USA LLP NO LEGAL

Daniel S. Sommers, Esq.
April 18, 2006
Page 4

10.   D&T USA objects to the subpoena to the extent that it seeks the production of tax
      returns or tax return information which D&T USA and/or Deloitte Tax LLP are
      precluded from disclosing under Section 7216 of Title 26 of the United States Code or
      any other information which D&T USA and/or Deloitte Tax LLP are precluded from
      disclosing under other applicable statutes or regulations;

11.   D&T USA objects to the subpoena to the extent that it purports to require the
      production of documents which are protected by the accountant-client privilege, the
      attorney-client privilege, the work product doctrine, or any other applicable privilege,
      rule, or duty of confidentiality which precludes or limits production or disclosure of
      information therein;

12.   D&T USA objects to the subpoena to the extent that it purports to require the
      production of documents sought by or from regulatory agencies.  D&T USA objects to
      producing such documents on the grounds that it is not a legitimate purpose of the
      action to seek information gathered by or for regulatory agencies in connection with
      such regulatory agencies' functions and further, D&T USA may be precluded from
      producing such documents;

13.   D&T USA objects to the Definitions to the extent they are overly broad and purport to
      encompass more than just the entities or persons themselves.  As such, the purported
      definitions are so ambiguous and vague that it would make any search for documents
      impossible;

14.   D&T USA objects to Definition No. 3 which is overly broad.  References to "Deloitte
      & Touche USA LLP and all member firms of Deloitte & Touche Tohmatsu" and to
      their unspecified, undefined or unnamed "predecessors, successors, parents,
      subsidiaries, segments, divisions, departments, affiliates, local, regional, national,
      international and executive offices, and any present or former shareholders, members,
      officers, directors, partners, employees, contract employees, accountants, servants,
      agents, attorneys, or any other person or entity acting for, at the direction of, or in
      concert with any such persons or entities" as set forth in Definition No. 3 place not
      only an undue burden, but also an impossible burden, upon D&T USA to know the
      unspecified, undefined or unnamed entities and persons referred to.  The purported
      definition is so ambiguous and vague that it would make any search for documents
      impossible.  Assuming that the objections raised herein are resolved, no documents
      will be produced except by D&T USA; D&T USA also objects to the production of
      any documents not in its possession (*i.e.*, in the possession of Deloitte & Touche LLP,

Daniel S. Sommers, Esq.
April 18, 2006
Page 5

      Deloitte Consulting LLP, Deloitte Tax LLP, and/or Deloitte Financial Advisory
      Services LLP);

15.   D&T USA objects to the scope of the subpoena as overbroad, unduly burdensome and
      oppressive, and not relevant to the claim or defense of any party to the extent that it
      purports to require D&T USA to search not only its own offices for relevant
      documents, but also the offices of other entities such as Deloitte Touche Tohmatsu and
      other members of Deloitte Touche Tohmatsu;

16.   D&T USA objects to the Definitions and Instructions to the extent that they purport to
      impose any obligations upon D&T USA beyond those required by the Federal Rules of
      Civil Procedure and/or the Local Rules of the District of Columbia;

17.   D&T USA objects to the subpoena to the extent that it purports to require D&T USA
      to produce documents related to individuals, entities and/or clients that are not at issue
      in the instant action and/or are not parties to the action, documents related to work
      unrelated to the subject matter of the action or documents relating to other actions;

18.   D&T objects to the subpoena to the extent that it seeks the production of documents
      which are protected by the privilege of self-critical analysis, privacy statutes, the right
      to privacy, and public policy;

19.   The subpoena requests confidential information of a client of one of more of the
      Deloitte US Firms and/or of the Deloitte U.S. Firms. Therefore, D&T USA objects to
      the subpoena absent entry of a confidentiality order protecting the confidentiality of the
      documents. No documents will be produced absent such a confidentiality order; and

20.   D&T USA objects to producing the material sought by the subpoena in the absence of
      your clients' prior written commitment to pay for all reasonable costs of production,
      including all administrative costs.

In making the above objections, D&T USA is not suggesting or implying in any way that it has
documents responsive to a particular Request.

D&T USA expressly reserves the right to amend, expand, or delete any part of the objections
stated herein.

Given these objections, no documents will be produced on April 28, 2006. However, without
waiving these objections, D&T USA is willing to discuss these objections with you. I would
like to address the issues surrounding retention of draft or interim versions of working papers
this week.

APR-18-2006  17:50        D&T USA LLP NO LEGAL                      P.07/07

Daniel S. Sommers, Esq.
April 18, 2006
Page 6


In the interim, please send me a copy of the operative complaint, a service list of counsel, and any confidentiality agreement or protective order in place in the case.  In addition, please let me know if there are any deadlines with which we must be concerned.

Thank you for your anticipated cooperation.

Very truly yours,

*Linda Beyer*

Linda M. Beyer
Associate General Counsel

Cc:     Jeffrey Kilduff, Esq. (via fax & mail)

EXHIBIT C

Page 13

1    of ransom because we have sued them.  That's rude, but I had to

2    say it anyway.  It's a silly comment.  But I just feel that's

3    all within the prerogative of this Court.  This Court has run

4    this litigation in an incredibly efficient way, and we just want

5    to move the litigation.

6         So the answer to my question -- your answer [sic] is

7    yes and no depending on whether we can move forward.

8         Continuing on --

9         THE COURT:  I will give you a chance.  Don't worry over

10   there at Sullivan & Cromwell.  You will get your chance.

11        MR. CHESLEY:  Okay.  I have a one-liner.  We defer to

12   the Court -- no kidding -- on deciding whether a hearing is

13   appropriate at this time.  I had to say it.

14        Your Honor, Discovery.  Discovery requests have been

15   served on 39 persons or entities.  The 19 million have been

16   produced.  15.3 million pages have been loaded to an electronic

17   document database shared by all parties, including derivative

18   and opt-out Plaintiffs, and they are going to be shared to

19   Goldman Sachs.

20        Your Honor, the only point I want to bring up that --

21   as a heads-up, not to be done today, Deloitte --

22        THE COURT:  Deloitte?

23        MR. CHESLEY:  Deloitte, the accountants that have done

24   the whole restatement and have been billed -- they have been a

25   major biller of the $1-1/2 billion to Fannie Mae; I can't tell

Page 14

1   you which one it is, but they have been bragging they have had

2   2,000 people working on the reinstatement [sic] -- has given us

3   an index of documents so far, but has not produced any

4   documents.  We are attempting to work out efficient document

5   production from them.

6           I would think that if they had -- could supply 2,000

7   people, plus or minus, for the restatement -- if there is a

8   problem, we will advise the Court.  I do not see it as a

9   problem, but I wanted to give the Court a heads-up.  We have

10  been able to get them from KPMG, and we do need these Deloitte

11  documents because this becomes -- okay.

12          THE COURT:  Who is representing them, Mr. Chesley?

13          MR. CHESLEY:  I am embarrassed --

14          THE COURT:  Do you know?

15          MR. SOMMERS:  It's Arnold & Porter.

16          THE COURT:  Well, they know their way around big cases.

17  They should figure out a way to solve this problem.

18          MR. CHESLEY:  Thank you, your Honor.

19          THE COURT:  You can quote me.

20          MR. CHESLEY:  Not here to complain yet, just to give

21  you a -- give the Court a heads-up.

22          THE COURT:  You can quote me, though.

23          MR. CHESLEY:  Fine, your Honor.  The record will quote

24  you.  Thanks.

25          THE COURT:  Show it to them.

# EXHIBIT D

# BERMAN DeVALERIO PEASE TABACCO BURT & PUCILLO

## ATTORNEYS AT LAW

ONE LIBERTY SQUARE
BOSTON, MA 02109
TEL: (617) 542-8300

425 CALIFORNIA STREET, 21st FLOOR
SAN FRANCISCO, CA 94104
TEL: (415) 433-3200
FAX: (415) 433-6382

FAX: (617) 542-1194
——————
WWW.BERMANESQ.COM
LAW@BERMANESQ.COM

222 LAKEVIEW AVENUE, SUITE 900
WEST PALM BEACH, FL 33401
TEL: (561) 835-9400
FAX: (561) 835-0322

April 19, 2006
**Via Facsimile and Overnight Mail**

Linda M. Beyer, Esq.
Associate General Counsel
Deloitte & Touche USA LLP
1633 Broadway
New York, NY 10019-6754

Re:    **In Re Fannie Mae Securities Litigation (D. D.C. CV 04-1639)(RJL)**
**Subpoena addressed to Deloitte & Touche USA LLP**

Dear Ms. Beyer:

Dan Sommers forwarded to me your letter setting forth the objections of Deloitte & Touche USA LLP ("Deloitte") to the subpoena Lead Plaintiffs served on Deloitte.

I am enclosing a copy of the First Amended Complaint that was sustained in its entirety by the Court and a copy of the Second Amended Complaint that was filed earlier this week. The parties are in the process of negotiating a Protective Order that, but for a few minor revisions, should be filed with the Court shortly. Defendant Fannie Mae has begun to produce its documents on an "attorneys eyes only" basis until the Protective Order is finalized. Once we file the Protective Order, I will send you a copy. Also enclosed is a service list.

We would like to set up a time to discuss Deloitte's objections to the subpoena as well as the issues surrounding the "retention of draft or interim versions of working papers" as you raise in your letter. I am not sure if you would like to review the complaints – which are quite lengthy – before we talk. (If you provide me with your e-mail address, I can e-mail the complaints to you today.)

## Berman DeValerio Pease Tabacco Burt & Pucillo

Linda M. Beyer, Esq.
Associate General Counsel
April 19, 2006
Page 2

Please let me know when you would like to schedule a call.  I am available on Friday between 10 am and 3 pm and Monday or Tuesday of next week.

Very truly yours,

Jeffrey C. Block

cc:    Melanie Corwin, Esq.
       Kathleen Donovan-Maher, Esq.
       Julie Richmond, Esq.
       Joseph Merschman, Esq.
       Daniel Sommers, Esq.

Fannie mae/c/beyer_DT_4_19_06