UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | ) ) ) ) | MDL No. 1668 |
| In re Fannie Mae Securities Litigation | ) ) ) ) | Consolidated Civil Action. No. 1:04-cv-1639 (RLJ) |

**LEAD PLAINTIFFS' REPLY
TO THIRD-PARTY DELOITTE & TOUCHE LLP USA'S
RESPONSE IN OPPOSITION TO LEAD PLAINTIFFS' MOTION TO COMPEL**

Deloitte & Touche LLP USA ("Deloitte") does not dispute that it must produce to Lead Plaintiffs the documents requested in the subpoena that Lead Plaintiffs served on Deloitte over one year ago, in April 2006.[1] The only issue before the Court is one of timing. The documents at issue are the restatement working papers regarding Fannie Mae's massive financial statement restatement and are crucial to the prosecution of this case. Many substantive depositions in this case cannot go forward until those restatement working papers are produced and analyzed.

Deloitte knew full well at the time the Subpoena was served that it stores its working papers in its proprietary AS/2 software system and that any data extracted from that system must be converted into a suitable format to allow for its production. Rather than inform Lead Plaintiffs of this detail when it received the Subpoena, Deloitte waited almost a full year to bring it to Lead Plaintiffs' attention, at the point the parties were prepared and expected to move on to the substantive depositions in this case. After Lead

---

[1] After several meet and confer sessions during which Deloitte said it could not produce its working papers on a rolling basis because it needed those papers to prepare the restatement, Lead Plaintiffs agreed to defer Deloitte's obligations to produce its working papers until after the restatement was completed, which was December 6, 2006. May 29th Declaration of Jeffrey C. Block In Support Of Lead Plaintiffs' Motion To Compel ("May 29th Block Decl.") ¶9.

1

Plaintiffs worked through the logistics and costs associated with Deloitte's data conversion issues, Deloitte responded by taking two and a half months just to send Lead Plaintiffs the index of the restatement working papers.  May 29th Declaration of Jeffrey C. Block in Support of Lead Plaintiffs' Motion to Compel ("May 29th Block Decl.") ¶16.  At that point, Deloitte's data conversion vendor, Solutions Plus+, already had in its possession an archive of the responsive data but may or may not have been authorized by Deloitte to begin conversion until several weeks later.[2]

Indeed, the timing of the events regarding when Solutions Plus+ began its data conversion work is revealing.  Deloitte's counsel represented that once pricing was worked out, it would take Deloitte six to eight weeks to complete its production, meaning that from April 18, 2007, the production should have been completed by late May to early June.  May 29th Block Decl. ¶19.  As this Court knows, Deloitte had only produced a handful of documents within that timeframe, and then only after Lead Plaintiffs indicated that they were filing this motion to compel.  *Id.*  Deloitte's counsel later represented that at least the 1000 series of the working papers would be produced by late May[3] but that data problems with the next batch of documents would delay further production.  Given that an agreement with regard to pricing was reached on April 18, it is rather curious why it took Solutions Plus+ six weeks to produce only 20,000 pages of documents and discover additional data problems when it claims to have been working

---

[2] Although the parties reached agreement on pricing on April 18, 2007, the declaration of James Woodlock, President and CEO of Solutions Plus+ is telling with regard to their start date. "We received the archive [of the Deloitte data] in March. Once we were given the approval to proceed with the project" they began to work on the conversion. Woodlock does not reveal **when** Solutions Plus+ was given the approval to proceed.  Woodlock Decl. ¶8.  As we explain, given the timing of events it appears Deloitte waited before authorizing Solutions Plus+ to begin its work.

[3] The index to the working papers indicates that the working papers are divided by a series of documents designated 1000 through 9000.

"ten to twelve hours a day, throughout weekends and holidays in order to expedite the project." Woodlock Decl. ¶8.

Deloitte has continued to ignore its discovery obligations and delay its production until it became faced with having to answer to this Court[4]. In response to the filing of the motion to compel, Deloitte promised to produce the "bulk" of its 1.8 to 2.2 million pages of working papers by June 30. However, only a handful of additional documents were produced by June 30. Now Deloitte asserts that it will produce all its documents by July 27 – coincidentally the date of the hearing – so that the Court need not grant the relief sought herein. Lead Plaintiffs submit that this Court's intervention is necessary to insure that Deloitte meets its obligations.

Finally, Deloitte's conduct in this case demonstrates that when it wants to produce documents in a timely manner, it certainly knows how to. Williams & Connolly, counsel for defendant Raines, served a document subpoena on Deloitte on September 28, 2006 seeking documents concerning Deloitte's engagement by OFHEO regarding Fannie Mae. Deloitte's counsel reviewed those documents in late March and April 2007 and made its production by the end of April 2007[5].

---

[4] Deloitte attempts to confuse the issue by contending that Lead Plaintiffs' attempts to negotiate a better price for the production of Deloitte's **hard copies** of the working papers provided an excuse for the inordinate delay in Deloitte's production of its **electronic** working papers. These are two separate issues. The motion to compel concerns the production of the electronic working papers. Deloitte claims to have already produced the hard copies of the working papers, although, as we show, Deloitte sat on the production of those documents for more than five months. Declaration of Jeffrey C. Block In Further Support of Plaintiffs' Motion to Compel ("Block Decl.") ¶2.

[5] It is worth noting that the production must have been a complete production given that Williams & Connolly, no stranger to moving to compel the production of documents in this case, has not brought any issues regarding Deloitte's production to the Court's attention.

3

I.      **Electronic Working papers**

Deloitte maintains the vast majority – estimated to be 1.8 to 2.2 million pages – of its working papers for the Fannie Mae restatement in electronic format on its proprietary AS/2 software system. Response at 7. Deloitte claims it cannot print anything from the AS/2 system, that the information simply exists electronically and that the data has to be converted into a format to allow its production in this case. *Id.*

Deloitte also attempts to excuse its dilatory conduct over the past seven months by pointing to Lead Plaintiffs' selection of so many working papers. Response at 7. Because this is a financial fraud case and almost all of Fannie Mae's financial statements were impacted by the fraud, Lead Plaintiffs need to see almost all of the restatement working papers. Indeed, Deloitte has never objected to producing what Lead Plaintiffs have asked for, May 29th Block Decl. ¶15, and admits in its response that it has the obligation to produce these documents; it is just trying to use this as an excuse for its delay.

Deloitte has been a moving target through this process, repeatedly promising to produce documents and then missing each new deadline. On April 18, 2007, Lead Plaintiffs' counsel confirmed in writing Deloitte's agreement that it would begin to produce working papers within *two weeks* (May 1, 2007) and that it anticipated that the entire production would take between four and six weeks to produce (May 30, 2007). LP Mem. at 6. Deloitte failed to produce a single document until Lead Plaintiffs' counsel sent Deloitte's counsel a letter on May 23, 2007 indicating their intent, for the fourth time, to file a motion to compel. *Id.* Two days later, Deloitte produced a mere 20,000 pages of documents, less than .001% of its entire production. *Id.* The only explanation

4

Deloitte's counsel offered regarding the remaining 99.9% of the production was that they continued to experience "technological issues".[6] *Id.*

After Lead Plaintiffs filed their Motion to Compel on May 29, 2007, Deloitte's counsel represented that the "bulk" of the working papers would be produced by June 30, 2007. Stipulation Extending Time for Third-Party Witness Deloitte & Touche LLP To Respond To Lead Plaintiffs' Motion to Compel. Deloitte nevertheless failed to produce any new documents on June 30, and then, on July 2,[7] produced only approximately 146,000 additional pages of the electronic working papers. Block Decl. ¶4.

The gist of Deloitte's opposition to the motion to compel is that it expects to produce most of the documents by the date of the hearing – July 27 – so the Court need not enter any order compelling production. Given Deloitte's penchant for repeatedly missing its promised deadlines and that it has only started to try to comply with the subpoena after this motion was filed and the hearing was scheduled, Deloitte's "defense" rings hollow.

Deloitte further claims that "entering an order compelling Deloitte … to produce documents … would make no difference to the vendor's ability to produce them." Response at 2. This claim appears to be based on the statement of Solutions Plus+ CEO James Woodlock ("Woodlock") that "[o]nce we were given approval to proceed with the

---

[6] Deloitte notes that the only reason it produced even these 20,000 pages to Lead Plaintiffs was that it had already produced those materials to counsel for Raines. Response at 3. Thus, by Deloitte's own admission, it did not make an effort to meet its promised production deadline.

[7] Although the letter accompanying the additional documents was dated Friday, June 29, 2007, the package containing the letter and documents was not delivered until after the close of business that day. Deloitte also failed to notify Lead Plaintiffs that it planned to deliver the package after the close of business. Consequently, Lead Plaintiffs did not receive the documents until Monday, July 2, 2007. Declaration of Autumn W. Smith In Further Support Of Lead Plaintiffs' Motion To Compel ¶2.

5

project, all of our people who have AS/2[8] expertise … have been working ten to twelve hours a day, throughout weekends and holidays". Woodlock Decl. ¶8. Woodlock conveniently fails to mention how many of his people are actually working on this project. Deloitte was paid $260,770,000 for its work on the restatement of Fannie Mae's financial statements. It certainly has the resources to devote to making this production much faster than it has been.

It has been three months since Lead Plaintiffs and Deloitte reached an agreement with regard to pricing and since that time Deloitte has produced only 310,000 of the expected 1.8 to 2.2 million working papers. If Deloitte were able to produce only 17% over the course of three months, it is not believable that the remaining 83% will be produced within the next two weeks; unless, of course, Solutions Plus+ really did not begin working on the production until the end of May, as we suspect. Moreover, according to Woodlock, processing the audit working papers is "extraordinarily complex and time-consuming, and of a highly technical nature". Woodlock Decl. ¶3. Given the length of time it took to produce even this small portion of the estimated total working paper production of over 2 million pages, *see* Woodlock Decl. ¶11, it is difficult to believe that Deloitte will miraculously produce the remaining nearly 1.5 million pages of documents in less than three weeks. Particularly in light of Deloitte's past disregard for production deadlines, Deloitte's promise to produce the remaining documents in such a short time period is disingenuous.

Accordingly, Lead Plaintiffs request that Deloitte be ordered to complete the production within two weeks of the date of the Court's order.

---

[8] AS/2 is Deloitte's proprietary software system, on which the audit working papers are maintained. Woodlock Decl. ¶2.

II.     **Manual Working papers**

Although Deloitte finished its Fannie Mae restatement work on December 6, 2007, it acknowledges that it did not finish collecting the manual audit working papers and preparing them for production until May 11, 2007, a full *five months* later. Response at 5. According to Deloitte's counsel, Kavita Kumar Puri, she and another associate in May, 2007 reviewed the hard copy of the working papers for privilege and to determine which working papers should be made available to current Fannie Mae employees. Deloitte offers no explanation for why it took over five months after the restatement was finished for it to turn its attention to producing these documents. Declaration of Jeffrey C. Block In Further Support of Plaintiffs' Motion to Compel ("Block Decl.") ¶6. Nor has Deloitte ever produced a privilege log with regard to the hard copy working papers or indicated that any documents were withheld from production[9]. *Id.*

Accordingly, Lead Plaintiffs request an order that Deloitte produce **all** of its hard copy working papers and that its failure to timely produce a privilege log acts as a waiver of any claim of privilege Deloitte may assert.

Moreover, Deloitte's attempt to blame the delay of the production of the hard copy working papers on Lead Plaintiffs is ridiculous. Lead Plaintiffs took two weeks to negotiate a lower price for the scanning of these documents, which hardly justifies the almost six month delay in Deloitte's production of these documents and the failure to timely produce the electronic working papers. Block Decl. ¶2.

---

[9] Ms. Puri's declaration is the first time Lead Plaintiffs have learned that Deloitte conducted any sort of privilege review or may have withheld documents from production.

7

### III. Conclusion

Since receiving Lead Plaintiffs' Subpoena, Deloitte has failed to fulfill its obligations to produce its audit working papers. Deloitte's renewed promise to produce its working papers was prompted only the upcoming hearing with this Court scheduled for July 27, 2007. It is doubtful, absent an order from this Court compelling production, that Deloitte will comply with the Subpoena in a timely manner.

Lead Plaintiffs respectfully request that the Court grant its motion to compel in full.

A proposed order is attached.

Date: July 13, 2007                      Respectfully submitted,

ATTORNEY GENERAL OF OHIO
MARC DANN

WAITE, SCHNEIDER, BAYLESS
& CHESLEY CO., L.P.A.
s/ Stanley M. Chesley
Stanley M. Chesley
s/ James R. Cummins
James R. Cummins (D.C. Bar #OH0010)
Melanie S. Corwin
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 621-0262
E-mail: jcummins@wsbclaw.com
*Special Counsel for the Attorney General of Ohio and Lead Counsel for Lead Plaintiffs*

BERMAN   DEVALERIO   PEASE
TABACCO BURT & PUCILLO

s/Jeffrey C. Block
Jeffrey C. Block
Kathleen M. Donovan-Maher
Julie A. Richmond

        Joseph A. Merschman
        One Liberty Square
        Boston, MA 02109
        Telephone: (617) 542-8300
        Facsimile: (617) 542-1194
        E-mail:  jblock@bermanesq.com
        *Co-Lead Counsel for Lead Plaintiffs*

        COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
        s/Daniel S. Sommers
        Steven J. Toll (DC Bar #225623)
        Daniel S. Sommers (DC Bar #416549)
        Matthew K. Handley (DC Bar #489946)
        1100 New York Avenue, N.W.
        Washington, D.C.  20005
        Telephone:  (202) 408-4600
        Facsimile:  (202) 408-4699
        E-mail:  stoll@cmht.com
        *Local Counsel for Lead Plaintiffs*

OF COUNSEL:

BARRETT & WEBER L.P.A.

C. Francis Barrett (0022371)
Suite 500, 105 East Fourth Street
Cincinnati, Ohio  45202
Telephone: (513) 721-2120
Facsimile: (513) 721-2139
E-mail:  cfbarrett@barrettweber.com
*Special Counsel for the Attorney General Of Ohio*

STATMAN, HARRIS, SIEGEL
  & EYRICH, LLC
Alan J. Statman (0012045)
Jeffrey P. Harris (0023006)
441 Vine Street
3700 Carew Tower
Cincinnati, Ohio  45202-2912
Telephone:  (513) 621-2666
Facsimile:  (513) 587-4477
E-mail:  ajstatman@shselegal.com
E-mail:  jharris@shselegal.com