## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Federal National Mortgage Association Securities Derivative and "ERISA" Litigation | MDL No. 1668 |
| IN RE FANNIE MAE SECURITIES LITIGATION | Consolidated Civil Action No. 1:04CV01639 (RJL)<br><br>Judge Richard J. Leon |
| FRANKLIN MANAGED TRUST *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*,<br>*Defendants*. | No. 1:06CV00139 (RJL) |
| FANNIE MAE,<br>*Plaintiff*,<br><br>v.<br><br>KPMG LLP,<br>*Defendant*. | No. 1:06CV02111 (RJL) |

## KPMG LLP'S MOTION TO COMPEL PRODUCTION OF
## DOCUMENTS FROM NONPARTY DELOITTE & TOUCHE LLP

COMES NOW Defendant KPMG LLP, by counsel, and moves this Court, pursuant to

Federal Rule of Civil Procedure 37(a)(1), for an order compelling nonparty Deloitte & Touche

LLP to comply with a subpoena duces tecum properly issued under Rule 45 on August 17, 2007.

In support of this Motion to Compel, KPMG relies upon its concurrently filed Memorandum in

Support of Motion to Compel Production of Documents from Nonparty Deloitte & Touche LLP.

Date:  January 3, 2008

Respectfully submitted,

/s/ Charles Wm. McIntyre
Charles Wm. McIntyre (DC Bar No. 489302)
cmcintyre@mcguirewoods.com
C. Simon Davidson (DC Bar No. 490422)
cdavidson@mcguirewoods.com
Darren W. Stanhouse (DC Bar No. 494623)
dstanhouse@mcguirewoods.com
McGUIREWOODS LLP
Washington Square
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036-5317
202.857.1700 (phone)
202.857.1737 (fax)
*Counsel for KPMG LLP*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| In Re Federal National Mortgage Association Securities Derivative and "ERISA" Litigation | MDL No. 1668 |
| IN RE FANNIE MAE SECURITIES LITIGATION | Consolidated Civil Action No. 1:04CV01639 (RJL)<br><br>Judge Richard J. Leon |
| FRANKLIN MANAGED TRUST *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*,<br>*Defendants*. | No. 1:06CV00139 (RJL) |
| FANNIE MAE,<br>*Plaintiff*,<br><br>v.<br><br>KPMG LLP,<br>*Defendant*. | No. 1:06CV02111 (RJL) |

**KPMG LLP'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF
DOCUMENTS FROM NONPARTY DELOITTE & TOUCHE LLP**

This litigation arises out of OFHEO's "Special Examination" of Fannie Mae, which allegedly discovered problems with Fannie Mae's accounting policies and practices and resulted in the restatement of Fannie Mae's financial statements from 2000 through 2003. Deloitte, despite being a nonparty, is central to these events. Deloitte played two key roles, either one of

which *by itself* would make its documents critical to the parties' claims and defenses. First, Deloitte served as the accounting advisor to OFHEO in its Special Examination of Fannie Mae. Second, even before OFHEO completed its Special Examination, Deloitte went directly from assisting OFHEO to replacing KPMG as Fannie Mae's independent auditor. See OFHEO Report of the Special Examination of Fannie Mae, p. 17 (May 2006). As such, Deloitte audited Fannie Mae's restatement of the financial statements previously audited by KPMG. In this role, it employed more then six hundred professionals, and purportedly expended hundreds of millions of dollars in time and expenses. Letter from Charles Wm. McIntyre, Counsel, KPMG, to Scott B. Schreiber, Counsel, Deloitte, at 1 (Oct. 10, 2007) (attached as Exhibit A); Federal National Mortgage Assc., Annual Report (Form 10-K), at 240 (Dec. 6, 2006).

More than four months ago, KPMG served a subpoena upon Deloitte for the production of documents. In the time since, while KPMG has sought to work with Deloitte to narrow the scope of Deloitte's production so that it is no broader than necessary, Deloitte has repeatedly frustrated KPMG's efforts to obtain documents that are essential to its defense. Despite KPMG's oft-repeated reminders that Deloitte's documents are necessary for ongoing depositions, Deloitte has continually delayed its production and has now simply refused: (1) to search and produce documents from the files of key employees who worked on the audit of the restatement; and (2) produce certain final workpapers from the audit of the restatement on the grounds that they are "proprietary." Given the urgency of KPMG's need for these documents and the unreasonableness of Deloitte's positions, Deloitte has left KPMG no choice but to request that the Court compel Deloitte to produce the documents.

## **FACTUAL BACKGROUND**

Broadly, the claims against KPMG in this litigation are twofold.  First, Plaintiffs allege that KPMG issued materially false audit opinions on Fannie Mae's financial statements from 200 through 2003.  Second, through fifteen counts of breach of contract and negligence, Fannie Mae alleges that KPMG negligently performed its audits of Fannie Mae's financial statements during the same time period.  The damages sought from KPMG exceed $2 billion.

On August 17, 2007, KPMG, by counsel, served a subpoena (attached as Exhibit B) on Deloitte pursuant to Rule 45 seeking discovery of material relevant to KPMG's defense in this matter.  KPMG requested, <u>inter alia</u>, documents relating to Deloitte's (1) role in assisting the Office of Federal Housing Enterprise Oversight ("OFHEO") with its "Special Examination" of Fannie Mae; (2) replacement of KPMG as Fannie Mae's independent auditor; and (3) engagement with Fannie Mae to provide accounting services related to Fannie Mae's "restatement of its publicly reported financial statements and/or results for 2002, 2003 and the first two quarters of 2004 and all restatement items relating to 2001 included in the cumulative retained earnings balance" (the "Restatement").  (<u>See, e.g.</u>, Ex. B at 5 ¶¶ 3, 9.)

Deloitte first responded to KPMG's subpoena by letter on August 31, 2007, wherein Deloitte stated, by counsel, that it "is prepared to discuss the subpoena with you.  Deloitte is objecting to this subpoena in order to preserve its rights pending our discussions."  Letter from Scott B. Schreiber, Counsel, Deloitte, to Charles Wm. McIntyre, Counsel, KPMG, at 1 (Aug. 31, 2007) (attached as Exhibit C).  Responding, KPMG addressed Deloitte's objections and emphasized the fact that "there are ongoing depositions in this litigation to which responsive documents may be relevant.  Therefore, it is imperative that we receive all responsive documents as soon as possible."  Letter from Charles Wm. McIntyre, Counsel, KPMG, to Scott B.

Schreiber, Counsel, Deloitte, at 3 (Sept. 24, 2007) (attached as Exhibit D).  KPMG explicitly

asked that Deloitte confirm whether it had begun gathering responsive documents.  Id.

     Deloitte subsequently notified counsel by letter that before receiving KPMG's subpoena,

it had already, in response to subpoenas from other parties in this case, "produced nearly two

million pages of final audit workpapers, both hard copy and electronic, and approximately

100,000 pages of documents relating to Deloitte's engagement by [OFHEO]."  Letter from Scott

B. Schreiber, Counsel, Deloitte, to Charles Wm. McIntyre, Counsel, KPMG, at 1 (Sept. 28,

2007) (attached as Exhibit E).  While Deloitte's letter focused on "final" workpapers, it did not

address the enormous volume of draft workpapers that Deloitte has not produced.

     Also absent from Deloitte's letter was any indication that it had either begun gathering

documents responsive to KPMG's subpoena or actually searched the file of any employee who

had worked on the audit of Fannie Mae's Restatement.  In an October 5, 2007, letter, KPMG

stressed this omission, and asked Deloitte to "please confirm that D&T has begun gathering and

processing documents in response to our requests.  It has been a full seven weeks since D&T

received our subpoena and, despite our requests, D&T has yet to provide this confirmation."

Letter from C. Simon Davidson, Counsel, KPMG, to Scott B. Schreiber, Counsel, Deloitte (Oct.

5, 2007) (attached as Exhibit F).  Counsel reiterated KPMG's need for responsive documents to

prepare adequately for the ongoing depositions in this litigation.  Id.

     In the several months since, despite KPMG's efforts to facilitate Deloitte's production by

narrowing the scope of its subpoena, the only documents produced by Deloitte that are directly

responsive to KPMG's subpoena are a small number of billing records, excerpts from Deloitte's

current Accounting Manual, and certain documents related to Deloitte's engagement with

OFHEO.  Deloitte has explicitly refused (1) to collect documents from certain individuals

integral to KPMG's defense and (2) to produce certain final workpapers because they are "proprietary," even though this Court has already issued a protective order governing those types of documents.

As set forth in the Motion to Compel, pursuant to Rule 7(m) of the Rules of the U.S. District Court for the District of Columbia, counsel for KPMG has attempted to meet and confer with Deloitte on numerous occasions regarding Deloitte's failure to respond to KPMG's subpoena. Because Deloitte has now simply refused to produce key responsive documents, thereby prejudicing KPMG's defense of this matter, KPMG has been forced, regrettably, to proceed with the Motion to Compel.

**I.      Deloitte Has Refused to Collect Responsive Documents from Key Employees who Audited Fannie Mae's 2004 Restatement.**

In its subpoena, KPMG sought, inter alia, documents from Deloitte employees who performed work on the 2004 audit of Fannie Mae's Restatement. Because of Deloitte's central role in OFHEO's "Special Examination" of Fannie Mae and the fact that Deloitte became Fannie Mae's independent auditor during the "Special Examination," KPMG expected that Deloitte, in responding to the subpoena, would conduct comprehensive searches of the electronic and hard copy files of the employees who worked on either the OFHEO engagement[1] or the audit of Fannie Mae's Restatement. In response to Deloitte's representation that 600-800 employees worked on the Restatement, however, KPMG agreed to work with Deloitte in an effort to narrow the scope of custodians from whom Deloitte would actually *produce* responsive documents. See Ex. A at 1. Deloitte agreed to provide "workstreams" to KPMG that identified "certain D&T employees who worked on the audit of the Restatement, as well as the areas upon which those

---

[1] Deloitte claimed that in responding to subpoenas from other parties in this litigation it had already searched the electronic and hard copy files of all employees who worked on the OFHEO engagement and produced

employees focused." Id.; see also Letter from Scott B. Schreiber, Counsel, Deloitte, to Charles Wm. McIntyre, Counsel, KPMG, at 3 (Oct. 17, 2007) (attached as Exhibit H). KPMG's understanding as of October 10, 2007, was that Deloitte would provide a list of key employees who worked on the audit of Fannie Mae's Restatement. From this list, Deloitte would produce all responsive documents from custodians selected by KPMG.

On October 17, 2007, Deloitte's counsel for the first time imposed the limitation that Deloitte would not produce any responsive documents from individual custodians' files relating to Fannie Mae's Restatement until "the parties decide which individuals from Deloitte they would like to depose." Ex. H at 2. KPMG responded on November 6, 2007, and reiterated its concern that Deloitte still had not even begun searching the electronic and hard copy files of employees who had worked on Fannie Mae's Restatement. Letter from C. Simon Davidson, Counsel, KPMG, to Scott B. Schreiber, Counsel, Deloitte, at 1 (Nov. 6, 2007) (attached as Exhibit I). Deloitte's failure simply to start responding to KPMG's subpoena was especially troubling because KPMG had emphasized on numerous occasions, and again in its November 6 letter to Deloitte, KPMG's need for responsive documents to prepare adequately for ongoing depositions. See id. at 3.

KPMG also reconfirmed in its November 6 letter its understanding that Deloitte would provide KPMG with a list of key employees who worked on the Fannie Mae Restatement. KPMG stressed that it could not identify the custodians from whom Deloitte should produce responsive documents until Deloitte produced the workstream of key individuals it had promised to provide. Id. at 1. On November 8, 2007, approximately one month after it agreed to do so, Deloitte finally produced a workstream of key employees who worked on Fannie Mae's

---

all responsive, non-privileged hard copy and electronic documents. See Letter from Scott B. Schreiber, Counsel, Deloitte, to C. Simon Davidson, Counsel, KPMG, at 1 (Nov. 15, 2007) (attached as Exhibit G).

Restatement.  In accordance with its understanding with Deloitte, KPMG reviewed the list and identified key personnel from whom Deloitte should produce responsive documents.

However, before KPMG completed that review, on November 15, 2007, and despite Deloitte's previous representations to the contrary, Deloitte imposed yet another limitation, asserting that it would not begin gathering responsive documents from any custodian until "the parties in the litigation have identified which Deloitte individuals they intend to depose." See Ex. G at 1.

On November 19, 2007, counsel for Deloitte spoke with KPMG's counsel regarding Deloitte's reversal of its position on Deloitte's electronic and hard copy files.  Deloitte agreed to adhere to its previous understanding with KPMG and produce responsive documents from employees who worked on the audit of Fannie Mae's Restatement without first requiring KPMG to identify which employees it intends to depose.  Letter from C. Simon Davidson, Counsel, KPMG, to Scott B. Schreiber, Counsel, Deloitte, at 1 (Nov. 30, 2007) (attached as Exhibit J). Deloitte's counsel noted, however, that Deloitte might possess in excess of 50 million pages of responsive documents.  KPMG again specifically responded that it was "agreeable to narrowing the focus of Deloitte's production such that it is no more voluminous than is necessary while still preserving KPMG's ability to obtain the documents it needs for its defense." Id.

To facilitate Deloitte's production, KPMG confirmed its agreement to identify a limited set of specific employees whose files Deloitte should search for responsive documents, and Deloitte would in turn produce all responsive electronic and hard copy documents from those individuals' files.  See id.  KPMG provided Deloitte with a preliminary list of 34 Deloitte employees, but reserved the right to supplement the list.  See id. at 1-2.[2]  KPMG also conveyed

---

[2] Although correspondence between KPMG and Deloitte states that KPMG's initial list contained 35 employees, it in fact contained only 34.  Similarly, while correspondence between KPMG and Deloitte states that

its intention to work with Deloitte to narrow further the scope of Deloitte's production by subject

matter, if possible, which could only be done if Deloitte provided more specific descriptions of

the various tasks performed by its employees during Deloitte's 2004 audit of Fannie Mae's

Restatement.[3]  See id. at 2.

On December 12 and 13, 2007, during telephone conversations between counsel for

KPMG and Deloitte's counsel, Deloitte imposed yet another new limitation not previously

discussed, and stated that it would *not* produce documents from the files of the custodians

KPMG had identified.  Instead, Deloitte would produce responsive documents from just 13

custodians it had identified.  Deloitte stated that it believed, in good faith, that the production of

responsive documents from these 13 individuals, whom Deloitte believed were likely to be

deposed, would "have the audit more than covered."  Letter from C. Simon Davidson, Counsel,

KPMG, to Scott B. Schreiber, Counsel, Deloitte, at 2 (Dec. 14, 2007) (attached as Exhibit K).

KPMG responded that Deloitte had an obligation to produce documents from the files of all

Deloitte employees who worked on Fannie Mae's Restatement, but, in an effort to narrow the

scope of Deloitte's production, KPMG was initially requesting responsive documents from just

34 employees.  Counsel for KPMG emphasized that this list of 34 custodians was merely a

preliminary list and that KPMG intended to supplement it in the future.

KPMG also stated that Deloitte's proposal was inadequate because, among other reasons,

Deloitte's list of proposed employees omitted (1) Duncan Barks, Deloitte's lead partner

---

KPMG's revised list contained 40 employees, it in fact contained only 39.  KPMG includes these clarifications not
because they impact Deloitte's obligation to produce documents from the employees, but only to ensure that the
record is accurate.

[3] KPMG also alerted Deloitte to the critical importance of Deloitte gathering and producing responsive
documents from these custodians as rapidly as possible.  See Ex. J at 3.  As the Court is well aware, under Stipulated
Case Management Order No. 4 [Doc. #536], dated October 19, 2007, the current deadline for fact-discovery in this
case is July 31, 2008.  Thus, depositions in this matter are ongoing, and KPMG cannot adequately prepare for many
of these depositions without the documents it has requested from Deloitte.  Thus, Deloitte's delay and refusal to
comply with the subpoena creates real, substantial, and imminent prejudice to KPMG.

"assigned to FAS 91, an accounting issue central to the audit and this litigation," and (2) every specialist[4] that worked on the 2004 audit of Fannie Mae's Restatement. See id. at 3. Nevertheless, KPMG's counsel agreed to discuss with KPMG the possibility of Deloitte producing responsive documents from only the 13 individuals whom Deloitte claimed would sufficiently "cover" Fannie Mae's audit. Counsel for Deloitte represented that, in the meantime, Deloitte would begin gathering responsive documents from the 13 individuals it had identified. See id. at 2.

On December 17, 2007, notwithstanding counsel's earlier statement that Deloitte would begin gathering responsive documents from the 13 individuals identified by Deloitte as "key players," counsel backtracked and sought to impose still another limitation: "[B]efore commencing our search we want to confirm that Deloitte's production will be limited to the subject matters associated with the accounting policies outlined in your November 6, 2007 letter. Our commencing document production is contingent on such confirmation." Letter from Scott B. Schreiber, Counsel, Deloitte, to C. Simon Davidson, Counsel, KPMG, at 2 (Dec. 17, 2007) (attached as Exhibit M).

KPMG responded on December 19, 2007, and highlighted for Deloitte, again, that KPMG had limited the scope of individuals from whom it sought responsive documents from more than 600[5] to 34 to minimize Deloitte's burden in responding to KPMG's subpoena. Letter from C. Simon Davidson, Counsel, KPMG, to Scott B. Schreiber, Counsel, Deloitte, at 1 (Dec. 19, 2007) (attached as Exhibit N). KPMG supplemented its previous list with five more

---

[4] According to documents produced by Deloitte, specialists are persons possessing special skill or knowledge regarding issues arising in an audit who assist Deloitte auditors in performing the audit. See Exhibit L "Use of Specialists".

[5] Deloitte represented to KPMG as recently as December 17, 2007, that, regarding its 2004 audit of Fannie Mae's restatement, there are "some 600 accounting employees" who have responsive documents, which means

important individuals, which brought the total number of custodians from whom KPMG sought discovery to 39 out of the 600-800 accounting employees whom Deloitte claims worked on the Restatement. Id. at 2.

Moreover, KPMG demanded again that Deloitte immediately begin collecting responsive documents from the files of the 39 Deloitte custodians with responsive documents whom KPMG had identified. Id. Despite counsel's representation that Deloitte would begin collecting responsive documents from the 13 "key players," Deloitte has not done so and refuses to do so unless discovery is limited to certain subject matters outlined in a November 6 letter KPMG sent to Deloitte. Counsel for KPMG informed Deloitte that the "subject matters covered by the Restatement and relevant to this litigation are broader than those associated with the accounting policies in my November 6 letter." Id. Accordingly, Deloitte's position that it will not begin document production unless it is limited to the subject matter in the November 6 letter is untenable to KPMG, especially considering (1) that Deloitte has had over four months to begin gathering responsive documents but has done nothing, and (2) KPMG's increasingly urgent need for the responsive documents to prepare for ongoing depositions.[6] See id.

On December 21, 2007, counsel for Deloitte sent KPMG's counsel a letter proposing a meeting on January 9, 2008, to "see if we can make progress in resolving any outstanding issues." Letter from Scott B. Schreiber, Counsel, Deloitte, to C. Simon Davidson, Counsel, KPMG (Dec. 21, 2007) (attached as Exhibit P). KPMG's counsel called opposing counsel and

---

"potentially 40 to 50 million documents." Ex. M at 1. Earlier in this litigation, Deloitte stated that 600-800 accounting employees worked on the Restatement. See Ex. A at 1.

[6] Indeed, no less than seven times since it served Deloitte with the subpoena, KPMG has reminded Deloitte, in writing, of KPMG's urgent need for responsive documents to prepare adequately for the ongoing depositions in this matter. See Ex. D at 3 (Sept. 24, 2007); Ex. F (Oct. 5, 2007); Ex. A at 3 (Oct. 10, 2007); Letter from Darren W. Stanhouse, Counsel, KPMG, to Kavita Kumar Puri, Counsel, Deloitte (Nov. 5, 2007) (attached as Exhibit O); Ex. I at 3 (Nov. 6, 2007); Ex. J at 3 (Nov. 30, 2007); Ex. N at 2 (Dec. 19, 2007). KPMG also made this urgency clear in its verbal communications with Deloitte.

agreed to this meeting, but requested that Deloitte begin gathering responsive documents from all 39[7] custodians KPMG had listed for Deloitte.  Letter from Charles Wm. McIntyre, Counsel, KPMG, to Scott B. Schreiber, Counsel, Deloitte (Dec. 26, 2007) (attached as Exhibit Q). Deloitte's counsel refused, stating that Deloitte would do so only for the 13 individuals on Deloitte's proposed list.  See id.  Accordingly, KPMG informed Deloitte that because "Deloitte continues to refuse even to begin gathering responsive documents from the very limited subset of custodians we have identified, we will be filing a motion to compel to enforce our subpoena." Id.

On December 27, 2007, counsel for Deloitte responded, imposing still *another* new limitation upon its production.  Letter from Scott B. Schreiber, Counsel, Deloitte to Charles Wm. McIntyre, Counsel, KPMG (Dec. 27, 2007) (attached as Exhibit R).  Whereas Deloitte had agreed just a week earlier to start producing documents from the files of the 13 individuals on Deloitte's proposed list of custodians, counsel for Deloitte now stated "until you frame a reasonable request as to appropriate subject areas, it would be counterproductive, as well as burdensome, for Deloitte to start producing documents from of *any* of the designated individuals." Id.  (Emphasis added.)  Counsel suggested that the issues should "await" a meeting proposed between KPMG and Deloitte in mid-January.  Id.  Whereas KPMG has agreed to participate in the meeting, Deloitte has not agreed to begin producing documents from the 39 individuals requested by KPMG.

## II.    Deloitte Has Refused to Produce "Proprietary" Workpapers, Notwithstanding this Court's Protective Order that Specifically Protects Those Types of Documents.

---

[7] A list of the 39 custodians proposed by KPMG can be found on pages 1-2 of Exhibit J and page 2 of Exhibit N.

KPMG also sought in its subpoena the draft and final workpapers relating to Deloitte's 2004 audit of Fannie Mae's Restatement. Deloitte apparently reached an agreement with counsel for the Ohio Public Employees Retirement System and State Teachers Retirement System of Ohio ("Lead Plaintiffs") whereby it would only produce workpapers that were the "Final Audit Workpapers relating to the 2004 audit of the Restatement." Ex. A at 1. In accordance with this agreement, Deloitte has produced some, but not all, of its Final Audit Workpapers to Lead Plaintiffs, which have subsequently been provided to KPMG. Deloitte has withheld, however, certain responsive workpapers on the basis that they are "proprietary." See id. at 2-3.

On November 5, 2007, counsel for KPMG notified Deloitte that certain workpapers were missing from its production and provided a list of the missing documents. Ex. O. KPMG later learned that Deloitte had withheld the missing documents from production on the purported grounds that they are proprietary without informing the parties that it had done so and without logging the purportedly proprietary documents. In a November 7, 2007 letter, Deloitte counsel stated:

> [M]any of the final electronic audit workpapers referenced in your November 5, 2007 [sic] were originally withheld because they may have contained trade secrets and/or proprietary information of Deloitte & Touche LLP ("Deloitte"). At the request of the parties, we have reviewed again these documents and we will be producing some portion of them as well as a log of documents Deloitte has withheld from the final audit workpapers on proprietary grounds within the next two weeks.
>
> Letter from Kavita Kumar Puri, Counsel, Deloitte, to Darren W. Stanhouse, Counsel, KPMG, (Nov. 7, 2007) (attached as Exhibit S).

On the same day, however, Deloitte produced billing records to KPMG and stated that it was "providing these documents with the understanding that they are governed by the Second Amended Stipulated Pretrial Protective Order." Letter from Scott B. Schreiber, Counsel, Deloitte, to Darren W. Stanhouse, Counsel, KPMG, at 2 (Nov. 7, 2007) (attached as Exhibit T). Notwithstanding Deloitte's knowledge that this Court had already issued a Protective Order for

proprietary documents that applied to both parties and nonparties, Deloitte still withheld those types of documents from its production.[8]

On November 20, 2007, Deloitte produced additional final workpapers, but withheld numerous final workpapers on the basis that "Deloitte retains the right not to provide copies of certain selected documents that contain trade secrets and/or proprietary business information of Deloitte." Letter from Scott B. Schreiber, Counsel, Deloitte, to Melanie S. Corwin, Counsel, Lead Plaintiffs, at 2 (Nov. 20, 2007) (attached as Exhibit V). Deloitte did not claim, nor has it done so subsequently, that any of the documents listed in the proprietary log are protected by the attorney-client privilege, work product doctrine, or any other privilege.[9]

Counsel for KPMG responded to Deloitte and stated, inter alia, that the mere fact that documents are "proprietary" does not exempt them from Deloitte's obligation to produce responsive documents to KPMG. Specifically, KPMG asserted,

> [N]othing in the Second Amended Protective Order (the "Order," attached), or any other order entered in this litigation, allows a party or non-party to withhold documents . . . on the basis that they contain trade secrets or proprietary information. Indeed, Paragraphs 1(c) and 10 of the Order specifically contemplate production of the types of documents has withheld and provide for their protection from disclosure.

---

[8] Incredibly, one of the documents that Deloitte initially withheld as proprietary, but then agreed to produce only after KPMG's letter regarding documents missing from Deloitte's production, was Deloitte's Audit Summary Memorandum, a document that is critical to understand Deloitte's workpapers. E-mail from Darren W. Stanhouse, Counsel, KPMG, to Kavita Kumar Puri, Counsel, (November 27, 2007) (attached as Exhibit U).

[9] Deloitte has cited paragraph 21 of the Second Amended Stipulated Pretrial Protective Order [Doc. # 494] (attached as Exhibit W) as authorizing its refusal to produce responsive workpapers that it has deemed "proprietary." See Ex. E at 2; Ex. H at 3. Deloitte's reliance on this paragraph is misplaced, as paragraph 21 merely allows a party or nonparty to "move the Court for relief separately, or to move the Court for modification of any of [the Order's] terms on a going forward basis." (See Ex. W ¶ 21, at 12.) Deloitte has neither moved this Court for separate relief from the Protective Order nor sought to modify its terms. In any event, Deloitte does not refer to paragraph 21 of the Protective Order in any of its correspondence to KPMG after October 17, 2007.

The Second Amended Protective Order was superseded on December 11, 2007, by the entry of the Court's Third Amended Stipulated Pretrial Protective Order ("Protective Order") [Doc. #556] (attached as Exhibit X). Paragraph 21 in the Second Amended Stipulated Pretrial Protective Order is reflected in paragraph 22 of the current Protective Order. (See Ex. X ¶ 22, at 14.) Most importantly, the Protective Order is virtually identical to the previous version and still applies to both parties and non-parties. (Id. ¶ 3, at 5.)

Letter from Charles Wm. McIntyre, Counsel, KPMG, to Scott B. Schreiber, Counsel, Deloitte, at 1 (Dec. 11, 2007) (attached as Exhibit Y). KPMG asked that Deloitte immediately produce the workpapers it had withheld as proprietary.

On December 18, 2007, having received no response from Deloitte's counsel, counsel for KPMG sent a letter notifying him that KPMG would move this Court to compel production of the workpapers unless he immediately contacted KPMG's counsel to meet and confer regarding the production of those documents. See Letter from Charles Wm. McIntyre, Counsel, KPMG, to Scott B. Schreiber, Counsel, Deloitte (Dec. 18, 2007) (attached as Exhibit Z). Counsel for Deloitte did contact KPMG's counsel, and represented that Deloitte is currently reviewing the final workpapers that Deloitte withheld as proprietary "to determine whether any or all of them can be produced *in redacted form*." Letter from Scott B. Schreiber, Counsel, Deloitte, to Charles Wm. McIntyre, Counsel, KPMG (Dec. 19, 2007) (attached as Exhibit AA) (Emphasis added). KPMG has not heard anything further from Deloitte on this issue.[10]

---

[10] KPMG has cited to and attached all significant correspondence between Deloitte and KPMG. For the sake of completeness, however, KPMG also attaches all remaining correspondence as Exhibit BB.

## ARGUMENT

Deloitte's refusal to comply with KPMG's subpoena is not authorized by law. No order of this Court allows Deloitte to withhold or redact responsive documents from production in response to KPMG's subpoena. Nor has Deloitte offered any other valid basis for refusing to produce responsive documents. Accordingly, this Court should compel Deloitte to produce documents in response to KPMG's subpoena.

## I.    Standard of Review

The consideration of a motion to compel is committed to the sound discretion of this Court. Linder v. Caleroportocarrero, 251 F.3d 178, 181 (D.C. Cir. 2001). In ruling on the Motion to Compel, the Court exercises its broad discretion to control discovery, and may therefore balance the respective interests of KPMG and Deloitte in rendering its decision. See In re: Sealed Case (Medical Records), 381 F.3d 1205, 1215-16 (D.C. Cir. 2004).

Rule 34(c) explicitly authorizes a party to compel a nonparty "to produce documents and tangible things or to permit an inspection" using the subpoena process outlined in Rule 45. That rule allows a party to seek discovery from a nonparty in accordance with the rules generally governing discovery; namely, "Parties may obtain discovery regarding *any nonprivileged matter that is relevant* to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added); see also Watts v. SEC, 482 F.3d 501, 507 (D.C. Cir. 2007). Rule 45(c) establishes certain safeguards for nonparties responding to subpoenas, including a provision permitting a court to modify a subpoena if it seeks "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i).

Additionally, Rule 26(c) allows a party or nonparty to seek a protective order to avoid an undue burden or disclosing privileged or commercially sensitive information. For example, a

15

Court may require that proprietary information including "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). When a party or person objects to a discovery request, "the proper remedy is to seek a protective order." <u>McDonald v. Smith</u>, 186 Fed. Appx. 930, 931-32 (11th Cir. 2006); <u>see also Phillips v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1211-12 (D.C. Cir. 2002).

**II.    Deloitte's Refusal to Produce Responsive Documents from the Limited Set of Employees Identified by KPMG Is Unreasonable and Unauthorized by Law.**

Of the more than 600 Deloitte employees who worked on the Restatement, Deloitte has refused to produce any responsive documents from all but 13. In fact, Deloitte has now refused to produce documents even from those 13, stating: "until you frame a reasonable request as to appropriate subject areas, it would be counterproductive, as well as burdensome, for Deloitte to start producing documents from of *any* of the designated individuals." (Ex. R) (Emphasis added). Of course, by limiting the scope of Deloitte's initial production to the files of just 39 custodians, KPMG has already 'framed a reasonable request.' Moreover, whereas KPMG has previously offered to narrow Deloitte's production from these 39 custodians even further to particular subject matters, for *months* Deloitte has refused to provide KPMG the information necessary for KPMG to do so. In any event, *all* responsive documents from the 39 custodians' files are relevant to this litigation, and KPMG cannot afford Deloitte to delay its production any longer.

Under Rule 26(b)(1), KPMG is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Undeniably, documents generated by Deloitte employees while auditing Fannie Mae's $6.3 billion Restatement are relevant to Plaintiffs' securities claims, Fannie Mae's malpractice claim, as well as KPMG's defense against both.

16

KPMG has attempted in good faith to reduce Deloitte's discovery burden by initially selecting, at Deloitte's request no less,[11] a small group of the many individuals who worked on the 2004 audit of Fannie Mae's Restatement from whom Deloitte should gather responsive documents. KPMG's proposed list includes just 39 custodians, or less than 7% of the more than 600 individuals who, according to Deloitte, possess responsive documents. In short, Deloitte has no valid basis for its refusal to produce any responsive documents outside of the 13 custodians on its proposed list.

Additionally, Deloitte's proposal is disingenuous at best, because its proposed list of custodians omits key personnel who were involved in the 2004 audit of Fannie Mae's Restatement, including Deloitte's lead partner who worked on Fannie Mae's FAS 91 accounting issues, which is one of the principal issues in this case. Quite simply, Deloitte's proposed list of custodians is incomplete and inadequate, and therefore fails to satisfy Deloitte's obligation under Rules 26 and 45 to produce relevant documents responsive to KPMG's subpoena.

Moreover, Deloitte's refusal to produce documents from the limited subset of custodians proposed by KPMG will result in real, substantial, and imminent prejudice to KPMG. Under the current Stipulated Case Management Order, parties must complete fact-discovery by July 31, 2008. Accordingly, depositions of relevant individuals are ongoing. Deloitte's refusal to produce will prevent KPMG from adequately preparing for many of these depositions. Deloitte has compounded the likelihood of prejudice to KPMG by refusing even to begin gathering documents from the custodians KPMG has identified. Deloitte's refusal is unreasonable and it

---

[11] Deloitte suggested to KPMG during a telephone call on November 19, 2007, that KPMG should "identify a limited set of specific employees whose files Deloitte should search for responsive documents, and Deloitte will produce all responsive documents from the hard copy and electronic files of such employees." Ex. J at 1; see also Ex. K at 1.

has offered no legal justification for doing so. Therefore, the Court should grant KPMG's Motion to Compel.

### III.    Deloitte's Refusal to Produce "Proprietary" Workpapers Is Unreasonable, Unauthorized by Law, and Flatly Ignores this Court's Protective Order.

Deloitte's refusal to produce proprietary workpapers is completely unreasonable under the circumstances of this action. The Court's Third Amended Stipulated Pretrial Protective Order, which applies to materials produced by either parties or nonparties, explicitly protects "Confidential" and "Highly Confidential" documents by limiting who may review them. (Ex. X ¶¶ 1(c), 1(d), 3, 10, 11, at 3-5, 8-9.) Thus, this Court has already implemented procedural safeguards against discovery requests for proprietary documents contemplated by Rules 26(c) and 45(c). Under these safeguards, KPMG has produced *all* of its workpapers from the relevant audits that KPMG conducted of Fannie Mae's financial statements.

Even from the limited information Deloitte has provided regarding the nature of the "proprietary" workpapers it has refused to produce, they are clearly relevant to this litigation. They include the following examples: (1) Consideration of Fraud Risk Factors; (2) Fraud Risk Assessment Checklist; and (3) Understand the Entity's Accounting Policies. Log of Proprietary Documents Withheld from Production of Final Electronic Workpapers (attached to Ex. V). It is impossible to imagine any basis, let alone a reasonable one, for withholding documents of this nature given the allegations in the pending complaints.

Deloitte has not asserted any claim of privilege for these documents. Lacking any other justification for withholding proprietary documents that are responsive to KPMG's subpoena, Deloitte should not be allowed to disregard the discovery rules and this Court's Protective Order by withholding potentially important documents.

18

Moreover, Deloitte's refusal to obey this Court's Protective Order and produce responsive proprietary documents is not without prejudice to KPMG. As noted above, the deadline to complete fact-discovery in this litigation is fast approaching. Deloitte's refusal to produce key workpapers which are clearly relevant to KPMG's defense, impairs KPMG's ability to adequately prepare for the ongoing depositions in this case.

As noted above and shown in Exhibit AA, counsel for Deloitte has represented that Deloitte is "reviewing these documents again to determine whether any or all of them can be produced in redacted form. Given the holiday season, we anticipate completing that review within the next couple of weeks." KPMG has heard nothing further. Moreover, there is no basis in the Protective Order or otherwise for Deloitte to produce these documents in redacted form.[12] KPMG therefore requests that the Court enter an Order requiring that, to the extent it has not done so, Deloitte produce all responsive documents it is withholding as proprietary in unredacted form.

## CONCLUSION

WHEREFORE, KPMG respectfully requests that the Court grant the Motion to Compel and require Deloitte to comply with KPMG's subpoena. In particular, Deloitte should produce (1) responsive documents from all 39 relevant custodians referenced above and (2) the unredacted documents it has withheld on the basis that they reflect "proprietary information, trade secrets and/or methodologies of Deloitte." KPMG further asks that the Court grant an oral hearing on the Motion to Compel.

---

[12] For a very small number of the documents that KPMG has produced, KPMG has redacted portions referring to other clients on the grounds that they are irrelevant to this litigation. Given that the documents Deloitte is withholding as proprietary are workpapers from *its audit of the Restatement*, it is unlikely that Deloitte could validly redact any portions of its workpapers on this basis.

19

Date:  January 3, 2008                              Respectfully submitted,


                                                   /s/Charles Wm. McIntyre
                                                   Charles Wm. McIntyre (DC Bar No. 489302)
                                                   cmcintyre@mcguirewoods.com
                                                   C. Simon Davidson (DC Bar No. 490422)
                                                   cdavidson@mcguirewoods.com
                                                   Darren W. Stanhouse (DC Bar No. 494623)
                                                   dstanhouse@mcguirewoods.com
                                                   McGUIREWOODS LLP
                                                   Washington Square
                                                   1050 Connecticut Avenue, N.W.
                                                   Suite 1200
                                                   Washington, DC  20036-5317
                                                   202.857.1700 (phone)
                                                   202.857.1737 (fax)
                                                   *Counsel for KPMG LLP*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of KPMG LLP's Motion to Compel Production of

Documents from Nonparty Deloitte & Touche LLP and the accompanying Memorandum in

Support to be transmitted on January 3, 2008, by First Class and electronic mail to:

Scott B. Schreiber
Scott.Schreiber@aporter.com
Arnold & Porter LLP
555 12th Street, NW
Washington, DC 20004
*Counsel for Nonparty Deloitte & Touche LLP*

I also caused a copy of the Motion and accompanying Memorandum to be transmitted on

January 3, 2008, by electronic mail to the following counsel:

James R. Cummins
Melanie S. Corwin
Jean Marie Geoppinger
Waite, Schneider, Bayless & Chesley Co.,
L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
*Counsel for Lead Plaintiffs*

Joshua S. Devore
Steven J. Toll
Matthew K. Handley
Daniel S. Sommers
Cohen, Milstein, Hausfeld & Toll P.L.L.C
West Tower, Suite 500
1100 New York Ave., N.W.
Washington, D.C. 20005
*Counsel for Plaintiffs Vincent Vinci; State
Teachers Retirement System of Ohio; Anne E.
Flynn; Robert L. Garber*

Alan J. Statman
Jeffery P. Harris
Statman, Harris & Eyrich LLC
3700 Carew Tower
441 Vine Street
Cincinnati, OH 45202
*Counsel for Lead Plaintiffs*

Frank J. Johnson
Brett M. Weaver
Law Office of Frank J. Johnson
402 W. Broadway 27th Floor
San Diego, CA 92101
*Counsel for Plaintiff Sassan Shahrokhinia*

Robert W. Liles
Liles Parker, PLLC
4400 MacArthur Blvd., N.W.
Suite 203
Washington, DC 20007
*Counsel for Plaintiff Sassan Shahrokhinia*

Stuart M. Grant
Megan D. McIntyre
Christine M. Mackintosh
Jeff A. Almeida
Grant & Eisenhofer, P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for the Franklin Templeton Plaintiffs*

Jeffrey W. Kilduff
Michael J. Walsh, Jr.
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Fannie Mae, Thomas P. Gerrity, Taylor C. Segue, III, William R. Harvey, Joe Pickett, Kenneth M. Duberstein, Manuel Justiz, H. Patrick Swygert, and Leslie Rahl*

Steven M. Salky
Eric R. Delinsky
Ellen D. Marcus
Caroline E. Reid
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-2638
*Counsel for Defendant Timothy J. Howard*

Kevin M. Downey
Alex G. Romain
Joseph M. Terry, Jr.
John E. Clabby
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5091
*Counsel for Defendant Franklin D. Raines*

David S. Krakoff
Christopher F. Regan
Adam B. Miller
Heather H. Martin
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
*Counsel for Defendant Leanne G. Spencer*

James D. Wareham
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W., Suite 12
Washington, D.C. 20005
*Counsel for Defendant Daniel H. Mudd*

David I. Ackerman
James Hamilton
Bingham McCutchen, LLP
2020 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Joe Pickett*

Cristen Sikes Rose
Edward S. Scheideman III
John J. Clarke, Jr.
DLA Piper US LLP
1200 19th Street, N.W.
Washington, D.C. 20036
*Counsel for Defendants Stephen B. Ashley,*
*Donald B. Marron, and Ann Korologos*

William H. Jeffress
Julia E. Guttman
Nicholas A. Brady
Baker Botts LLP
The Warner; 1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
*Counsel for Defendant Jamie S. Gorelick*

John H. Doyle, III
Rhonda D. Orin
Anderson Kill & Olick LLP
2100 M Street, N.W. Suite 650
Washington, D.C. 20037
*Counsel for Defendant Leslie Rahl*

Ian H. Gershengorn
Jerome L. Epstein
Jenner & Block
601 13th Street, NW
Suite 1200S
Washington, DC 20005

Barbara Van Gelder
Morgan, Lewis & Bockius LLP
111 Pennsylvania Ave., NW
Washington, DC 20004
*Counsel for Defendants Anne M. Mulcahy and*
*Frederic v. Malek*

William K. Dodds
Neil A. Steiner
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
*Counsel for Defendant Thomas P. Gerrity*

Seth Aronson
O'Melveny & Myers, LLP
400 South Hope Street
15th Floor
Los Angeles, Ca. 90071
*Counsel for Defendant Fannie Mae, Thomas P.*
*Gerrity, Taylor C. Segue, III, William R.*
*Harvey, Joe Pickett, Kenneth M. Duberstein,*
*Manuel Justiz, H. Patrick Swygert, and Leslie*
*Rahl*

Shannon Ratliff
Ratliff Law Firm
600 Congress Avenue
Suite 3100
Austin, TX 78701
*Counsel for Manuel Justiz*

  /s/ Darren W. Stanhouse
Darren W. Stanhouse

3