JENNER&BLOCK

September 26, 2007

VIA E-MAIL AND FIRST-CLASS MAIL

Jenner & Block LLP      Chicago
601 Thirteenth Street, NW      Dallas
Suite 1200 South      New York
Washington, DC 20005      Washington, DC
Tel 202-639-6000
www.jenner.com

Jerome L. Epstein
Tel 202 639-6062
Fax 202 639-6066
jepstein@jenner.com

Andrew S. Tulumello
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

Dear Drew:

I am writing to confirm our discussions on September 7, 2007 and September 25, 2007, concerning KPMG's Responses and Objections to Fannie Mae's First Request for Production of Documents. Please let me know as soon as possible if you believe that the summary below does not accurately reflect our discussions. This letter is intended only to recount our discussions, and to ask a few follow-up questions. Our recitation of KPMG's position is not intended to suggest agreement with KPMG's objections, as there are a number of KPMG responses and objections with which we strongly disagree.

KPMG's General Objections (summarized by Objection Number)

2, 4. We stated that KPMG's privilege objection is unduly broad, such as KPMG's assertion of privilege based on confidentiality agreements, accounting rules and regulations, and "other protections." You stated that KPMG has not withheld documents on the grounds of privilege for any reason other that attorney-client privilege, attorney work product, and an asserted statutory privilege involving PCAOB investigations. (For ease of reference, and without agreeing to KPMG's claim, we will refer to the latter as KPMG's asserted "PCAOB Privilege").

In addition, you stated that KPMG has not asserted a "PCAOB Privilege" for any documents it has shared with the Securities and Exchange Commission.

You also stated that KPMG will produce a privilege log of any documents it has withheld on the basis of a privilege claim, although you stated you are still considering what methodology to use for documents withheld on the basis of a "PCAOB Privilege."

Finally, you stated that KPMG has withheld some of its other clients' names from documents through redactions that have been indicated on those documents. We noted that the protective order entered by the Court includes a "highly confidential" designation for such information, which was added at KPMG's request. We also stated that we do not need the names of KPMG's clients with respect to many of the requests, and that we can address this issue as it arises in the context of specific contexts.

Andrew S. Tulumello
September 26, 2007
Page 2

3. We raised a concern with respect to KPMG's blanket objection that the requests are overly broad to the extent they seek information not reasonably calculated to lead to the discovery of admissible evidence. You confirmed that KPMG has not withheld documents on this basis unless specified in response to an individual document request. Specifically, notwithstanding that each KPMG Response states that it is subject to KPMG's General Objections, you stated that KPMG has not withheld document on that basis unless it so stated with specificity in response to an individual request.

5. You confirmed that KPMG has not withheld otherwise responsive documents on the ground that they constitute KPMG trade secrets.

6. We explained that KPMG General Objection No. 6, for documents already in Fannie Mae's possession, is improper because the fact of certain documents being in KPMG's possession is relevant to the malpractice action. You stated that KPMG has not withheld any documents on this basis.

7. We asked that KPMG clarify which sources of electronically stored information ("ESI") it deemed to be not reasonably accessible. You stated that the extent of ESI searches, and KPMG's search methodology more generally in response to the SEC requests, is fully explained in correspondence between the SEC and KPMG included in KPMG's production on the Xerox system. You also stated that KPMG has conducted additional searches in response to requests by the lead plaintiffs in the securities action, including searching emails and hard drives of the Fannie Mae engagement team members at the manager level and above, and KPMG's Department of Professional Practice ("DPP"). KPMG has agreed to provide us the methodology used for those additional searches, including identification of custodians searched and search terms used for electronic documents. You stated that you expect to have that information to us this week. You also stated that additional searches conducted in response to the plaintiffs' requests were limited to the period *after* December 21, 2004.

More generally, you agreed to provide us a copy of all correspondence between KPMG (including counsel) and any other parties in the consolidated proceedings, and to do so going forward as well. You sent us a package of materials on September 19, 2007 and September 25, 2007, and agreed to confirm that those materials reflect all correspondence with other parties.

KPMG's Objections to Instructions

1. You confirmed that Objection No. 1 was not intended to constitute an objection to identifying and producing attachments to emails. You also confirmed that KPMG has not withheld from its searches and production attachments to emails.

2. You confirmed that Objection No. 2 was not intended to constitute an objection to producing a privilege log or KPMG's continuing duty to supplement its responses.

Andrew S. Tulumello
September 26, 2007
Page 3

3.  We stated that Fannie Mae disputes KPMG's general objection to the time period covered by Fannie Mae's requests.  You confirmed that KPMG has not objected in all instances to producing documents created, dated, prepared, generated, sent, received or otherwise used after December 21, 2004, and that any such objection can be discussed in the context of the individual requests.

The "Some or All" Issue

Before turning to the individual requests, we discussed that Fannie Mae objects to KPMG's vague statement, in a number of KPMG's responses, that responsive documents have been produced.  We objected to the ambiguity as to whether KPMG was representing only that it has previously produced *some* documents, or was representing that, after a reasonable search, KPMG has already produced *all* responsive documents.  You clarified that each time KPMG had represented that responsive documents had been produced, it means that KPMG is representing that, following a reasonable search, it has produced *all* responsive documents.  You defined a "reasonable" search as consisting of 1) the scope of KPMG's search in response to the SEC's requests, as explained in KPMG's correspondence with the SEC produced on the Xerox system; and 2) the search parameters/methodology KPMG used in response to the plaintiffs' requests, which you expect to provide us this week.  Please let us know if we have misunderstood your response, as it is obviously critical to understand whether KPMG is representing, in response to various individual requests, that a complete production has already been made.

KPMG's Objections to Individual Requests

1.  We stated that we do not believe KPMG has produced all responsive documents requested in No. 1(L), such as reviews of KPMG's audits.   Reviews of KPMG's audit services to Fannie Mae are discussed in Request No. 2., below.  You also stated that KPMG has withdrawn its objection to producing documents between December 21, 2004 and the present for this request and for No. 2, below (for example, KPMG has agreed to produce nonprivileged reviews conducted after December 21, 2004, to the extent they exist, that relate to the services KPMG provided to Fannie Mae prior to Dec. 21, 2004).

For request 1(k), you agreed to produce documents concerning the individuals Fannie Mae listed in Request No. 3, as well as documents concerning other members of the KPMG team we provided during our first call.  The individuals for whom you agreed to produce responsive documents are:

ARGIRES
BOYLE
BRITT
CAPRIO
CH'ANG
CHILDERS
FLORKOWSKI
FOLEY

Andrew S. Tulumello
September 26, 2007
Page 4

FORSTER
GALLOTTA
GEE
NELSON
NIKOLOV
PEISCHEL
RUSSELL
SEROCK
SMITH, DAN
SMITH ERIC
TASCHER
TEJERINA
THEOBALD
TRAN
VERICK-STONE
WHEELER

In addition, we requested that you produce responsive documents for: Bocxe, Lilian; Frei, David; Garguilo, Patrick; Guinan, John; Muckinhirn, Lisa; Pruszkowski, Thomas; Ranzilla, Samuel; and Sullivan, Tara. You agreed to consider these names as well. Please let us know by September 28 if KPMG objects to producing documents relating to these individuals.

You also agreed that Fannie Mae reserves the right to request performance-related documents for other individuals at a later time.

You further confirmed that your searches and production in response to request 1(k) (and Request Nos. 2 & 3) will not be limited to documents formally labeled "performance reviews" or otherwise formally in files called "personnel files," but include more generally all documents concerning the performance of the various individuals, or the performance of the audit team for Fannie Mae as a whole.

For request 1(n), you stated that KPMG will produce responsive documents not already produced. KPMG agreed to check whether responsive documents are located in files other than the engagement team files.

2. This request covers all reviews of KPMG's audit services provided to Fannie Mae, such as peer reviews, QA reviews, and other internal or external reviews. We do not believe that KPMG has produced any such documents to date and asked if you could identify the applicable document ranges if any such documents have been produced. Absent a specific statement to the contrary, we will assume no such documents have been produced to date. You stated that KPMG is still checking whether it has any responsive documents for this request, and will let us know. We further understand that in checking for responsive documents for this request, KPMG has withdrawn its objection to searching for documents created between December 21, 2004 and the present.

Andrew S. Tulumello
September 26, 2007
Page 5

3.  See discussion of 1(k) above.  In addition, you agreed to confirm that the scope of your search
on this request dates back to 1998.

4.  You stated that with respect to audit services for Fannie Mae, all responsive documents
concerning KPMG's compliance with GAAS have been produced (even if they are not in
KPMG's workpapers) – except for the performance-related documents KPMG will be producing.
You also stated that, with respect to noncompliance with GAAS by members of the Fannie Mae
engagement team (even if for services to other clients), the SEC asked the same question, and
KPMG determined there are no responsive documents, except to the extent the
performance/personnel files, which KPMG will be producing, contain such information.

You further stated that KPMG will not agree to search for documents relating to other KPMG
clients.

5.  You stated that KPMG does not object to producing communications between KPMG and the
SEC or FASB, but objects to the request for "all documents" relating to such communications.
We stated that as an initial matter, we would consider reviewing all correspondence between
KPMG and the SEC or FASB concerning the accounting standards at issue in the Fannie Mae
litigation – without prejudice to our ability to expand the search for other related documents.
You agreed to consider this issue and provide us your response.  In light of the pressing need to
complete document discovery, and the possible need for follow-up requests relating to this
request, please provide your position on this issue no later than next week.

6 & 7.  You confirmed that, following a reasonable search, all responsive, nonprivileged
documents have been produced.  Your written response, however, refers only to KPMG's prior
production of "audit and risk manuals and certain Professional Practice Letters."  Fannie Mae's
request covers all policies, procedures, or guidelines governing KPMG's performance of audits
during the relevant time period.  Although we are willing at this time to defer a request for all
documents "concerning" such policies, procedures or guidelines, it is not clear whether KPMG's
prior search included all of the policies, procedures and guidelines, which we believe must be
produced.  Please let us know your position on this by next week.

8.  You stated that responsive documents in the Fannie Mae engagement team files have been
produced.  You stated that all centralized training materials would be within DPP or KPMG's
National Director of Training.  We asked you also to produce all responsive training and CLE
materials from DPP or the centralized training files.  You agreed to consider producing training
manuals and presentations from DPP and from KPMG's training department, and to look for an
index of other training and CLE materials for our review.   KPMG further stated that it would not
search for localized training conducted only by KPMG field offices.  Although this was not
discussed on our call, in further considering your proposed limitation, we request that KPMG
also search for responsive materials located in KPMG's Washington, D.C. and Northern Virginia
offices during the relevant time period.   Please let us know by next week KPMG's final position

Andrew S. Tulumello
September 26, 2007
Page 6

on this request. In addition, any indices must be produced expeditiously, as we need to have sufficient time to review the indices in order to specify additional documents to be produced.

9. You stated that your response on this Request is identical to your position in response to Request No. 4.

10. You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.

11. You agreed to produce the Gemstar and Xerox settlement agreements. You further stated that KPMG will not agree to produce documents relating to audit policies and procedures changed as a result of those matters. Finally, you stated that KPMG will consider responding to follow-up questions we may have after reviewing the settlement agreements.

12. You stated that KPMG will not produce documents relating to policies changed as a result of PCAOB inspections.

13. We explained that this request includes any consideration by KPMG whether to remain as Fannie Mae's auditor, and you confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.

14. You stated that responsive documents from the engagement team and from DPP had already been produced, but that KPMG will determine if responsive documents are located in other departments and produce them if they are (for example, groups responsible for financial planning and budgets).

15. You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced, with the exception of subparts (e), (f) and (g). For subpart (e), you stated that you are not aware of such a toolkit, and we agreed to check the reference. For subparts (f) and (g), you confirmed that you have already searched for and produced responsive documents from the Fannie Mae engagement team and from DPP.

16. You stated that KPMG recently sent an interrogatory response on this subject to the plaintiffs, which you sent to us yesterday to review.

17. You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced, including responsive documents from DPP.

18. You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced. Although we did not discuss KPMG's objection to the date range for this request, we did discuss that issue in connection with similar requests. We request that you confirm that the scope of your search in response to this request included the period between December 21, 2004 and the present.

Andrew S. Tulumello
September 26, 2007
Page 7

19.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.

21.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced, including from the files of individuals in KPMG's DPP.

22.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.

23.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.  To the extent there are any responsive documents after December 21, 2004 that relate to audit services provided by KPMG to Fannie Mae or otherwise relate to Fannie Mae's Restatement, we request that KPMG produce those as well.

24.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.

25.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced, including documents after December 21, 2004.

26.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced, except for documents relating to negotiations of agreements concerning non-audit consulting services.  You stated that KPMG has already produced the agreements concerning non-audit services.  For purposes of this request, and without conceding the characterization of the services as consulting or audit services, you also stated  that KPMG has included in its production all responsive, nonprivileged documents relating to the engagement of KPMG to advise Fannie Mae on compliance with FAS 133 prior to January 1, 2001.

27.  You stated that there are no responsive, nonprivileged documents responsive to this request.

28 & 29.  You stated that KPMG will not produce documents relating to other KPMG clients. We noted that documents relating to restatements by other KPMG clients or otherwise involving the same accounting issues covered in Fannie Mae's restatement are relevant to, among other things, KPMG's assertion that KPMG's conclusions in its work for Fannie Mae were affected by Fannie Mae allegedly misleading KPMG, and relevant to the issue whether KPMG's conclusions as part of services to other clients differed from KPMG's conclusions for Fannie Mae.  This request is also relevant to any assertion by KPMG that Fannie Mae should not have restated its financials in whole or in part, and relevant to any assertion by KPMG that its conclusions and communications to Fannie Mae concerning compliance with GAAP were accurate.  In short, we submit that KPMG's advice and services to other clients on the *same* accounting issues in Fannie Mae's restatement are plainly relevant to a number of issues and defenses in this action. Nevertheless, you stated that KPMG stands on its objection and will not produce any documents relating to other KPMG clients.

Andrew S. Tulumello
September 26, 2007
Page 8

30.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.

31.  You stated that KPMG will produce billing records, and that responsive documents relating to KPMG's access to Fannie Mae records have already been produced.

32 & 33.  You confirmed that all responsive, nonprivileged documents have been produced, including that *all* communications between the KPMG and the SEC have been produced – with the sole exception of nonsubstantive emails between Gibson Dunn and the SEC concerning the time of certain meetings.  As noted above, you also stated that KPMG has not asserted a "PCAOB Privilege" for documents it has shared with the SEC.  You stated that KPMG will produce a privilege log of any documents it has withheld on the basis of a privilege claim, although you stated you needed to determine the methodology KPMG will use in producing a log for documents withheld on the basis of a "PCAOB Privilege."  You also confirmed that KPMG has withdrawn its objection to producing documents created between December 21, 2004 and the present in response to these requests.  (See also discussion of Request No. 57, below.)

34.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.  You also stated that because a number of DPP memoranda in the Xerox production are illegible due to the copying of shaded originals, KPMG will reproduce those documents so that they are legible.  You stated that these documents will be produced within approximately two weeks.  We also noted that many of the documents listed in DPP "Inquiries" indices had not been produced.  You requested that we send you an example of such an index, which we have done.  We have also attached hereto a list of more than 400 DPP inquiries listed on the indices which were not produced, largely relating to derivative and hedge accounting.  If the inquiries did not result in written memoranda, please let us know as soon as possible.  In addition, it does not appear that the DPP "Inquiries" indices KPMG previously produced cover all of the accounting issues in the litigation.  Please let us know by next week if KPMG will agree to produce those indices as well.  It is important that a full set of indices be produced as soon as possible in order to allow us to identify specific memoranda cited in those indices.

35.  You confirmed that, following a reasonable search, all responsive, nonprivileged documents have been produced.

36.  We believe you agreed to produce responsive documents located in KPMG central files, such as DPP or the "training" department, as opposed to ad hoc training documents that may have been generated by various KPMG field offices.  We would appreciate your clarifying your position on this request.  As noted above, we also ask that you produce responsive documents from KPMG's Washington, D.C. and Northern Virginia offices.

38 & 39.  You agreed to produce responsive, nonprivileged documents, including documents dated between December 21, 2004 and the present.

Andrew S. Tulumello
September 26, 2007
Page 9

40-41, 43-55. You stated that KPMG is withdrawing its claim of injury to reputation and good will, and thus that these requests are no longer relevant. We explained that we are willing to defer these requests, without prejudice, depending on the precise scope of KPMG's theory of recovery for any remaining damages claims. Before we will consider withdrawing the requests, we will require a letter (followed by an amended pleading) specifying precisely the basis of KPMG's remaining damages claim(s). If we agree that these document requests are no longer relevant to KPMG's damages claim, we will agree to defer them, without prejudice to reinstitute the requests if any of them are relevant to other issues in the case. Please let us know this week when you intend to send us the letter referred to above.

42. We stated that we believe KPMG has already assembled documents responsive to this request in response to other litigation against it, and asked that you consider producing what you have already assembled for similar discovery requests in other litigation.

56. We explained that this request is directly relevant to KPMG's claim that it should have charged significantly higher audit fees to Fannie Mae. You agreed to reconsider your objection to this request.

57. You reiterated that KPMG has already produced in the civil litigation all documents that it produced to the SEC, with the exception of 212 documents unrelated to the Fannie Mae issues that KPMG inadvertently produced to the SEC. You stated that KPMG's privilege log will include a description of those 212 documents. In connection with this request, I asked if KPMG or any of its present or former auditors had received a Wells Notice from the SEC. You declined to answer that question, but stated that all communications between KPMG and the SEC (other than the aforementioned 212 documents and emails from Gibson Dunn confirming meeting times) have already been produced on the Xerox system. Please note that we intend to serve subpoenas on Messrs. Argires, Britt, Serock and Russell, and Ms. Theobald, for communications with the SEC, including any Wells Notices. If any of these individuals is represented by counsel who will accept service of the subpoenas, please let us know immediately.

58. You confirmed that KPMG already searched its ethics hotline for documents relating to services provided to Fannie Mae, including hotline-related documents dated after December 21, 2004.

59. We explained that there is no legitimate basis for refusing to produce the CD(s) given to KPMG, prior to February 1, 2004, relating to the Barnes investigation. You stated that if KPMG received a CD it will produce it. You also stated that KPMG may identify the document range in the existing production (if applicable) of the documents on this CD. We will consider that alternative only if KPMG is unable to locate the CD and can state with specificity both the date range of the documents it reviewed in connection with the Barnes investigation and the date those documents were given to KPMG.

Andrew S. Tulumello
September 26, 2007
Page 10

60. You agreed to produce copies of all relevant insurance policies, consistent with the definition in Fannie Mae's request, and to provide to me documents relating to the exhaustion or erosion of limits of liability in the policy(ies).

Finally, you stated that KPMG hopes to complete its production in response to Fannie Mae's requests by November 15, 2007. We do not, of course, at this time have sufficient information from KPMG to evaluate whether KPMG has previously conducted, or will be conducting, an adequate search of proper scope in response to Fannie Mae's document requests, even leaving aside outstanding disputes over objections.

Please let me know if you have any questions concerning any of the matters addressed in this letter.

Sincerely,

Jerome L. Epstein

Attachments