## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Federal National Mortgage Association Securities Derivative and "ERISA" Litigation | MDL No. 1668 |
| IN RE FANNIE MAE SECURITIES LITIGATION | Consolidated Civil Action No. 1:04CV01639 (RJL) <br><br> Judge Richard J. Leon |
| FRANKLIN MANAGED TRUST *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*, <br> *Defendants.* | No. 1:06CV00139 (RJL) |
| FANNIE MAE, <br> *Plaintiff,* <br><br> v. <br><br> KPMG LLP, <br> *Defendant.* | No. 1:06CV02111 (RJL) |

## KPMG LLP'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM FANNIE MAE

COMES NOW Defendant KPMG LLP, by counsel, and moves this Court, pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 7(a), (c) of the U.S. District Court for the District of Columbia, for an order compelling Fannie Mae to comply with a request for production of documents, which KPMG served on Fannie Mae on May 1, 2007. KPMG specifically requests that Fannie Mae produce two sets of documents it previously produced to

OFHEO and/or other government agencies: (1) a set of 150,000 uidentified documents that Fannie Mae claims are privileged; and (2) all documents listed on a Miscellaneous Privilege Log. Additionally, KPMG requests that the Court compel Fannie Mae to produce any other documents that have been produced to any regulator or government agency.

Pursuant to Rule 7(m) of the Local Rules of the U.S. District Court for the District of Columbia, KPMG, by counsel, hereby certifies that it has attempted to meet and confer with Fannie Mae regarding the subject matter of this Motion

On January 31, 2008, Lead Plaintiffs filed a Motion to Compel Fannie Mae to produce the same documents that are the subject of the Motion. Fannie Mae's response is due February 14, 2008. Given that Fannie Mae's refusal to produce the documents continues to prejudice KPMG,, KPMG respectfully requests that the Court require Fannie Mae to respond to this Motion by the date on which Fannie Mae responds to Lead Plaintiffs' Motion to Compel, under the following expedited briefing schedule:

(1) Fannie Mae shall respond to this Motion to Compel by February 14, 2008;

(2) The hearing shall be set as soon as practicable thereafter; and

(3) If KPMG's Motion to Compel is granted, Fannie Mae shall produce all documents listed on any of its privilege logs that have previously been produced to OFHEO and/or other government agencies within 10 calendar days after entry of the Order.

In support of this Motion to Compel, KPMG also relies upon its concurrently filed Memorandum in Support of Motion to Compel Production of Documents from Fannie Mae.

Date:  February 6, 2008

Respectfully submitted,

/s/ Charles Wm. McIntyre
Charles Wm. McIntyre (DC Bar No. 489302)
cmcintyre@mcguirewoods.com
C. Simon Davidson (DC Bar No. 490422)
cdavidson@mcguirewoods.com
Darren W. Stanhouse (DC Bar No. 494623)
dstanhouse@mcguirewoods.com
McGUIREWOODS LLP
Washington Square
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036-5317
202.857.1700 (phone)
202.857.1737 (fax)
*Counsel for KPMG LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of KPMG LLP's Motion to Compel Production of

Documents from Fannie Mae and the accompanying Memorandum in Support to be transmitted

on February 6, 2008 by electronic mail to the following counsel:

James R. Cummins
Melanie S. Corwin
Jean Marie Geoppinger
Waite, Schneider, Bayless & Chesley Co.,
L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, OH 45202
*Counsel for Lead Plaintiffs*

Joshua S. Devore
Steven J. Toll
Matthew K. Handley
Daniel S. Sommers
Cohen, Milstein, Hausfeld & Toll P.L.L.C
West Tower, Suite 500
1100 New York Ave., N.W.
Washington, D.C. 20005
*Counsel for Plaintiffs Vincent Vinci; State
Teachers Retirement System of Ohio; Anne E.
Flynn; Robert L. Garber*

Alan J. Statman
Jeffery P. Harris
Statman, Harris & Eyrich LLC
3700 Carew Tower
441 Vine Street
Cincinnati, OH 45202
*Counsel for Lead Plaintiffs*

Frank J. Johnson
Brett M. Weaver
Law Office of Frank J. Johnson
402 W. Broadway 27th Floor
San Diego, CA 92101
*Counsel for Plaintiff Sassan Shahrokhinia*

Robert W. Liles
Liles Parker, PLLC
4400 MacArthur Blvd., N.W.
Suite 203
Washington, DC 20007
*Counsel for Plaintiff Sassan Shahrokhinia*

Stuart M. Grant
Megan D. McIntyre
Christine M. Mackintosh
Jeff A. Almeida
Grant & Eisenhofer, P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for the Franklin Templeton Plaintiffs*

Jeffrey W. Kilduff
Michael J. Walsh, Jr.
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Fannie Mae, Thomas P.*
*Gerrity, Taylor C. Segue, III, William R.*
*Harvey, Joe Pickett, Kenneth M. Duberstein,*
*Manuel Justiz, H. Patrick Swygert, and Leslie*
*Rahl*

Steven M. Salky
Eric R. Delinsky
Ellen D. Marcus
Caroline E. Reid
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036-2638
*Counsel for Defendant Timothy J. Howard*

Kevin M. Downey
Alex G. Romain
Joseph M. Terry, Jr.
John E. Clabby
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5091
*Counsel for Defendant Franklin D. Raines*

David S. Krakoff
Christopher F. Regan
Adam B. Miller
Heather H. Martin
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
*Counsel for Defendant Leanne G. Spencer*

James D. Wareham
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W., Suite 12
Washington, D.C. 20005
*Counsel for Defendant Daniel H. Mudd*

David I. Ackerman
James Hamilton
Bingham McCutchen, LLP
2020 K Street, N.W.
Washington, D.C. 20006
*Counsel for Defendant Joe Pickett*

Cristen Sikes Rose
Edward S. Scheideman III
John J. Clarke, Jr.
DLA Piper US LLP
1200 19th Street, N.W.
Washington, D.C. 20036
*Counsel for Defendants Stephen B. Ashley,*
*Donald B. Marron, and Ann Korologos*

William H. Jeffress
Julia E. Guttman
Nicholas A. Brady
Baker Botts LLP
The Warner; 1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
*Counsel for Defendant Jamie S. Gorelick*

John H. Doyle, III
Rhonda D. Orin
Anderson Kill & Olick LLP
2100 M Street, N.W. Suite 650
Washington, D.C. 20037
*Counsel for Defendant Leslie Rahl*

Ian H. Gershengorn
Jerome L. Epstein
Jenner & Block
601 13th Street, NW
Suite 1200S
Washington, DC 20005

2

Barbara Van Gelder
Morgan, Lewis & Bockius LLP
111 Pennsylvania Ave., NW
Washington, DC 20004
*Counsel for Defendants Anne M. Mulcahy and
Frederic v. Malek*

William K. Dodds
Neil A. Steiner
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
*Counsel for Defendant Thomas P. Gerrity*

Seth Aronson
O'Melveny & Myers, LLP
400 South Hope Street
15th Floor
Los Angeles, Ca. 90071
*Counsel for Defendant Fannie Mae, Thomas P.
Gerrity, Taylor C. Segue, III, William R.
Harvey, Joe Pickett, Kenneth M. Duberstein,
Manuel Justiz, H. Patrick Swygert, and Leslie
Rahl*

Shannon Ratliff
Ratliff Law Firm
600 Congress Avenue
Suite 3100
Austin, TX 78701
*Counsel for Manuel Justiz*

　　　/s/ Darren W. Stanhouse　　
　　Darren W. Stanhouse

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re Federal National Mortgage Association Securities Derivative and "ERISA" Litigation | MDL No. 1668 |
| IN RE FANNIE MAE SECURITIES LITIGATION | Consolidated Civil Action No. 1:04CV01639 (RJL) <br><br> Judge Richard J. Leon |
| FRANKLIN MANAGED TRUST *et al.*, <br>      *Plaintiffs*, <br><br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION *et al.*, <br>      *Defendants*. | No. 1:06CV00139 (RJL) |
| FANNIE MAE, <br>      *Plaintiff*, <br><br> v. <br><br> KPMG LLP, <br>      *Defendant*. | No. 1:06CV02111 (RJL) |

## KPMG LLP'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM FANNIE MAE

Defendant KPMG LLP ("KPMG") seeks to compel the production of two sets of documents relating to OFHEO's Special Examination of Fannie Mae that appear to be highly relevant to this litigation yet which Fannie Mae has withheld from production. The first set includes approximately 150,000 documents that Fannie Mae claims are privileged, but which

Fannie Mae has never identified on a privilege log or described in any way (the "Unidentified Documents"). The second set comprises over 600 documents on a Miscellaneous Privilege Log (the "Miscellaneous Documents").[1] No privilege can apply to these documents because Fannie Mae has already produced *all* of them to OFHEO and/or various government agencies in connection with OFHEO's Special Examination of Fannie Mae.[2] Yet Fannie Mae continues to put off their production, responding to all parties' efforts to resolve the matter by claiming, month after month, that it is "still considering" whether to produce these materials.

Because this litigation arises out of OFHEO's Special Examination, there could hardly be more significant documents than documents Fannie Mae produced to OFHEO during that examination. Indeed, Fannie Mae has acknowledged the relevance of these documents to the many Fannie Mae witnesses that KPMG has deposed and is continuing to depose. See Letter from Kimberly A. Newman, Counsel, Fannie Mae, to Counsel, KPMG (Feb. 1, 2008) (attached as Exhibit N).

---

[1] Lead Plaintiffs filed a similar motion to compel [Doc. #585] on January 31, 2008, seeking production of the same documents. KPMG hereby joins in the arguments raised in Lead Plaintiffs' parallel motion to compel.

[2] During the course of OFHEO's Special Examination of Fannie Mae, Fannie Mae produced numerous documents to OFHEO and other government agencies in accordance with production agreements drafted by the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss"), whom Fannie Mae engaged in accordance with its agreement with OFHEO that it would hire "independent counsel . . . , subject to OFHEO's approval," to assist with the Special Examination. OFHEO Agreement at 7 (Sept. 27, 2004) (attached as Exhibit P). KPMG is aware of production agreements with four regulators: (1) OFHEO; (2) the U.S. Attorney's Office for the District of Columbia ("U.S. Attorney's Office"); (3) the SEC; and (4) the Public Company Accounting Oversight Board ("PCAOB"). See Letter from Alex Young K. Oh, Counsel, Paul Weiss, to Kyra Armstrong, Associate Director, Division of Enforcement, PCAOB (Jan. 19, 2005) (attached as Exhibit T); Letter from Robert P. Parker, Counsel, Paul Weiss, to Alfred Pollard, General Counsel, OFHEO (Nov. 16, 2004) (attached as Exhibit S); Letter from Alex Young K. Oh, Counsel, Paul Weiss, to John Roth, Chief, Fraud and Public Corruption Section, U.S. Attorney's Office (Nov. 4, 2004) (attached as Exhibit R); Letter from Alex Young K. Oh, Counsel, Paul Weiss, to Paul R. Berger, Associate Director, SEC Division of Enforcement (Oct. 28, 2004) (attached as Exhibit Q).

Because only Fannie Mae has had access to these documents, it is impossible to know the extent to which Fannie Mae's refusal to produce them has already prejudiced KPMG. At least one deposition has already been postponed due to these delays. Unless the Court intervenes and compels Fannie Mae to produce documents that it will inevitably be required to produce, Fannie Mae's conduct will continue to prejudice the parties and result in further delay to the completion of discovery.

## FACTUAL BACKGROUND

This litigation stems from OFHEO's Special Examination of Fannie Mae, which alleged various accounting errors by Fannie Mae. Sometime in 2003 or 2004,[3] during the course of that Special Examination, Fannie Mae reviewed and processed the Unidentified and Miscellaneous Documents and produced them to OFHEO and/or other government agencies.[4]

Nine months ago, on May 1, 2007, KPMG served its first set of requests for production of documents on Fannie Mae (attached as Exhibit A). On June 7, 2007, Fannie Mae served its objections to KPMG's requests (attached as Exhibit B) and objected, inter alia, to the extent the requests sought "documents that are subject to the attorney-client privilege, work product privilege, examination privilege or any other applicable privilege." (See Ex. B at 2 ¶ 3). In

---

[3] Because Fannie Mae has refused to log the Unidentified Documents, KPMG cannot determine precisely when Fannie Mae produced the Unidentified and Miscellaneous Documents to regulators. However, given that OFHEO initiated its Special Examination in July 2003 and released its interim report in 2004, it appears that Fannie Mae produced the documents during either 2003 or 2004. Additionally, most of the Miscellaneous Documents are dated in 2004 or earlier. See Miscellaneous Privilege Log (attached as Exhibit O).

[4] Letter from Kimberly A. Newman, Counsel, Fannie Mae, to Counsel, KPMG at 1 (Jan. 31, 2008) (attached as Exhibit M) (noting the Unidentified Documents "were all marked privileged during the course of the special examination and provided to the regulators"); Letter from Kimberly A. Newman, Counsel, Fannie Mae, to Melanie S. Corwin, Counsel, Lead Plaintiffs at 1 (Jan. 30, 2008) (attached as Exhibit L); Letter from Kimberly A. Newman, Counsel, Fannie Mae, to Melanie S. Corwin, Counsel, Lead Plaintiffs at 1-3 (Oct. 19, 2007) (attached as Exhibit E).

addition, Fannie Mae objected to each request to the extent it sought information or documents

subject to OFHEO's assertion of the examination privilege pursuant to 12 C.F.R. § 1703.40 (See

Ex. B at 2 ¶ 4).[5]  Pursuant to its objections, Fannie Mae has withheld from production and

continues to assert privilege claims over: (1) approximately 150,000 Unidentified Documents

that were previously produced to OFHEO and/or other government agencies;[6] and (2) more than

600 Miscellaneous Documents that were previously produced to OFHEO and/or other

government agencies.[7]  Since that time, KPMG has sought to work with Fannie Mae to resolve

Fannie Mae's various privilege assertions.  Despite these efforts, Fannie Mae has refused to

produce these documents, or even to make a decision on whether it intends to produce them.

_____

[5] The Court ruled unambiguously, on November 8, 2007, that OFHEO has no such examiner's privilege, and "that even if OFHEO could have asserted an 'examination privilege' regarding the production of those documents sought by defendants, it waived that privilege as a result of its conduct relating to its Fannie Mae investigation." (Order filed Nov. 8, 2007 [Doc. #545] (attached as Exhibit U).)
     Although the Court has already ruled that no such privilege exists, Fannie Mae has suggested it may continue to assert that OFHEO's "examiner privilege" protects documents it has withheld.  Letter from Jerome L. Epstein, Counsel, Fannie Mae, to C. Simon Davidson, Counsel, KPMG at 2 (Nov. 29, 2007) ("At this time, it is not clear whether any documents in the current production will be withheld on the basis of an examiner privilege.  We do not agree that the Court has ruled that OFHEO's examiner privilege has been waived or otherwise does not apply for *any* type of document . . . .") (attached as Exhibit I).  Fannie Mae has not clarified its position on this issue since its November 29, 2007, letter.  And, of course, since it has not logged the Unidentified Documents, the parties have no way of knowing if Fannie Mae intends to assert an OFHEO examiner privilege.  KPMG therefore reserves the right to compel the production of any documents Fannie Mae later decides to withhold based on OFHEO's purported examiner privilege.

[6] Although it is impossible for KPMG to know how may pages the Unidentified Documents comprise, if they were to have the same average page length as the 27 million pages of documents Fannie Mae has produced, the 150,000 documents would comprise roughly 1.8 million pages.

[7] See Letter from Melanie S. Corwin, Counsel, Lead Plaintiffs, to Kimberly A. Newman, Counsel, Fannie Mae (Oct. 24, 2007) (attached as Exhibit F); Letter from Melanie S. Corwin, Counsel, Lead Plaintiffs, to Amy J. Longo, Counsel, Fannie Mae at 1 (Sept. 5, 2007) (attached as Exhibit D); Letter from Amy J. Longo, Counsel, Fannie Mae, to Melanie S. Corwin, Counsel, Lead Plaintiffs (Apr. 6, 2007) (attached as Exhibit C); Ex. E.

On November 21, 2007, KPMG wrote to Fannie Mae in an effort to "facilitate and accelerate the resolution of any potential disputes between KPMG and Fannie Mae regarding Fannie Mae's assertions of the protections of attorney-client privilege and the work product doctrine" and to "identify as rapidly as possible any issues that the parties will be unable to resolve without the Court's involvement." Letter from C. Simon Davidson, Counsel, KPMG, to Jerome L. Epstein, Counsel, Fannie Mae at 1 (Nov. 21, 2007) (attached as Exhibit G). KPMG specifically asked Fannie Mae to reconsider its position with regard to documents that Fannie Mae had previously produced to various government agencies, and asked Fannie Mae either to produce all such documents or to advise KPMG that it did not intend to produce them. Id. at 3.

On November 29, 2007, Fannie Mae responded to KPMG's requests and, despite the fact that depositions were ongoing, labeled KPMG's attempts to resolve Fannie Mae's privilege claims as "premature." Letter from Kimberly A. Newman, Counsel, Fannie Mae, to C. Simon Davidson, Counsel, KPMG at 2 (Nov. 29, 2007) (attached as Exhibit H). Fannie Mae stated that it would be "considering [KPMG's] position on privilege issues and expect to reach a final decision on privilege claims *in the near future*." Id. (emphasis added).

With no decision forthcoming, on January 10, 2008, Fannie Mae's failure to reach a final decision on whether to assert privilege over documents that had been produced to regulators forced the parties to reschedule the deposition of Ann Kappler, a Fannie Mae witness. Letter from Charles Wm. McIntyre, Counsel, KPMG, to Kimberly A. Newman, Counsel, Fannie Mae (Jan. 16, 2008) (attached as Exhibit J).

On January 16, 2008, KPMG once again urged Fannie Mae to reach a decision. KPMG noted that Fannie Mae has to date failed to produce or describe the Unidentified Documents, and though these documents "were produced to various regulators, which waived any applicable

5

privilege, . . . Fannie Mae has still not made a final decision as to whether it will produce them or not." Id. at 1. Fannie Mae did not respond to KPMG. On January 29, 2008, KPMG tried again to elicit a decision from Fannie Mae. Letter from Charles Wm. McIntyre, Counsel, KPMG, to Kimberly A. Newman, Counsel, Fannie Mae (Jan. 29, 2008) (attached as Exhibit K).

On January 30, 2008, Fannie Mae copied KPMG on a letter to Lead Plaintiffs stating that, with regard to the Unidentified Documents that Fannie Mae continues to withhold, it is *still deciding* "whether *it is willing* to release these documents in the civil litigation." Ex. L at 1 (emphasis added). On February 1, 2008, Fannie Mae wrote to KPMG and acknowledged that the Unidentified Documents are relevant to depositions that have taken place and are scheduled to take place. See Ex. N (noting that "they may touch upon some [deposition] witnesses").

Throughout the parties' attempts to obtain these documents from Fannie Mae, beginning in April 2007, Fannie Mae has repeatedly offered to produce the Unidentified Documents *only if* the parties withdraw any demand for the Miscellaneous Documents. See Ex. C at 1; Ex. D at 1; Ex. E at 3; Ex. H at 1. Fannie Mae's offers left KPMG and Lead Plaintiffs an unacceptable choice: either (1) forego any challenge to Fannie Mae's tenuous privilege assertions over the Miscellaneous Documents in order to have access to the Unidentified Documents for the *currently ongoing* depositions to which Fannie Mae has admitted the documents are relevant; *or* (2) proceed and conduct depositions without access to the Unidentified Documents or even knowing what they are.

As the parties have repeatedly rejected Fannie Mae's bargain, Fannie Mae has now changed its position regarding the Unidentified Documents. In a January 30, 2008, letter, Fannie Mae stated that, "the 'majority' . . . of these 150,000 documents will be released . . . sometime over the next few days." Ex. L at 1. However, the letter did not explain why it is that,

6

for the portion of the Unidentified Documents that it appears that Fannie Mae may produce, it has elected to do so only now:  (1) more than three years after it first reviewed, processed, and produced the documents to the government, (2) two years after Lead Plaintiffs requested the documents, (3) nine months after KPMG requested documents, (4) after more than 40 depositions have been taken , and (5) more than 45 days after the Court's deadline for production.

## ARGUMENT

Fannie Mae hs produced none of the Unidentified or Miscellaneous Documents.  As set forth more fully below, Fannie Mae's assertions of privilege are meritless.  Given the urgency of KPMG's need for these documents, and the unreasonableness of Fannie Mae's claims of privilege, Fannie Mae has left KPMG no choice but to request that the Court compel their production.

## I.    Standard of Review

The consideration of a motion to compel is committed to the sound discretion of this Court. Linder v. Caleroportocarrero, 251 F.3d 178, 181 (D.C. Cir. 2001).  In ruling on the Motion to Compel, the Court exercises its broad discretion to control discovery, and may therefore balance the respective interests of KPMG and Fannie Mae in rendering its decision. See In re: Sealed Case (Medical Records), 381 F.3d 1205, 1215-16 (D.C. Cir. 2004).

A party generally "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  The scope of discoverable material under the Federal Rules of Civil Procedure is quite broad; relevant information requested under Rule 26 "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  When a party claims that

otherwise discoverable material should be withheld on the basis of the attorney-client privilege or work product doctrine, "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

The party seeking discovery may challenge, however, a party's assertion of either of these two doctrines. "It is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability." In re: Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n, 439 F.3d 740, 750 (D.C. Cir. 2006); United States v. Legal Servs. for N.Y. City, 249 F.3d 1077, 1081 (D.C. Cir. 2001). At a minimum, Fannie Mae has "a threshold burden to show entitlement to a ruling on the existence of a privilege." Commodity Futures, 439 F.3d 740 at 750.

## II.    Fannie Mae Has Abused Its Privilege Assertions.

Fannie Mae's refusal to provide any information about the 150,000 Unidentified Documents, despite KPMG's and Lead Plaintiffs' repeated requests that it do so, is inexcusable. For several months, KPMG and Lead Plaintiffs have requested, without any success, that Fannie Mae produce sufficient information to assess Fannie Mae's privilege claims. See, e.g., Ex. F at 2; Ex. J at 1-2; Ex. K; Ex. L; Ex. M. Although Fannie Mae reviewed, processed, and produced the Unidentified Documents to OFHEO more than *three years* ago,[8] Fannie Mae has refused the parties' repeated requests.

Fannie Mae admits that this refusal has solely been a matter of Fannie Mae's own discretion. In a January 30, 2008, letter, Fannie Mae stated, "The issue for Fannie Mae has never

---

[8] Ex. K (noting that the Unidentified Documents "were all marked privileged during the course of the special examination"); see also Ex. M.

been whether these [150,000] documents were privileged. Instead, the issue for Fannie Mae is whether *it is willing to release* these documents in the civil litigation . . . ." See Ex. E at 1 (emphasis added). Continuing, Fannie Mae's counsel wrote, "[W]e never agreed to produce these documents by the December 15 deadline in the CMO #4. That Order does not contemplate the production of privileged documents, privilege logs or the resolution of outstanding discovery disputes by December 15." Id. In other words, Fannie Mae contends that, by vaguely asserting that the 150,000 Unidentified Documents are "privileged," it is excused from its obligation to produce the documents or provide the information necessary to assess Fannie Mae's basis for withholding them.

All the while, depositions have proceeded. Dozens of depositions have already been taken and many more are currently scheduled. All of the completed depositions occurred without any party having access to the Unidentified Documents *except for Fannie Mae*. Fannie Mae's refusal to provide even the most basic description of these documents has prevented the parties from considering the extent to which any of the Unidentified Documents might have been relevant to the depositions that have already been taken. And Fannie Mae's continued refusal to provide any information about the Unidentified Documents will only exacerbate the prejudice to the parties as upcoming depositions will need to be postponed.

Moreover, Fannie Mae has attempted to use the Unidentified Documents as the basis for an improper trade. Fannie Mae has offered to produce the Unidentified Documents in exchange for the parties' agreement not to pursue the Miscellaneous Documents. The D.C. Circuit does not allow a party to exploit the protections afforded by the attorney-client privilege and the work product doctrine in this manner because to do so would undermine the public policy considerations underlying those protections. A party may not seek to use privilege in a way that

9

"is not consistent with the purpose of the privilege." In re: Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982).

Here, Fannie Mae's use of questionable privilege claims as both a sword and a shield are manifestly unfair. Fannie Mae's bartering of privileged documents has nothing to do with the policies underlying either the attorney-client privilege or work product doctrine; it is merely an attempt to force the parties to abandon legitimate challenges to Fannie Mae's privilege assertions. Privilege claims, however, are "'intended only as an incidental means of defense and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.'" Sealed Case, 676 F.2d at 817 (citation omitted). In short, by *deciding* not to log the Unidentified Documents and by attempting to use the protections that it claims attach to them to gain an unfair advantage over the other parties in this litigation, Fannie Mae has abused any protections that might apply to those documents.

### III. Fannie Mae's Production of the Unidentified Documents to OFHEO and/or Other Government Agencies Waived Any Claim of Attorney-Client Privilege.

The attorney-client privilege "exists to protect confidential communications, to assure the client that any statements he makes in seeking legal advice will be kept strictly confidential between him and his attorney; in effect, to protect the attorney-client relationship." United States v. AT&T, 642 F.2d 1285, 1299 (D.C. Cir. 1980). However, federal courts, including the D.C. Circuit, construe the privilege narrowly because it imposes a distinct barrier to the truth-seeking process. See, e.g., The Permian Corp. v. Occidental Petroleum Corp., 665 F.2d 1214, 1221 (D.C. Cir. 1981).

In construing the privilege narrowly, the D.C. Circuit maintains that anything short of actual confidentiality waives the privilege: "We believe that the attorney-client privilege should be available *only* at the traditional price: a litigant who wishes to assert confidentiality must

maintain genuine confidentiality." Id. at 1222 (emphasis added). "Genuine confidentiality" means that any disclosure by either the client or its counsel outside of the confidential attorney-client relationship destroys the privilege. Sealed Case, 676 F.2d at 818 ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege.").

Here, the Unidentified Documents were "produced to regulators." Ex. L at 1; Ex. M at 1. Indisputably, Fannie Mae does not share an attorney-client relationship with its regulators. Fannie Mae's production of documents to OFHEO and/or other government agencies occurred in connection with various regulatory investigations of Fannie Mae, including OFHEO's Special Examination. "For the purposes of the attorney-client privilege, there is nothing special about another federal agency in the role of potential adversary as compared to private party litigants acting as adversaries." In re: Subpoena Duces Tecum (Fulbright & Jaworski), 738 F.2d 1367, 1370 (D.C. Cir. 1984). Given its prior production, the Court need not even consider whether Fannie Mae communicated with its counsel regarding these documents; the act of disclosing them to a third party outside of the attorney-client relationship extinguished any possible claim of privilege. See id. ("A client cannot waive that privilege in circumstances where disclosure might be beneficial while maintaining it in other circumstances where nondisclosure would be beneficial."); Permian, 665 F.2d at 1219 ("Any voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege.") (quoting AT&T, 642 F.2d at 1299). Fannie Mae has therefore waived any claim to attorney-client privilege over the Unidentified Documents.

## IV.    The Work Product Doctrine Does not Protect the Unidentified Documents.

A.     **The Work Product Doctrine Does not Apply to Any Document Fannie Mae Created Solely in Response to Requests from OFHEO and/or Other Government Agencies.**

As a threshold issue, to the extent any document Fannie Mae produced was: (1) prepared at the express request of OFHEO and/or a government agency or (2) created for the express purpose of being produced to OFHEO and/or a government agency, the document is not work product. The work product doctrine only protects "material 'obtained or prepared by an adversary's counsel' in the course of his legal duties, provided that the work was done 'with an eye toward litigation.'" Sealed Case, 676 F.2d at 809 (quoting Hickman v. Taylor, 329 U.S. 495, 511 (1947)). It is limited to material "prepared in anticipation of litigation or for trial" because its underlying policy is simply to protect the adversarial process by "ensuring that lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials." In re: Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998); see also Fed. R. Civ. P. 26(b)(3). Conspicuously absent from this definition of work product are documents created in response to a routine request from a government agency. "[M]aterials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3)." National Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992).

Here, because Fannie Mae has not logged the Unidentified Documents, it is impossible to discern whether any or all of those documents were prepared in response to routine requests from OFHEO and/or other government agencies. However, Fannie Mae's agreements with OFHEO required Fannie Mae to prepare documents solely for the purpose of providing them to OFHEO. See Ex. P at 7; Ex. S at 1-2. Because such documents were not prepared for the

purpose of litigation but, rather, for the purpose of providing them to OFHEO, they are plainly

not work product. Presumably, the Unidentified Documents include such documents. Therefore,

Fannie Mae's blanket assertion of the work product protection over *all* of these documents is

likely unfounded.

**B.    Fannie Mae's Production of the Unidentified Documents to OFHEO and/or Other Government Agencies Waives Any Claim of Work Product.**

The work product doctrine, as contrasted with the attorney-client privilege, is "designed

to balance the needs of the adversary system to promote an attorney's preparation in representing

a client against society's general interest in revealing all true and material facts relevant to the

resolution of a dispute." Fulbright, 738 F.2d at 1371. Like the attorney-client privilege,

however, the work product doctrine can be waived, as Fannie Mae has done here. See Sealed

Case, 676 F.2d at 817 ("We have held that a party waives its work product protection in civil

litigation if it discloses the privileged material to anyone without 'common interests in

developing legal theories and analyses of documents . . . .'") (quoting AT&T, 642 F.2d at 1300).

In Fulbright, the D.C. Circuit stated that determining whether a party has waived the

protection of the work product doctrine depends on whether the underlying rationale of the

doctrine is furthered given the circumstances of a particular case. This requires consideration of

three principal factors:

(1)    whether the party claiming the privilege seeks to use it in a way inconsistent with the purpose of the privilege;

(2)    whether the party claiming the privilege had a reasonable expectation that the previously-disclosed documents would be kept confidential; and

(3)    whether waiver of the work product doctrine's protection would, given the circumstances, "trench on any policy elements now inherent in this privilege."

Fulbright, 738 F.2d at 1372. In considering these factors, the D.C. Circuit noted that when a regulatory agency investigates a company within its purview, the relationship between the two is clearly adversarial and not a "partnership between allies." See id.

As to the first factor, Fannie Mae seeks to use the work product doctrine in a manner inconsistent with its purpose. In Fulbright, a corporation had voluntarily provided various documents to the SEC in connection with a potential investigation by the SEC. In a subsequent private securities fraud action, the corporation asserted work product protection over documents from the law firm that had assisted the corporation with its earlier production to the SEC.

The D.C. Circuit considered these circumstances and held:

> We are convinced that the health of the adversary system—which spawned the need for protection of an attorney's work product from discovery by an opponent—would not be well served by allowing appellants the advantages of *selective disclosure* to particular adversaries, a differential disclosure often spurred by considerations of self-interest.

Id. (emphasis added). As was the case in Fulbright, Fannie Mae has engaged in selective disclosure of purported work product to regulators while withholding *the same documents* from its litigation adversaries.

Moreover, this is not a case where Fannie Mae's interests were aligned with any regulator. As Fannie Mae's counsel has conceded, OFHEO's Special Examination and the various investigations related thereto, during which Fannie Mae produced the Unidentified Documents to OFHEO and other regulators, were adversarial proceedings. See Ex. E at 1.

Fannie Mae is seeking to accomplish exactly what the D.C. Circuit forbade in Fulbright:

> Appellants now want work product protection for those same disclosures against different adversaries in suits centering on the very same matters disclosed to the SEC. It would be unreasonable to suppose that litigation with these other adversaries was not anticipated at the time of disclosure to the SEC. It would also be inconsistent and unfair to allow appellants to select according to their own self-interest to which adversaries they will allow access to the materials.

738 F.2d at 1372. Rather than furthering the adversarial process, Fannie Mae's strategic assertion of the work product doctrine subverts the process and weakens the health of the adversary system.

The second <u>Fulbright</u> factor requires consideration of whether Fannie Mae had a reasonable expectation that the Unidentified Documents it produced to OFHEO would be kept confidential. Again, because Fannie Mae is an adversary of OFHEO and any other regulator, there is no "'existence of common interests between transferor and transferee,' . . . which might establish a basis for expectations of confidentiality." <u>Id.</u> (quoting <u>AT&T</u>, 642 F.2d at 1299). Fannie Mae must establish that, despite the absence of common interests between itself and the regulators, Fannie Mae still had a reasonable basis of confidentiality in the Unidentified Documents. It cannot.

Fannie Mae apparently claims it had a reasonable expectation of confidentiality because of non-waiver agreements it executed with OFHEO and/or other government agencies. KPMG is uncertain, based on Fannie Mae's vague references to non-waiver agreements, which agreement(s) Fannie Mae intends to rely upon and to which regulator(s) it produced documents. <u>See</u> Ex. E at 3; Ex. L at 1; Ex. M at 1. Presumably, the non-waiver agreements Fannie Mae refers to are the production agreements sent to (1) OFHEO; (2) the U.S. Attorney's Office; and (3) the SEC; by Paul Weiss, whom Fannie Mae engaged in accordance with its agreement with OFHEO that it would hire "independent counsel . . . , subject to OFHEO's approval," to assist with the Special Examination. Ex. P at 7; Ex. Q; Ex. R; Ex. S. However, KPMG cannot even presume which agreement(s) or regulator(s) are at issue because Fannie Mae never logged the Unidentified Documents despite having reviewed, processed, and produced these Documents to OFHEO and/or other government agencies more than *three years* ago.

15

In any event, Fannie Mae's reliance on the non-waiver agreements is misplaced. The mere existence of a non-waiver agreement does not automatically establish a reasonable expectation of confidentiality. Indeed, numerous federal courts have held that, notwithstanding a non-waiver agreement, voluntary disclosure still waives the protections of the work product doctrine. See In re: Vitamin Antitrust Litig., No. 99-197, 2002 U.S. Dist. LEXIS 26490, at *118 n.6 (D.D.C. Jan. 23, 2002); Chubb Integrated Sys., Ltd. v. Nat'l Bank of Wash., 103 F.R.D. 52, 67 (D.D.C. 1984) ("Confidentiality is the dispositive factor in deciding whether a communication is privileged. . . . The agreement between Chubb and NCR does not alter the objective fact that the confidentiality has been breached voluntarily. The agreement is for the mutual convenience of the parties, saving the time and cost of pre-inspection screening. That agreement is merely a contract between two parties to refrain from raising the issue of waiver or from otherwise utilizing the information disclosed. Plaintiff has no genuine claim of confidentiality to the documents it produced . . . ."); see also Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1427 (3d Cir. 1991) (attorney-client and work product protection waived notwithstanding agreement with Department of Justice preserving defendant's right to assert privileges); Griffith v. Davis, 161 F.R.D. 687, 699-700 (C.D. Cal. 1995) ("[W]aiver occurs despite any agreement by the parties that the information disclosed will remain confidential as against the rest of the world."); In re: Columbia/HCA Healthcare Corp., 192 F.R.D. 575, 579 (M.D. Tenn. 2000) ("[The] intent to maintain a privilege is not sufficient. . . . Clients who wish to selectively disclose privileged documents and the entity to whom they wish to disclose the documents cannot negate a waiver simply by agreeing to do so.").

Regardless of the contents of the non-waiver agreements Fannie Mae intends to rely on, it can hardly claim an expectation of confidentiality given that: (1) it produced the Unidentified

Documents to no less than four regulators in connection with OFHEO's Special Examination; (2) at the time it produced the Unidentified Documents to OFHEO, Fannie Mae was well aware that OFHEO was engaged in a Special Examination of Fannie Mae, in addition to its routine examination; (3) OFHEO is required by statute, 12 U.S.C. §§ 4521(a), 4548(a), to submit its reports to Congress; and (4) OFHEO's report to Congress would depend in large part on the contents of these documents.

Moreover, OFHEO's conduct during the Special Examination demonstrates that Fannie Mae could not have had a reasonable expectation of confidentiality given that OFHEO: (1) submitted multiple reports relating to its Special Examination to Congress; (2) testified before Congress in detail regarding its investigation; and (3) held press conferences informing the general public with particularity about the results of its Special Examination. Accordingly, Fannie Mae has no reasonable expectation of confidentiality in the Unidentified Documents, all of which it produced to OFHEO and/or other government agencies.

While the first two Fulbright factors should remove any doubt as to whether Fannie Mae waived its protection under the work product doctrine, the third factor, public policy, also calls for waiver because acknowledging that Fannie Mae has waived its protections would not violate any public policy consideration inherent in the doctrine. Indeed, just such a finding furthers public policy considerations. As the D.C. Circuit has stated, "[T]he privilege does not protect against the manipulation of selecting a particular opponent for selective disclosure—most probably for the discloser's own benefit." Fulbright, 738 F.2d at 1375. The policy underlying the work product doctrine—maintenance of a healthy adversary system—is not undermined by a finding that a corporation waives the work product privilege if it produces documents without a reasonable expectation of confidentiality. See id. A contrary result, allowing Fannie Mae's

conduct, would instead promote the decline of the adversary system. Thus, Fannie Mae has

waived any claim of protection under the work product doctrine for the Unidentified Documents,

all of which it produced to OFHEO and/or government agencies.

## V.    Fannie Mae Has Waived Any Claim of Either Attorney-Client Privilege or Work Product over the Miscellaneous Documents.

The analysis applicable to Fannie Mae's waiver of the attorney-client and work product

privileges for the Unidentified Documents applies equally to the Miscellaneous Documents. As

is the case with the Unidentified Documents, Fannie Mae admitted that the Miscellaneous

Documents were "provided to a regulator." Ex. E at 3. Indeed, there is a strong likelihood that

the Miscellaneous Documents were produced to the same regulator(s) and under identical

circumstances as were the Unidentified Documents, considering that both sets of documents

were created in response to or in connection with OFHEO's Special Examination and Fannie

Mae's alleged accounting errors. See id. at 1-3. Fannie Mae has therefore waived the protection

of the attorney-client privilege and the work product doctrine for the Miscellaneous Documents

for all of the same reasons articulated above for the Unidentified Documents.

Additionally, Fannie Mae's own Miscellaneous Privilege Log contradicts its claim that

the Miscellaneous Documents are "core work product" entitled to special protection. For

example, the log of Miscellaneous Documents includes entries that are not even labeled as work

product. See Ex. O at 18, 22, 34. The Miscellaneous Privilege Log also includes documents

over which Fannie Mae has asserted work product, but, based on the document's description,

cannot be opinion or "core" work product. For example:

> **FM SRC M-OFHEO 00010119.0001-00010119.0002** – withheld as A/C and WP dated June 6, 2004 from Gregory Ramsey to Jonathan Boyles. The description for this document reads, "Email reflecting Attorney-Client communications with Scott Lesmes* in anticipation of litigation regarding OFHEO regulatory matters." Although Lesmes is an attorney, neither Ramsey nor Boyles are.

18

See id. at 6, 16, 36.  On the face of the Miscellaneous Privilege Log, Fannie Mae's assertion that *all* of the Miscellaneous Documents are "core work product" is plainly wrong.

Moreover, Fannie Mae's conduct demonstrates that the Miscellaneous Documents are highly relevant to this litigation.  Notwithstanding Fannie Mae's waiver of any protections that might have applied to the Miscellaneous Documents, Fannie Mae has sought to avoid producing those documents by offering to produce 150,000 *other* purportedly privileged documents.  Given the apparent significance of the Miscellaneous Documents, and the fact that depositions of Fannie Mae witnesses are ongoing, it is imperative that Fannie Mae produces the documents immediately.

**VI.    Fannie Mae's Disclosure of the Unidentified and Miscellaneous Documents to OFHEO and/or Other Government Agencies Waived Privilege not Only with Respect to Those Documents But Also to All Documents of the Same Subject Matter.**

Not only has Fannie Mae waived any protections that might have applied to the Unidentified and Miscellaneous Documents, but it has also waived its protections with respect to all documents of the same subject matter as the Unidentified and Miscellaneous Documents.  "When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to *all other communications relating to the same subject matter . . . .*"  Sealed Case, 676 F.2d at 818 (emphasis added).  Subject matter waiver applies to both attorney-client privilege and work product.  See id.

Here, by disclosing the Unidentified and Miscellaneous Documents to OFHEO and/or other government agencies, Fannie Mae waived its claims to attorney-client privilege and work product over those documents.  Fannie Mae also thereby waived its claims to attorney-client privilege and work product with respect to all documents of the same subject matter as the

Unidentified and Miscellaneous Documents. Because Fannie Mae has never logged the Unidentified Documents, it is impossible to know the subject matters of those documents. However, as to the Miscellaneous Documents, the attached log of the Miscellaneous Documents shows that those documents cover a wide range of subjects, including OFHEO's investigation and OFHEO "regulatory matters." See Ex. O. Ultimately, Fannie Mae should be required to produce not only the Unidentified and Miscellaneous Documents, but also all documents of the same subject matter. Otherwise, Fannie Mae would be allowed to gain the very advantage of partial disclosure that the law prohibits.[9]

## CONCLUSION

WHEREFORE, KPMG respectfully requests that the Court grant the Motion to Compel and require Fannie Mae to comply with KPMG's document requests. In particular, Fannie Mae should produce all of the Unidentified and Miscellaneous Documents and any other documents contained on any other privilege logs that have been produced to any regulator or government agency. KPMG further asks that the Court grant an oral hearing on the Motion to Compel.

---

[9] To the extent the Court rules that any of the Unidentified or Miscellaneous Documents are protected by the work product doctrine, KPMG adopts by reference Lead Plaintiffs' argument on pages 13-14 of their motion to compel. Any valid claim by Fannie Mae of work product protection is overcome by KPMG's substantial need for the documents and inability to otherwise acquire the same material without undue hardship. See Fed. R. Civ. P. 26(b)(3)(A).

Date:  February 6, 2008                           Respectfully submitted,


/s/Charles Wm. McIntyre
Charles Wm. McIntyre (DC Bar No. 489302)
cmcintyre@mcguirewoods.com
C. Simon Davidson (DC Bar No. 490422)
cdavidson@mcguirewoods.com
Darren W. Stanhouse (DC Bar No. 494623)
dstanhouse@mcguirewoods.com
McGUIREWOODS LLP
Washington Square
1050 Connecticut Avenue, N.W.
Suite 1200
Washington, DC  20036-5317
202.857.1700 (phone)
202.857.1737 (fax)
*Counsel for KPMG LLP*